UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,　　　　　)
　　　　Plaintiff　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)　　Civil Action No. 05 11040 MLW
　　　v.　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
FOUR JARS OF BELUGA STURGEON　　)
CAVIAR,　　　　　　　　　　　　　　　)
　　　　Defendant.　　　　　　　　　　　)

DEFENDANT'S ANSWER TO THE VERIFIED COMPLAINT
FOR FORFEITURE IN REM

The defendant Four Jars of Beluga Sturgeon Caviar (hereinafter "Caviar") hereby

respectfully submits its Answer to the Verified Complaint for Forfeiture in REM of the

Plaintiff United States of America.

ANSWER

For its Answer, Defendant states as follows:

FIRST DEFENSE

The Verified Complaint fails to state a claim upon which relief can be granted.

SECOND DEFENSE

With respect to the numbered paragraphs of the Verified Complaint, Defendant

answers as follows:

　　　　1.　　　Defendant is without knowledge or information sufficient to form a belief

as to the truth of the allegations set forth in Paragraph 1 of the Verified Complaint.

　　　　2.　　　Defendant admits the allegations set forth in Paragraph 2 of the Verified

Complaint.

　　　　3.　　　Defendant is without knowledge or information sufficient to form a belief

as to the truth of the allegations set forth in Paragraph 3 of the Verified Complaint.

4.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 4 of the Verified Complaint.

### THIRD DEFENSE

The Verified Complaint should be dismissed because two jars of Defendant Caviar (250 grams) are within legally prescribed limits for entry into the United States without a CITES permit (see Exhibit A). Therefore, two jars of Caviar, at a minimum, should be returned to Owner Stephanie Bakay.

### FOURTH DEFENSE

The Verified Complaint should be dismissed because the United States Fish and Wildlife Service has woefully failed to disseminate to the general public:  a) that sturgeon are endangered and that subsequently beluga sturgeon caviar is subject to restriction for purchase (see Exhibit B), and b) the precise amount of beluga sturgeon caviar which is allowed entry into the United States without a CITES permit (see Exhibit C, Petition for Remission).

### FIFTH DEFENSE

The Verified Complaint should be dismissed because service of process was insufficient. The Verified Complaint for Forfeiture in REM was filed May 18, 2005, and the Warrant and Monition was filed July 22, 2005, but neither document was mailed to Owner Stephanie Bakay until July 27, 2005 (see Exhibit D).

## CONCLUSION

WHEREFORE, Defendant respectfully asks that the Court enter judgment as follows:

1.     Release at least two jars of Caviar to Owner Stephanie Bakay, as she is entitled to 250 grams of caviar under the law.

2.     Consider releasing the entire amount of four jars of Caviar to Owner Stephanie Bakay, as she declared the four jars in all innocence before proceeding through Logan Airport Customs, because knowledge of the legally permissible amount of beluga sturgeon caviar allowed entry into the United States has been denied to the general public.

Dated: August 9, 2005                    FOUR JARS OF BELUGA STURGEON
                                         CAVIAR, Defendant

                                         By its Owner,

                                         _Stephanie Bakay_
                                         Stephanie Bakay
                                         790 Boylston Street #8D
                                         Boston, MA  02199
                                         (617) 262-7156

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 10, 2005, she caused a true copy

of the foregoing Defendant's Answer to the Verified Complaint for Forfeiture in REM, to

be served by U.S. mail, postage prepaid, to:

United States Attorney's Office
Asset Forfeiture Unit
1 Courthouse Way, Suite 9200
Boston, MA  02210

Dated:  August 10, 2005

*Stephanie Bakay*

Stephanie Bakay
790 Boylston Street #8D
Boston, MA  02199
(617) 262-7156

- 4 -

# TRAVELER ALERT
# CAVIAR

A

## You cannot import more than 250 grams (8.75 ounces) of Sturgeon caviar in your personal baggage.

Effective April 1, 1998, all species of Acipenseriformes (Sturgeon and Paddlefish), including their parts and products, are regulated by the Convention on International Trade in Endangered Species (CITES).  The import of more than 250 grams of caviar requires a CITES permit from the country where the caviar was purchased.

  

These restrictions are necessary because of the worldwide decline in Sturgeon populations.



For more information call:
(516) 825-3950 or 1-800-358-2104   or 1-617-889-6616







21 February, 2005

To Whom It May Concern:

Re: Ms. Stephanie Bakay
Seizure of Caviar at Boston Airport November 17, 2004

In my 38 years experience, I have never encountered such an incident. In these past 38 years, Travel Anywhere has operated group tours all over the world, including Russia ( formerly USSR).

Our typical client is well-educated, well-traveled, and keenly interested in cultural travel. With this profile, it is realistic to assume that clients on our trips are not "importers" of bi-products of endangered species. I would therefore assume that Ms. Bakay imported the extra few grams of Russian Caviar in total innocence of the regulations.

At no time in the past 38 years has this agency received advisories or warnings from the Fish and Wildlife or other departments of the US Government regarding the importation of endangered species bi-products.

It would be my suggestion that all TOUR OPERATORS be sent advisories regarding these regulations, since Tour Operators offer tours to all continents and countries. The appropriate advisories could ultimately be included in the travel information given to their clients, the traveling public.

Respectfully,

Sally L. Sells
President

*Society Hill Towers Plaza • 257 Saint James Place • Philadelphia, PA 19106-3936*
*(215) 923-4300 • (800) 523-1650 • Fax (215) 923-2833*
*E-Mail: info@tvlanywhere.com • http://www.tvlanywhere.com*



# SEIZED ASSET CLAIM FORM

**U.S. Fish and Wildlife Service INV #2004506063**

I hereby request that the Government file a complaint for judicial forfeiture of the seized property described below. I have filled in all three parts as required.

Part I

List all the items in which you claim an interest. Include sufficient information to identify the items, such as serial numbers, make, and model numbers, tail numbers, photographs, wildlife description, genus and species, number of items and so forth. Attach additional sheets of paper if more space is needed.

As detailed in my Petition for Remission, dated January 5, 2005: "Four (4) jars of caviar, consisting of 113 grams per jar, which I had personally purchased at Beluga Deluxe in St. Petersburg, Russia."

Part II

State your interest in each item of property listed above. Provide any documents that support your claim of interest, such as titles, registrations, bills of sale, receipts, and so forth. Attach additional sheets of paper if more space is needed.

Property purchased for personal use only, as a gift for my mother. As detailed in my Petition for Remission, dated January 5, 2005: "As my bags containing the jars of caviar were sealed at the time of entry, I have no knowledge whether a receipt for the goods was enclosed at the point of purchase. Otherwise, having paid with traveler's checks, I expect that American Express could furnish copies, if necessary, to verify ownership."

Part III

I attest and declare under penalty of perjury that my claim to this property is not frivolous and that the information provided in support of my claim is true and correct to the best of my knowledge and belief. I understand that a false statement or claim may subject me to prosecution under 18 U.S.C. 1001 and is punishable by a fine and up to five years imprisonment.


Stephanie Bakay

Stephanie Bakay                                    Date: February 17, 2005
18 Exeter Street
Boston, Massachusetts 02116

# Edwards & Angell LLP

101 Federal Street   Boston, MA 02110   617.439.4444   *fax* 617.439.4170

January 5, 2005

United States Department of the Interior
Fish and Wildlife Service
Office of Law Enforcement
70 Everett Avenue, Suite 315
Chelsea, Massachusetts 02150

Re:  INV # 2004506064

Dear Sir/Madam:

Enclosed please find three copies of my Petition for Remission.

Sincerely,

Stephanie Bakay

Stephanie Bakay

Encls.
- A)  Notice of seizure 11/17/04
- B)  Traveler Alert:  Caviar flyer
- C)  Property receipt 11/15/04
- D)  Copy of business card:  Jennifer Irving, US Fish & Wildlife Service
- E)  Travel Anywhere detailed itinerary
  U.S. Customs & Border Protection website 11/17-18/04:
- F1)  Pleasure and Vacation Travel (Know Before You Go)
  CBP site search results:
- G1)  "russia"
- G2)  "caviar"
- G3)  "CITES sturgeon caviar"
- G4)  "caviar endangered species"
- H)  U.S. Customs Today November 2002:  "A seriously fishy story"
- I)  U.S. Customs & Border Protection Informed Compliance Publication, February
  2004:  "What every member of the trade community should know about:  Caviar"
  U.S. Customs & Border Protection website 11/28/04
- J)  Know Before You Go (update):  Regulations for U.S. Residents MS Word
  document

# Edwards &Angell LLP
## PETITION FOR REMISSION

On November 15, 2004 at 12:30 p.m., I arrived at Logan International Airport, Boston, Massachusetts on Lufthansa Flight 422 from Frankfurt, Germany after a ten-day excursion to Russia sponsored by the Boston Athenaeum. At the U.S. Customs counter, I submitted a form declaring four (4) jars of caviar, consisting of 113 grams per jar, which I had personally purchased at Beluga Deluxe in St. Petersburg, Russia. Upon prohibiting entry of the caviar, the officer detained me for over one hour awaiting the arrival of Law Enforcement Officer Jennifer A. Irving from the U.S. Fish and Wildlife Service office in Chelsea less than one mile from the airport.

Ms. Irving informed me that importation of sturgeon caviar into the U.S. without specific permit was limited to 250 grams maximum since a 1998 treaty deeming sturgeon an endangered species as indicated in a "traveler alert" flyer she provided [Document B]. Though I had every reason to expect I could retain two of the jars constituting 226 grams, technically within the 250 gram allowance, all four jars were confiscated, apparently as evidence of the complete property requiring formal disposition. I requested and was given a property receipt [Document C]. As my bags containing the jars of caviar were sealed at the time of entry, I have no knowledge whether a receipt for the goods was enclosed at the point of purchase. Otherwise, having paid with traveler's checks, I expect that American Express could furnish copies, if necessary, to verify ownership.

As soon as I was home in Boston, I phoned the Boston Athenaeum as well as Travel Anywhere, the travel agency hired by the organization [Document E: detailed itinerary], both of which have been involved with more than a few trips to Russia over several years. Yet, not one single person, from the owner of the travel agency and her assistant to the assistant of the Athenaeum's director, had ever heard of such Customs restrictions specifically concerning caviar.

After numerous phone calls to government officials in the U.S. Customs and Fish and Wildlife Services, I was unable to locate any documentation whatsoever advising travelers of Customs restrictions regarding Russia in general or transport of caviar in particular. For example, when Jim McLaughlin, assistant port director at Logan Airport, recommended looking at the www.cbp.gov World Wide Web site, only the most generalized information appeared available as of November 18 [Document F]. Several attempts to phone the U.S. Fish and Wildlife Service number, 800-358-2104 as indicated, resulted in announcement that the line only takes messages; the question remains whether a staff person would actually know exactly what item(s) might be restricted should any traveler have sufficient foresight to ask about something as relatively "common" as caviar; that is, compared with ivory, the only example offered [Document F, page 8], which must certainly be considered far more unusual by far.

On the other hand, as discussed with Mr. McLaughlin, what the CBP web site could and should implement is a comprehensive, yet reasonably navigable series of linked pages through which a traveler could simply click the destination(s) by country name in order to determine any and all current restrictions, advisories, and other pertinent information, *especially* return into the United States in the immediate case. Not only would there effectively be no expense (always likely to appeal to Washington) compared with printed booklets requiring regular updating but, furthermore, a basic all-purpose flyer referring travelers to the CBP site could be produced for travel agencies to enclose with typical itinerary packets. Under such circumstances, a traveler really would have no excuse not to "know before you go".

But the present state of utterly inadequate disclosure defies any practical effort to perform "due diligence" given that even the most rudimentary details are sorely lacking. For example, again on the CBP web site, attempts to search basic keywords yielded no relevant information on "Russia", "caviar", or "CITES sturgeon caviar" [Documents G]. Entering "caviar endangered species" brought up "A seriously fishy story" from US Customs Today [Document H] which, though a colorful illustration of massive illegal smuggling, is ultimately of no practical value to the average, honest citizen.

Most astonishing is a U.S. Customs & Border Protection Informed Compliance Publication from February 2004, *"What every member of the trade community should know about: Caviar"* [Document J], the preface of which actually states "Two new concepts that emerge from the Mod (Customs Modernization) Act are *"informed compliance*" and "*shared responsibility"* [emphasis in bold italic font as appears in the original document], which are premised on the idea that in order to maximize voluntary compliance with the laws and regulations of U.S. Customs and Border Protection, the trade community needs to be clearly and completely informed of its legal obligations. Accordingly, *the Mod Act imposes a greater obligation on CBP to provide the public with improved information . . . ."* [emphasis mine]. As defined by this dictate, CBP has clearly failed the public in every conceivable way when such a document,

## Edwards &Angell LLP

dated six years after the CITES treaty, includes not *one* single mention of the actual CITES limit of 250 grams, presumably applicable to both trade and the general public alike. In any event, such omission is glaring in light of the title's purported intent to reveal "everything" to know about caviar for "informed compliance" with U.S. Customs regulations.

Out of curiosity, based on a statement in the caviar Traveler Alert flyer ("the import of more than 250 grams of caviar requires a CITES permit from the country where the caviar was purchased"), phone calls to both the Russian Embassy and the Russian Trade Representation office in Washington, D.C. resulted only in perplexed responses in broken English from staffers claiming no knowledge at all about obtaining a CITES permit; rather, they believed a permit would be issued by the U.S. government rather than the country of origin according to the flyer. Needless to say, U.S. Customs has no clear instruction on how or whom to contact for a permit application.

While Mr. McLaughlin agreed in a followup call that the Internet should be an ideal means to provide complete and instantly updated information on such subjects, when checked ten days later the CBP web site appeared to have added just an alternate version of "Know Before You Go" [Document K] that at first glance appears identical to the previous web site text. But as this document for some reason was available for download only as a Microsoft Word document, the obvious problem, regardless of Microsoft's domination of computer software, is that not everyone necessarily owns the Word program. In other words, why wouldn't the service use the PDF (Portable Document File) standard that has become universal for the simple reason that its Acrobat Reader application is free? Again, this reinforces the lack of common sense involved at every turn in this matter, not to mention the fact that the updated document still makes no specific mention of caviar.

In the final analysis, "ignorance of the law is no excuse" but, as readily demonstrated herein, the present state of utterly inadequate disclosure for "informed compliance" defies virtually every practical effort to perform "due diligence" given that even the most rudimentary details are all but impossible to ascertain. For this reason, the U.S. Customs and Fish and Wildlife Services cannot expect the traveling public to adhere to legal requirements which are neither readily apparent nor available even through extensive research. I therefore request the return of my four jars of caviar *in toto*, sealed intact.

Date: January 5, 2005

Stephanie Bakay
18 Exeter Street
Boston, Massachusetts 02116





**U.S. Fish & Wildlife Service**

**Jennifer A. Irving**
Wildlife Inspector
Office of Law Enforcement

Department of the Interior
70 Everett Ave. Suite 315
Chelsea, MA 02150

617/889 6616
617/889 1980 Fax

DEPARTMENT OF THE INTERIOR
U. S. FISH AND WILDLIFE SERVICE
DIVISION OF LAW ENFORCEMENT

# PROPERTY RECEIPT

**RECEIVED/SEIZED FROM:**

Stephanie Margaret Bakay

**DATE AND TIME OF RECEIPT:**

11/15/04  1:40pm

**FILE NUMBER:**

**RECEIVED/SEIZED BY:**

WI Jennifer A. Irving

**LOCATION:**

Terminal E, Logan Airport, Boston, MA

| ITEM NO. | DESCRIPTION: |
|---|---|
| 1 | 452 grams sturgeon caviar (four(4) 113-gram tins)   ST# 720782 |

I hereby certify that the above is a correct and complete inventory of items (received/seized by) (transferred from) the undersigned officer at the above stated date, time and place, and that the said inventory was made in the presence of:

**OFFICER:**

WI [signature] A. [signature] #327

**WITNESS:**

I hereby acknowledge receipt of a copy of this inventory and that it is true and complete:

**SIGNATURE:**

Stephanie Bakay

FORM 3-155 (9/81)

**DEPARTMENT OF THE INTERIOR**
**U.S. FISH AND WILDLIFE SERVICE**
**DIVISION OF LAW ENFORCEMENT**

Fish and Wildlife
Abandonment Form

| 1. Date of Seizure | 2. District | 3. Place of Seizure | 4. File No. |
|---|---|---|---|
| 11/15/04 | 5 | Terminal E, Logan Airport, Boston, MA | INV- 2004506064 |

**5. Description of Fish or Wildlife Seized:**

Four hundred fifty two (452) grams of sturgeon caviar
[Four (4) 113-gram jars]
Huso huso

Initial one:

_____ I, or my company, have sole interest in this property and I have full authority to abandon that interest to the government.

_____ There is another entity which holds an interest in this property (examples of interests might include: leins or the purchase not consummated yet). I hereby abandon my interest in the property to the government but, _____ (name and address of company) should be contacted about their interest.

**6. The above-described property was seized based upon a violation of:**

☒ Convention on International Trade in Endangered Species of Wild Fauna and Flora (CITES) - Endangered Species Act, 16 USC 1538

☒ Endangered Species Act, 16 USC 1538

☐ Lacey Act Amendments of 1981, 16 USC 3372

☐ Marine Mammal Protection Act, 16 USC 1371,1372

☐ Eagle Protection Act, 16 USC 668

☐ Migratory Bird Treaty Act, 16 USC 703

| 7. Name of Owner(s) | 8. Address |
|---|---|
| Stephanie Margaret Bakay | 18 Exeter Street #4 Boston, MA 02116 |

I(we) hereby abandon and quitclaim all of my(our) right, title and interest in and to the above-described property to the United States and waive any further rights or proceedings relative to this property other than my(our) right to file a petition for remission of this property as authorized at 50 CFR 12.24. I(we) understand that any such petition for remission must be filed prior to the disposal of the property by the Fish and Wildlife Service and not later than 60 days from date of seizure.

| 9. Signature of Owner(s) | 10. Date | 11. Witness (FWS Officer) | 12. Date |
|---|---|---|---|
| X | X | | |

**SERVICE USE ONLY-CERTIFICATE OF DISPOSAL**

| 13. Location | 14. Date | 15. Method of Disposal | 16. Date |
|---|---|---|---|
| | | | |

| 17. Signature and Badge Number of FWS Officer | 18. Witness |
|---|---|
| | |

Form 3-2096 (Rev. 4/87)                                    U.S. GPO: 2001-480-818/51027

E



# THE BOSTON ATHENAEUM
# REVISITS RUSSIA

## NOVEMBER 4–15, 2004

**Thur  Nov 4**      <u>**BOSTON**</u>

**2:30pm**      Check in at Lufthansa Airlines counter for flights #423 / 3180 to Moscow (connection in Frankfurt). Present tickets, visa and passport. *Make sure luggage is checked through to Moscow.* Sally Sells, of Travel Anywhere, will meet group in departure lounge at Logan Airport, Terminal E.

**4:25pm**      Lufthansa #423 departs for Frankfurt. Dinner and breakfast served aloft.

<u>**NOTE**</u>:  *Participants not on the group flight will meet the group in Moscow at the Hotel Metropol,  1 / 4 Teatralny Proezd, on Friday, the 5th.*

**Fri  Nov 5**      <u>*MOSCOW via Frankfurt*</u>

**5:30am**      Arrive Frankfurt, and connect to Lufthansa #3180 in Terminal 1.

**7:08am**      Lufthansa #3180 departs for Moscow.

**12:10pm**      Arrive MOSCOW, Sheremetyevo 2 Airport.  Claim luggage and proceed towards customs and visa formalities. Transfer by private motorcoach with a local guide, to central Moscow. Orientation tour enroute to hotel.

Accommodations at the 5-star HOTEL METROPOL, a masterpiece of Moscow Art Nouveau located between Red Square and the Bolshoi Theatre.  Afternoon at leisure.

**4:00pm**      *Optional orientation walk with Peter Lauritzen.  Depart from the hotel lobby for a 45-minute tour to Red Square, including the familiar landmark of St. Basil's Cathedral, with its colorful onion domes (weather permitting).*

**6:45pm**      Welcome cocktails and dinner in the Savva Morozov Room of the Metropol, located on the second floor. Introductory remarks by our distinguished lecturer, Peter Lauritzen.

*Continental breakfast included daily at the Hotel Metropol, in the Morozov Room.*

*Society Hill Towers Plaza • 257 Saint James Place • Philadelphia, PA 19106-3936*
*(215) 923-4300 • (800) 523-1650 • Fax (215) 923-2833*
*E-Mail: info@tvlanywhere.com • http://www.tvlanywhere.com*

*SALLY SELLS*
*SSELLS@*
*TVLanywhere.com*

Sat  Nov 6          <u>*Cathedrals and Treasures of the Kremlin*</u>

9:30am          Depart hotel for the *three cathedrals of the Kremlin:* those of the
                Assumption, Annunciation and St. Michael. Continue to the Russo-
                Byzantine--style *Armoury Chamber,* with its collections of lavish gold and
                silver, armoury, and priceless Faberge eggs.  Next, the *Diamond Fund*
                exhibits diamonds and jewellery from the 18th-c. to the present.

12:45pm          Transfer to lunch at the Café Pushkin, called the restaurant of diplomats.

2:30pm          Afternoon transfer to the *Tretyakov Gallery,* where the world's best icon
                collection is housed in a remarkable Art Nouveau building.  Continue to the
                16th-c. *Novadevichy Convent,* where many famous Russians are buried
                in the cemetery, amid golden domes, a lovely bell tower and chapels.
                Return to hotel by coach after these visits.

6:30pm          Depart for "The Tsar's Bride," opera by Rimsky-Korsakov, at the Bolshoi,
                five minutes' walk from the Metropol. *(Dinner on your own this evening.)*

Sun  Nov 7          <u>*Zagorsk and the Pushkin Museum*</u>

9:00am          Coach departs the hotel for an excursion to *Zagorsk* (Sergiev Posad).
                Visit cathedrals and the *Trinity Monastery of St. Sergiev,* where singing
                sets the stage for admiring the elaborate iconostasis.

12pm          Lunch at the Russian Yard will be a traditional Sunday menu.

2:30pm          Upon our return to Moscow, travel via the underground (renowned for
                its richly decorated stations with chandeliers and mosaics) to the
                *Pushkin Museum of Fine Arts.* The visit will include the plaster casts
                of fine classical sculpture; the Gold Treasures of Troy; many Old Masters;
                and  the largest collection of French impressionist works in Russia, as
                well as a series of Post-Impressionist and Modernist works, including
                many notable Picassos and Matisses. Continue across the street to the
                rebuilt *Church of Christ our Savior.*

5:15pm          Coach transfer to a private visit of the *American Ambassador's residence,
                Spaso House* (c. 1914, in the Grand Empire style). Tea will be served
                after a tour of the "Art in Embassies" collection. Please bring your
                passport for identification purposes.  Return to hotel after visit.

                Evening at leisure.

                *Please settle your accounts at the Hotel Metropol this evening.*

**Mon  Nov 8**    *The Imperial Kremlin Palace and State Historical Museum*

8:00am    Check out of the Metropol this morning. Place luggage outside room
for collection by porters (not hand luggage). *Luggage will be stored;
you may keep one piece of hand luggage for the train voyage. It will
be kept safely on the coach during touring today.*

9:00am    Coach transfer to a very special visit of the *Imperial Kremlin Palace*,
where we will visit the *Hall of Orders*, the newly recreated *Throne Room*,
as well as the *Palace of Facets* and the *Romanov apartments*.
(Note: the Kremlin Palace is subject to closure without notice, due to current security
issues. Other Moscow attractions will be substituted, if necessary.)
*Lunch on your own. Afternoon at leisure unless joining option below.
Please return to the Hotel Metropol by 4:30pm for group transfer to the
train station.*

2:30pm    *Optional:* Afternoon visit to the *State Historical Museum*, to view the
exhibit on 19th and 20th century collections of the Czars. View the famous
*GUM department store*, and the restored *Church of Our Lady of Kazan,*
as well as the *Kremlin Gate Church.* Return to hotel by 4:30pm.

5:00pm    Depart Metropol Hotel for high-speed train to St. Petersburg.

6:30pm    Train #164 departs Moscow's Leningradsky Station. Dinner served onboard.

11:30pm    Arrive St. Petersburg, and transfer by motorcoach with guide to the
GRAND HOTEL EUROPE, a 5-star Art Nouveau property. *Continental
breakfast included daily at the Grand Hotel Europe.*

**Tues Nov 9**    *ST. PETERSBURG*

9:30am    Welcome to St. Petersburg, cultural heart of Russia, founded by Peter the
Great, and ruled by the Romanovs until 1917. Begin the day with a visit
to the *Fortress Cathedral of SS Peter and Paul* and the *cabin of Peter the
Great.* Drive by Smolny Convent, which shares the spotlight in Russian
history.

12:30pm    Lunch aboard the frigate Flagman, moored on the Neva River.

2:00pm    This afternoon visit *Menshikov Palace,* impressive 18th-c. residence of
St. Petersburg's first governor. Continue to the *Academy of Arts* where
architectural models of historic buildings of the city are on display.
Return to hotel late afternoon.

7:30pm    Depart hotel for dinner at Palkin Restaurant. Return to the hotel by
coach after dinner.

3

**Wed Nov 10**        *Excursion to Peterhof*

8:45am        Depart by coach to visit *Peterhof,* summer palace of Peter the Great, called Russia's Versailles. The lavish interior is furnished with masterpieces of Russian and European art and antiques.

12:30pm       Lunch at the Strelna Hotel Restaurant, inside President Putin's Baltic residential enclave.

3:00pm        Returning to the city, our first Hermitage visit commences at the *Winter Palace.* Today's focus is on the *State Apartments, Old Masters,* and by special permission, the *Palace Chapel.* Return to hotel by coach.

Evening at leisure unless taking opera option below.

6:30pm        *OPTIONAL: Depart for Mussorgsky Theatre for Gounod's opera "Faust." The theatre is within easy walking distance of the Grand Hotel Europe.*

**Thur Nov 11**       *Romanov Palaces*

8:30am        A short drive takes us to *Tsarskoye Selo* and the magnificent *Catherine Palace* with exquisite objets d'art, porcelain, furniture, paintings and amber. Visit the Agate Pavilion and the nearby *Alexander Palace,* the last residence of the Romanov Emperors.

12:00pm       Lunch at Podvorie Restaurant, near Pavlovsk.

2:00pm        Afternoon visit the *Great Palace at Pavlovsk,* built for Emperor Paul I. By special permission see the *Private Apartments and Library of Empress Maria Feodorovna.* Visit to Rose Pavillion, with sleigh or carriage ride (*weather permitting*). Return to hotel by 5:00pm.

6:30pm        Depart on foot for "Romeo and Juliet" ballet at the Mussorgsky Theatre. (7pm curtain)

**Fri Nov 12**        St. Petersburg—the Hermitage

10:15am       Return to the *Hermitage* this morning to see the *State Hermitage Collections* including the *Impressionist collection,* and a special visit to the *Gold Treasure Room,* with some Scythian gold and Faberge objects.

1:00pm        Afternoon at leisure; return to hotel by coach or remain at Hermitage for additional viewing on your own.

4

*Nov 12 cont'd*

| | |
|---|---|
| 6:30pm | Depart by coach for the Grand Hall of the St. Petersburg Philharmonia, for a performance of Rachmaninoff piano concertos. Return to hotel. |
| 9:00pm | Light supper at the Grand Hotel Europe restaurant. |

**Sat Nov 13**       *St. Petersburg—the Hermitage and Staff Building*

| | |
|---|---|
| 10:00am | Depart hotel for our final visit to the Hermitage this morning to include, by special permission, a visit to the jewel box *private theater of Catherine the Great*, as well as the recently opened exhibit rooms in the *General Staff Building*. |
| 12:30pm | Walk across Palace Square to the Restaurant Hermitage for lunch. |
| 2:00pm | Afternoon visit *Yusupov Palace*, where Rasputin was murdered, followed by a visit to *St. Isaac's Cathedral*, the hallmark of Russian Cathedrals, and the 4th-largest in the world. |
| 5:00pm | Return to hotel; balance of afternoon free. |
| 8:00pm | A gala farewell evening with cocktails and dinner at the Palace of Prince Kochubey, an elegantly decorated palace with finely detailed ceilings. |
| | *Please settle your personal account at the hotel this evening.* |

**Sun Nov 14**       *St. Petersburg finale and departure to Frankfurt*

| | |
|---|---|
| 8:15am | Place luggage outside room for pickup by porters (not hand luggage). |
| 9:00am | Check out from Grand Hotel Europe. Luggage will be loaded onto coach. You may keep one small bag inside the coach. *Suggestion: pack an over-night bag for use in Frankfurt.* Verify your luggage has been put on coach. |
| 9:30am | Morning visit the *Palace of the Grand Duke Michael Pavlovitch*, housing the great *Russian Museum,* housing Russia's largest collection of art from ancient icons to 20th-c. avant garde.  Continue to the *Cathedral of Our Savior of the Spilled Blood*, next door. |
| 12:30pm | Lunch at the Noble Nest. *(Note: those on non-group flights may depart directly from the restaurant, by taxi, to the airport. Suggested departure time is 1:45pm.  Bon voyage!)* |
| | After lunch, free time to browse the shops in the neighborhood, with our guide. |

*Nov 14 cont'd*

| | |
|---|---|
| 4:30pm | Group transfer to St. Petersburg airport.  Evening fly to Frankfurt via Lufthansa.  Flight #3219 departs 7:00pm. |
| 8:00pm | Arrive FRANKFURT airport.  Motorcoach driver will meet group at Terminal 1, exit C8. |
| | Transfer to the KEMPINSKI HOTEL GRAVENBRUCH, a short distance from Frankfurt airport.  Dinner on your own. |
| | *(Buffet breakfast included at the Kempinski; please settle your accounts this evening or early tomorrow morning.)* |

**Mon Nov 15**     <u>*Frankfurt and Boston*</u>

| | |
|---|---|
| 7:00am | Place luggage outside your room for collection by porters (not hand luggage). |
| 7:30am | Depart Kempinski Hotel by motorcoach for Frankfurt Airport. Check in at Lufthansa for direct flight to BOSTON. |
| 10:30am | Lufthansa Flight #422 departs Frankfurt.  Lunch and snack aloft. Arrive BOSTON early afternoon.  *Welcome home!* |

6



# U.S. Customs & Border Protection
U.S. Department of Homeland Security    CBP.gov

Wednesday, November 17, 2004

SEARCH    GO

home  about  contacts  ports  questions  forms  publications  legal  contracting  sitemap

**newsroom    import    export    travel    careers    enforcement**

## travel

home / travel / Leaving and Arriving in the United States /

**Travel Alerts and Restricted/Prohibited Goods**

**Business and Government Travel**

**Leaving and Arriving in the United States**

**Carriers and Facilities**

**Customer Service**



Report Suspicious Activity to 1-800-BE-ALERT

## Pleasure and Vacation Travel (Know Before you Go)



As an international traveler, you should be aware of the rules for bringing items back from your trip. For instance, did you know that the duty-free personal exemption was recently raised to $800?

- **Know Before You Go** - U.S. Customs and Border Protection Regulations for U.S. Residents
  Full version of Know Before You Go brochure.

- **Introduction and Mission**

- **When You Return to the United States**

- **Documentary Requirements for Entry**

- **What You Must Declare**

- **Duty-free Exemption**
  Including Tobacco and Alcohol

- **Duty-free or Reduced Rates**

- **Sending Goods to the United States**

- **Duty-Free Shops**

- **Prohibited and Restricted Items**

- **Money and Other Monetary Instruments**

- **Traveling Back and Forth Across the Border**

- **Other Travel-related Information**

- **Straight from the Source: An Inspector's Advice**

- **Top 10 Tips**

- **Challenge Yourself - Take the Know Before You Go Quiz**

- **Sample Customs Declaration Form**

Search *Pleasure and Vacation Travel (Know Before you Go)* for:

GO

**section sitemap for**
*Pleasure and Vacation Travel (Know Before you Go)*

## see also:

**◊ in Leaving and Arriving In the United States:**

Non-Immigrant Arrival and Departure

U.S. Arrival and Departure (Airport, Land Border, Seaport) for Immigrants/Non-Immigrants

Admission Into United States

Bringing Agricultural Products Into the United States

Airport Wait Times
(xls - 20 KB.) (csv - 2 KB.)

Non-Commercial Vehicle Importations for Non-Residents
(doc - 26 KB.)

...more

**◊ on cbp.gov:**

Registration for Dutiable Personal Articles Prior to U.S. Departure

How U.S. Customs Handles Traveler Complaints

**◊ publications:**

Currency Reporting Flyer
(doc - 24 KB.)

GSP and the Traveler
(doc - 40 KB.)

International Mail Imports
(doc - 72 KB.)

Pets and Wildlife
(pdf - 104 KB.)

Pleasure Boats
(doc - 43 KB.)

Visiting the United States
(doc - 70 KB.)

Guide for Private Flyers
(doc - 936 KB.)

Importing or Exporting A Car
(doc - 52 KB.)

U.S. Import Requirements
(doc - 64 KB.)

Exporting A Vehicle
(doc - 92 KB.)



## U.S. Customs & Border Protection
*U.S. Department of Homeland Security*    CBP.gov

Thursday, November 18, 2004

SEARCH    GO

home   about   contacts   ports   questions   forms   publications   legal   contracting   sitemap

**newsroom    import    export    travel    careers    enforcement**

travel

home / travel / Leaving and Arriving in the United States / Pleasure and Vacation Travel (Know Before You Go) /

**Travel Alerts and Restricted/Prohibited Goods**

**Business and Government Travel**

**Leaving and Arriving in the United States**

**Carriers and Facilities**

**Customer Service**

Report Suspicious Activity to **1-800-BE-ALERT**

### Know Before You Go

U.S. Customs and Border Protection Regulations for U.S. Residents


print

1. Introduction 2. When You Return To The United States 3. Documentary Requirements For Entry 4. What You Must Declare 5. Register Items Before You Leave the United States 6. Duty-Free Exemption 7. Gifts 8. Duty-Free or Reduced Rates 9. Increased Duty Rates 10. Paying Duty 11. Sending Goods to the United States 12. Unaccompanied Baggage 13. Unaccompanied Purchases from Insular Possessions and Caribbean Basin Countries 14. Duty-Free Shops 15. Prohibited and Restricted Items 16. Money and Other Monetary Instruments 17. Traveling Back and Forth Across the Border 18. Photographic Film 19. Customer Service Programs 20. Other Travel-related Information



### see also:

**in Pleasure and Vacation Travel (Know Before You Go):**

Introduction and Mission

When You Return to the United States

Documentary Requirements for Entry

What You Must Declare

Duty-free Exemption

Duty-free or Reduced Rates

...*more*

### on cbp.gov:

Passenger Service Representative (PSR) Program & Information Kiosks

### publications:

GSP and the Traveler (doc - 40 KB.)

Pets and Wildlife (pdf - 104 KB.)

Pleasure Boats (doc - 43 KB.)

Importing or Exporting A Car (doc - 52 KB.)

U.S. Import Requirements (doc - 64 KB.)

Exporting A Vehicle (doc - 92 KB.)

**Introduction**
U.S. Customs and Border Protection (CBP) is America's frontline against possible terrorists and the smuggling of drugs and other prohibited goods. CBP has discovered large amounts of drugs and other contraband in baggage, vehicles, and on passengers.

Upon your return to the United States, it is CBP policy to treat you in a courteous, professional manner. Very few travelers actually violate the law, but an examination of your baggage or your vehicle may be required, which, by law, we are allowed to do. You may be asked questions on the nature of your citizenship, your trip, and about anything you are bringing back to the United States that you did not have with you when you left. If your baggage is selected for an examination, you will be responsible for placing it on the exam station and opening it. After the exam is completed, you will be asked to repack and close the baggage.

If you feel your examination is not conducted in a professional manner, please ask to speak to a supervisor.

"Duty" and "dutiable" are words you will find frequently throughout this brochure: *Duty* is the amount of money you pay on items coming from another country. It is similar to a tax, except that duty is collected only on imported goods. *Dutiable* describes items on which duty may have to be paid. Most items have specific duty rates, which are determined by a number of factors, including where you got the item, where it was made, and what it is made of.

Anything you bring back that you did not have when you left the United States must be "declared." For example, you would *declare* alterations made in a foreign country to a suit you already owned, and any gifts you acquired overseas.

The information contained within this brochure may change routinely. For traveler information updated frequently, please visit the travel section of the CBP Web site at www.cbp.gov.

**The U.S. Customs and Border Protection Mission Statement**
We are the guardians of our Nation's borders. We are America's frontline.
We safeguard the American homeland at and beyond our borders.
We protect the American public against terrorists and the instruments of terror.
We steadfastly enforce the laws of the United States while fostering our Nation's economic security through lawful international trade and travel.
We serve the American public with vigilance, integrity and professionalism.

Top

**When You Return To The United States**
When you come back, you will need to declare everything you brought back that you did not take with you when you left the United States. If you are traveling by air or sea, you may be asked to fill out a CBP declaration form. This form is almost always provided by the airline or cruise ship. You will probably find it easier and faster to fill out your declaration form and clear CBP if you do the following:

- Keep your sales slips.
- Try to pack the things you'll need to declare separately.
- Read the signs in the arrival area. They contain helpful information about how to clear CBP.



Be aware that under U.S. law, CBP officers are authorized to examine luggage, cargo, and travelers. Under the search authority granted by the U.S. Congress, every person who crosses a U.S. border may be searched. To stop the flow of illegal drugs and other contraband into our country, your cooperation is appreciated. If you are one of the very few travelers selected for a

search, you will be treated in a courteous, professional, and dignified manner. If you are searched and you believe that you were not treated in such a manner, or if you have any concerns about the search for any reason whatsoever, *we want to hear from you.* Please contact the Executive Director, Border Security and Facilitation, whose address is listed at the end of this booklet.

Top

## Documentary Requirements For Entry
### Travel from Mexico or Canada
*United States Citizens must provide the following:*

- Oral declaration of citizenship
  However to avoid delays proof of U.S. citizenship (valid or expired U.S. passport, U.S. birth certificate, naturalization certificate) is strongly advised.

*U.S. Lawful Permanent Residents (LPRs) must provide one of the following:*

- I-551 (Green card),
- Temporary Residence Stamp (ADIT stamp) contained in a passport or on Form I-94, or
- Immigrant Visa (passport required unless otherwise noted)

*Visitors/Non-immigrants must provide one of the following:*

- Valid passport and visa, or
- Valid passport only, if Visa Waver Program or Guam Visa Waver Program eligible
- Canadians must provide proof of Canadian citizenship or an oral declaration and ID

### Travel from the Western Hemisphere (other than Mexico or Canada)
*United States Citizens must provide:*

- Oral declaration of citizenship
  However to avoid delays proof of U.S. citizenship (valid or expired U.S. passport, U.S. birth certificate, naturalization certificate) is strongly advised.
- *Exception - travel from Cuba U.S. passport is required*

*U.S. Lawful Permanent Residents (LPRs) must provide one of the following:*

- I-551 (Green card),
- Temporary Residence Stamp (ADIT stamp) contained in a passport or on Form I-94, or
- Immigrant Visa (passport required unless otherwise noted)

*Visitors/Non-immigrants must provide one of the following:*

- Valid passport and visa, or
- Valid passport only, if Visa Waver Program or Guam Visa Waver Program eligible
- Canadians must provide proof of Canadian citizenship or an oral declaration and ID

### Travel from the Eastern Hemisphere (Europe, Africa, Asia, Australia)
*U.S. citizens must provide one of the following:*

- Valid, unexpired U.S. passport

*U.S. Lawful Permanent Residents (LPRs) must provide one of the following:*

- Valid unexpired passport or U.S. travel document and I-551 (Green card),
- Temporary Residence Stamp (ADIT stamp) contained in a passport or on Form I-94, or
- Immigrant Visa (passport required unless otherwise noted).

*Visitors/Non-immigrants must provide one of the following:*

- Valid passport and visa, or
- Valid passport only, if Visa Waver Program or Guam Visa Waver Program eligible.
- Canadians must provide a valid passport

* There are some slight exceptions that may exist in regards to the above listed information. More information on documentation requirements, contact your consulate or embassy for further instructions.

Top

## What You Must Declare

- Items you purchased and are carrying with you upon return to the United States.
- Items you received as gifts, such as wedding or birthday presents.
- Items you inherited.
- Items you bought in duty-free shops, on the ship, or on the plane.
- Repairs or alterations to any items you took abroad and then brought back, even if the repairs/alterations were performed free of charge.
- Items you brought home for someone else.
- Items you intend to sell or use in your business.
- Items you acquired (whether purchased or received as gifts) in the U.S. Virgin Islands, American Samoa, Guam, or in a Caribbean Basin Economic Recovery Act country (please see section on $600 exemption for a list of these countries) that are not in your possession when you return. In other words, if you acquired things in any of these island nations and asked the merchant to send them to you, you must still declare them when you go through CBP. (This differs from the usual procedure for mailed items, which is discussed in the section on Sending Goods to the United States.)

You must state on the CBP declaration, in United States currency, what you actually paid for each item. The price must include all taxes. If you did not buy the item yourself - for example, if it is a gift - get an estimate of its fair retail value in the country where you received it. If you bought something on your trip and wore or used it on the trip, it's still dutiable. You must declare the item at the price you paid or, if it was a gift, at its fair market value.

### Joint Declaration
Family members who live in the same home and return together to the United States may combine their personal exemptions. This is called a *joint declaration*. For example, if Mr. and Mrs. Smith travel overseas and Mrs. Smith brings home a $1,000 piece of glassware, and Mr. Smith buys $600 worth of clothing, they can combine their $800 exemptions on a joint declaration and not have to pay duty.

Children and infants are allowed the same exemption as adults, except for alcoholic beverages.

Top

## Register Items Before You Leave the United States
If your laptop computer was made in Japan - for instance - you might have to pay duty on it each time you brought it back into the United States, unless you could prove that you owned it before you left on your trip. Documents that fully describe the item - such as, sales receipts, insurance policies, or jeweler's appraisals - are acceptable forms of proof.

To make things easier, you can register certain items with CBP before you depart - including watches, cameras, laptop computers, firearms, and tape recorders - as long as they have serial numbers or other unique, permanent markings. Take the items to the nearest CBP office and request a Certificate of Registration (CBP Form 4457). It shows that you had the items with you before leaving the U.S. and all items listed on it will be allowed duty-free entry. CBP officers must see the item you are registering in order to certify the certificate of registration. You can register items with CBP at the international airport from which you're departing. Keep the certificate for future trips.

Top

**Duty-Free Exemption**
The duty-free exemption, also called *the personal exemption*, is the total value of merchandise you may bring back to the United States without having to pay duty. You may bring back more than your exemption, but you will have to pay duty on it. In most cases, the personal exemption is $800, but there are some exceptions to this rule, which are explained below.

**Exemptions**
Depending on the countries you have visited, your personal exemption will be $200, $600, $800, or $1,200. (The differences are explained in the following section.) There are also limits on the amount of alcoholic beverages, cigarettes, cigars, and other tobacco products you may include in your duty-free personal exemption.

The duty-free exemptions ($200, $600, $800, or $1,200) apply if:

- The items are for your personal or household use or intended to be given as bonafide gifts.
- They are in your possession (that is, they accompany you) when you return to the United States. Items to be sent later (exemptions apply for goods sent from Guam or the U.S. Virgin Islands) may not be included in your $800 duty-free exemption.
- They are declared to CBP. If you do not declare something that should have been declared, you risk forfeiting it. If in doubt, declare it.
- You are returning from an overseas stay of at least 48 hours. For example, if you leave the United States at 1:30 p.m. on June 1, you would complete the 48-hour period at 1:30 p.m. on June 3. This time limit does not apply if you are returning from Mexico or from the U.S. Virgin Islands. (See also the section on the $200 exemption.)
- You have not used your exemption, or any part of it, in the past 30 days. If you use part of your exemption-for example, if you go to England and bring back $150 worth of items - you must wait another 30 days before you are allowed another $800 exemption. (However, see the section on the $200 exemption.)
- The items are not prohibited or restricted as discussed in the section on Prohibited and Restricted Items. Note the embargo prohibitions on products of Cuba.

**Tobacco Products:** Travelers may import previously exported tobacco products only in quantities not exceeding the amounts specified in exemptions for which they travel. Any quantities of previously exported tobacco products not permitted by an exemption will be seized and destroyed. These items are typically purchased in duty-free stores, on carriers operating internationally, or in foreign stores. These items are usually marked "Tax Exempt. For Use Outside the U.S.," or "U.S. Tax Exempt For Use Outside the U.S."



For example, a returning resident is eligible for the $800 exemption, which includes not more than 200 cigarettes and 100 cigars. If the resident declares 400 previously exported cigarettes, the resident would be permitted 200 cigarettes, tax-free under the exemption and the remaining 200 previously exported cigarettes would be confiscated. If the resident declares 400 cigarettes, of which 200 are previously exported and 200 not previously exported, the resident would be permitted to import the 200 previously exported cigarettes tax free under the exemption and the resident would be charged duty and tax on the remaining 200 foreign-made cigarettes.

The tobacco exemption is available to each person. Tobacco products of Cuban origin, however, are prohibited unless you actually acquired them in Cuba and are returning directly or indirectly from that country on licensed travel. You may not, for example, bring in Cuban cigars purchased in Canada. Persons returning from Cuba may bring into the U.S. no more than $100 worth of goods.

**Alcoholic Beverages:** One liter (33.8 fl. oz.) of alcoholic beverages may be included in your exemption if:

- You are 21 years old.
- It is for your own use or as a gift.
- It does not violate the laws of the state in which you arrive.



Federal regulations allow you to bring back more than one liter of alcoholic beverage for personal use, but, as with extra tobacco, you will have to pay duty and Internal Revenue Service tax.

While Federal regulations do not specify a limit on the amount of alcohol you may bring back for personal use, unusual quantities are liable to raise suspicions that you are importing the alcohol for other purposes, such as for resale. CBP officers are authorized by Alcohol, Tobacco and Firearms (ATF) to make on-the-spot determinations that an importation is for commercial purposes, and may require you to obtain a permit to import the alcohol before releasing it to you. If you intend to bring back a substantial quantity of alcohol for your personal use, you should contact the port you will be re-entering the country through, and make prior arrangements for entering the alcohol into the U.S.

Having said that, you should be aware that State laws may limit the amount of alcohol you can bring in without a license. If you arrive in a state that has limitations on the amount of alcohol you may bring in without a license, that state law will be enforced by CBP, even though it may be more restrictive than Federal regulations. We recommend that you check with the state government before you go abroad about their limitations on quantities allowed for personal importation and additional state taxes that might apply.

In brief, for both alcohol and tobacco, the quantities discussed in this booklet as being eligible for duty-free treatment may be included in your $800 (or $600 or $1,200) exemption, just as any other purchase would be. But unlike other kinds of merchandise, amounts beyond those discussed here as being duty-free are taxed, even if you have not exceeded, or even met, your personal exemption. For example, if your exemption is $800 and you bring back three liters of wine and nothing else, two of those liters will be dutiable. Federal law prohibits shipping alcoholic beverages by mail within the United States.

**$200 Exemption**
If you can't claim other exemptions because you've been out of the country more than once in a 30-day period or because you haven't been out of the country for at least 48 hours, you may still bring back $200 worth of items free of duty and tax. As with the exemptions discussed earlier, these items must be for your personal or household use.

Each traveler is allowed this $200 exemption, but, unlike the other exemptions, family members may not group their exemptions. Thus, if Mr. and Mrs. Smith spend a night in Canada, each may bring back up to $200 worth of goods, but they would not be allowed a collective family exemption of $400.

Also, if you bring back more than $200 worth of dutiable items, or if any item is subject to duty or tax, the entire amount will be dutiable. Let's say you were out of the country for 36 hours and came back with a $300 piece of pottery. You could not deduct $200 from its value and pay duty on $100. The pottery would be dutiable for the full value of $300.

You may include with the $200 exemption your choice of the following: 50 cigarettes and 10 cigars and 150 milliliters (5 fl. oz.) of alcoholic beverages or 150 milliliters (5 fl. oz.) of perfume containing alcohol.

**$600 Exemption**
If you are returning directly from any one of the following 24 Caribbean Basin countries, your exemption is $600:

| | | |
|---|---|---|
| Antigua and Barbuda | El Salvador | Nicaragua |
| Aruba | Grenada | Panama |
| Bahamas | Guatemala | Saint Kitts and Nevis |
| Barbados | Guyana | Saint Lucia |
| Belize | Haiti | Saint Vincent and the Grenadines |
| British Virgin Islands | Honduras | Trinidad and Tobago |
| Costa Rica | Jamaica | |
| Dominica | Montserrat | |
| Dominican Republic | Netherlands Antilles | |

You may include two liters of alcoholic beverages with this $600 exemption, as long as one of the liters was produced in one of the

3

countries listed above (see section on Unaccompanied Purchases from Insular Possessions and Caribbean Basin Countries).

**Travel to More Than One Country**
If you travel to a U.S. possession and to one or more of the Caribbean countries listed above (for example, on a Caribbean cruise), you may bring back $1,200 worth of items without paying duty. But only $600 worth of these items may come from the Caribbean country(ies); any amount beyond $600 will be dutiable unless you acquired it in one of the insular possessions.



For example, if you were to travel to the U.S. Virgin Islands and Jamaica, you would be allowed to bring back $1,200 worth of merchandise duty - free, as long as only $600 worth was acquired in Jamaica. (Keeping track of where your purchases occurred and having the receipts ready to show the CBP officers will help speed your clearing CBP).

If you travel to any of the Caribbean countries listed above and to countries where the standard personal exemption of $800 applies - for example, a South American or European country - up to $800 worth of merchandise may come from the non-Caribbean country. For instance, if you travel to Venezuela and Trinidad you are entitled to an $800 exemption, but no more than $600 can be from Trinidad.

**$800 Exemption**
If you are returning from anywhere *other* than a Caribbean Basin country or a U.S. insular possession (U.S. Virgin Islands, American Samoa, or Guam), you may bring back $800 worth of items duty-free, as long as you bring them with you (this is called *accompanied baggage*).

Duty on items you mail home to yourself will be waived if the value is $200 or less. (Please see the sections on Gifts and Sending Goods to the United States.) Antiques that are at least 100 years old, and fine art may enter duty-free, but folk art and handicrafts are generally dutiable.

This means that, depending on what items you're bringing back from your trip, you could come home with more than $800 worth of gifts or purchases and still not be charged duty. For instance, say you received a $700 bracelet as a gift, and you bought a $40 hat and a $60 color print. Because these items total $800, you would not be charged duty, because you have not exceeded your duty-free exemption. If you had also bought a $500 painting on that trip, you could bring all $1300 worth of merchandise home without having to pay duty, because fine art is duty-free.

**$1,200 Exemption**
If you return directly or indirectly from a U.S. insular possession (U.S. Virgin Islands, American Samoa, or Guam), you are allowed a $1,200 duty-free exemption. You may include 1,000 cigarettes as part of this exemption, but at least 800 of them must have been acquired in an insular possession. Only 200 cigarettes may have been acquired elsewhere. For example, if you were touring the South Pacific and you stopped in Tahiti, American Samoa, and other ports of call, you could bring back five cartons of cigarettes, but four of them would have to have been bought in American Samoa.

Similarly, you may include five liters of alcoholic beverages in your duty-free exemption, but one of them must be a product of an insular possession. Four may be products of other countries (see section on Unaccompanied Purchases from Insular Possessions and Caribbean Basin countries).

Top

**Gifts**
Gifts you bring back from a trip abroad are considered to be for your personal use. They must be declared, but you may include them in your personal exemption. This includes gifts people gave you while you were out of the country, such as wedding or birthday presents, and gifts you've brought back for others. Gifts intended for business, promotional, or other commercial purposes may not be included in your duty-free exemption.



Gifts worth up to $100 may be received, free of duty and tax, by friends and relatives in the United States, as long as the same person does not receive more than $100 worth of gifts in a single day. If the gifts are mailed or shipped from an insular possession, this amount is increased to $200. When you return to the United States, you don't have to declare gifts you sent while you were on your trip, since they won't be accompanying you.

By federal law, alcoholic beverages, tobacco products, and perfume containing alcohol and worth more than $5 retail may not be included in the gift exemption.

Gifts for more than one person may be shipped in the same package, called a consolidated gift package, if they are individually wrapped and labeled with each recipient's name. Here's how to wrap and label a consolidated gift package.

Be sure to mark the outermost wrapper with:

- the words "UNSOLICITED GIFT" and the words "CONSOLIDATED GIFT PACKAGE;"
- the total value of the consolidated package;
- the recipients' names and
- the nature and value of the gifts inside (for example, tennis shoes, $50; shirt, $45; toy car, $15), for instance:

  To John Jones-one belt, $20; one box of candy, $5; one tie, $20.

  To Mary Smith-one skirt, $45; one belt, $15; one pair slacks, $30.

If any item in the consolidated gift parcel is subject to duty and tax or worth more than the $100 gift allowance, the *entire* package will be dutiable.

You, as a traveler, cannot send a "gift" package to yourself, and people traveling together cannot send "gifts" to each other. But there would be no reason to do that anyway, because the personal exemption for packages mailed from abroad is $200, which is twice as much as the gift exemption. If a package is subject to duty, the United States Postal Service will collect it from the addressee along with any postage and handling charges. The sender cannot prepay duty; it must be paid by the recipient when the package is received in the United States. (Packages sent by courier services are not eligible for this waiver).

For more information about mailing packages to the United States, please contact your nearest CBP office and ask for our pamphlet *International Mail Imports*.

Top

**Duty-Free or Reduced Rates**
**Items from Certain Countries**
The United States gives duty preferences - that is, free or reduced rates - to **certain developing countries** under a trade program called the Generalized System of Preferences (GSP). Some products that would otherwise be dutiable are not when they come from a GSP country. For details on this program, as well as the complete list of GSP countries, please look for it on our Web site.

Similarly, many products of **Caribbean and Andean countries** are exempt from duty under the Caribbean Basin Initiative, Caribbean Basin Trade Partnership Act, Andean Trade Preference Act and the Andean Trade Promotion and Drug Eradication Act. Many products of certain **sub-Saharan African countries** are exempt from duty under the African Growth and Opportunity Act. Most products of **Israel and Jordan** may also enter the United States either free of duty or at a reduced rate under the U.S. free trade agreements with those countries. Check with CBP for details on these programs.

The North American Free Trade Agreement (NAFTA) went into effect in 1994. If you are returning from **Canada or Mexico**, your goods are eligible for free or reduced duty rates if they were grown, manufactured, or produced in Canada or Mexico, as defined by the Act. Again, check with CBP for details.

**Personal Belongings**
Your personal belongings can be sent back to the United States duty-free if they are of U.S. origin and if they have not been altered or repaired while abroad. Personal belongings like worn clothing can be mailed home and will receive duty-free entry if you write the words

*4*

"American Goods Returned" on the outside of the package.

**Household Effects**
Household effects include furniture, carpets, paintings, tableware, stereos, linens, and similar household furnishings. Tools of trade, professional books, implements, and instruments that you've taken out of the United States will be duty-free when you return.

You may import household effects you acquired abroad duty-free if:

- You used them for at least one year while you were abroad.
- They are not intended for anyone else or for sale.

Clothing, jewelry, photography equipment, portable radios, and vehicles are considered personal effects and cannot be brought in duty-free as household effects. However, the amount of duty collected on them will be reduced according to the age of the item.

Top

**Increased Duty Rates**
**Items from Certain Countries**
The United States may impose a much higher than normal duty rate on products from certain countries. The United States Trade Representative is authorized to impose a different duty rate under what is know as its "301" authority. Currently, the United States has imposed a 100 percent rate of duty on certain products of Austria, Belgium, Denmark, Finland, France, The Federal Republic of Germany, Greece, Ireland, Italy, Luxembourg, the Netherlands, Portugal, Spain, Sweden and the Ukraine. If you should bring more of any of these products back with you than fall within your exemption or flat rate of duty, you will pay as much in duty as you paid for the product or products.

A complete list of products that are currently subject to the higher than normal duty is available at
http://www.cbp.gov/xp/cgov/import/commercial_enforcement/

While most of the products listed are not the type of goods that travelers would purchase in sufficient quantities to exceed their exemption, diamonds from the Ukraine are subject to the 100 percent duty and might easily exceed the exemption amount.

For information on countries that may become subject to a higher than normal duty rate, the Department of Commerce has created the following Web site: http://www.ita.doc.gov/td/industry/otea/301alert/retaillist.html

Top

**Paying Duty**
*If you're bringing it back with you, you didn't have it when you left, and its total value is more than your exemption, it is subject to duty.*

The CBP officer will place the items that have the highest rate of duty under your exemption. Then, after subtracting your exemptions and the value of any duty-free items, a flat rate of duty will be charged on the next $1,000 worth of merchandise. Any dollar amount beyond this $1,000 will be dutiable at whatever duty rates apply. The flat rate of duty may only be used for items for your own use or for gifts. As with your exemption, you may use the flat rate provision only once every 30 days. Special flat rates of duty apply to items made and acquired in Canada or Mexico. The flat rate of duty applies to purchases whether the items accompany you or are shipped.

Here's an example of the different rates if you acquire goods valued at $2,500 from various different places:

| Country | Total declared value | Personal exemption (duty-free) | Flat duty rate | Various duty rates |
|---|---|---|---|---|
| U.S. insular possessions | $2,500 | $1,200 | $1,000 at 1.5 percent | $300 |
| Caribbean Basin countries | $2,500 | $600 | $1,000 at 2 percent | $900 |
| Other countries or locations | $2,500 | $800 | $1,000 at 2 percent | $1,100 |

The flat duty rate will be charged on items that are dutiable but that cannot be included in your personal exemption, even if you have not exceeded the exemption. The best example of this is liquor: Say you return from Europe with $200 worth of items, including two liters of liquor. One liter will be duty-free under your exemption; the other will be dutiable at 2 percent, plus any Internal Revenue Service tax.

Family members who live in the same household and return to the United States together can combine their items to take advantage of a combined flat duty rate, no matter which family member owns a given item. The combined value of merchandise subject to a flat duty rate for a family of four traveling together would be $4,000.

If you owe duty, you must pay it when you arrive in the United States. You can pay it in any of the following ways:

- U.S. currency (foreign currency is not acceptable).
- Personal check in the exact amount, drawn on a U.S. bank, made payable to U.S. Customs and Border Protection. You must present identification, such as a passport or driver's license. (CBP does not accept checks bearing second-party endorsements.)
- Government check, money order, or traveler's check if it does not exceed the duty owed by more than $50.
- In some locations, you may pay duty with credit cards, either MasterCard® or VISA®.

Top

**Sending Goods to the United States**
Items mailed to the United States are subject to duty when they arrive. They cannot be included in your exemption, and duty on them cannot be prepaid.

If you are mailing merchandise from the U.S. insular possessions or from Caribbean Basin countries, you should follow different procedures than if you were mailing packages from any other country. These special procedures are described, under "Unaccompanied Purchases."

In addition to duty and, at times, taxes, CBP collects a user fee on dutiable packages. Those three fees are the only fees CBP collects; any additional charges on shipments are for handling by freight forwarders, Customs brokers, and couriers or for other delivery services. Some carriers may add other clearance charges that have nothing to do with Customs duties.

Note: Customs brokers are not CBP employees. Brokers' fees are based on the amount of work they do, not on the value of the items you ship, so travelers sometimes find the fee high in relation to the value of the shipment. The most cost effective thing to do is to take your purchases with you if at all possible.

Top

**Unaccompanied Baggage**
Unaccompanied baggage is anything you do not bring back with you, as opposed to goods in your possession - that accompany you - when you return. These may be items that were with you when you left the United States or items that you acquired (received by any means) while outside the United States. In general, unaccompanied baggage falls into the following three categories.

**U.S. Mail Shipments**
Shipping through the U.S. mail, including parcel post, is a cost-efficient way to send things to the United States. The Postal Service sends all foreign mail shipments to CBP for examination. CBP officers then return packages that don't require duty to the Postal Service, which sends them to a local post office for delivery. The local post office delivers them without charging any additional postage, handling costs, or other fees.

If the package does require payment of duty, CBP attaches a form called a *mail entry* (form CBPF-3419A), which shows how much duty is owed, and charges a $5 processing fee as well. When the post office delivers the package, it will also charge a handling fee.

Top

5

Commercial goods - goods intended for resale - may have special entry requirements. Such goods may require a *formal entry* in order to be admitted into the United States. Formal entries are more complicated and require more paperwork than informal entries. (Informal entries are, generally speaking, personal packages or commercial items less than $2,000.) CBP employees may not prepare formal entries for you; only you or a licensed customs broker may prepare one. For more information on this subject, please see the pamphlet *U.S. Import Requirements*.

If you believe you have been charged an incorrect amount of duty on a package mailed from abroad, you may file a protest with CBP. You can do this in one of two ways. You can accept the package, pay the duty, and write a letter explaining why you think the amount was incorrect. You should include with your letter the yellow copy of the mail entry (CBPF-3419A). Send the letter and the form to the CBP office that issued the mail entry, which you'll find on the lower left-hand corner of the form.

The other way to protest duty is to refuse delivery of the package and, within five days, send your protest letter to the post office where the package is being held. The post office will forward your letter to CBP and will hold your package until the protest is resolved.

For additional information on international mailing, please see the pamphlet *International Mail Imports*, or visit our Web site at www.cbp.gov.

**Express Shipments**
Packages may be sent to the United States by private-sector courier or delivery service from anywhere in the world. The express company usually takes care of clearing your merchandise through CBP and charges a fee for its service. Some travelers have found this fee to be higher than they expected.

**Freight Shipments**
Cargo, whether duty is owed on it or not, must clear CBP at the first port of arrival in the United States. If you choose, you may have your freight sent, while it is still in CBP custody, to another port for clearance. This is called *forwarding freight in bond*. You (or someone you appoint to act for you) are responsible for arranging to clear your merchandise through CBP or for having it forwarded to another port.

Frequently, a freight forwarder in a foreign country will take care of these arrangements, including hiring a customs broker in the United States to clear the merchandise through CBP. Whenever a third party handles the clearing and forwarding of your merchandise, that party charges a fee for its services. This fee is not a CBP charge. When a foreign seller entrusts a shipment to a broker or agent in the United States, that seller usually pays only enough freight to have the shipment delivered to the first port of arrival in the United States. This means that you, the buyer, will have to pay additional inland transportation, or *freight forwarding* charges, plus brokers' fees, insurance, and possibly other charges.

If it is not possible for you to secure release of your goods yourself, another person may act on your behalf to clear them through CBP. You may do this as long as your merchandise consists of a single, noncommercial shipment (not intended for resale) that does not require a formal entry - in other words, if the merchandise is worth less than $2,000. You must give the person a letter that authorizes him or her to act as your unpaid agent. Once you have done this, that person may fill out the CBP declaration and complete the entry process for you. Your letter authorizing the person to act in your behalf should be addressed to the "Officer in Charge of CBP" at the port of entry, and the person should bring it along when he or she comes to clear your package.

CBP will not notify you when your shipment arrives, as this is the responsibility of your carrier. If your goods are not cleared within 15 days of arrival you could incur very high storage fees.

Top

**Unaccompanied Purchases from Insular Possessions and Caribbean Basin Countries**
Unaccompanied purchases are goods you bought on a trip that are being mailed or shipped to you in the United States. In other words, you're not carrying them with you when you return. If your unaccompanied purchases are from an insular possession or a Caribbean Basin country and are being sent directly from those locations to the United States, you may enter them as follows:

- Up to $1,200 worth will be duty-free under your personal exemption if the merchandise is from an insular possession.
- Up to $600 worth will be duty-free if it is from a Caribbean Basin country.
- Of these amounts ($1,200 or $600), up to $800 worth will be duty-free if the merchandise was acquired in a place other than the insular possessions or the Caribbean Basin. However, merchandise that qualifies for the $800 exemption must be in your possession when you return (must *accompany* you) in order for you to claim the duty free exemption. The duty-free exemptions for unaccompanied baggage apply only to goods from the insular possessions and the Caribbean Basin countries listed earlier.
- An additional $1,000 worth of goods will be dutiable at a flat rate if they are from an insular possession, or from a Caribbean Basin country. (See chart under Paying Duty.)
- If you are sending back more than $2,200 from an insular possession or more than $1,600 from a Caribbean Basin country, the duty rates in the Harmonized Tariff Schedules of the United States will apply. The Harmonized Tariff Schedule describes different rates of duty for different commodities; linen tablecloths, for example, will not have the same duty rates as handicrafts or plastic toy trucks.

Here's how you can take advantage of the duty-free exemption for unaccompanied tourist purchases from an insular possession or a Caribbean country:

**Step 1.** At place and time of purchase, ask your merchant to hold your item until you send him or her a copy of CBP Form 255 (Declaration of Unaccompanied Articles), which must be affixed to the package when it is sent.

**Step 2.** (a) On your declaration form (CBPF-6059B), list everything you acquired on your trip, except the things you already sent home as gifts. (b) Check off on the declaration those items you are not bringing with you--that is, the unaccompanied items. (c) Fill out a *separate Declaration of Unaccompanied Articles form (CBPF-255) for each package or container that will be sent to you after you arrive in the United States.* You can often get this form where you make your purchase, but if not, ask a CBP officer for one when you clear the customs area.

**Step 3.** When you return to the United States, the CBP officer will: (a) collect duty and tax, if any is owed, on the goods you've brought with you; (b) check to see that your list of unaccompanied articles, which you indicated on the CBP declaration, agrees with your sales slips, invoices, and so on; and (c) validate the CBPF-255 as to whether your purchases are duty-free under your personal exemption ($1,200 or $600) or whether they are subject to a flat rate of duty. Two copies of this three part form will be returned to you.

**Step 4.** Send the yellow copy of the CBPF-255 to the foreign shopkeeper or vendor holding your purchase, and keep the other copy for your records. (When you make your purchase, it is very important to *tell the merchant not to send your package to the United States until he or she gets the copy of form CBPF-255.)*

**Step 5.** When the merchant gets CBPF-255, he or she will put it in an envelope and attach the envelope securely to the outside wrapping of the package or container. The merchant must also mark each package "Unaccompanied Purchase." *Please remember that each package or container must have its own CBPF-255 attached.* This is the most important step to follow in order to gain the benefits allowed under this procedure.

**Step 6.** If your package has been mailed, the Postal Service will deliver it after it has cleared CBP. If you owe duty, the Postal Service will collect the duty along with a postal handling fee. If your package is delivered by a commercial courier, the delivery service will notify you of its arrival so you can go to the CBP office holding the shipment and complete the entry procedure. If you owe duty or tax, you can pay it at that time. Alternatively, you may hire a customs broker to do this for you, but be aware that brokers are not CBP employees, and they charge fees for their services.

**Storage Charges:** If freight or express packages from your trip are delivered before you return and you have not made arrangements to pick them up, CBP will authorize their placement in storage after 15 days. This storage will be at your risk and expense. If they are not claimed within six months, the items will be sold at auction.

Packages sent by mail and not claimed within 30 days will be returned to the sender unless the amount of duty is being protested.

Top

**Duty-Free Shops**
Many travelers are confused by the term "duty-free" shops. Travelers often think that what they buy in duty-free shops won't be dutiable when they return home and clear CBP. But this is not true: Articles sold in a duty-free shop are free of duty and taxes only for the country in which that shop is located. So if your purchases exceed your personal exemption, items you bought in a duty-free shop,

6

whether in the United States or abroad, will almost certainly be subject to duty.

Articles sold in foreign duty-free shops are subject to U.S. duty and other restrictions (for example, only one liter of liquor is duty-free), but you may include these items in your personal exemption. Articles sold in duty free shops are meant to be taken out of the country; they are not meant to be used, worn, eaten, drunk, etc., in the country where you purchased them. Articles purchased in American duty-free shops are also subject to U.S. duty if you bring them into the United States. For example, if you buy liquor in a duty-free shop in New York before entering Canada and then bring it back into the United States, it may be subject to duty and Internal Revenue Service tax.

Top

## Prohibited and Restricted Items

CBP has been entrusted with enforcing some 400 laws for 40 other government agencies, such as the Fish and Wildlife Service and the Department of Agriculture. These other agencies have great interest in what people bring into the country, but they are not always at ports of entry, guarding our borders. CBP officers are *always* at ports of entry - guarding the nation's borders is what we do.

The products we want to keep out of the United States are those that would injure community health, public safety, American workers, children, or domestic plant and animal life, or those that would defeat our national political interests. Sometimes the products that cause injury, or have the potential to do so, may seem fairly innocent. But, as you will see from the material that follows, appearances can be deceiving.

Before you leave for your trip abroad, you might want to talk to CBP about the items you plan to bring back to be sure they're not prohibited or restricted. *Prohibited* means the item is forbidden by law to enter the United States. Examples are dangerous toys, cars that don't protect their occupants in a crash, or illegal substances like absinthe and Rohypnol. *Restricted* means that special licenses or permits are required from a federal agency before the item is allowed to enter the United States. Examples are firearms and certain fruits, vegetables, pets, and textiles.

### Absinthe (Alcohol)
The importation of Absinthe and any other liquors or liqueurs that contain Artemisia absinthium is prohibited.

### Automobiles
Automobiles imported into the United States must meet the fuel-emission requirements of the Environmental Protection Agency (EPA) and the safety, bumper, and theft-prevention standards of the Department of Transportation (DOT). (Please see the CBP pamphlet, *Importing a Car*). Trying to import a car that doesn't meet all the requirements can be a vexing experience. Here's why:

Almost all cars, vans, sport utility vehicles, and so on that are bought in foreign countries must be modified to meet American standards. Passenger vehicles that are imported on the condition that they be modified must be exported or destroyed if they are not modified acceptably. Or it could require a bond upon entry until the conditions for admission have been met.

And even if the car does meet all federal standards, it might be subject to additional EPA requirements, depending on what countries it was driven in. You are strongly encouraged to contact EPA and DOT before importing a car.

Information on importing vehicles can be obtained from the Environmental Protection Agency (www.epa.gov), Attn.: 6405J, Washington, DC 20460, telephone (202) 564-9240, for EPA forms (202) 564 9660, and the Department of Transportation, Office of Vehicle Safety Compliance (NEF 32) NHTSA, Washington, DC 20590, telephone 1-800-424-9393, or visit the DOT Web site at www.nhtsa.dot.gov.

Copies of the pamphlet *Importing or Exporting a Car* can be obtained by writing to U.S. Customs and Border Protection, P.O. Box 7407, Washington, DC 20044; or checking the CBP Web site at www.cbp.gov. EPA's *Automotive Imports Fact Manual* can be obtained by writing to the Environmental Protection Agency, Washington, DC 20460; or visit www.epa.gov. Cars being brought into the United States temporarily (for less than one year) are exempt from these restrictions. It is illegal to bring a vehicle into the United States and sell it if it was not formally entered on a CBP form 7501.

### Ceramic Tableware
Although ceramic tableware is not prohibited or restricted, you should know that such tableware made in foreign countries may contain dangerous levels of lead in the glaze; this lead can seep into foods and beverages. The Food and Drug Administration recommends that if you buy ceramic tableware abroad - especially in Mexico, China, Hong Kong, or India - you have it tested for lead release when you return, or use it for decorative purposes only.

### Cultural Artifacts and Cultural Property (Art/Artifacts)
Most countries have laws that protect their cultural property (art/artifacts/antiquities; archaeological and ethnological material are also terms that are used). Such laws include export controls and/or national ownership of cultural property. Even if purchased from a business in the country of origin or in another country, legal ownership of such artifacts may be in question if brought into the U.S. Make certain you have documents such as export permits and receipts, although these do not necessarily confer ownership. While foreign laws may not be enforceable in the U.S., they can cause certain U.S. law to be invoked. For example, as a general rule, under the U.S. National Stolen Property Act, one cannot have legal title to art/artifacts/antiquities that were stolen, no matter how many times such items may have changed hands. Articles of stolen cultural property (from museums or from religious or secular public monuments) originating in any of the countries party to the 1970 UNESCO Convention specifically may not be imported into the U.S.



In addition, U.S. law may restrict importation into the U.S. of specific categories of art/artifacts/antiquities: 1) U.S. law restricts the import of any Pre Columbian monumental and architectural sculpture and murals from Central and South American countries; 2) U.S. law specifically restricts the importation of Native American artifacts from Canada; Maya pre Columbian archaeological objects from Guatemala; Pre Columbian archaeological objects from El Salvador and Peru; archaeological objects (such as terracotta statues) from Mali; Colonial period objects such as paintings and ritual objects from Peru; Byzantine period ritual and ecclesiastic objects (such as icons) from Cyprus; Khmer stone archaeological sculpture from Cambodia.

Importation of items such as those above is permitted only when the items are accompanied by an export permit issued by the country of origin (where such items were first found). Purveyors of such items have been known to offer phony export certificates. As additional U.S. import restrictions may be imposed in response to requests from other countries, it is wise for the prospective purchaser to visit the State Department's cultural property Web site: http://exchanges.state.gov/education/culprop/. This Web site also has images representative of the categories of cultural property for which there are specific U.S. import restrictions.

### Dog and Cat Fur
It is illegal in the United States to import, export, distribute, transport, manufacture, or sell products containing dog or cat fur in the United States. As of November 9, 2000, the Dog and Cat Protection Act of 2000 calls for the seizure and forfeiture of each item containing dog or cat fur.

The Act provides that any person who violates any provision may be assessed a civil penalty of not more than $10,000 for each separate knowing and intentional violation, $5,000 for each separate gross negligent violation, or $3,000 for each separate negligent violation.

### Drug Paraphernalia
It is illegal to bring drug paraphernalia into the United States unless they have been prescribed for authentic medical conditions - diabetes, for example. CBP will seize any illegal paraphernalia. The importation, exportation, manufacture, sale, or transportation of drug paraphernalia is prohibited by law. If you're convicted of any of these offenses, you will be subject to fines and imprisonment.

### Firearms
The Bureau of Alcohol, Tobacco and Firearms (ATF) regulates and restricts firearms and ammunition; it also approves all import transactions involving weapons and ammunition. If you want to import (or export) either of them, you must do so through a licensed importer, dealer, or manufacturer. Also, if the National Firearms Act prohibits certain weapons, ammunition, or similar devices from coming into the country, you won't be able to import them unless the ATF specifically authorizes you, in writing, to do so.

You don't need an ATF permit if you can demonstrate that you are returning with the *same* firearms or ammunition that you took out of the United States. The best way is to register your firearms and related equipment by taking them to any CBP office before you leave the United States. The CBP officer will register them on the same form CBPF-4457 used to register cameras or computers (see "Register Items Before You Leave the United States").

7

For further information about importing weapons, contact the Bureau of Alcohol, Tobacco and Firearms, U.S. Department of the Treasury, Washington, DC 20226; or call 202.927.8320; or visit www.atf.treas.gov/core/firearms/information/laws/laws.htm

Many countries will not allow you to enter with a firearm even if you are only traveling through the country on the way to your final destination. If you plan to take your firearms or ammunition to another country, you should contact officials at that country's embassy to learn about its regulations.

### Fish and Wildlife

Fish, wildlife, and products made from them are subject to import and export restrictions, prohibitions, permits or certificates, and quarantine requirements. We recommend that you contact the U.S. Fish and Wildlife Service before you depart if you plan to import or export any of the following:

- Wild birds, land or marine mammals, reptiles, fish, shellfish, mollusks, or invertebrates.
- Any part or product of the above, such as skins, tusks, bone, feathers, or eggs.
- Products or articles manufactured from wildlife or fish.

Endangered species of wildlife, and products made from them, generally may not be imported or exported. You'll need a permit from the Fish and Wildlife Service to import virtually all types of ivory, unless it's from a warthog. The Fish and Wildlife Service has so many restrictions and prohibitions on various kinds of ivory - Asian elephant, African elephant, whale, rhinoceros, seal, pre-Endangered Species Act, post-CITES (Convention on International Trade in Endangered Species), and many others - that they urge you to contact them before you even *think* of acquiring ivory in a foreign country. They can be reached at 800.358.2104.

You may import an object made of ivory if it's an antique; that is, if it's at least 100 years old. You will need documentation that authenticates the age of the ivory. You may import other antiques containing wildlife parts with the same condition: they must be accompanied by documentation proving they are at least 100 years old. (Certain other requirements for antiques may apply.)

If you plan to buy such things as tortoiseshell jewelry, or articles made from whalebone, ivory, skins, or fur, contact the U.S. Fish and Wildlife Service, Division of Law Enforcement, P.O. Box 3247, Arlington, VA 22203-3247, or call 800.358.2104 or visit www.fws.gov Hunters can get information on the limitations for importing and exporting migratory game birds from this office as well. Ask for the pamphlet *Facts About Federal Wildlife Laws*.

The Fish and Wildlife Service has designated specific ports of entry to handle fish and wildlife entries. If you plan to import anything discussed in this section, please also contact CBP. We'll tell you about designated ports and send you the brochure *Pets and Wildlife*, which describes the regulations we enforce for all agencies that oversee the importation of animals.

Some states have fish and wildlife laws and regulations that are stricter than federal laws and regulations. If you're returning to such a state, be aware that the stricter state laws and regulations have priority. Similarly, the federal government does not allow you to import into the United States wild animals that were taken, killed, sold, possessed, or exported from another country if any of these acts violated foreign laws.

### Food Products (Prepared)

You may bring bakery items and certain cheeses into the United States. The APHIS Web site (www.aphis.usda.gov) features a Travelers Tips section and Game and Hunting Trophies section that offers extensive information about bringing food and other products into the country. Many prepared foods are admissible, although almost anything containing meat products, such as bouillon, soup mixes, etc., are not. As a general rule, condiments, vinegars, oils, packaged spices, honey, coffee and tea are admissible. Because rice can often harbor insects, it is best to avoid bringing it into the U.S.

Some imported foods are also subject to requirements of the Food and Drug Administration.

### Fruits and Vegetables

Bringing home fruits and vegetables can be quite troublesome. That apple you bought in the foreign airport just before boarding and then didn't eat? Whether CBP will allow it into the United States depends on where you got it and where you're going after you arrive in the United States. The same is true for those magnificent Mediterranean tomatoes. Fresh fruits and vegetables can carry plant pests or diseases into the United States.

You may remember the Med fly hysteria of the late 1980s: Stories about crop damage caused by the Mediterranean fruit fly were in the papers for months. The state of California and the federal government together spent some $100 million to get rid of this pest. And the source of the outbreak? One traveler who brought home one contaminated piece of fruit. It's best not to bring fresh fruits or vegetables into the United States. But if you plan to, contact CBP or check the Travelers Information section on the APHIS Web site for a general approved list on items that need a permit at www.aphis.usda.gov/ppq/permits.

### Game and Hunting Trophies

If you plan to import game or a hunting trophy, please contact the Fish and Wildlife Service before you leave at 800.358.2104. Currently, 14 ports of entry are designated to handle game and trophies; other ports must get approval from the Fish and Wildlife Service to clear your entry.

Depending on the species you bring back, you might need a permit from the country where the animal was harvested. Regardless of the species, you'll have to fill out a Fish and Wildlife form 3-177, Declaration for Importation or Exportation.

Trophies may also be subject to inspection by CBP for sanitary purposes. General guidelines for importing trophies can be found on APHIS Web site under Travelers Information. Contact USDA, APHIS, VS, NCIE Products Program, 4700 River Road, Unit 40, Riverdale, MD 20737-1231; call 301.734.3277; or check the APHIS Web site at http://www.aphis.usda.gov/vs/ncie/biofacts.html.

Also, federal regulations do not allow the importation of any species into a state with fish or wildlife laws that are more restrictive than federal laws. And if foreign laws were violated in the taking, sale, possession, or export to the United States of wild animals, those animals will not be allowed entry into the United States.

**Warning:** There are many regulations, enforced by various agencies, governing the importation of animals and animal parts. Failure to comply with them could result in time-consuming delays in clearing your trophy through CBP. You should always call for guidance before you depart.

### Gold

Gold coins, medals, and bullion, formerly prohibited, may be brought into the United States. However, under regulations administered by the Office of Foreign Assets Control, such items originating in or brought from Cuba, Iran, Iraq, Libya, Serbia, and Sudan are prohibited entry. Copies of gold coins are prohibited if not properly marked by country of issuance.

### Meats, Livestock, and Poultry

The regulations governing meat and meat products are very strict; you may not bring back fresh, dried, or canned meats or meat products from most foreign countries. Also, you may not bring in food products that have been prepared with meat.

The regulations on importing meat and meat products change frequently because they are based on disease outbreaks in different areas of the world. APHIS, which regulates meats and meat products as well as fruits and vegetables, invites you to call for more information on importing meats. Contact USDA-APHIS Veterinary Services National Center for Import/Export (NCIE), 4700 River Road, Unit 40, Riverdale, MD 20737-1231; call 301.734.7830; or visit http://www.aphis.usda.gov/vs/ncie/importing.html

### Medication

*Rule of thumb: When you go abroad, take the medicines you'll need, no more, no less.*
Narcotics and certain other drugs with a high potential for abuse - Rohypnol, GHB, and Fen-Phen, to name a few - may not be brought into the United States, and there are severe penalties for trying to bring them in. If you need medicines that contain potentially addictive drugs or narcotics (e.g., some cough medicines, tranquilizers, sleeping pills, antidepressants, or stimulants), do the following:

- Declare all drugs, medicinals, and similar products to the appropriate CBP official.
- Carry such substances in their original containers.
- Carry only the quantity of such substances that a person with that condition (e.g., chronic pain) would normally carry for his/her personal use.
- Carry a prescription or written statement from your physician that the substances are being used under a doctor's supervision and that they are necessary for your physical well being while traveling.

U.S. residents entering the United States at international land borders, who are carrying a validly obtained controlled substance (except

narcotics such as marijuana, cocaine, heroin, or LSD), are subject to certain additional requirements. If a U.S. resident wants to bring in a controlled substance other than narcotics such as marijuana, cocaine, heroin, or LSD, but does not have a prescription for the substance issued by a U.S.-licensed practitioner (e.g., physician, dentist, etc.) registered with and authorized by the Drug Enforcement Administration (DEA) to prescribe the medication, the individual may not import more than 50 dosage units of the medication. If the U.S. resident has a prescription for the controlled substance issued by a DEA registrant, more than 50 dosage units may be imported by that person, provided all other legal requirements are met.

Please note that only medications that can be legally prescribed in the United States may be imported for personal use. Be aware that possession of certain substances may violate state laws.

**Warning:** The Food and Drug Administration (FDA) prohibits the importation, by mail or in person, of fraudulent prescription and nonprescription drugs and medical devices. These include unorthodox "cures" for such medical conditions as cancer, AIDS, arthritis, or multiple sclerosis. Although such drugs or devices may be legal elsewhere, if the FDA has not approved them for use in the United States, they may not legally enter the country and will be confiscated, even if they were obtained under a foreign physician's prescription.

For specifics about importing controlled substances, call 202.307.2414. For additional information about traveling with medication, contact your nearest FDA office or write Food and Drug Administration, Division of Import Operations and Policy, Room 12-8 (HFC-170), 5600 Fishers Lane, Rockville, MD 20857; or visit www.fda.gov/ora/compliance_ref/rpm_new2/ch9pers.html.

**Merchandise from Embargoed Countries**
Generally, you may not bring in any goods from the following: Cuba, Iran*, Iraq, Serbia and Montenegro*, North Korea*, Burma (Myanmar), Liberia and Sierra Leone (diamonds only) and Sudan. The Office of Foreign Assets Control (OFAC) of the U.S. Treasury Department enforces this ban.

You may, however, bring in *informational materials* - pamphlets, books, tapes, films or recordings - from these countries, except for Iraq.

If you want to import merchandise from any of these countries, you will first need a specific license from the Office of Foreign Assets Control. Such licenses are rarely granted.

There are restrictions on travel to these countries. The restrictions are strictly enforced, so if you're thinking about going to any of the countries on this list, write to the Office of Foreign Assets Control, Department of the Treasury, Washington, DC 20220, before you make your plans or visit www.treas.gov/ofac.

*The embargo on Iranian goods has been revised to allow the importation of food stuffs intended for human consumption, carpets and other textile floor coverings. Please check with your local port for further details.

*There is a partial embargo on Serbia and Montenegro. For more information visit OFAC Web site at http://www.treas.gov/offices/eotffc/ofac/.

*The importation of merchandise from North Korea requires a letter of approval issued by the OFAC.

**Pets**
If you plan to take your pet abroad or import one on your return, please get a copy of CBP brochure *Pets and Wildlife*. You should also check with state, county, and local authorities to learn if their restrictions and prohibitions on pets are more strict than federal requirements.

Importing animals is closely regulated for public health reasons and also for the well being of the animals. There are restrictions and prohibitions on bringing many species into the United States.

Cats must be free of evidence of diseases communicable to humans when they are examined at the port of entry. If the cat does not seem to be in good health, the owner may have to pay for an additional examination by a licensed veterinarian.

Dogs, too, must be free of evidence of diseases that could be communicable to humans. Puppies must be confined at a place of the owner's choosing until they are three months old; then they must be vaccinated against rabies. The puppy will then have to stay in confinement for another 30 days.



Dogs older than three months must get a rabies vaccination at least 30 days before they come to the United States and must be accompanied by a valid rabies vaccination certificate if coming from a country that is not rabies-free. This certificate should identify the dog, show the date of vaccination and the date it expires (there are one-year and three-year vaccinations), and be signed by a licensed veterinarian. If the certificate does not have an expiration date, CBP will accept it as long as the dog was vaccinated 12 months or less before coming to the United States. Dogs coming from rabies free countries do not have to be vaccinated.

You may import birds as pets as long as you comply with APHIS and U.S. Fish and Wildlife requirements. These requirements may include quarantining the birds at one of APHIS' three Animal Import Centers at your expense. You must make advance reservations at the quarantine facility. If you intend to import a bird, call APHIS' National Center for Import and Export at 301.734.8364 for more information. In any case, birds may only be imported through ports of entry where a USDA port veterinarian is on duty, and you must make arrangements in advance to have the bird examined by a USDA port veterinarian at the first U.S. port of entry. There is a user fee for this service of a minimum of $23.00 based on an hourly rate of $76/hour. For more information, you may contact the USDA, APHIS, Veterinary Services, National Center for Import and Export (NCIE), 4700 River Road, Riverdale, MD 20737; phone number 301.734.8364; or on the Internet at www.aphis.usda.gov/travel/pets.html.

Other common pets such as rabbits, ferrets, hamsters, gerbils, and guinea pigs may be imported if in apparent good health. Reptiles and invertebrates are restricted, please contact Fish and Wildlife Service for additional guidance.

**Plants**
The plants, cuttings, seeds, unprocessed plant products, and certain endangered species that are allowed into the United States require import permits; some are prohibited entirely. Threatened or endangered species that are permitted must have export permits from the country of origin.

Every single plant or plant product including handicraft items made with straw, must be declared to the CBP officer and must be presented for USDA inspection, no matter how free of pests it appears to be. Address requests for information to USDA-APHIS-PPQ, 4700 River Road, Riverdale, MD 20737; phone 301.734.8645; or visit www.aphis.usda.gov/travel/.



**Textiles and Clothing**
In general, there is no limit to how much fabric and clothing you can bring back as long as it is for your personal use, that is, for you or as gifts. (You may have to pay duty on it if you've exceeded your personal exemption, but the amount you may bring in is not limited.)

Unaccompanied personal shipments (packages that are mailed or shipped), however, *may* be subject to limitations on amount. The quantity limitations on clothing and textiles are called "quotas." In order to enter the United States, clothing and textiles may need to be accompanied by a document - you could think of it as a passport for fabrics - called a "visa." Sometimes, instead of a visa, an export license or certificate is required from the country that produced the clothing. A formal entry must be filed for all made-to-order suits from Hong Kong, no matter what their value, unless they accompany you and an export license issued by Hong Kong is presented with this entry. If you plan to get clothing or fabric on your trip and have it sent to you by mail or courier, check with CBP about quota and visa requirements before you travel.

**Trademarked and Copyrighted Articles**
CBP enforces laws relating to the protection of trademarks and copyrights. Articles that infringe a federally registered trademark or copyright, i.e., use the protected right without the authorization of the trademark or copyright owner, are subject to detention and/or seizure.

Articles bearing marks that are counterfeit of a federally registered trademark are subject to seizure and forfeiture. Additionally, the importation of articles bearing counterfeit marks may subject an individual to a civil fine if the registered trademark has also been recorded with CBP. Articles bearing marks that are confusingly similar to a registered trademark that has also been recorded with CBP, and restricted gray market articles (goods bearing genuine marks not intended for importation into the United States and for which CBP has granted gray market protection), are subject to detention and seizure.

However, passengers arriving into the United States may be permitted an exemption and allowed to import one article of any type, which must accompany the person, bearing a counterfeit, confusingly similar or restricted gray market trademark, provided that the article is for personal use and is not for sale. This exemption may be granted not more than once every thirty days. The arriving passenger may retain one article of each type accompanying the person. For example, an arriving person who has three purses, whether each bears a different infringing trademark, or whether all three bear the same infringing trademark, is permitted only one purse. If the article imported under the personal exemption provision is sold within one year after the date of importation, the article or its value is subject to forfeiture.

In regard to copyright infringement, articles that are determined by CBP to be clearly piratical of a federally registered copyright, i.e., unauthorized articles that are substantially similar to a material protected part of a copyright, are subject to seizure. Articles that are determined to be possibly piratical may be subject to detention and possible seizure. A personal use exemption for articles for the private use of the importer and which are not for sale or distribution, similar to that described above also applies to copyrighted articles.

You may bring back genuine trademarked and copyrighted articles (subject to duties). Products subject to copyright protection most commonly imported include software on CD-ROMs, music tape cassettes, toys, stuffed animals, clothing with cartoon characters, videotapes, DVDs, music CDs, and books. Products subject to trademark protection most commonly imported include handbags and accessories, and clothing.

Top

## Money and Other Monetary Instruments
You may bring into or take out of the country, including by mail, as much money as you wish. But if it's more than $10,000, you'll need to report it to CBP. Ask the CBP officer for the Currency Reporting Form (FinCen 105). The penalties for not complying can be quite severe.

"Money" means monetary instruments and includes U.S. or foreign coin currently in circulation, currency, traveler's checks in any form, money orders, and negotiable instruments or investment securities in bearer form.

Top

## Traveling Back and Forth Across the Border
If you cross the U.S. border into a foreign country and reenter the United States more than once in a short time, you might not want to use your personal exemption ($800 in this example) until you've returned to the United States for the last time. Here's why:

When you leave the United States, come back, leave again, and then come back again, all on the same trip, you can lose your exemption, since you've technically violated the "once every 30 days" rule. So if you know that your trip will involve these so-called "swing-backs," you can choose to save your personal exemption until the end of your trip.

For example, if you go to Canada, buy a liter of liquor, reenter the United States, then go back to Canada and buy $900 worth of merchandise and more liquor. You would probably want to save your $800 exemption for those final purchases and not use it for that first liter of liquor. In this case, on your first swing-back, simply tell the CBP officer that you want to pay duty on the liquor, even though you could bring it in duty-free. (If you did, you would lose the $800 exemption, since it's only available to you once every 30 days.) In other words, all you have to do is tell the inspector that you want to pay duty the first (or second or third) time you come back to the United States if you know that you'll be leaving again soon, buying goods or getting them as gifts, and then reentering before the 30 days are up. In such a case, you're better off saving your exemption until the last time you reenter the United States.

Top

## Photographic Film
CBP will not examine film you bought abroad and are bringing back unless the CBP officer has reason to believe it contains prohibited material, such as child pornography.

You won't be charged duty on film bought in the United States and exposed abroad, whether it's developed or not. But film you bought and developed abroad counts as a dutiable item.

Top

## Customer Service Programs
CBP expanded its method of improving customer service to international travelers at major U.S. travel hubs. One method is having passenger service representatives available to travelers on a full-time basis at selected international airports and some seaports and land border ports of entry. The representatives' major purpose is to help travelers clear CBP.

Photos of the passenger service reps are posted wherever the program is operating, so you can find them if you need assistance. If you have a concern or need help understanding CBP regulations and procedures, ask to speak with the passenger service rep on duty.

The second initiative involves kiosks, the sort of automated booths you see in malls, banks, department stores, and airports. CBP kiosks are located at international airports.

Think of them as automated passenger service reps: They're self-service computers with a touch-screen display. All you have to do is type in your country of destination and the computer will print the information for you. The screen displays a telephone number to call for more information. The kiosks also have pockets with pamphlets on a variety of topics of interest to travelers: regulations on transporting currency, agriculture and food items, medicines, and pets, to name a few.

Kiosks are located in the outbound passenger lounges at the following international airports: Atlanta; Boston; Charlotte, North Carolina; Chicago; Dallas/Ft. Worth; Detroit; Houston; JFK, New York; Los Angeles; Miami; Newark, New Jersey; Philadelphia; San Francisco; San Juan; and Washington/Dulles. More kiosks are planned.

If you have any questions about CBP procedures, requirements, or policies regarding travelers, or if you have any complaints about treatment you have received from CBP officers or about your CBP processing, please contact:

Executive Director, Border Security and Facilitation
U.S. Customs and Border Protection
1300 Pennsylvania Avenue, NW
Washington, DC 20229

Allegations of criminal or serious misconduct may be reported to the Office of Internal Affairs at 1-877-IA CALLS. You may also write them at P.O. Box 14475, Washington, D.C. 20044.

Top

## Other Travel-related Information
Frequently, we are asked questions that are not customs matters. If you want to know about:

Passports are issued by the U.S. Department of State's Passport Agency. Please contact the passport agency nearest you for more information. Postal clerks also accept passport applications.

Baggage allowance - Ask the airline or steamship line on which you are traveling for more information.

Currency of other Nations - Your local bank can be of assistance.

Foreign countries - For information about the country you will visit or about what articles may be taken into that country, contact its embassy, consular office, or tourist information office.

U.S. Customs and Border Protection
Washington, D.C. 20229

Top



home   about   contacts   ports   questions   forms   publications   legal   contracting   sitemap

**newsroom     import     export     travel     careers     enforcement**

Start new search    Search these results

| **Search:** | **Tip:** To search just one web site, use +site: in your query and include the entire site name. |
| --- | --- |
| ☑CBP Today  ☑CBP gov  ☑Nafta | **Example:** pitchers +site:www.knuckleball.com |
| +russia, +url:/cgov/travel/leavingarrivinginUS/vacat GO | |
| Help  Advanced | |

**Results for:** +russia, +url:/cgov/travel/leavingarrivinginUS/vacation/

**No results were found for your search.**

*Your query is too restrictive.*
*You might want to try: russia, /cgov/travel/leavingarrivinginus/vacation/*

How to                NEWSROOM █▪ IMPORT █▪ EXPORT █▪ TRAVEL █▪ CAREERS █▪ ENFORCEMENT          Department of
Use the Website       home █▪ about █▪ contacts █▪ ports █▪ questions █▪ forms          Homeland Security
                      publications █▪ legal █▪ contracting █▪ sitemap

                      EEO | FOIA | Privacy Statement



U.S. Customs & Border Protection  ¦  1300 Pennsylvania Avenue, NW Washington, D.C. 20229   ¦   (202) 354-1000



# U.S. Customs & Border Protection
U.S. Department of Homeland Security    CBP.gov

home  about  contacts  ports  questions  forms  publications  legal  contracting  sitemap

**newsroom    import    export    travel    careers    enforcement**

Start new search   Search these results

**Search:**

☑CBP Today  ☑CBP gov  ☑Nafta

| +caviar, +url:/cgov/travel/leavingarrivinginUS/vacat | GO |

Help  Advanced

*Did you know...* You can search for mixed alphanumeric terms.

*Example:* 100base-T Ethernet

**Results for:** +caviar, +url:/cgov/travel/leavingarrivinginUS/vacation/

**No results were found for your search.**

*Your query is too restrictive.*
*You might want to try: caviar, /cgov/travel/leavingarrivinginus/vacation/*

| How to Use the Website | NEWSROOM ■■ IMPORT ■■ EXPORT ■■ TRAVEL ■■ CAREERS ■■ ENFORCEMENT | Department of Homeland Security |

home ■■ about ■■ contacts ■■ ports ■■ questions ■■ forms
publications ■■ legal ■■ contracting ■■ sitemap

EEO | FOIA | Privacy Statement



U.S. Customs & Border Protection  |  1300 Pennsylvania Avenue, NW Washington, D.C. 20229  |  (202) 354-1000



**U.S. Customs & Border Protection**
U.S. Department of Homeland Security                    CBP.gov

home   about   contacts   ports   questions   forms   publications   legal   contracting   sitemap

**newsroom     import     export     travel     careers     enforcement**

Skip to content

Start new search    Search these results

**Search:**

☑CBP Today  ☑CBP gov  ☑Nafta

| CITES sturgeon caviar |  | GO |

Help   Advanced

*Tip:* You can type in your query using plain language or just use keywords.

*Example:* who makes the best wine?

**Spelling suggestion:** *cite surgeon* caviar

**Results for:** CITES sturgeon caviar          **Document count:** CITES (11) sturgeon (4) caviar (24)

about 33 results found, sorted by relevance          score using date   hide summaries   group by location          1-10

---

**How to create an Informed Compliance Publication**
... of Regulations and Rulings 3 **Caviar** February 2004 (This page intentionally left blank) 4 **Caviar** February 2004 WHAT **CAVIAR** IS ...
*http://www.cbp.gov/linkhandler/cgov/toolbox/legal/ informed_compliance_pubs/general/icp011.ctt/icp011.pdf - 281.0KB - CBP gov*

74%
20 Feb 04
Find Similar
Highlight

---

**U.S. Customs Today - November 2002 - A seriously fishy story**
... Ah, the good life. Diamonds, champagne, high-dollar cigars, **caviar** ... and not just any fish ... it is a serious violation of an international law protecting **sturgeon**--hence the limits on export quantities. He transshipped his illegal ...
*http://www.cbp.gov/xp/CustomsToday/2002/November/fishy.xml - 22.6KB - CBP Today*

71%
13 Oct 04
Find Similar
Highlight

---

**Other Government Agency Query**
Customs and Trade Automated Interface Requirements July 2004 Other Government Agency Query OGQ-
*http://www.cbp.gov/linkhandler/cgov/import/operations_support/ automated_systems/abi/catair/ogq-02-4.ctt/ogq072004.doc - 190.5KB - CBP gov*

33%
20 Aug 04
Find Similar
Highlight

---

**U. S. Customs - Informed Compliance Publications**
... Caviar - 02/04 ...
*http://www.cbp.gov/xp/cgov/toolbox/legal/informed_compliance_pubs/ general/ - 96.1KB - CBP gov*

31%
16 Oct 04
Find Similar
Highlight

---

**A NOTE TO OUR READERS**
Importing into the United States A NOTE TO OUR READERS The 2001 edition of Importing Into the United States contains material brought about pursuant to the Customs Modernization Act (Title VI of the North American Free ...
*http://www.cbp.gov/nafta/cgov/doc/iius.doc - 621.0KB - Nafta*

31%
11 Apr 03
Find Similar
Highlight

---

**Importing into the United States: A Guide for Commercial Importers**
TRADITION ★ SERVICE ★ HONOR ★ TRADITION ★ SERVICE ★ HONOR ★ TRADITION ★ SERVICE ★ HONOR TRADITION ★ SERVICE ★ HONOR ★ TRADITION ★ SERVICE ★ HONOR ★ TRADITION ★ SERVICE ★ HONOR TRADITION ★ SERVICE ★ HONOR ★ TRADITION ★ ...
*http://www.cbp.gov/nafta/cgov/pdf/iius.pdf - 3839.6KB - Nafta*

31%
01 May 02
Find Similar
Highlight

**Pets and Wildlife: Licensing and Health Requirements**
TRADITION ★ SERVICE ★ HONOR ★ TRADITION ★ SERVICE ★ HONOR ★ TRADITION ★ SERVICE ★
HONOR ★ TRADITION ★ SERVICE ★ HONOR ★ TRADITION ★ SERVICE ★ HONOR ★ TRADITION ★
SERVICE ★ HONOR ★ TRADITION ★ SERVICE ★ HONOR ★ TRADITION ...
*http://www.cbp.gov/linkhandler/cgov/toolbox/publications/travel/pets.ctt/pets.pdf - 104.5KB - CBP gov*

31%   ⅢⅢⅢⅢⅢⅢⅢⅢ
29 Apr 02
Find Similar
Highlight

---

**A NOTE TO OUR READERS**
Importing Into the United States A Guide for Commercial Importers A NOTE TO OUR READERS The 2002
edition of Importing Into the United States contains material brought about pursuant to the Customs
Modernization Act ( ...
*http://www.cbp.gov/linkhandler/cgov/toolbox/publications/trade/iius.ctt/iius.doc - 628.5KB - CBP gov*

30%   ⅢⅢⅢⅢⅢⅢⅢⅢ
27 Jun 04
Find Similar
Highlight

---

**Microsoft Word - Tuna-htsus.doc**
... 10, 1604. 14. 22, and 1604.14. 30 The approved language of the new breakouts is as follows: 1604.14
Prepared or preserved fish; **caviar** and **caviar** substitutes prepared from fish eggs ( con ) : Fish, whole or in
pieces, but not minced ( con ) : Tunas, skipjack and bonito ( Sarda app. ...
*http://www.cbp.gov/linkhandler/cgov/import/duty_rates/tunachange.ctt/ tunachange.pdf - 83.5KB - CBP gov*

29%   ⅢⅢⅢⅢⅢⅢⅢⅢ
14 Aug 02
Find Similar
Highlight

---

**CBP.gov - recent federal register notices**
... Fed jury convicts Russian of smuggling **caviar** ...
*http://www.cbp.gov/xp/cgov/newsroom/highlights/inthenews/2002/ november.xml - 27.8KB - CBP gov*

24%   ⅢⅢⅢⅢⅢⅢⅢⅢ
13 Nov 04
Find Similar
Highlight

---

score using date    hide summaries    group by location        1-10   

How to
Use the Website

NEWSROOM◼ IMPORT◼ EXPORT◼ TRAVEL◼ CAREERS◼ ENFORCEMENT
home ◼ about ◼ contacts ◼ ports ◼ questions ◼ forms
publications ◼ legal ◼ contracting ◼ sitemap

EEO | FOIA | Privacy Statement

Department of
Homeland Security

FIRSTGOV

U.S. Customs & Border Protection  |  1300 Pennsylvania Avenue, NW Washington, D.C. 20229  |  (202) 354-1000



# U.S. Customs & Border Protection
U.S. Department of Homeland Security          CBP.gov

home   about   contacts   ports   questions   forms   publications   legal   contracting   sitemap

**newsroom     import     export     travel     careers     enforcement**

Skip to content

Start new search    Search these results

---

**Search:**

☑CBP Today  ☑CBP gov  ☑Nafta

| caviar endangered species | GO |

Help  Advanced

*Tip: Separate unrelated proper names with a comma.*

*Example: Bill Gates, Steve Jobs*

---

**Results for:** caviar endangered species

**Document count:** caviar (24) endangered (65) species (97)
caviar endangered species (32)

---

about 139 results found, sorted by relevance        score using date   hide summaries   group by location        1-10

---

### U.S. Customs Today - November 2002 - A seriously fishy story
... Ah, the good life. Diamonds, champagne, high-dollar cigars, **caviar** ... and not just any fish ... helping to move Beluga sturgeon from a protected to an **endangered species**--and if that happened, no Beluga **caviar** could be exported ...
*http://www.cbp.gov/xp/CustomsToday/2002/November/fishy.xml - 22.6KB - CBP Today*

73%
13 Oct 04
Find Similar
Highlight

---

### U.S. Customs Today - May 2002 - Shahtoosh trade unlawful, threatens extinction
... Convention on International Trade in **Endangered Species** (CITES) of Wild Fauna and Flora regulates the trade in **endangered species** products, and since 1979, it ...
*http://www.cbp.gov/xp/CustomsToday/2002/May/shahtoosh.xml - 26.6KB - CBP Today*

72%
13 Oct 04
Find Similar
Highlight

---

### VACIS Draft PEA
... related to construction of structures. Threatened and **Endangered Species** – Implementing the proposed action will not impact ... not impact Federal or state threatened or **endangered species**. Air Quality – Implementing the proposed action will ...
*http://www.cbp.gov/linkhandler/cgov/enforcement/port_activities/vacis/ gamma.ctt/gamma.doc - 2161.5KB - CBP gov*

70%
05 Nov 04
Find Similar
Highlight

---

### Title 19, Volume 1, Parts 1 to 140 19CFR12: Parts 12.0 - 12.27
... Agriculture. ... Wild Animals, Birds, and Insects 12.26 Importations of wild animals, fish, amphibians, reptiles, mollusks, and crustaceans; prohibited and **endangered** and threatened **species**; designated ports of entry; permits required. 12.27 Importation or exportation of wild animals or birds, or the dead bodies thereof illegally captured ...
*http://www.cbp.gov/nafta/docs/us/12-1.html - 78.3KB - Nafta*

70%
18 Oct 04
Find Similar
Highlight

---

### Title 19, Volume 1, Parts 1 to 140 19CFR12: Parts 12.0 - 12.27
... Agriculture. ... Wild Animals, Birds, and Insects 12.26 Importations of wild animals, fish, amphibians, reptiles, mollusks, and crustaceans; prohibited and **endangered** and threatened **species**; designated ports of entry; permits required. 12.27 Importation or exportation of wild animals or birds, or the dead bodies thereof illegally captured ...
*http://www.cbp.gov/nafta/docs/us/12-1.html - 78.4KB - Nafta*

70%
03 Aug 04
Find Similar
Highlight

---

### Pets and Wildlife: Licensing and Health Requirements
... of wildlife and with protecting **endangered** plant and animal **species**. Some wildlife **species** of dogs ...

70%
29 Apr 02

pets, may be listed as **endangered**. **Endangered** and threatened animal and plant ...
http://www.cbp.gov/linkhandler/cgov/toolbox/publications/travel/ pets.ctt/pets.pdf - 104.5KB - CBP gov

Highlight

---

**How to create an Informed Compliance Publication**
... of Regulations and Rulings 3 **Caviar** February 2004 (This page intentionally left blank) 4 **Caviar** February 2004 WHAT **CAVIAR** IS ...
http://www.cbp.gov/linkhandler/cgov/toolbox/legal/ informed_compliance_pubs/general/icp011.ctt/icp011.pdf - 281.0KB - CBP gov

67%
20 Feb 04
Find Similar
Highlight

---

**Other Government Agency Query**
Customs and Trade Automated Interface Requirements July 2004 Other Government Agency Query OGQ-
http://www.cbp.gov/linkhandler/cgov/import/operations_support/ automated_systems/abi/catair/ogq-02-
4.ctt/ogq072004.doc - 190.5KB - CBP gov

65%
20 Aug 04
Find Similar
Highlight

---

**Prohibited and Restricted Items - CBP.gov**
home about contacts ports questions forms publications legal contracting sitemap travel Travel Alerts and Restricted/Prohibited Goods Business and Government Travel Leaving and Arriving In the United ...
http://www.cbp.gov/xp/cgov/travel/leavingarrivinginUS/vacation/ prohibited_restricted.xml - 78.4KB - CBP gov

58%
09 Nov 04
Find Similar
Highlight

---

**Know Before You Go - CBP.gov**
Full version of Know Before You Go brochure.
http://www.cbp.gov/xp/cgov/travel/leavingarrivinginUS/vacation/ know_beforeu_go.xml - 131.2KB - CBP gov

58%
09 Nov 04
Find Similar
Highlight

---

score using date    hide summaries    group by location            1-10

How to
Use the Website

NEWSROOM■ IMPORT■ EXPORT■ TRAVEL■ CAREERS■ ENFORCEMENT
home ■ about ■ contacts ■ ports ■ questions ■ forms
publications ■ legal ■ contracting ■ sitemap

EEO | FOIA | Privacy Statement

Department of
Homeland Security



U.S. Customs & Border Protection | 1300 Pennsylvania Avenue, NW Washington, D.C. 20229 | (202) 354-1000

# U.S. CUSTOMS **TODAY**



November 2002

---

## NOVEMBER 2002

## IN THIS ISSUE

Financing Terror

Manifests destiny

United States - Switzerland exchange agents

CSI: Asian and Italian ports join anti-terror coalition

ACE testing to begin in December

Tracking the Beltway Sniper

Freeing up trade: African Growth and Opportunity Act II

In Kuwait, Customs has friends, allies

Awards ceremony highlights employee efforts to "Protect America"

Customs officers use first responder training to save lives

*- A seriously fishy story*

## OTHER CUSTOMS NEWS

"Krowbar" throws in the towel

"I hoped he would live..."

Up, up, and away

CLI Alumni

Hard work and competitive

### A seriously fishy story

Ah, the good life. Diamonds, champagne, high-dollar cigars, caviar ... and not just any fish eggs either. We're talkin' Beluga. The good stuff.



These objects of living large are, like drugs, highly susceptible to being smuggled. Check out an old James Bond movie if you're too young to remember that diamonds, for example, were once a big deal in the smuggling business. And right out of an old Bond-esque plot comes a Russian guy, Viktor Tsimbal, who was running a caviar scam that was every bit as profitable as--and in fact, worked a whole lot like--the cocaine trade.

He made millions of dollars a year smuggling Beluga caviar, found solely in Black and Caspian Sea sturgeons, from the time he started his "export" operation in 1998 till he got busted in August in Miami. Like the cocaine kings, he used mules to smuggle the goods. And they smuggled more caviar into the United States than Russia is legally permitted to export to the entire world.

Tsimbal and his mules may have viewed their product as food, but to the Customs Service and the Fish and Wildlife Service, it is a serious violation of an international law protecting sturgeon--hence the limits on export quantities. He transshipped his illegal fish eggs through Poland and labeled them as Atlantic lumpfish, which are not a protected species.

Sturgeons have been around since the dinosaur age and can live for a hundred years if they're not poached for their eggs. You have to kill the fish during their egg-bearing years, usually their first 20 years, to get the roe. Smugglers were helping to extinguish the breed entirely.

Tsimbal was not only helping to move Beluga sturgeon from a protected to an endangered species--and if that happened, no Beluga caviar could be exported or imported at all--he was also laundering the money he earned from his smuggling scheme.

Tsimbal, who comes up for sentencing in November, pled guilty to a far-reaching conspiracy that included charges of money-laundering, fraud, and smuggling, and that involved U.S. Customs, the Department of Justice, the Fish and Wildlife Service, and the Food and Drug Administration. He faces a maximum sentence of 30 years in prison and a $1 million fine. Ah, the good life.

Previous Article                                             Next Article

*What Every Member of the*
*Trade Community Should Know About:*

# Caviar



**AN INFORMED COMPLIANCE PUBLICATION**

**FEBRUARY 2004**



**U.S. CUSTOMS and BORDER PROTECTION**

**NOTICE:**

This publication is intended to provide guidance and information to the trade community. It reflects the position on or interpretation of the applicable laws or regulations by U.S. Customs and Border Protection (CBP) as of the date of publication, which is shown on the front cover. It does not in any way replace or supersede those laws or regulations. Only the latest official version of the laws or regulations is authoritative.

Publication History

First Issued February 1997
Revised February 2004

**PRINTING NOTE:**

This publication was designed for electronic distribution via the CBP website (http://www.cbp.gov) and is being distributed in a variety of formats. It was originally set up in Microsoft Word97®. Pagination and margins in downloaded versions may vary depending upon which word processor or printer you use. If you wish to maintain the original settings, you may wish to download the .pdf version, which can then be printed using the freely available Adobe Acrobat Reader®.

2

# PREFACE

On December 8, 1993, Title VI of the North American Free Trade Agreement Implementation Act (Pub. L. 103-182, 107 Stat. 2057), also known as the Customs Modernization or "Mod" Act, became effective. These provisions amended many sections of the Tariff Act of 1930 and related laws.

Two new concepts that emerge from the Mod Act are "*informed compliance*" and "*shared responsibility*," which are premised on the idea that in order to maximize voluntary compliance with laws and regulations of U.S. Customs and Border Protection, the trade community needs to be clearly and completely informed of its legal obligations. Accordingly, the Mod Act imposes a greater obligation on CBP to provide the public with improved information concerning the trade community's rights and responsibilities under customs regulations and related laws. In addition, both the trade and U.S. Customs and Border Protection share responsibility for carrying out these requirements. For example, under Section 484 of the Tariff Act, as amended (19 U.S.C. 1484), the importer of record is responsible for using reasonable care to enter, classify and determine the value of imported merchandise and to provide any other information necessary to enable U.S. Customs and Border Protection to properly assess duties, collect accurate statistics, and determine whether other applicable legal requirements, if any, have been met. CBP is then responsible for fixing the final classification and value of the merchandise. An importer of record's failure to exercise reasonable care could delay release of the merchandise and, in some cases, could result in the imposition of penalties.

The Office of Regulations and Rulings (ORR) has been given a major role in meeting the informed compliance responsibilities of U.S. Customs and Border Protection. In order to provide information to the public, CBP has issued a series of informed compliance publications, and videos, on new or revised requirements, regulations or procedures, and a variety of classification and valuation issues.

This publication, prepared by the National Commodity Specialist Division, ORR, is a study of the classification of caviar.. "Caviar" provides guidance regarding the classification of imported merchandise. We sincerely hope that this material, together with seminars and increased access to rulings of U.S. Customs and Border Protection, will help the trade community to improve voluntary compliance with customs laws and to understand the relevant administrative processes.

The material in this publication is provided for general information purposes only. Because many complicated factors can be involved in customs issues, an importer may wish to obtain a ruling under Regulations of U.S. Customs and Border Protection, 19 C.F.R. Part 177, or to obtain advice from an expert who specializes in customs matters, for example, a licensed customs broker, attorney or consultant.

Comments and suggestions are welcomed and should be addressed to the Assistant Commissioner at the Office of Regulations and Rulings, U.S. Customs and Border Protection, 1300 Pennsylvania Avenue, NW, (Mint Annex), Washington, D.C. 20229.

Michael T. Schmitz,
Assistant Commissioner
Office of Regulations and Rulings

(This page intentionally left blank)

WHAT CAVIAR IS ......................................................................................... 7

THE STURGEON ........................................................................................... 7

TYPES OF CAVIAR ....................................................................................... 7
A) Beluga (Huso huso) ...................................................................................... 7
B) Osetra ( *Acipenser gueldenstaedtii colchicus*) - also known as asetra, oscetra, ossetra, and ossetrova ................................................................................ 8
C) Sevruga (Acipenser stellatus) ...................................................................... 8

HOW CAVIAR IS GRADED ........................................................................... 8
A) Grade 1 ....................................................................................................... 8
B) Grade 2 ....................................................................................................... 8
C) Pressed Caviar ............................................................................................ 8
Summary of Grading for Caviar ........................................................................ 9
   Beluga Caviar ................................................................................................ 9
   Osetra Caviar ................................................................................................. 9
   Sevruga Caviar ............................................................................................... 9
   Pressed Caviar ............................................................................................... 10

PREPARATION OF CAVIAR ....................................................................... 10
Pasteurization ................................................................................................ 10
Special Requirements for Transport .............................................................. 11

CLASSIFICATION OF CAVIAR ................................................................... 11

CLASSIFICATION OF CAVIAR SUBSTITUTES ......................................... 12

REQUIRED DOCUMENTATION .................................................................. 12

INVOICING REQUIREMENTS ..................................................................... 13

BIBLIOGRAPHY .......................................................................................... 14

ADDITIONAL INFORMATION ..................................................................... 17
The Internet .................................................................................................... 17
Customs Regulations ..................................................................................... 17
Customs Bulletin ............................................................................................ 17
Importing Into the United States .................................................................... 18
Informed Compliance Publications ................................................................ 18
Value Publications ......................................................................................... 19
"Your Comments are Important" ..................................................................... 20

(This page intentionally left blank)

## WHAT CAVIAR IS

Caviar is the eggs or roe of sturgeon preserved with salt.  It is prepared by removing the egg masses from freshly caught fish and passing them carefully through a fine-mesh screen to separate the eggs and remove extraneous bits of tissue and fat.  At the same time, 4-6 percent salt is added to preserve the eggs and bring out the flavor.  Most caviar is produced in Russia and Iran from fish taken from the Caspian Sea, the Black Sea, and the Sea of Azov.

Caviar is graded according to the size of the eggs and the manner of processing.  The grades are named for the types of sturgeon from which the eggs are taken.  The species of sturgeon (Family *Acipenseridae*) that produce caviar are, in order of size, beluga, osetra, and sevruga.

Lesser grades of caviar, made from broken or immature eggs, are more heavily salted and compressed.  This payusnaya caviar (pressed caviar) is preferred by some because of its more intense flavor.  Payusnaya is a coarser product, which consists mostly of roe that is premature or damaged in the sieving process.  It is more heavily salted (10 percent), pressed in bulk, and shipped for canning elsewhere.

## THE STURGEON

Sturgeons are fish of the Family *Acipenseridae*.  The toothless sturgeon is one of the few surviving bony fish (the bones are soft and cartilaginous) which have retained their prehistoric appearance.   Because their unique skeletal structure has distinct longitudinal bony plates on the outside, they have no bones in the flesh - a characteristic that gourmets welcome.

There are twenty-four existing sturgeon species worldwide.  Five of them live in the Caspian Sea, and only three supply caviar.  The three species of sturgeon that supply caviar are the beluga, the osetra, and the sevruga.  These three give us 90 percent of the world's production.

## TYPES OF CAVIAR

## A) Beluga (Huso huso)

The beluga is the largest sturgeon and the only predator in the family.  It is so rare that the annual beluga catch does not exceed 100 units.  The beluga is strong, vigorous, large-mouthed, and nomadic, following its prey, shoals of whitefish.  Beluga caviar, the largest, is light to dark gray.  It is highly valued for its large granules (coarse roe) and delicate skin.

## B) Osetra ( *Acipenser gueldenstaedtii colchicus*) - also known as asetra, oscetra, ossetra, and ossetrova

The medium-sized sturgeon probes the sea bed with a projecting snout. The snout is elongate and there are four barbels on its lower surface. It is equipped to vacuum up plants and small forms of sea life.

Osetra caviar is dark brown-gray to golden. It is the only variety of caviar with a unique nut flavor.

## C) Sevruga (Acipenser stellatus)

The sevruga is small, and it has a pointed snout with an upward tilt. The diamond-shaped exoskeletal plates are the most distinct in this species of sturgeon.

Sevruga caviar, the smallest, is greenish-black and fine-grained.

## HOW CAVIAR IS GRADED

The factors that are considered in the grading of caviar are the uniformity and consistency of the grain, the size, color, fragrance, flavor, the gleam, firmness and vulnerability of the roe skin.

## A) Grade 1

Grade 1 caviar is caviar that ideally combines all properties: it must be firm, large grained, delicate, intact, of fine color and flavor.

## B) Grade 2

Grade 2 caviar is also fresh caviar with normal grain size, very good color and fine flavor.

## C) Pressed Caviar

In this grade, external effect caused the fracture of more than 35 percent of the roe skins before it was removed from the fish. Therefore, this caviar is treated in a different manner than grade 1 and grade 2 caviar. It consists of a roe blend from the osetra and sevruga. This blended roe, usually milky and soft, is heated to 38 degrees Centigrade in a saline solution and stirred until it has absorbed salt and regains its natural color. Then, it is cast into "talees," fabric pouches in which it is pressed out to remove excess salt and oil.

Pressed caviar contains four times more roe than fresh caviar of the same weight. It is drier, spreadable, and it is also considered to be a delicacy. Because it takes four

8

pounds of fresh caviar to prepare one pound of pressed, the resulting black paste has a highly concentrated flavor.  The strong, sharp taste is favored by some gourmets.

## Summary of Grading for Caviar

### Beluga Caviar

#### Grade 1

Large grain.  Absolute top quality.  In this category, the following additional color criteria apply:

000 light gray

00 medium gray

0 dark gray

#### Grade 2

Smaller grain.  Medium to light gray.

### Osetra Caviar

#### Grade 1

In this quality, osetra is distinguished by three colors:

Royal Caviar: Gold  The rarest and most coveted caviar (general yield from osetra is 1:1,000)

Color A: gray gold

Color B: dark gray

#### Grade 2

Smaller grain.  Medium gray.

### Sevruga Caviar

#### Grade 1

Dark gray to light gray

**Grade 2**

Smaller grain.  Dark gray

Pressed Caviar

# PREPARATION OF CAVIAR

Fresh-grained caviar is prepared from the full roe of the female sturgeon.  The sturgeons are caught in nets and taken back to the fishery laboratory alive.  There they are clubbed and anesthetized, not killed, and the egg pockets are emptied.  The fishermen carefully anesthetize the fish by hitting them at a specific spot below the head.  The roe must be taken while the fish are still alive.  If the fish experience the stress of death, they release a chemical into the eggs that spoils the caviar by making it bitter.

When beluga roe is taken from the fish to make the highest graded caviar, it is processed manually.  The fish are placed on a coarse mesh screen spread across a wooden tub.  The roe is removed by splitting the underside of the sturgeon with a sharp knife.  Then the roe bags (filmy sacs containing the eggs) are broken by whipping them with birch switches.  The freed roe is then passed over screens with varying-sized mesh to grade the eggs according to size.  The roe is rubbed through the screens with the palm of the hand for optimum control.  The process also separates the eggs from binding tissue.

During the process, the eggs drop into a tub below the mesh screens.  After a portion of the eggs has been collected in the tub, it is transferred to a bucket and the process is repeated.  Considerable care must be taken in rubbing the eggs through the screens, since bruising them results in a lower grade of caviar.

When all of the eggs have been collected, they are put into a tub and dry salt is added.  The salt is thoroughly mixed with the roe.  The eggs are then placed in a fine mesh screen to drain.

The caviar is packed in tin, glass, or porcelain containers equipped with tight-fitting covers.  It is then ready to eat or store under refrigeration.

## Pasteurization

Some, not all, caviar is pasteurized.  Pasteurization is effected by the immersion of the cans or jars of caviar in a hot-water bath at 155-160 degrees Fahrenheit for 30, 45, and 60 minutes for 1, 2, and 4 ounce containers, respectively.  This treatment makes it possible to store caviar at temperatures as high as 60 degrees Fahrenheit for several months without off-flavors or decomposition resulting.

10

## Special Requirements for Transport

The refrigerator, with its compartments for below freezing point storage, presents many dangers to the preservation of caviar. Once caviar has been frozen and then thawed out, the roe (berries) will have burst, the product will have become mushy, and the quality will have deteriorated to the lowest grade. In order to avoid having the berries burst, caviar must be refrigerated at 28 to 32 degrees Fahrenheit.

A prime requirement for top quality caviar is that each berry be well coated with its own glistening fat. One of the purchaser's concerns is that the fat in the caviar does not rise to the top of the can, to be scooped off by the vendor for a preferred customer, leaving less fatty berries for other, later, buyers. The conscientious shipper sees to it that the caviar tins in the refrigerator are turned frequently during transport, in order to keep the fatty substance well distributed.

## CLASSIFICATION OF CAVIAR

The *Harmonized Tariff Schedule of the United States* (HTS) has an *eo nomine* provision for caviar in subheading 1604.30.2000, HTS. The general most-favored-nation (MFN) rate of duty is 15 percent *ad valorem* (2004).

True caviar is roe that comes from the sturgeon. The Explanatory Notes to the Harmonized Commodity Description and Coding System defines caviar in Chapter 16 thus:

> Caviar is prepared from the roe of the sturgeon, a fish found in the rivers of several regions (Italy, Alaska, Turkey, Iran and Russia); the main varieties are Beluga, Schirp, Ossiotr and Sewruga. Caviar is usually in the form of a soft, granular mass, composed of eggs between 2 and 4 mm in diameter and ranging in color from silver-grey to greenish-black. It has a strong smell and a slightly salty taste. It may also be presented pressed i.e.: reduced to a homogeneous paste, sometimes shaped into small slender cylinders or packed in small containers.

Chapter 16 excludes fish roe that is still enclosed in the ovarian membrane, prepared or preserved only by processes provided for in Chapter 3.

Caviar of subheading 1604.30.2000, HTSUS, may be entered free of duty, if the country of origin has been designated a beneficiary country under the Generalized System of Preferences, the North American Free Trade Agreement, the Caribbean Basin Economic Recovery Act, the United States-Israel Free Trade Area or the Andean Trade Preference Act, and the United States-Chile Free Trade Agreement ,upon compliance with all applicable regulations. Further, under the United States-Jordan Free Trade Area Implementation Act and the United States-Singapore Free Trade Agreement, qualifying caviar may be entered at a reduced rate of duty (2004). The Column 2 rate of duty is 30 percent *ad valorem* (2004).

11

## CLASSIFICATION OF CAVIAR SUBSTITUTES

Roe that comes from a fish other than the sturgeon is not true caviar, and it is classifiable as a caviar substitute  For example, the eggs of lumpfish, whitefish and salmon may be prepared or preserved as caviar substitutes. Although the term "caviar" may appear on the commercial invoice, and the importer's price list may show the merchandise under a caviar heading, for Customs classification purposes, this roe is not caviar, but, rather, a caviar substitute. Attention must be given to the name of the fish that is specified on the invoice.

The Explanatory Notes describe caviar substitutes thus:

These are products consumed as caviar but prepared from the eggs of fish other than sturgeon (e.g., salmon, carp, pike, tuna, mullet, cod, lumpfish), which have been washed, cleaned of adherent organs, salted and sometimes pressed or dried. Such fish eggs may also be seasoned and colored.

The HTSUS provides for caviar substitutes under two subheadings.  If the caviar substitute has been boiled and packed in airtight containers, the applicable subheading is 1604.30.3000, HTS, which provides for prepared or preserved fish; caviar and caviar substitutes prepared from fish eggs, caviar and caviar substitutes, caviar substitutes, boiled and in airtight containers.  The general most-favored-nation (MFN) rate of duty is free (2004).  The Column 2 rate of duty is 30 percent *ad valorem* (2004).

Caviar substitutes other than those which have been boiled and packed in airtight containers are classifiable under subheading 1604.30.4000, HTS, which provides for prepared or preserved fish; caviar and caviar substitutes prepared from fish eggs, caviar and caviar substitutes, caviar substitutes, other.  The general MFN rate of duty is free (2004).  The Column 2 rate of duty is 44 cents per kilogram (2004).

## REQUIRED DOCUMENTATION

The Convention on International Trade in Endangered Species of Wild Fauna and Flora (CITES) regulates international trade in certain animals and plants.  As a result of the Tenth Conference of the CITES Parties (which includes the United States), held in June 1997, all species of sturgeon and paddlefish are now listed in either Appendix I or II of CITES.  Those species, whose international trade is controlled, are listed in Appendices I, II and III to the Convention.  Appendix I includes species threatened with extinction that are or may be affected by trade.  Appendix II includes species that may become threatened with extinction if trade is not regulated.  Appendix III includes species listed by individual range countries to obtain international cooperation in controlling trade.  In this regard, CITES trade control covers the import, export, re-export and introduction from the sea of such items.

All shipments of sturgeon, paddlefish and their products (such as caviar) must be accompanied by a valid CITES export permit or re-export certificate issued by the CITES Management Authority of the (re)exporting country and must be declared to U.S. Fish and Wildlife (FWS) Inspectors, upon importation into the United States. (Unless exempted by the Fish and Wildlife Service, all imports or exports must be cleared at a FWS designated port.)

All imports of such products must also be accompanied by a "Declaration for Importation or Exportation of Fish or Wildlife," FWS Form 3-177.

Questions regarding import requirements for sturgeon, paddlefish and their products should be directed to local Fish and Wildlife field offices or to FWS Headquarters at (703) 358-1949 or (703) 358-2095.

## INVOICING REQUIREMENTS

The accuracy of the information contained on invoices is an essential element of the structure of the many new and creative programs Customs has undertaken recently. These programs, including, but not limited to, automated entry processing and pre-importation review, may provide their benefits to the trade community as a whole, only if the data gathered is correct and complete. This concern for invoice accuracy is not new, but, as we progress in automation, accuracy becomes indispensable.

Section 141.86 of the Customs Regulations concerns invoicing requirements. Subparagraph (a)(3) of the section specifically requires that invoices have the following information:

> "A detailed description of the merchandise, including the name by which each item is known, the grade or quality, and the marks, numbers and symbols under which sold by the seller or manufacturer to the trade in the country of exportation, together with the marks and numbers of the packages in which the merchandise is packed."

A "detailed description" is one which enables an import specialist to properly classify imported merchandise. Accordingly, the invoice description must indicate any information which has a direct bearing on the proper classification of the imported item and it is incumbent upon the importer of record to ensure that the detailed description is present on each invoice.

Importers do not have to provide information that is not necessary to classify a specific item. However, they are responsible for giving Customs the information that is needed.

The following information is required on all invoices for caviar:

1) a detailed description of the caviar or caviar substitute i.e.: if caviar, the species of sturgeon (beluga, osetra, sevruga, or pressed caviar); if a caviar substitute, the common name and the scientific name of the fish.

2) the method of packing - size of the can or jar.

3) the unit value.

4) the total value of the shipment.

5) the terms of sale.

6) the weight in pounds or kilograms.

7) the country of origin.

## BIBLIOGRAPHY

## Books

Cayne, Bernard S. and Holland, David T., ed. *The Encyclopedia Americana*. Danbury: Grolier, Inc., 1989.

Coyle, L. Patrick, ed. *The World Encyclopedia of Food*. New York: Facts on File, Inc., 1982.

*Explanatory Notes to the Harmonized Commodity Description and Coding System*. Brussels: Customs Cooperation Council, 1990.

Friedland, Susan. *The Caviar Book*. New York: Charles Scribner and Sons, Inc., 1986.

Goetz, Philip W., ed. *The New Encyclopaedia Britannica*. Chicago: Encyclopaedia Britannica, Inc., 1986.

*Harmonized Tariff Schedule of the United States*, 1996. Washington DC: United States International Trade Commission, 1996.

*Multilingual Dictionary of Fish and Fish Products*. Farnham, England: Fishing New Books Limited, 1968.

Stein, Gerald M. and Bain, Donald. *Caviar! Caviar! Caviar!* New York: Carol Publishing Group, 1981.

14

## Periodicals

Burros, Marian. *"Seeking Out the Finest in Imported Fresh Caviar."* The New York Times, December 26, 1984.

*"Canned Excellence."* The New York Times, March 3, 1993.

*"Caviar."* The New York Times, March 3, 1993.

"Caviar Rules." The New York Times, March 3, 1993.

Conn, Sandra and Spiselman, Anne. *"Food."* Crain's Chicago Business, February 8, 1993.

De Chillo, Suzanne. *"Fishermen on the Hudson Develop a Small Caviar Industry."* The New York Times, July 14, 1991.

Dolan, Mary. *"Caviar on the Hudson."* Rockland Journal-News, June 19, 1991.

*"Entrepreneurs Market Caviar from Astrakhan."* Alaska Journal of Commerce, September 21, 1992.

Fabricant, Florence. *"As Annual Price War Begins, Caviar Business Is in Turmoil."* The New York Times, December 4, 1991.

Fabricant, Florence. *"Caviar from Azerbaijan."* The New York Times, March 3, 1993.

Jackson, Maggie. *"Caviar Market in Upheaval after Soviet Breakup."* Los Angeles Times, April 19, 1992.

Jacobson, Philip. *"East Europeans Take Caviar as Ticket to West."* The New York Times, December 20, 1991.

Jeffee, Larry. *"Petrossian Paris, Caviar Importer, Hopes to Double MO Sales in 1993."* DM News, February 15, 1993.

King, Mike and Husted, Amanda. *"Post-Soviet Caviar? Nada."* The Atlantic Journal and Constitution, April 8, 1992.

Lewis, Flora. *"The Black Market in Iranian Caviar."* The New York Times, January 23, 1980.

*"What a Fish!"* The New York Times, March 3, 1993.

Witcher, Tim. *"Rumblings in Paris over Missing Caviar."* The Daily Telegraph, December 22, 1992.

Young, Robin. *"Caviar Boom Leaves Behind a Taste of Something Fishy."* The New York Times, March 12, 1993.

## News Wire Services

*"Iran in Deal with Dubai Firm to Boost Caviar Exports."* Agence France Presse. May 31, 1992.

Jackson, Magge. *"Secretive Caviar Industry in Flux Following Soviet Union Breakup."* The Associated Press. April 7, 1992.

Kalashnikova, Svetlana. *"Unsanctioned Goods Withdrawn from Air Passengers,"* Tass. March 11, 1992.

*"Record Caviar Seizure, Probe Phony Foie Gras."* The Associated Press. December 20, 1991.

*"United Fishing for New Caviar Supplies."* United Press International. August 21, 1991.

## ADDITIONAL INFORMATION

### The Internet

The home page of U.S. Customs and Border Protection on the Internet's World Wide Web, provides the trade community with current, relevant information regarding CBP operations and items of special interest. The site posts information -- which includes proposed regulations, news releases, publications and notices, etc. -- that can be searched, read on-line, printed or downloaded to your personal computer. The web site was established as a trade-friendly mechanism to assist the importing and exporting community. The web site also links to the home pages of many other agencies whose importing or exporting regulations that U.S. Customs and Border Protection helps to enforce. The web site also contains a wealth of information of interest to a broader public than the trade community. For instance, on June 20, 2001, CBP launched the "Know Before You Go" publication and traveler awareness campaign designed to help educate international travelers.

The web address of U.S. Customs and Border Protection is http://www.cbp.gov

### Customs Regulations

The current edition of *Customs Regulations of the United States* is a loose-leaf, subscription publication available from the Superintendent of Documents, U.S. Government Printing Office, Washington, DC 20402; telephone (202) 512-1800. A bound, 2003 edition of Title 19, *Code of Federal Regulations*, which incorporates all changes to the Regulations as of April 1, 2003, is also available for sale from the same address. All proposed and final regulations are published in the *Federal Register*, which is published daily by the Office of the Federal Register, National Archives and Records Administration, and distributed by the Superintendent of Documents. Information about on-line access to the *Federal Register* may be obtained by calling (202) 512-1530 between 7 a.m. and 5 p.m. Eastern time. These notices are also published in the weekly *Customs Bulletin* described below.

### Customs Bulletin

The *Customs Bulletin and Decisions ("Customs Bulletin")* is a weekly publication that contains decisions, rulings, regulatory proposals, notices and other information of interest to the trade community. It also contains decisions issued by the U.S. Court of International Trade, as well as customs-related decisions of the U.S. Court of Appeals for the Federal Circuit. Each year, the Government Printing Office publishes bound volumes of the *Customs Bulletin*. Subscriptions may be purchased from the Superintendent of Documents at the address and phone number listed above.

## Importing Into the United States

This publication provides an overview of the importing process and contains general information about import requirements. The February 2002 edition of *Importing Into the United States* contains much new and revised material brought about pursuant to the Customs Modernization Act ("Mod Act"). The Mod Act has fundamentally altered the relationship between importers and U.S. Customs and Border Protection by shifting to the importer the legal responsibility for declaring the value, classification, and rate of duty applicable to entered merchandise.

The February 2002 edition contains a section entitled "Informed Compliance." A key component of informed compliance is the shared responsibility between U.S. Customs and Border Protection and the import community, wherein CBP communicates its requirements to the importer, and the importer, in turn, uses reasonable care to assure that CBP is provided accurate and timely data pertaining to his or her importation.

Single copies may be obtained from local offices of U.S. Customs and Border Protection, or from the Office of Public Affairs, U.S. Customs and Border Protection, 1300 Pennsylvania Avenue NW, Washington, DC 20229.   An on-line version is available at the CBP web site.  *Importing Into the United States* is also available for sale, in single copies or bulk orders, from the Superintendent of Documents by calling (202) 512-1800, or by mail from the Superintendent of Documents, Government Printing Office, P.O. Box 371954, Pittsburgh, PA 15250-7054.

## Informed Compliance Publications

U.S. Customs and Border Protection has prepared a number of Informed Compliance publications in the "*What Every Member of the Trade Community Should Know About:…*" series.  Check the Internet web site http://www.cbp.gov for current publications.

Caviar
February 2004

## Value Publications

*Customs Valuation under the Trade Agreements Act of 1979* is a 96-page book containing a detailed narrative description of the customs valuation system, the customs valuation title of the Trade Agreements Act (§402 of the Tariff Act of 1930, as amended by the Trade Agreements Act of 1979 (19 U.S.C. §1401a)), the Statement of Administrative Action which was sent to the U.S. Congress in conjunction with the TAA, regulations (19 C.F.R. §§152.000-152.108) implementing the valuation system (a few sections of the regulations have been amended subsequent to the publication of the book) and questions and answers concerning the valuation system. A copy may be obtained from U.S. Customs and Border Protection, Office of Regulations and Rulings, Value Branch, 1300 Pennsylvania Avenue, NW, (Mint Annex), Washington, D.C. 20229.

*Customs Valuation Encyclopedia* (with updates) is comprised of relevant statutory provisions, CBP Regulations implementing the statute, portions of the Customs Valuation Code, judicial precedent, and administrative rulings involving application of valuation law. A copy may be purchased for a nominal charge from the Superintendent of Documents, Government Printing Office, P.O. Box 371954, Pittsburgh, PA 15250-7054. This publication is also available on the Internet web site of U.S. Customs and Border Protection.

> The information provided in this publication is for general information purposes only. Recognizing that many complicated factors may be involved in customs issues, an importer may wish to obtain a ruling under CBP Regulations, 19 C.F.R. Part 177, or obtain advice from an expert (such as a licensed Customs Broker, attorney or consultant) who specializes in customs matters. Reliance solely on the general information in this pamphlet may not be considered reasonable care.

Additional information may also be obtained from U.S. Customs and Border Protection ports of entry. Please consult your telephone directory for an office near you. The listing will be found under U.S. Government, Department of Homeland Security.

## "Your Comments are Important"

The Small Business and Regulatory Enforcement Ombudsman and 10 regional Fairness Boards were established to receive comments from small businesses about Federal agency enforcement activities and rate each agency's responsiveness to small business. If you wish to comment on the enforcement actions of U.S. Customs and Border Protection, call 1-888-REG-FAIR (1-888-734-3247).

**REPORT SMUGGLING 1-800-BE-ALERT OR 1-800-NO-DROGA**



**Visit our Internet web site: http://www.cbp.gov**

20



**U.S. Customs & Border Protection**
U.S. Department of Homeland Security     CBP.gov

Sunday, November 28, 2004

SEARCH     GO

home | about | contacts | ports | questions | forms | publications | legal | contracting | sitemap

**newsroom    import    export    travel    careers    enforcement**

## travel

Travel Alerts and
Restricted/Prohibited Goods

**Pleasure and Vacation
Travel for U.S. Residents**

In and Entry for Foreign
Nationals

Clearing Goods through
Customs

Customer Service

CBP Search Authority

Frequent Traveler Programs

Careers and Security

Pleasure Boats and Private
Flyers

Labor and Border Wait
Times

Report
Suspicious Activity to
1-800-BE-ALERT

home / travel / Pleasure and Vacation Travel for U.S. Residents /

### Know Before You Go



We may have gone a little overboard. . . Next time we'll Know Before We Go.

**Regulations for U.S. Residents**
As an international traveler, you should be aware of the rules for bringing items
back from your trip. For instance, did you know that the duty-free personal
exemption was recently raised to $800?

- **Know Before You Go - Regulations for U.S. Residents**
  □ *featured see also*
  Publication # 0000-0512
  Contains everything U.S. residents should know before they go abroad. Please
  see our Know Before You Go online brochure in the Travel section.
  📄 doc - 180 KB.

- **Introduction and Mission**

- **When You Return to the United States**

- **Documentary Requirements for Entry To The United States**

- **What You Must Declare**

- **Duty-free Exemption**
  Including Tobacco and Alcohol

- **Duty-free or Reduced Rates**

- **Sending Goods to the United States**

- **Duty-Free Shops**

- **Paying Duty**

- **Prohibited and Restricted Items**

- **Money and Other Monetary Instruments**

- **Traveling Back and Forth Across the Border**

- **Other Travel-Related Information**

Search Know Before You Go for:

GO

section sitemap for
Know Before You Go

### see also:

◯ **in Pleasure and
Vacation Travel for
U.S. Residents:**

U.S. Citizens

Top 10 Tips

Challenge Yourself! - Take the
Know Before You Go Quiz

Sample Customs Declaration
Form

Straight from the Source!

────────────

◯ **on cbp.gov:**

Registration for Dutiable
Personal Articles Prior to U.S.
Departure

How CBP Handles Traveler
Complaints

Know Before You Go -
Regulations for U.S. Residents
(doc - 180 KB.)

────────────

◯ **publications:**

Currency Reporting Flyer
(doc - 24 KB.)

GSP and the Traveler
(doc - 40 KB.)

International Mail Imports
(doc - 72 KB.)

Pets and Wildlife
(pdf - 104 KB.)

Pleasure Boats
(doc - 43 KB.)

Visiting the United States
(doc - 70 KB.)

Guide for Private Flyers
(doc - 936 KB.)

Importing or Exporting A Car
(doc - 52 KB.)

U.S. Import Requirements
(doc - 64 KB.)

Exporting A Vehicle
(doc - 92 KB.)

────────────

◯ **on the web:**

Passports (State Department)

Visas (State Department)

Travel Warnings (State
Department)

Documents Required for Entry

K

## Know Before You Go
*U.S. Customs and Border Protection Regulations for U.S. Residents*

**Introduction**
**When You Return to the United States**
**Documentary Requirements for Entry**
**What You Must Declare**
- Joint Declaration

**Register Items Before You Leave the United States**
**Duty-Free Exemption**
- Exemptions
  Tobacco Products
  Alcoholic Beverages
- $200 Exemption
  Advice for frequent travelers
- $600 Exemption
- Travel to More Than One Country
- $800 Exemption
- $1,200 Exemption

**Gifts**
**Duty-Free or Reduced Rates**
- Items from Certain Countries
- Personal Belongings
- Household Effects

**Increased Duty Rates**
**Determining Duty**
**Sending Goods to the United States**
**Unaccompanied Baggage**
- U.S. Mail Shipments
- Express Shipments
- Freight Shipments

**Unaccompanied Purchases from Insular Possessions and Caribbean Basin Countries**
**Duty-Free Shops**
**Prohibited and Restricted Items**
- Absinthe (Alcohol)
- Automobiles
- Biologicals
- Ceramic Tableware
- Cultural Artifacts and Cultural Property (Art/Artifacts)
- Dog and Cat Fur
- Drug Paraphernalia
- Firearms
- Fish and Wildlife
- Food Products (Prepared)
- Fruits and Vegetables
- Game and Hunting Trophies

1

- Gold
- Meats, Livestock, and Poultry
- Medication
- Merchandise from Embargoed Countries
- Pets
- Plants and seeds
- Soil
- Textiles and Clothing
- Trademarked and Copyrighted Articles

**Money and Other Monetary Instruments**
**Photographic Film**
**Customer Service Programs**
- **Pledge to Travelers**

**Other Travel-related Information**

**INTRODUCTION**

U.S. Customs and Border Protection (CBP) is the unified border agency within the Department of Homeland Security (DHS). On March 1, 2003, CBP combined the inspectional workforces and broad border authorities of the U.S. Customs Service, U.S. Immigration and Naturalization Service, Animal and Plant Health Inspection Service and the entire U.S. Border Patrol.

CBP primary mission is preventing terrorists and terrorist weapons from entering the United States, while also facilitating the flow of legitimate trade and travel. This mission is vitally important to the protection of America and the American people.

CBP officers inspect all persons arriving at a U.S. port of entry. It is CBP policy to treat you in a courteous, professional manner. Very *few* travelers actually violate the law, but an examination of your baggage or your vehicle may be required, which, by law, we are allowed to do. You may be asked questions on the nature of your citizenship, your trip, and about anything you are bringing back to the United States that you did not have with you when you left. If your baggage is selected for an examination, you will be responsible for placing it on the exam station and opening it. After the exam is completed, you will be asked to repack and close the baggage. If you feel your examination is not conducted in a professional manner, please ask to speak to a CBP supervisor.

"Duty" and "dutiable" are words you will find frequently throughout this brochure: *Duty* is the amount of money you pay on items coming from another country. It is similar to a tax, except that duty is collected only on imported goods. *Dutiable* describes items on which duty may have to be paid. Most items have specific duty rates, which are determined by a number of factors, including where you got the item, where it was made, and what it is made of.

Anything you bring back that you did not have when you left the United States must be "declared." For example, you would *declare* alterations made in a foreign country to a suit you already owned, and any gifts you acquired overseas.

**The information contained within this brochure may change routinely. Please visit the travel section of the CBP Website at www.cbp.gov for the most up-to-date traveler information.**

**The U.S. Customs and Border Protection Mission Statement**
We are the guardians of our Nation's borders. We are America's frontline.
We safeguard the American homeland at and beyond our borders.
We protect the American public against terrorists and the instruments of terror.
We steadfastly enforce the laws of the United States while fostering our Nation's economic security through lawful international trade and travel.
We serve the American public with vigilance, integrity and professionalism.

**WHEN YOU RETURN TO THE UNITED STATES**
When you come back, you will need to declare everything you brought back that you did not take with you when you left the United States. If you are traveling by air or sea, you may be asked to fill out a CBP declaration form. This form is almost always provided by the airline or

cruise ship. You will probably find it easier and faster to fill out your declaration form and clear CBP if you do the following:
- Keep your sales slips.
- Try to pack the things you'll need to declare separately.
- Read the signs in the arrival area. They contain helpful information about how to clear CBP.

Be aware that under U.S. law, CBP officers are authorized to examine luggage, cargo, and travelers. Under the search authority granted by the U.S. Congress, every person who crosses a U.S. border may be searched and questioned about their travel. To stop the flow of illegal drugs and other contraband into our country, your cooperation is appreciated. If you are one of the very few travelers selected for a search, you will be treated in a courteous, professional, and dignified manner. If you are searched and you believe that you were *not* treated in such a manner, or if you have any concerns about the search for any reason whatsoever, *we want to hear from you.* For contact information, please see the section on **Customer Service Programs**.

## DOCUMENTARY REQUIREMENTS FOR ENTRY TO THE UNITED STATES
**Travel from within the Western Hemisphere**
*U.S. citizens:*
- Generally U.S. Citizens arriving from travel within the Western Hemisphere are exempt from passport requirements. However, it is highly recommended that a U.S. Citizen be prepared to present documentation such as valid or expired U.S. passport, U.S. birth certificate, or Naturalization certificate to avoid delays.
- Exception—travel from Cuba, valid U.S. passport is required.

*U.S. Lawful Permanent Residents (LPRs) must provide one of the following:*
- I-551, Permanent Resident Card (Green card),
- Machine-Readable Immigrant Visa endorsed with a CBP Admission Stamp,
- Temporary Residence Stamp (ADIT stamp) contained in a passport or on Form I-94,
- Valid Reentry Permit, or
- Unexpired Immigrant Visa. Passport required unless otherwise noted.

*Visitors/Non-immigrants:*
- Generally, a valid unexpired passport and visa. However, certain classes may require specific supporting documentation such as an employment petition, student authorization, or approval notice.
- Nationals of countries authorized to participate in the *Visa Waver program are required to present an unexpired machine-readable passport. For additional information refer to the State Department at http:travel.state.gov/visa/tempvisitors_novisa_waver.html#13.
- Nationals of countries authorized to participate in the Guam visa Waiver Program are required to present an unexpired passport.
- Mexicans may provide a valid DSP-150 (BCC) in lieu of a valid passport and visa
- Generally, Canadian Nationals must show ID but are exempt from passport and visa requirements. However presentation of a Canadian passport, birth certificate, Naturalization certificate or other supporting documentation will facilitate the inspection and is strongly encouraged.

4

**Travel from outside the Western Hemisphere (Europe, Africa, Asia, Australia)**
*U.S. citizens must provide:*
- A valid, unexpired U.S. passport

*U.S. Lawful Permanent Residents (LPRs) must provide one of the following:*
- I-551, Permanent Resident Card (Green card),
- Reentry Permit
- Machine-Readable Immigrant Visa endorsed with a CBP Admission Stamp
- Temporary Residence Stamp (ADIT stamp) contained in a passport or on Form I-94, or
- Unexpired Immigrant Visa. Passport required unless otherwise noted.

*Visitors/Non-immigrants:*
- Generally, a valid, unexpired passport and visa. However, certain classes may require specific supporting documentation such as an employment petition, student authorization, or approval notice.
- Nationals of countries authorized to participate in the *Visa Waver program are required to present an unexpired machine-readable passport. For additional information refer to the State Department at http:travel.state.gov/visa/tempvisitors_novisa_waver.html#13.
- Nationals of countries authorized to participate in the Guam Visa Waiver Program are required to present an unexpired passport.
- Mexicans may provide a valid DSP-150 (BCC) and a valid passport
- Canadians must provide a valid, unexpired passport.

**Visa Waiver Program – Participating Countries**

| | | |
|---|---|---|
| Andorra | Iceland | Norway |
| Australia | Ireland | Portugal |
| Austria | Italy | San Marino |
| Belgium | Japan | Singapore |
| Brunei | Liechtenstein | Slovenia |
| Denmark | Luxembourg | Spain |
| Finland | Monaco | Sweden |
| France | The Netherlands | Switzerland |
| Germany | New Zealand | United Kingdom |

There are some exceptions that may exist in regards to the above listed information. For more information on documentation requirements, contact your consulate or embassy for further instructions.

**WHAT YOU MUST DECLARE**
- Items you purchased and are carrying with you upon return to the United States.
- Items you received as gifts, such as wedding or birthday presents.
- Items you inherited.
- Items you bought in duty-free shops, on the ship, or on the plane.

- Repairs or alterations to any items you took abroad and then brought back, even if the repairs/alterations were performed free of charge.
- Items you brought home for someone else.
- Items you intend to sell or use in your business.
- Items you acquired—
  whether purchased or received as gifts in the U.S. Virgin Islands, American Samoa, Guam, or in a Caribbean Basin Economic Recovery Act country ( see section on $600 exemption for a list of these countries) that are not in your possession when you return. In other words, if you acquired items in any of these island nations and asked the merchant to send them to you, you must still declare them when you go through CBP. This differs from the usual procedure for mailed items, which is discussed in the section on **Sending Goods to the United States**.

You must state on the CBP declaration, in U.S. currency, what you actually paid for each item. The price must include all taxes. If you did not buy the item yourself—for example, if it is a gift—get an estimate of its fair retail value in the country where you received it. If you bought something on your trip and wore or used it on the trip, it's still dutiable. You must declare the item at the price you paid or, if it was a gift, at its fair market value.

**Joint Declaration**
Family members who live in the same home and return together to the United States may combine their personal exemptions. This is called a *joint declaration*. For example, if Mr. and Mrs. Smith travel overseas and Mrs. Smith brings home a $1,000 piece of glassware, and Mr. Smith buys $600 worth of clothing, they can combine their $800 exemptions on a joint declaration and not have to pay duty.

Children and infants are allowed the same exemption as adults, except for alcoholic beverages.

**REGISTER ITEMS BEFORE YOU LEAVE THE UNITED STATES**
If your laptop computer was made in Japan – for instance – you might have to pay duty on it each time you brought it back into the United States, unless you could prove that you owned it before you left on your trip. Documents that fully describe the item—such as sales receipts, insurance policies, or jeweler's appraisals—are acceptable forms of proof.

To make things easier, you can register certain items with CBP before you depart— including watches, cameras, laptop computers, firearms, and CD players—as long as they have serial numbers or other unique, permanent markings. Take the items to the nearest CBP office and request a Certificate of Registration (CBP Form 4457). It shows that you had the items with you before leaving the United States. and all items listed on it will be allowed duty-free entry. CBP officers must see the item you are registering in order to certify the certificate of registration. You can register items with CBP at the international airport from which you're departing. Keep the certificate for future trips.

**DUTY-FREE EXEMPTION**
The duty-free exemption, also called the *personal exemption*, is the total value of merchandise you may bring back to the United States without having to pay duty. You may bring back more

6

than your exemption, but you will have to pay duty on it. In most cases, the personal exemption is $800, but there are some exceptions to this rule, which are explained below.

**Exemptions**

Depending on the countries you have visited, your personal exemption will be $200, $600, $800, or $1,200. There are limits on the amount of alcoholic beverages, cigarettes, cigars, and other tobacco products you may include in your duty-free personal exemption. The differences are explained in the following section.

The duty-free exemptions ($200, $600, $800, or $1,200) apply if:
- The items are for your personal or household use or intended to be given as bonafide gifts.
- They are in your possession, that is, they accompany you when you return to the United States. Items to be sent later may not be included in your $800 duty-free exemption. Exceptions apply for goods sent from Guam or the U.S. Virgin Islands
- They are declared to CBP. If you do not declare something that should have been declared, you risk forfeiting it. If in doubt, declare it.
- You are returning from an overseas stay of at least 48 hours. For example, if you leave the United States at 1:30 p.m. on June 1, you would complete the 48-hour period at 1:30 p.m. on June 3. This time limit does not apply if you are returning from Mexico or from the U.S. Virgin Islands. (See also the section on the $200 exemption.)
- You have not used all of your exemption allowance, or used any part of it, in the past 30 days—for example, if you go to England and bring back $150 worth of items—you must wait another 30 days before you are allowed another $800 exemption. (See the section on the $200 exemption.)
- The items are not prohibited or restricted as discussed in the section on Prohibited and Restricted Items. Note the embargo prohibitions on products of Cuba.

**Tobacco Products**

Travelers may import previously exported tobacco products only in quantities not exceeding the amounts specified in exemptions for which the traveler qualifies. Any quantities of previously exported tobacco products not permitted by an exemption will be seized and destroyed. These items are typically purchased in duty-free stores, on carriers operating internationally, or in foreign stores. These items are usually marked "Tax Exempt. For Use Outside the United States," or "U.S. Tax Exempt For Use Outside the United States."

For example, a returning resident is eligible for the $800 exemption, which includes not more than 200 cigarettes and 100 cigars. If the resident declares 400 previously exported cigarettes, the resident would be permitted 200 cigarettes, tax-free under the exemption and the remaining 200 previously exported cigarettes would be confiscated. If the resident declares 400 cigarettes, of which 200 are previously exported and 200 not previously exported, the resident would be permitted to import the 200 previously exported cigarettes tax free under the exemption and the resident would be charged duty and tax on the remaining 200 foreign-made cigarettes.

The tobacco exemption is available to each person. Except for information and informational materials, no traveler (whether traveling legally under an Office of Foreign Asset Control (OFAC) license or traveling illegally without an OFAC license may import Cuban origin goods,

including Cuban cigars, unless authorized to do so by a specific license issued by OFAC.

**Alcoholic Beverages**
One liter (33.8 fl. oz.) of alcoholic beverages may be included in your exemption if:
- You are 21 years old.
- It is for your own use or as a gift.
- It does not violate the laws of the state in which you arrive.

Federal regulations allow you to bring back more than one liter of alcoholic beverage for personal use, but, as with extra tobacco, you will have to pay duty and Internal Revenue Service tax.

While Federal regulations do not specify a limit on the amount of alcohol you may bring back for personal use, unusual quantities are liable to raise suspicions that you are importing the alcohol for other purposes, such as for resale. CBP officers are authorized by the Bureau of Alcohol, Tobacco and Firearms (ATF) to make on-the-spot determinations that an importation is for commercial purposes, and may require you to obtain a permit to import the alcohol before releasing it to you. If you intend to bring back a substantial quantity of alcohol for your personal use, you should contact the port through which you will be re-entering the country, and make prior arrangements for entering the alcohol into the United States.

Also, you should be aware that state laws might limit the amount of alcohol you can bring in without a license. If you arrive in a state that has limitations on the amount of alcohol you may bring in without a license, that state law will be enforced by CBP, even though it may be more restrictive than federal regulations. We recommend that you check with the state government before you go abroad about their limitations on quantities allowed for personal importation and additional state taxes that might apply.

In brief, for both alcohol and tobacco, the quantities discussed in this booklet as being eligible for duty-free treatment may be included in your $800 (or $600 or $1,200) exemption, just as any other purchase would be. But unlike other kinds of merchandise, amounts beyond those discussed here as being duty-free are taxed, even if you have not exceeded, or even met, your personal exemption. For example, if your exemption is $800 and you bring back three liters of wine and nothing else, two of those liters will be dutiable. Federal law prohibits shipping alcoholic beverages by mail within the United States.

**$200 Exemption**
If you can not claim other exemptions because you have been out of the country more than once in a 30-day period or because you have not been out of the country for at least 48 hours, you may still bring back $200 worth of items free of duty and tax. As with the exemptions discussed earlier, these items must be for your personal or household use.

Each traveler is allowed this $200 exemption, but, unlike the other exemptions, family members may not group their exemptions. Thus, if Mr. and Mrs. Smith spend a night in Canada, each may bring back up to $200 worth of goods, but they would not be allowed a collective family exemption of $400.

Also, if you bring back more than $200 worth of dutiable items, or if any item is subject to duty or tax, the entire amount will be dutiable. For instance, you were out of the country for 36 hours and came back with a $300 piece of pottery. You could not deduct $200 from its value and pay duty on $100. The pottery would be dutiable for the full value of $300.

You may include with the $200 exemption your choice of the following: 50 cigarettes and 10 cigars and 150 milliliters (5 fl. oz.) of alcoholic beverages *or* 150 milliliters (5 fl. oz.) of perfume containing alcohol.

**Tips for frequent travelers**
If you cross the U.S. border into a foreign country and reenter the United States more than once in a short time, you may not want to use your personal exemption until you have returned to the United States for the last time. Here's why:

For example, if your personal exemption is $800 and you leave the United States, come back, leave again, and then come back again, all on the same trip, you can lose your exemption, since you have technically violated the "once every 30 days" rule. Therefore, if you know that your trip will involve these swing-backs, you can choose to save your personal exemption until the end of your trip.

As an example, you go to Canada, buy a liter of liquor, reenter the United States, then go back to Canada and buy $900 worth of merchandise and more liquor. You would probably want to save your $800 exemption for those final purchases and not use it for that first liter of liquor. In this case, on your first swing-back, simply tell the CBP officer that you want to pay duty on the liquor, even though you could bring it in duty free. If you imported the liquor duty free, you would lose the $800 exemption, because it is only available to you once every 30 days. In other words, all you have to do is tell the inspector that you want to pay duty the first (or second or third) time you come back to the United States if you know that you will be leaving again soon, buying goods or getting them as gifts, and then reentering before the end of 30 days. In such a case, you save money by waiting to use your exemption until the last time you reenter the United States.

**$600 Exemption**
If you are returning directly from any one of the following 28 Caribbean Basin or Andean countries, your exemption is $600:

| | | |
|---|---|---|
| Antigua and Barbuda | Ecuador | Panama |
| Aruba | El Salvador | Peru |
| Bahamas | Grenada | Saint Kitts and Nevis |
| Barbados | Guatemala | Saint Lucia |
| Belize | Guyana | Saint Vincent and the Grenadines |
| Bolivia | Haiti | Trinidad and Tobago |
| British Virgin Islands | Honduras | |
| Colombia | Jamaica | |

9

| Costa Rica | Montserrat |
| Dominica | Netherlands Antilles |
| Dominican Republic | Nicaragua |

You may include two liters of alcoholic beverages with this $600 exemption, as long as one of the liters was produced in one of the countries listed above (see section on **Unaccompanied Purchases from Insular Possessions and Caribbean Basin or Andean Countries**).

### Travel to More Than One Country

If you travel to a U.S. Insular possession and to one or more of the Caribbean Basin or Andean countries listed above, for example, on a Caribbean cruise, you may bring back $1,200 worth of items without paying duty, but only $600 worth of these items may come from the Caribbean Basin or Andean country(ies). Any amount beyond $600 will be dutiable unless you acquired it in one of the insular possessions.

For example, if you were to travel to the U.S. Virgin Islands and Jamaica, you would be allowed to bring back $1,200 worth of merchandise duty-free, as long as only $600 worth was acquired in Jamaica. Keeping track of where your purchases occurred and having the receipts ready to show the CBP officers will help speed your clearing customs.

If you travel to any of the Caribbean Basin or Andean countries listed above with the $600 personal exemption and to a country where the $800 personal exemption applies, you are entitled to the $800 personal exemption. However, no more than $600 of that may come from a Caribbean Basin or Andean country. For instance, if you travel to England and Trinidad on the same trip, you are entitled to the $800 exemption, but no more than $600 can be from Trinidad.

### $800 Exemption

If you are returning from anywhere *other* than a Caribbean Basin country or a U.S. insular possession (U.S. Virgin Islands, American Samoa, or Guam), you may bring back $800 worth of items duty-free, as long as you bring them with you This is called *accompanied baggage*.

Duty on items you mail home to yourself will be waived if the value is $200 or less. (See the sections on **Gifts and Sending Goods to the United States**.) Antiques that are at least 100 years old, and fine art may enter duty-free, but folk art and handicrafts are generally dutiable.

This means that, depending on what items you're bringing back from your trip, you could come home with more than $800 worth of gifts or purchases and still not be charged duty. For instance, say you received a $700 bracelet as a gift, and you bought a $40 hat and a $60 color print. Because these items total $800, you would not be charged duty, since you have not exceeded your duty-free exemption. If you had also bought a $500 painting on that trip, you could bring all $1300 worth of merchandise home without having to pay duty, because fine art is duty-free.

### $1,200 Exemption

If you return directly or indirectly from a U.S. insular possession (U.S. Virgin Islands, American Samoa, or Guam), you are allowed a $1,200 duty-free exemption. You may include 1,000

10

cigarettes as part of this exemption, but at least 800 of them must have been acquired in an insular possession. Only 200 cigarettes may have been acquired elsewhere. For example, if you were touring the South Pacific and you stopped in Tahiti, American Samoa, and other ports of call, you could bring back five cartons of cigarettes, but four of them would have to have been bought in American Samoa.

Similarly, you may include five liters of alcoholic beverages in your duty-free exemption, but one of them must be a product of an insular possession. Four may be products of other countries (see section on Unaccompanied Purchases from Insular Possessions and Caribbean Basin countries).

## GIFTS

Gifts you **bring back** from a trip abroad are considered to be for your personal use. They must be declared, but you may include them in your personal exemption. This includes gifts people gave you while you were out of the country, such as wedding or birthday presents, and gifts you have brought back for others. Gifts intended for business, promotional, or other commercial purposes may not be included in your duty-free exemption.

Gifts worth up to $100 may be **sent**, free of duty and tax, to friends and relatives in the United States, as long as the same person does not receive more than $100 worth of gifts in a single day. If the gifts are mailed or shipped from an insular possession, this amount is increased to $200. Unless returning to the United States from an Insular Posession, you don't have to declare gifts you sent while you were on your trip, since they won't be accompanying you.

By federal law, alcoholic beverages, tobacco products, and perfume containing alcohol and worth more than $5 retail may not be included in the gift exemption.

Gifts for more than one person may be shipped in the same package, called a *consolidated* gift package, if they are individually wrapped and labeled with each recipient's name. Here's how to wrap and label a consolidated gift package.

Be sure to mark the outermost wrapper with the:
- Words "**UNSOLICITED GIFT**" and the words "**CONSOLIDATED GIFT PACKAGE;**"
- Total value of the consolidated package;
- Recipients' names and
- Nature and value of the gifts inside. For example, tennis shoes, $50; shirt, $45; toy car, $15. For instance:

  To John Jones—one belt, $20; one box of candy, $5; one tie, $20.

  To Mary Smith—one skirt, $45; one belt, $15; one pair slacks, $30.

If any item in the consolidated gift parcel is subject to duty and tax or worth more than the $100 gift allowance, the *entire* package will be dutiable.

11

You, as a traveler, cannot send a "gift" package to yourself, and people traveling together cannot send "gifts" to each other. But there would be no reason to do that anyway, because the personal exemption for packages mailed from abroad is $200, which is twice as much as the gift exemption. If a package is subject to duty, the United States Postal Service will collect it from the addressee along with any postage and handling charges. The sender cannot prepay duty; The recipient must pay duty when a package is received in the United States.

For more information about mailing packages to the United States, please contact your nearest CBP office and ask for our brochure *International Mail Imports*.

## DUTY-FREE OR REDUCED RATES
### Items from Certain Countries
The United States gives duty preferences—that is, free or reduced rates—to **certain developing countries** under a trade program called the Generalized System of Preferences (GSP). Some products that would otherwise be dutiable are not when they come from a GSP country. For details on this program, as well as the complete list of GSP countries, please look for it on our web site.

Similarly, many products of **Caribbean and Andean countries** are exempt from duty under the Caribbean Basin Initiative, Caribbean Basin Trade Partnership Act, Andean Trade Preference Act and the Andean Trade Promotion and Drug Eradication Act. Many products of certain **sub-Saharan African countries** are exempt from duty under the African Growth and Opportunity Act. Most products of **Israel, Jordan, Chile and Singapore** may also enter the United States either free of duty or at a reduced rate under the U.S. free trade agreements with those countries. Check with cbp.gov for details on these programs.

The North American Free Trade Agreement (NAFTA) went into effect in 1994. If you are returning from **Canada or Mexico**, your goods are eligible for free or reduced duty rates if they were grown, manufactured, or produced in Canada or Mexico, as defined by the Act. Check with CBP or access the CBP web site for further details.

### Personal Belongings
Your personal belongings can be sent back to the United States duty-free if they are of U.S. origin and if they have not been altered or repaired while abroad. Personal belongings like worn clothing can be mailed home and will receive duty-free entry if you write the words "American Goods Returned" on the outside of the package.

### Household Effects
Household effects include furniture, carpets, paintings, tableware, stereos, linens, and similar household furnishings. Tools of trade, professional books, implements, and instruments that you've taken out of the United States will be duty-free when you return.

You may import household effects you acquired abroad duty-free if:
- You used them for at least one year while you were abroad.
- They are not intended for anyone else or for sale.

Clothing, jewelry, photography equipment, portable radios, and vehicles are considered personal effects and cannot be brought in duty-free as household effects. However, duty is usually waived on personal effects over 1 year of age. All vehicles are dutiable.

## INCREASED DUTY RATES
### Items from Certain Countries
The United States may impose a much higher than normal duty rate on products from certain countries. The United States Trade Representative is authorized to impose a different duty rate under what is know as its "301" authority. Currently, the United States has imposed a 100 percent rate of duty on certain products of Austria, Belgium, Denmark, Finland, France, The Federal Republic of Germany, Greece, Ireland, Italy, Luxembourg, the Netherlands, Portugal, Spain, Sweden and the Ukraine. If you should bring more of any of these products back with you than fall within your exemption or flat rate of duty, (see below) you will pay as much in duty as you paid for the product or products.

While most of the products listed are not the type of goods that travelers would purchase in sufficient quantities to exceed their exemption, diamonds from the Ukraine are subject to the 100 percent duty and might easily exceed the exemption amount.

For information on countries that may become subject to a higher than normal duty rate, check the Department of Commerce web site at www.commerce.gov.

## DETERMINING DUTY
*If you're bringing it back with you, you didn't have it when you left, and its total value is more than your exemption, it is subject to duty.*
The CBP officer will place the items that have the highest rate of duty under your exemption. Then, after subtracting your exemptions and the value of any duty-free items, a flat rate of duty will be charged on the next $1,000 worth of merchandise. Any dollar amount beyond this $1,000 will be dutiable at whatever duty rates apply. The flat rate of duty may only be used for items for your own use or for gifts. As with your exemption, you may use the flat-rate provision only once every 30 days. Special flat rates of duty apply to items made and acquired in Canada or Mexico. The flat rate of duty applies to purchases whether the items accompany you or are shipped.

The following is an example of the different rates if you acquire goods valued at $2,500 from various different places:

| Country | Total declared value | Personal exemption (duty-free) | Flat duty rate | Various duty rates |
|---|---|---|---|---|
| U.S. insular possessions | $2,500 | $1,200 | $1,000 at 1.5 percent | $300 |
| Caribbean Basin countries | $2,500 | $600 | $1,000 at 2 percent | $900 |
| Other countries or locations | $2,500 | $800 | $1,000 at 2 percent | $700 |

13

**The flat duty rate** will be charged on items that are dutiable but that cannot be included in your personal exemption, even if you have not exceeded the exemption. The best example of this is liquor: if you return from Europe with $200 worth of items, including two liters of liquor. One liter will be duty-free under your exemption; the other will be dutiable at 2 percent, plus any Internal Revenue Service tax.

Family members who live in the same household and return to the United States together can combine their items to take advantage of a combined flat duty rate, no matter which family member owns a given item. The combined value of merchandise subject to a flat duty rate for a family of four traveling together would be $4,000.

## PAYING DUTY
If you owe duty, you must pay it when you arrive in the United States. You can pay it in any of the following ways:
- U.S. currency. Foreign currency is not acceptable.
- Personal check in the exact amount, drawn on a U.S. bank, made payable to U.S. Customs and Border Protection. You must present identification, such as a passport or driver's license. CBP does not accept checks bearing second-party endorsements.
- Government check, money order, or traveler's check if the amount does not exceed the duty owed by more than $50.
- In some locations, you may pay duty with credit cards, either MasterCard® or VISA®.

## SENDING GOODS TO THE UNITED STATES
Items mailed to the United States are subject to duty when they arrive. They cannot be included in your exemption, and duty on them cannot be prepaid.

If you are mailing merchandise from the U.S. insular possessions or from Caribbean Basin countries, you should follow different procedures than if you were mailing packages from any other country. These special procedures are described in the section on **Unaccompanied Purchases**.

In addition to duty and, at times, taxes, CBP collects a user fee on dutiable packages. Those three fees are the only fees CBP collects; any additional charges on shipments are for handling by freight forwarders, customs brokers, and couriers or for other delivery services. Some carriers may add other clearance charges that have nothing to do with customs duties.

**Note:** Customs brokers are not CBP employees. Broker fees are based on the amount of work they do, not on the value of the items you ship. Travelers sometimes find the fee to be high in relation to the value of the shipment. The most cost-effective option is to take your purchases with you if at all possible.

## UNACCOMPANIED BAGGAGE
Unaccompanied baggage is anything you do not bring back with you. These may be items that were with you when you left the United States or items that you acquired (received by any means) while outside the United States. In general, unaccompanied baggage falls into the following three categories.

14

**U.S. Mail Shipments**

Shipping through the U.S. mail, including parcel post, is a cost-efficient way to send items to the United States. The Postal Service sends all foreign mail shipments to CBP for examination. CBP officers then return packages that do not require duty to the Postal Service, which sends them to a local post office for delivery. The local post office delivers them without charging any additional postage, handling costs, or other fees.

Packages that contain fruits, vegetables, meat or other items of agricultural interest are inspected to ensure that items meet the requirements of the U.S. Department of Agriculture, Animal Plant Health Inspection Service, Plant Protection and Quarantine. The CBP agriculture specialist encloses a Mail Interception Notice, PPQ Form 287, to document any agriculture items that are removed from the package. The package is returned to the U.S. Postal Service for delivery. Information on importing agriculture items is located on the U.S. Department of Agriculture Website at www.aphis.usda.gov.

If the package does require payment of duty, CBP attaches a form called a *mail entry*, CBP Form3419Alt, which indicates how much duty is owed and charges a $5 processing fee as well. When the post office delivers the package, it will also charge a small handling fee.

Commercial goods—goods intended for resale—may have special entry requirements. Such goods may require a *formal entry* in order to be admitted into the United States. Formal entries are more complicated and require more paperwork than informal entries. Generally, informal entries are personal packages or commercial items worth less than $2,000. CBP employees may not prepare formal entries for you; only you or a licensed customs broker may prepare one. For more information on this subject, please see the brochure ***U.S. Import Requirements***.

If you believe you have been charged an incorrect amount of duty on a package mailed from abroad, you may file a protest with CBP. You can do this in one of two ways. You can accept the package, pay the duty, and write a letter explaining why you think the amount was incorrect. You should include with your letter the yellow copy of the mail entry (CBP Form3419Alt). Send the letter and the form to the CBP office that issued the mail entry, located on the lower left-hand corner of the form.

The other way to protest duty is to refuse delivery of the package. Then within five days, send your protest letter to the post office where the package is being held. The post office will forward your letter to CBP and will hold your package until the protest is resolved.

For additional information on international mailing, please see the brochure ***International Mail Imports***, or visit the CBP web site at www.cbp.gov.

**Express Shipments**

Packages may be sent to the United States by private-sector courier or delivery service from anywhere in the world. The express company usually takes care of clearing your merchandise through CBP and charges a fee for its service. Some travelers have found this fee to be higher than they expected.

**Freight Shipments**

Cargo, whether duty is owed on it or not, must clear CBP at the first port of arrival in the United States. If you choose, you may have your freight sent, while it is still in CBP custody, to another port for clearance. This is called *forwarding freight in bond*. You, or someone you appoint to act for you, are responsible for arranging to clear your merchandise through CBP or for having it forwarded to another port.

Frequently, a freight forwarder in a foreign country will take care of these arrangements, including hiring a customs broker in the United States to clear the merchandise through CBP. Whenever a third party handles the clearing and forwarding of your merchandise, that party charges a fee for its services. This fee is not a CBP charge.

When a foreign seller entrusts a shipment to a broker or agent in the United States, that seller usually pays only enough freight to have the shipment delivered to the first port of arrival in the United States. This means that you, the buyer, will have to pay additional inland transportation, or *freight forwarding* charges, plus broker fees, insurance, and possibly other charges.

If it is not possible for you to secure release of your goods yourself, another person may act on your behalf to clear them through CBP. You may do this as long as your merchandise consists of a single, noncommercial shipment (not intended for resale) that does not require a formal entry. In other words, if the merchandise is worth less than $2,000 and you must give the person a letter that authorizes that person to act as your unpaid agent.

Once you have done this, that person may fill out the CBP declaration and complete the entry process for you. Your letter authorizing the person to act in your behalf should be addressed to the "Officer in Charge of CBP" at the port of entry, and the person should bring the letter with them when they go to clear your package.

CBP will not notify you when your shipment arrives, as this is the responsibility of your carrier. If your goods are not cleared within 15 days of arrival you could incur expensive storage fees.

## UNACCOMPANIED PURCHASES FROM INSULAR POSSESSIONS AND CARIBBEAN BASIN AND ANDEAN COUNTRIES

Unaccompanied purchases are goods you bought on a trip that are being mailed or shipped to you in the United States. In other words, you are not carrying the goods with you when you return. If your unaccompanied purchases are from an insular possession or a Caribbean Basin country and are being sent directly from those locations to the United States, you may enter them as follows:

- Up to $1,200 in goods will be duty-free under your personal exemption if the merchandise is from an insular possession.
- Up to $600 in goods will be duty-free if it is from a Caribbean Basin and Andean country.
- An additional $1,000 in goods will be dutiable at a flat rate if they are from an insular possession, or from a Caribbean Basin country. (See chart under **Paying Duty**.)

16

- If you are sending more than $2,200 from an insular possession or more than $1,600 from a Caribbean Basin country, the duty rates in the Harmonized Tariff Schedules of the United States will apply. The Harmonized Tariff Schedule describes different rates of duty for different commodities. For example, linen tablecloths will not have the same duty rates as handicrafts or plastic toy trucks.

To take advantage of the duty-free exemption for unaccompanied tourist purchases from an insular possession or a Caribbean country:

**Step 1.** At place and time of purchase, ask your merchant to hold your item until you send him or her a copy of CBP Form 255 (Declaration of Unaccompanied Articles), which must be affixed to the package when it is sent.

**Step 2.** (a) On your declaration form (CBP Form 6059B), list everything you acquired on your trip, except the things you already sent home as gifts; (b) check off on the declaration those items you are *not* bringing with you--that is, the unaccompanied items. You must also complete a *separate Declaration of Unaccompanied Articles form (CBP Form 255) for each package or container that will be sent to you after you arrive in the United States.* This form may be available where you make your purchase. If not, ask a CBP officer for one when you clear the customs area.

**Step 3.** When you return to the United States, the CBP officer will: (a) collect duty and tax on the dutiable goods you have brought with you; (b) check to see that your list of unaccompanied articles, which you indicated on the CBP Form 255, agrees with your sales slips, invoices; (c) validate the CBP Form 255 as to whether your purchases are duty-free under your personal exemption ($1,200 or $600) or whether they are subject to a flat rate of duty. Two copies of this three-part CBP Form 255 will be returned to you.

**Step 4.** Send the yellow copy of the CBP Form 255 to the foreign shopkeeper or vendor holding your purchase, and keep the other copy for your records. (When you make your purchase, it is very important to *tell the merchant not to send your package to the United States until he or she gets the copy of form CBP Form 255.*)

**Step 5.** When the merchant gets your CBP Form 255, he or she will put it in an envelope and attach the envelope securely to the outside wrapping of the package or container. The merchant must also mark each package "Unaccompanied Purchase." *Please remember that each package or container must have its own CBP Form 255 attached.* This is the most important step to follow in order to gain the benefits allowed under this procedure.

**Step 6.** If your package has been mailed, the U.S. Postal Service will deliver it after it clears CBP. If you owe duty, the Postal Service will collect the duty along with a postal handling fee. If a freight service transports your package, they will notify you of its arrival so you can go to the CBP office holding the shipment and complete the entry procedure. If you owe duty or tax, you can pay it at that time. You could also hire a customs broker to do this for you. However, be aware that brokers are not CBP employees, and they charge fees for their services.

17

**Storage Charges:** If freight or express packages from your trip are delivered before you return and you have not made arrangements to pick them up, CBP will authorize their placement in storage after 15 days. This storage will be at your risk and expense. If they are not claimed within six months, the items will be sold at auction.

Packages sent by mail and not claimed within 30 days will be returned to the sender unless the amount of duty is being protested.

## DUTY-FREE SHOPS

The term "duty-free" shops confuse many travelers. Travelers often think that what they buy in duty-free shops will not be dutiable when they return home and clear customs. But this is not true. Articles sold in a duty-free shop are free of duty and taxes *only* for the country in which that shop is located. So if your purchases exceed your personal exemption, items you bought in a duty-free shop, whether in the United States or abroad, will almost certainly be subject to duty.

Articles sold in foreign duty free shops are subject to U.S. duty and other restrictions, for example, only one liter of liquor is duty free, but you may include these items in your personal exemption. Articles sold in duty free shops are meant to be exported. They are not meant to be used, worn, eaten, drunk, etc., in the country where you purchased them. Articles purchased in American duty-free shops are also subject to U.S. duty if you bring them into the United States. Therefore, if you buy liquor in a duty-free shop in New York before entering Canada and then bring it back into the United States, it may be subject to duty and Internal Revenue Service tax.

## PROHIBITED AND RESTRICTED ITEMS

CBP has been entrusted with enforcing some 400 laws for 40 other government agencies, such as the U.S. Fish and Wildlife Service and the U.S. Department of Agriculture. These other agencies have a need to know what people bring into the United States, but they are not always at ports of entry, guarding our borders. CBP officers are *always* at ports of entry—their primary mission is to safeguard America's borders.

The products we need to prevent from entering the United States are those that would injure community health, public safety, American workers, children, or domestic plant and animal life, or those that would defeat our national political interests. Sometimes the products that cause injury, or have the potential to do so, may seem fairly innocent. But, as you will see from the material that follows, appearances can be deceiving.

Before you leave for your trip abroad, you might want to talk to CBP about the items you plan to bring back to be sure they're not prohibited or restricted. *Prohibited* means the item is forbidden by law to enter the United States. Examples of prohibited items are dangerous toys, cars that don't protect their occupants in a crash, or illegal substances like absinthe and Rohypnol. *Restricted* means that special licenses or permits are required from a federal agency before the item is allowed to enter the United States. Examples of restricted items include firearms, certain fruits, vegetables, and some animals.

### Absinthe (Alcohol)

The importation of Absinthe and any other liquors or liqueurs that contain Artemisia absinthium

is prohibited.

**Automobiles**
Automobiles imported into the United States must meet the fuel-emission requirements of the Environmental Protection Agency (EPA) and the safety, bumper, and theft-prevention standards of the U.S. Department of Transportation (DOT). Trying to import a car that doesn't meet all the requirements can be a frustrating experience for the following reasons. (See the CBP brochure, *Importing a Car*)

Almost all cars, vans, sport utility vehicles, and so on that are bought in foreign countries must be modified to meet American standards except most late model vehicles from Canada. Passenger vehicles that are imported on the condition that they be modified must be exported or destroyed if they are not modified acceptably. Also under these circumstances, the vehicle could require a bond upon entry until the conditions for admission have been met.

And even if the car does meet all federal standards, it might be subject to additional EPA requirements, depending on what countries it was driven in. You are strongly encouraged to contact EPA and DOT before importing a car.

Information on importing vehicles can be obtained from visiting the Environmental Protection Agency web site at www.epa.gov, or by writing to Attn.: 6405J, Washington, DC 20460, or by telephone at 202.564.9240, for EPA forms call 202.564.9660. You may also contact the U.S. Department of Transportation, Office of Vehicle Safety Compliance (NEF 32) NHTSA, Washington, DC 20590, by telephone at 1.800.424.9393, or by visiting the DOT web site at www.nhtsa.dot.gov.

Copies of the brochure *Importing or Exporting a Car* can be obtained by writing to U.S. Customs and Border Protection, P.O. Box 7407, Washington, DC 20044; or visiting the CBP web site at www.cbp.gov. The EPA *Automotive Imports Fact Manual* can be obtained by writing to the Environmental Protection Agency, Washington, DC 20460; or by visiting www.epa.gov.

Cars being brought into the United States temporarily, by nonresidents, (for less than one year) are exempt from these restrictions. It is illegal to bring a vehicle into the United States and sell it if it was not formally entered on a CBP Form-7501.

**Biologicals**
You may need a U.S. Department of Agriculture permit to import biological specimens including bacterial cultures, culture medium, excretions, fungi, arthropods, mollusks, tissues of livestock, birds, plants, viruses, vectors for research, biological or pharmaceutical use. Permit requirements are located under "Permits" on the USDA Website at www.aphis.usda.gov. For some permits you may have to contact the Centers for Disease Control at www.cdc.gov.

**Ceramic Tableware**
Although ceramic tableware is not prohibited or restricted, you should know that such tableware made in foreign countries may contain dangerous levels of lead in the glaze, which can seep into foods and beverages. The U.S. Food and Drug Administration recommends that if you buy

ceramic tableware abroad—especially in Mexico, China, Hong Kong, or India—you have it tested for lead release when you return, or use it for decorative purposes only.

**Cultural Artifacts and Cultural Property (Art/Artifacts)**
Most countries have laws that protect their cultural property; art/artifacts/antiquities; archaeological and ethnological material are also terms that are used. Such laws include export controls and/or national ownership of cultural property. Even if purchased from a business in the country of origin or in another country, legal ownership of such artifacts may be in question if brought into the United States. Therefore, although they do not necessarily confer owner ship, you must have documents such as export permits and receipts when importing such items into the United States.

While foreign laws may not be enforceable in the United States, they can cause certain U.S. laws to be invoked. For example, under the U.S. National Stolen Property Act, one cannot have legal title to art/artifacts/antiquities that were stolen—no matter how many times such items may have changed hands. Articles of stolen cultural property from museums or from religious or secular public monuments originating in any of the countries party to the 1970 UNESCO Convention specifically may not be imported into the United States.

U.S. law may also restrict the importation of specific categories of art/artifacts/antiquities. For example, U.S. laws restricts the importation of: 1) Any pre-Columbian monumental and architectural sculpture and murals from Central and South American countries; 2) Native American artifacts from Canada; Mayan pre-Columbian archaeological objects from Guatemala; pre-Columbian archaeological objects from El Salvador and Peru; archaeological objects like terracotta statues) from Mali; Colonial period objects such as paintings and ritual objects from Peru; 3) Byzantine period ritual and ecclesiastic objects such as icons from Cyprus; and 4) Khmer stone archaeological sculpture from Cambodia.

Importation of items such as those listed above is permitted only when an export permit issued by the country of origin, where such items were first found accompanies them. Purveyors of such items have been known to offer phony export certificates.

As additional U.S. import restrictions may be imposed in response to requests from other countries, it is wise for prospective purchasers to visit the State Department cultural property web site. This web site also has images representative of the categories of cultural property for which there are specific U.S. import restrictions.

Merchandise determined to be Iraqi cultural property or other items of archaeological, historical, cultural, rare scientific and religious importance illegally removed from the Iraq National Museum, the National Library and other locations in Iraq, since August 6, 1990, are also prohibited from importation.

**Dog and Cat Fur**
It is illegal in the United States to import, export, distribute, transport, manufacture, or sell products containing dog or cat fur in the United States. As of November 9, 2000, the Dog and Cat Protection Act of 2000 calls for the seizure and forfeiture of each item containing dog or cat

fur.

The Act provides that any person who violates any provision may be assessed a civil penalty of not more than $10,000 for each separate knowing and intentional violation, $5,000 for each separate gross negligent violation, or $3,000 for each separate negligent violation.

**Drug Paraphernalia**
It is illegal to bring drug paraphernalia into the United States unless they have been prescribed for authentic medical conditions such as diabetes. CBP will seize any illegal drug paraphernalia. Law prohibits the importation, exportation, manufacture, sale, or transportation of drug paraphernalia law. If you are convicted of any of these offenses, you will be subject to fines and imprisonment.

**Firearms**
The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) regulates and restricts firearms and ammunition; and approves all import transactions involving weapons and ammunition. If you want to import or export weapons or ammunition, you must do so through a licensed importer, dealer, or manufacturer. Also, if the National Firearms Act prohibits certain weapons, ammunition, or similar devices from coming into the country, you will not be able to import them unless the ATF provides you with written authorization to do so.

You do not need an ATF permit if you can demonstrate that you are returning with the *same* firearms or ammunition that you took out of the United States. To prevent problems when returning, you should register your firearms and related equipment by taking them to any CBP office before you leave the United States. The CBP officer will register them on the same CBP Form-4457 used to register cameras or computers. (See the section on **Register Items Before You Leave the United States**).

For further information about importing weapons, contact the Bureau of Alcohol, Tobacco, Firearms and Explosives, U.S. Department of Justice, Washington, DC 20226; or call 202.927.8320; or visit www.atf.gov.

Many countries will not allow you to enter with a firearm even if you are only traveling through the country on the way to your final destination. If you plan to take your firearms or ammunition to another country, you should contact officials at that country's embassy to learn about its regulations.

**Fish and Wildlife**
Fish, wildlife, and products made from them are subject to import and export restrictions, prohibitions, permits or certificates, and quarantine requirements. We recommend that you contact the U.S. Fish and Wildlife Service before you depart if you plan to import or export any of the following:
- Wild birds, land or marine mammals, reptiles, fish, shellfish, mollusks, or invertebrates.
- Any part or product of the above, such as skins, tusks, bone, feathers, or eggs.
- Products or articles manufactured from wildlife or fish.

Endangered species of wildlife, and products made from them, generally may not be imported or exported. You will need a permit from the U.S. Fish and Wildlife Service to import virtually all types of ivory, unless it is from a warthog. The U.S. Fish and Wildlife Service has so many restrictions and prohibitions on various kinds of ivory—Asian elephant, African elephant, whale, rhinoceros, seal, pre-Endangered Species Act, post-CITES (Convention on International Trade in Endangered Species), and many others—that they urge you to contact them before you even *think* of acquiring ivory in a foreign country. You may contact them at 800.358.2104.

You may import an object made of ivory if it is an antique. To be an antique the ivory must be at least 100 years old. You will need documentation that authenticates the age of the ivory. You may import other antiques containing wildlife parts with the same condition, but they must be accompanied by documentation proving they are at least 100 years old. Certain other requirements for antiques may apply.

If you plan to buy such things as tortoiseshell jewelry, or articles made from whalebone, ivory, skins, or fur, contact the U.S. Fish and Wildlife Service, Division of Law Enforcement, P.O. Box 3247, Arlington, VA 22203-3247, or call 800.358.2104 or visit www.fws.gov. Hunters can get information on the limitations for importing and exporting migratory game birds from this office as well. Ask for their pamphlet, *Facts About Federal Wildlife Laws*.

The U.S. Fish and Wildlife Service has designated specific ports of entry to handle fish and wildlife entries. If you plan to import anything discussed in this section, please contact CBP. CBP will tell you about designated ports and send you the brochure *Pets and Wildlife*, which describes the regulations CBP enforces for all agencies that oversee the importation of animals.

Some states have fish and wildlife laws and regulations that are stricter than federal laws and regulations. If you are returning to such a state, be aware that the stricter state laws and regulations have priority. Similarly, the federal government does not allow you to import wild animals into the United States that were taken, killed, sold, possessed, or exported from another country if any of these acts violated foreign laws.

**Food Products (Prepared)**
You may bring bakery items and certain cheeses into the United States. The APHIS web site features a Travelers Tips section and Game and Hunting Trophies section that offers extensive information about bringing food and other products into the country. Many prepared foods are admissible. However, almost anything containing meat products, such as bouillon, soup mixes, etc., is not admissible. As a general rule, condiments, vinegars, oils, packaged spices, honey, coffee and tea are admissible. Because rice can often harbor insects, it is best to avoid bringing it into the United States.

Some imported foods are also subject to requirements of the U.S. Food and Drug Administration.

*Prior Notice for Food Importation*
The Public Health Security and Bioterrorism Preparedness and Response Act of 2002 (Bioterrorism Act or BTA), Public Law 107-188, established the requirement that food items, imported (or offered for import) for commercial use, including hand-carried quantities, be

22

properly reported to the U.S. Food and Drug Administration (FDA) prior to arrival of those items in the United States. The FDA prior notification timeframes (by transport mode) are two hours by land, four hours by rail or air, eight hours by vessel and prior to the "time of mailing" for international mail.

Food that was made by an individual in his/her personal residence, or food purchased by an individual from a vendor that is sent by that individual as a personal gift (for non-business reasons) to someone in the United States is not subject to BTA requirements. However, food that is sent to an individual in the U.S. by a business is subject to special requirements of the Food and Drug Administration. For instance, if you go to a food shop in England and buy a gift basket, then take it to the post office or a courier service to send to a friend, the shipment is not subject to BTA requirements. But if you go to that same shop and ask them to send the gift basket for you, the shipment is subject to BTA requirements, and the vendor will have to file Prior Notice. Many travelers are finding that vendors will not ship food directly to U.S. residents because the reporting requirements can be time-consuming to complete.

In general, failure to provide complete, timely and accurate prior notice for BTA regulated items, can result in refusal of admission of the merchandise, movement of the goods to an FDA registered facility (at importer expense) and/or civil monetary penalty liabilities for any party that was involved in the import transaction.

For full details regarding the latest FDA BTA requirements, including those food items exempt from these requirements, access the FDA Website at www.fda.gov/oc/bioterrorism/bioact.html.

**Fruits and Vegetables**
Bringing fruits and vegetables can be complicated. For instance, consider the apple you bought in the foreign airport just before boarding and then did not eat? Whether or not CBP will allow the apple into the United States depends on where you got it and where you are going after you arrive in the United States. The same would be true for those magnificent Mediterranean tomatoes. Fresh fruits and vegetables can carry plant pests or diseases into the United States.

One good example of problems imported fruits and vegetables can cause is the "Med" fly outbreak during the 1980's, The outbreak cost the state of California and the Federal Government approximately $100 million to get rid of this pest. The cause of the outbreak was one traveler who brought home one contaminated piece of fruit. It is best not to bring fresh fruits or vegetables into the United States. However, if you plan to, contact either CBP or check the Travelers Information section on the USDA-APHIS web site for a general approved list on items that need a permit.

**Game and Hunting Trophies**
If you plan to import game or a hunting trophy, please contact the U.S. Fish and Wildlife Service before you leave at 800.358.2104. Currently, 14 ports of entry are designated to handle game and trophies; other ports must get approval from the U.S. Fish and Wildlife Service to clear your entry.

23

Depending on the species you bring back, you might need a permit from the country where the animal was harvested. Regardless of the species, you are required to fill out a Fish and Wildlife Form 3-177, Declaration for Importation or Exportation.

Trophies may also be subject to inspection by CBP for sanitary purposes. General guidelines for importing trophies can be found on APHIS web site under Travelers Information; or by writing to USDA, APHIS, VS, NCIE Products Program, 4700 River Road, Unit 40, Riverdale, MD 20737-1231; or by calling 301.734.3277.

Also, federal regulations do not allow the importation of any species into a state with fish or wildlife laws that are more restrictive than federal laws. If foreign laws were violated in the taking, sale, possession, or export to the United States of wild animals, those animals will not be allowed entry into the United States.

**Warning:** There are many regulations, enforced by various agencies, governing the importation of animals and animal parts. Failure to comply with them could result in time-consuming delays in clearing your trophy through CBP. You should always call for guidance before you depart.

### Gold
Gold coins, medals, and bullion, formerly prohibited, may be brought into the United States. However, under regulations administered by the Office of Foreign Assets Control, such items originating in or brought from Cuba, Iran, Iraq, Libya, Serbia, and Sudan are prohibited entry. Copies of gold coins are prohibited if not properly marked by country of issuance.

### Meats, Livestock, and Poultry
The regulations governing meat and meat products are very strict. You may not import fresh, dried, or canned meats or meat products from most foreign countries into the United States. Also, you may not import food products that have been prepared with meat.

The regulations on importing meat and meat products change frequently because they are based on disease outbreaks in different areas of the world. APHIS, which regulates meats and meat products as well as fruits and vegetables, invites you to contact them for more information on importing meats. You may write to USDA-APHIS Veterinary Services National Center for Import/Export (NCIE), 4700 River Road, Unit 40, Riverdale, MD 20737-1231; or call 301.734.7830.

### Medication
***Rule of thumb: When you go abroad, take the medicines you will need, no more, no less.***
Narcotics and certain other drugs with a high potential for abuse—Rohypnol, GHB, and Fen-Phen, to name a few — may not be brought into the United States, and there are severe penalties for trying to do so. If you need medicines that contain potentially addictive drugs or narcotics (e.g., some cough medicines, tranquilizers, sleeping pills, antidepressants, or stimulants), do the following:
- Declare all drugs, medicinals, and similar products to the appropriate CBP official.
- Carry such substances in their original containers.
- Carry only the quantity of such substances that a person with that condition (e.g., chronic

pain) would normally carry for his/her personal use.
- Carry a prescription or written statement from your physician that the substances are being used under a doctor's supervision and that they are necessary for your physical well being while traveling.

U.S. residents entering the United States at international land borders, who are carrying a validly obtained controlled substance (other than narcotics such as marijuana, cocaine, heroin, or LSD), are subject to certain additional requirements. If a U.S. resident wants to bring in a controlled substance (other than narcotics such as marijuana, cocaine, heroin, or LSD) but does not have a prescription for the substance issued by a U.S.-licensed practitioner (e.g., physician, dentist, etc.) who is registered with, and authorized by, the Drug Enforcement Administration (DEA) to prescribe the medication, the individual may not import more than 50 dosage units of the medication into the United States. If the U.S. resident has a prescription for the controlled substance issued by a DEA registrant, more than 50 dosage units may be imported by that person, provided all other legal requirements are met.

Please note that only medications that can be legally prescribed in the United States may be imported for personal use. Be aware that possession of certain substances may also violate state laws. As a general rule, the FDA does not allow the importation of prescription drugs that were purchased outside the United States. Please see their Website for information about the enforcement policy for personal use quantities.

**Warning:** The U.S. Food and Drug Administration (FDA) prohibits the importation, by mail or in person, of fraudulent prescription and nonprescription drugs and medical devices. These include unorthodox "cures" for such medical conditions as cancer, AIDS, arthritis, or multiple sclerosis. Although such drugs or devices may be legal elsewhere, if the FDA has not approved them for use in the United States, they may not legally enter the country and will be confiscated, even if they were obtained under a foreign physician's prescription.

For specifics about importing controlled substances, call 202.307.2414. For additional information about traveling with medication, contact your nearest FDA office or write to the U.S. Food and Drug Administration, Division of Import Operations and Policy, Room 12-8 (HFC-170), 5600 Fishers Lane, Rockville, MD 20857.

**Merchandise from Embargoed Countries**
Generally, you may not bring in any goods from the following (if not followed by an asterisk or where specified that the embargo only applies to diamonds): Cuba, Iran*, Iraq*, Serbia and Montenegro*, North Korea*, Burma (Myanmar), Angola, Liberia and Sierra Leone (diamonds only) and Sudan. The Office of Foreign Assets Control (OFAC) of the U.S. Department of Treasury enforces this ban.

You may, however, may bring in *information and informational materials*—books, magazines, films, posters, photographs, microfilms, tapes, CDs, records, works of art, etc. Blank tapes and blank CDs are not informational materials.

If you want to import merchandise from any of these countries, you will first need a specific license from the Office of Foreign Assets Control. Such licenses are rarely granted.

There are strictly enforced restrictions on travel to these countries. Therefore, before making plans to visit any of the countries on this list, you should write to the Office of Foreign Assets Control, Department of the Treasury, Washington, DC 20220, or visit their web site at www.treas.gov/ofac.

*The embargo on Iranian goods has been revised to allow the importation of food stuffs intended for human consumption, carpets and other textile floor coverings. Please check with your local port for further details.

* Only certain Iraqi cultural property or other items of archaeological, historical/cultural, rare scientific and religious importance illegally removed from the Iraq National Museum, the National Library and other locations in Iraq is prohibited.

*There is a general lifting of the embargo on Serbia and Montenegro (exception relates to certain "Specially Designated Nationals" and "Blocked Persons" involving transactions prior to January 19, 2000. For more information visit OFAC web site at http://www.treas.gov/offices/eotffc/ofac/.

*The importation of merchandise from North Korea requires a letter of approval issued by the OFAC.

**Pets**
If you plan to take your pet abroad or import one on your return, please get a copy of the CBP brochure *Pets and Wildlife*. You should also check with state, county, and local authorities to learn if their restrictions and prohibitions on pets are stricter than federal requirements.

Importing animals is closely regulated for public health reasons and also for the well being of the animals. There are restrictions and prohibitions on bringing many species into the United States.

**Cats** must be free of evidence of diseases communicable to humans when they are examined at the port of entry. If the cat does not seem to be in good health, the owner may have to pay for an additional examination by a licensed veterinarian. As a rule, both cats and dogs must be free of fleas and ticks, and have a health certificate that was issued by the country of residence.

**Dogs** must also be free of evidence of diseases that could be communicable to humans. Puppies must be confined at a place of the owner's choosing, which can be a private residence, until they are three months old and then they must be vaccinated against rabies. The puppy will then have to stay in confinement for another 30 days following the vaccination.

Dogs older than three months must get a rabies vaccination at least 30 days before they come to the United States and must be accompanied by a valid rabies vaccination certificate if coming from a country that is not rabies-free. This certificate should identify the dog, show the date of vaccination, the date it expires (there are one-year and three-year vaccinations), and be signed by

a licensed veterinarian. If the certificate does not have an expiration date, CBP will accept it as long as the dog was vaccinated 12 months or less before coming to the United States. Dogs coming from rabies-free countries do not have to be vaccinated.

**Birds** may be imported as pets as long as you comply with APHIS and U.S. Fish and Wildlife requirements. These requirements may include quarantining the birds at one of the three APHIS' Animal Import Centers at your expense. You must make advance reservations at the quarantine facility. If you intend to import a bird, call APHIS' National Center for Import and Export at 301.734.8364 for more information.

In any case, birds may only be imported through ports of entry where a USDA port veterinarian is on duty; and you must make arrangements in advance to have the bird examined by a USDA port veterinarian at the first U.S. port of entry. There is a minimum user fee for this service of $23.00 based on an hourly rate of $76/hour. For more information, contact the USDA, APHIS, Veterinary Services, National Center for Import and Export (NCIE), 4700 River Road, Riverdale, MD 20737; call 301.734.8364; or visit the APHIS web site at www.aphis.usda.gov/travel/pets.html.

Other common pets such as rabbits, ferrets, hamsters, gerbils, and guinea pigs may be imported if they are in good health. The importation of reptiles and invertebrates is restricted, please contact the U.S. Fish and Wildlife Service for additional guidance. Most species of snails are not admissible. Contact APHIS for additional information.

**Plants and seeds**
Some plants, cuttings, seeds that are capable of propagation, unprocessed plant products, and certain endangered species are allowed into the United States but require import permits; some are prohibited entirely. Threatened or endangered species that are permitted must have export permits from the country of origin.

Every single plant or plant product including handicraft items made with straw, must be declared to the CBP officer and must be presented for CBP inspection, no matter how free of pests it appears to be. For information write to USDA-APHIS-PPQ, 4700 River Road, Riverdale, MD 20737; call 301.734.8645; or visit the APHIS web site at www.aphis.usda.gov/travel/.

**Soil**
Soil is considered the loose surface material of the earth in which plants, trees, and scrubs grow. In most cases, the soil consists of disintegrated rock with an admixture of organic material and soluble salts. Soil is prohibited entry unless accompanied by an import permit. Soil must be declared and the permit must be verified.

**Textiles and Clothing**
In general, there is no limit to how much fabric and clothing you can bring back as long as it is for your personal use or as gifts. If you have exceeded your personal exemption, you may have to pay duty on the items Unaccompanied personal shipments (packages that are mailed or shipped), however, *may* be subject to limitations on amount.

27

On January 1, 2005, quotas for all countries that are part of the World Trade Organization (WTO) will be eliminated. There are still some countries, like Vietnam, that are not part of the WTO that have quotas in place for commercial shipments. These countries may require an additional document called a "visa" accompany the shipment.

China could have limits on particular garments called "safeguards." It is recommended that you contact a CBP import specialist in your area or at the port where you plan to import to determine what countries are subject to quotas and what products from China are subject to safeguards.

There may be additional documentation required for textiles from other countries such as the African countries that require a visa to be placed on a commercial invoice in order to get duty-free treatment. There may also be a certificate of eligibility document requirement to get duty-free treatment under many of the free trade agreements that are negotiated between the United States and the foreign government. These are not admissibility documents, but allow you to import your garments duty-free, provided certain conditions are met.

## Trademarked and Copyrighted Articles

CBP enforces laws relating to the protection of trademarks and copyrights. Articles that infringe a federally registered trademark or copyright or copyright protected by the Berne Convention for the Protection of Literary and Artistic Works are subject to detention and/or seizure. Infringing articles may consist of articles that use a protected right without the authorization of the trademark or copyright owner or articles that copy or simulate a protected right.

Articles bearing marks that are counterfeit or inappropriately using a federally registered trademark are subject to seizure and forfeiture.The importation of articles intended for sale or public distribution bearing counterfeit marks may subject an individual to a civil fine if the registered trademark has also been recorded with CBP. Articles bearing marks that are confusingly similar to a CBP recorded registered trademark , and restricted gray market articles (goods bearing genuine marks not intended for U.S. importation for which CBP granted gray market protection) are subject to detention and seizure.

However, travelers arriving in the United States may be permitted an exemption and allowed to import one article of each type, which must accompany the person, bearing a counterfeit, confusingly similar or restricted gray market trademark, provided that the article is for personal use and is not for sale.

This exemption may be granted not more than once every 30 days. The arriving passenger may retain one article of each type accompanying the person. For example, an arriving person who has three purses, whether each bears a different infringing trademark, or whether all three bear the same infringing trademark, is permitted only one purse. If the article imported under the personal exemption provision is sold within one year after the date of importation, the article or its value is subject to forfeiture.

In regard to copyright infringement, articles that are determined by CBP to be clearly piratical of a protected copyright, i.e., unauthorized articles that are substantially similar to a material protected by a copyright, are subject to seizure. A personal use exemption for articles, similar to

that described above also applies to copyrighted articles for the personal, non-commercial use of the importer and are not for sale or distribution.

You may bring back genuine trademarked and copyrighted articles (subject to duties). Products subject to copyright protection most commonly imported include software on CD-ROMs, sound recordings, toys, stuffed animals, clothing with cartoon characters, videotapes, DVDs, music CDs, and books. Products subject to trademark protection most commonly imported include handbags and accessories, and clothing.

## MONEY AND OTHER MONETARY INSTRUMENTS
You may bring into or take out of the country, including by mail, as much money as you wish. However, if it is more than $10,000, you will need to report it to CBP. Ask the CBP officer for the Currency Reporting Form (FinCen 105). The penalties for non-compliance can be severe.

"Money" means monetary instruments and includes U.S. or foreign coins currently in circulation, currency, traveler's checks in any form, money orders, and negotiable instruments or investment securities in bearer form.

## PHOTOGRAPHIC FILM
CBP will not examine film you bought abroad and are bringing back unless the CBP officer has reason to believe it contains prohibited material, such as child pornography.

You will not be charged duty on film bought in the United States and exposed abroad, whether it is developed or not. But film you bought and developed abroad counts as a dutiable item.

## CUSTOMER SERVICE PROGRAMS
CBP expanded its method of improving customer service to international travelers at major U.S. travel hubs. One method is having passenger service representatives available to travelers on a full-time basis at selected international airports, seaports, and land border ports of entry. The representatives' major purpose is to help travelers clear CBP.

Photos of the passenger service representatives are posted wherever the program is operating, to make it easy for you to recognize them if you need assistance. If you have a concern or need help understanding CBP regulations and procedures, ask to speak with the passenger service representative on duty.

The second initiative involves kiosks. CBP kiosks are located at international airports and are similar to the automated booths you see in malls, banks, department stores, and airports.

You can think of the kiosks as automated passenger service representatives: They are self-service computers with a touch-screen display. All you have to do is type in your country of destination and the computer will print the information for you. The screen displays a telephone number to call for more information. The kiosks also have pockets that contain pamphlets on a variety of topics of interest to travelers: i.e., regulations on transporting currency, agriculture and food items, medicines, and pets.

Kiosks are located in the outbound passenger lounges at the following international airports:

| | | |
|---|---|---|
| Atlanta, Georgia | Boston, Massachusetts | Charlotte, North Carolina |
| Chicago, Illinois | Dallas/Ft. Worth, Texas | Detroit, Michigan |
| Houston, Texas | JFK, New York | Los Angeles, California |
| Miami, Florida | Newark, New Jersey | Philadelphia, Pennsylvania |
| San Francisco, California | San Juan, Puerto Rico | Washington/Dulles, Virginia |

More kiosks are planned.

If you have any questions about CBP procedures, requirements, or policies regarding travelers, or if you have any complaints about treatment you received from CBP officers or about your CBP processing, please write to:

Customer Satisfaction Unit
U.S. Customs and Border Protection
1300 Pennsylvania Avenue, NW Room 5.5C
Washington, DC 20229

Or call 1.877.CBP 5511.

Allegations of criminal or serious misconduct may be reported to the Joint Intake Center by telephone at 1.877.2INTAKE (1.877.246.8253), by Email to Joint.Intake@dhs.gov, by fax to 202.344.3390, or by mail to:
P.O. Box 14475
1200 Pennsylvania Avenue, NW
Washington, DC 20044

## Pledge to Travelers

- We pledge to cordially greet and welcome you to the United States.
- We pledge to treat you with courtesy, dignity, and respect.
- We pledge to explain the CBP process to you.
- We pledge to have a supervisor listen to your comments.
- We pledge to accept and respond to your comments in written, verbal, or electronic form.
- We pledge to provide reasonable assistance due to delay or disability.

Comments may be provided to: 1.877.CBP.5511

**OTHER TRAVEL-RELATED INFORMATION**
Frequently, we are asked questions that are not CBP matters such as the following:

**Passports** are issued by the U.S. Department of State Passport Agency. Please contact the Passport Agency nearest you for more information. Postal clerks also accept passport applications.

30

**Baggage allowance** – Ask the airline or steamship line on which you are traveling for more information. Contact the Transportation Security Administration at www.tsa.gov for a list of prohibited and permitted items.

**Currency of other nations** -- Your local bank can be of assistance.

**Foreign countries** – For information about the country you will visit or about what articles may be imported into that country, contact that country's embassy, consular office, or tourist information office.

U.S. Customs and Border Protection
Washington, D.C. 20229

No. 0000-0512                                             Revised December 2004

31



# TRAVELER ALERT
# CAVIAR

## You cannot import more than 250 grams (8.75 ounces) of Sturgeon caviar in your personal baggage.

Effective April 1, 1998, all species of Acipenseriformes (Sturgeon and Paddlefish), including their parts and products, are regulated by the Convention on International Trade in Endangered Species (CITES). The import of more than 250 grams of caviar requires a CITES permit from the country where the caviar was purchased.

   

These restrictions are necessary because of the worldwide decline in Sturgeon populations.



1960   1970   1980   1990   2000

For more information call:
(516) 825-3950 or 1-800-358-2104  or 1-617-889-6616







21 February, 2005

To Whom It May Concern:

Re:  Ms. Stephanie Bakay
     Seizure of Caviar at Boston Airport November 17, 2004

In my 38 years experience, I have never encountered such an incident.  In these past 38 years, Travel Anywhere has operated group tours all over the world, including Russia ( formerly USSR).

Our typical client is well-educated, well-traveled, and keenly interested in cultural travel. With this profile, it is realistic to assume that clients on our trips are not "importers" of bi-products of endangered species.  I would therefore assume that Ms. Bakay imported the extra few grams of Russian Caviar in total innocence of the regulations.

At no time in the past 38 years has this agency received advisories or warnings from the Fish and Wildlife or other departments of the US Government regarding the importation of endangered species bi-products.

It would be my suggestion that all TOUR OPERATORS be sent advisories regarding these regulations, since Tour Operators offer tours to all continents and countries.  The appropriate advisories could ultimately be included in the travel information given to their clients, the traveling public.

Respectfully,

Sally L. Sells
President

*Society Hill Towers Plaza • 257 Saint James Place • Philadelphia, PA 19106-3936*
*(215) 923-4300 • (800) 523-1650 • Fax (215) 923-2833*
*E-Mail: info@tvlanywhere.com • http://www.tvlanywhere.com*



# SEIZED ASSET CLAIM FORM

**U.S. Fish and Wildlife Service INV #2004506063**

I hereby request that the Government file a complaint for judicial forfeiture of the seized property described below. I have filled in all three parts as required.

Part I

List all the items in which you claim an interest. Include sufficient information to identify the items, such as serial numbers, make, and model numbers, tail numbers, photographs, wildlife description, genus and species, number of items and so forth. Attach additional sheets of paper if more space is needed.

As detailed in my Petition for Remission, dated January 5, 2005: "Four (4) jars of caviar, consisting of 113 grams per jar, which I had personally purchased at Beluga Deluxe in St. Petersburg, Russia."

Part II

State your interest in each item of property listed above. Provide any documents that support your claim of interest, such as titles, registrations, bills of sale, receipts, and so forth. Attach additional sheets of paper if more space is needed.

Property purchased for personal use only, as a gift for my mother. As detailed in my Petition for Remission, dated January 5, 2005: "As my bags containing the jars of caviar were sealed at the time of entry, I have no knowledge whether a receipt for the goods was enclosed at the point of purchase. Otherwise, having paid with traveler's checks, I expect that American Express could furnish copies, if necessary, to verify ownership."

Part III

I attest and declare under penalty of perjury that my claim to this property is not frivolous and that the information provided in support of my claim is true and correct to the best of my knowledge and belief. I understand that a false statement or claim may subject me to prosecution under 18 U.S.C. 1001 and is punishable by a fine and up to five years imprisonment.


Stephanie Bakay

Stephanie Bakay                                    Date: February 17, 2005
18 Exeter Street
Boston, Massachusetts 02116

# Edwards & Angell LLP

101 Federal Street   Boston, MA 02110   617.439.4444   *fax* 617.439.4170

January 5, 2005

United States Department of the Interior
Fish and Wildlife Service
Office of Law Enforcement
70 Everett Avenue, Suite 315
Chelsea, Massachusetts 02150

Re:  INV # 2004506064

Dear Sir/Madam:

Enclosed please find three copies of my Petition for Remission.

Sincerely,

Stephanie Bakay

Stephanie Bakay

Encls.
- A)  Notice of seizure 11/17/04
- B)  Traveler Alert: Caviar flyer
- C)  Property receipt 11/15/04
- D)  Copy of business card:  Jennifer Irving, US Fish & Wildlife Service
- E)  Travel Anywhere detailed itinerary
  U.S. Customs & Border Protection website 11/17-18/04:
- F1)  Pleasure and Vacation Travel (Know Before You Go)
  CBP site search results:
- G1)  "russia"
- G2)  "caviar"
- G3)  "CITES sturgeon caviar"
- G4)  "caviar endangered species"
- H)  U.S. Customs Today November 2002:  "A seriously fishy story"
- I)  U.S. Customs & Border Protection Informed Compliance Publication, February
  2004:  "What every member of the trade community should know about:  Caviar"
  U.S. Customs & Border Protection website 11/28/04
- J)  Know Before You Go (update):  Regulations for U.S. Residents MS Word
  document

# Edwards &Angell LLP
## PETITION FOR REMISSION

On November 15, 2004 at 12:30 p.m., I arrived at Logan International Airport, Boston, Massachusetts on Lufthansa Flight 422 from Frankfurt, Germany after a ten-day excursion to Russia sponsored by the Boston Athenaeum. At the U.S. Customs counter, I submitted a form declaring four (4) jars of caviar, consisting of 113 grams per jar, which I had personally purchased at Beluga Deluxe in St. Petersburg, Russia. Upon prohibiting entry of the caviar, the officer detained me for over one hour awaiting the arrival of Law Enforcement Officer Jennifer A. Irving from the U.S. Fish and Wildlife Service office in Chelsea less than one mile from the airport.

Ms. Irving informed me that importation of sturgeon caviar into the U.S. without specific permit was limited to 250 grams maximum since a 1998 treaty deeming sturgeon an endangered species as indicated in a "traveler alert" flyer she provided [Document B]. Though I had every reason to expect I could retain two of the jars constituting 226 grams, technically within the 250 gram allowance, all four jars were confiscated, apparently as evidence of the complete property requiring formal disposition. I requested and was given a property receipt [Document C]. As my bags containing the jars of caviar were sealed at the time of entry, I have no knowledge whether a receipt for the goods was enclosed at the point of purchase. Otherwise, having paid with traveler's checks, I expect that American Express could furnish copies, if necessary, to verify ownership.

As soon as I was home in Boston, I phoned the Boston Athenaeum as well as Travel Anywhere, the travel agency hired by the organization [Document E: detailed itinerary], both of which have been involved with more than a few trips to Russia over several years. Yet, not one single person, from the owner of the travel agency and her assistant to the assistant of the Athenaeum's director, had ever heard of such Customs restrictions specifically concerning caviar.

After numerous phone calls to government officials in the U.S. Customs and Fish and Wildlife Services, I was unable to locate any documentation whatsoever advising travelers of Customs restrictions regarding Russia in general or transport of caviar in particular. For example, when Jim McLaughlin, assistant port director at Logan Airport, recommended looking at the www.cbp.gov World Wide Web site, only the most generalized information appeared available as of November 18 [Document F]. Several attempts to phone the U.S. Fish and Wildlife Service number, 800-358-2104 as indicated, resulted in announcement that the line only takes messages; the question remains whether a staff person would actually know exactly what item(s) might be restricted should any traveler have sufficient foresight to ask about something as relatively "common" as caviar; that is, compared with ivory, the only example offered [Document F, page 8], which must certainly be considered far more unusual by far.

On the other hand, as discussed with Mr. McLaughlin, what the CBP web site could and should implement is a comprehensive, yet reasonably navigable series of linked pages through which a traveler could simply click the destination(s) by country name in order to determine any and all current restrictions, advisories, and other pertinent information, *especially* return into the United States in the immediate case. Not only would there effectively be no expense (always likely to appeal to Washington) compared with printed booklets requiring regular updating but, furthermore, a basic all-purpose flyer referring travelers to the CBP site could be produced for travel agencies to enclose with typical itinerary packets. Under such circumstances, a traveler really would have no excuse not to "know before you go".

But the present state of utterly inadequate disclosure defies any practical effort to perform "due diligence" given that even the most rudimentary details are sorely lacking. For example, again on the CBP web site, attempts to search basic keywords yielded no relevant information on "Russia", "caviar", or "CITES sturgeon caviar" [Documents G]. Entering "caviar endangered species" brought up "A seriously fishy story" from US Customs Today [Document H] which, though a colorful illustration of massive illegal smuggling, is ultimately of no practical value to the average, honest citizen.

Most astonishing is a U.S. Customs & Border Protection Informed Compliance Publication from February 2004, *"What every member of the trade community should know about: Caviar"* [Document J], the preface of which actually states "Two new concepts that emerge from the Mod (Customs Modernization) Act are *"informed compliance"* and *"shared responsibility"* [emphasis in bold italic font as appears in the original document], which are premised on the idea that in order to maximize voluntary compliance with the laws and regulations of U.S. Customs and Border Protection, the trade community needs to be clearly and completely informed of its legal obligations. Accordingly, *the Mod Act imposes a greater obligation on CBP to provide the public with improved information . . . ."* [emphasis mine]. As defined by this dictate, CBP has clearly failed the public in every conceivable way when such a document,

Edwards *&*Angell ᴸᴸᴾ

dated six years after the CITES treaty, includes not *one* single mention of the actual CITES limit of 250 grams, presumably applicable to both trade and the general public alike. In any event, such omission is glaring in light of the title's purported intent to reveal "everything" to know about caviar for "informed compliance" with U.S. Customs regulations.

Out of curiosity, based on a statement in the caviar Traveler Alert flyer ("the import of more than 250 grams of caviar requires a CITES permit from the country where the caviar was purchased"), phone calls to both the Russian Embassy and the Russian Trade Representation office in Washington, D.C. resulted only in perplexed responses in broken English from staffers claiming no knowledge at all about obtaining a CITES permit; rather, they believed a permit would be issued by the U.S. government rather than the country of origin according to the flyer. Needless to say, U.S. Customs has no clear instruction on how or whom to contact for a permit application.

While Mr. McLaughlin agreed in a followup call that the Internet should be an ideal means to provide complete and instantly updated information on such subjects, when checked ten days later the CBP web site appeared to have added just an alternate version of "Know Before You Go" [Document K] that at first glance appears identical to the previous web site text. But as this document for some reason was available for download only as a Microsoft Word document, the obvious problem, regardless of Microsoft's domination of computer software, is that not everyone necessarily owns the Word program. In other words, why wouldn't the service use the PDF (Portable Document File) standard that has become universal for the simple reason that its Acrobat Reader application is free? Again, this reinforces the lack of common sense involved at every turn in this matter, not to mention the fact that the updated document still makes no specific mention of caviar.

In the final analysis, "ignorance of the law is no excuse" but, as readily demonstrated herein, the present state of utterly inadequate disclosure for "informed compliance" defies virtually every practical effort to perform "due diligence" given that even the most rudimentary details are all but impossible to ascertain. For this reason, the U.S. Customs and Fish and Wildlife Services cannot expect the traveling public to adhere to legal requirements which are neither readily apparent nor available even through extensive research. I therefore request the return of my four jars of caviar *in toto*, sealed intact.


Date: January 5, 2005

Stephanie Bakay
18 Exeter Street
Boston, Massachusetts 02116





**U.S. Fish & Wildlife Service**

**Jennifer A. Irving**
Wildlife Inspector
Office of Law Enforcement

Department of the Interior
70 Everett Ave. Suite 315
Chelsea, MA 02150

617/889 6616
617/889 1980 Fax

DEPARTMENT OF THE INTERIOR
U. S. FISH AND WILDLIFE SERVICE
DIVISION OF LAW ENFORCEMENT

# PROPERTY RECEIPT

**RECEIVED/SEIZED FROM:**

Stephanie Margaret Bakay

**DATE AND TIME OF RECEIPT:**

11/15/04  1:40pm

**FILE NUMBER:**

**RECEIVED/SEIZED BY:**

WI Jenifer A. Irving

**LOCATION:**

Terminal E, Logan Airport, Boston, MA

| ITEM NO. | DESCRIPTION: |
|---|---|
| 1 | 452 grams sturgeon caviar (four(4) 113-gram tins)    ST# 720782 |

I hereby certify that the above is a correct and complete inventory of items (received/seized by) (transferred from) the undersigned officer at the above stated date, time and place, and that the said inventory was made in the presence of:

**OFFICER:**

WI _____ A. ____ #327

**WITNESS:**

I hereby acknowledge receipt of a copy of this inventory and that it is true and complete:

**SIGNATURE:**

Stephanie Bakay

FORM 3-155 (9/81)

**DEPARTMENT OF THE INTERIOR**
**U.S. FISH AND WILDLIFE SERVICE**
**DIVISION OF LAW ENFORCEMENT**

Fish and Wildlife
Abandonment Form

| 1. Date of Seizure | 2. District | 3. Place of Seizure | 4. File No. |
|---|---|---|---|
| 11/15/04 | 5 | Terminal E, Logan Airport, Boston, MA | INV- 2004506.064 |

**5. Description of Fish or Wildlife Seized:**

Four hundred fifty two (452) grams of sturgeon caviar
[Four (4) 113-gram jars]
Huso huso

Initial one:

_____ I, or my company, have sole interest in this property and I have full authority to abandon that interest to the government.

_____ There is another entity which holds an interest in this property (examples of interests might include: leins or the purchase not consummated yet). I hereby abandon my interest in the property to the government but, _____(name and address of company) should be contacted about their interest.

**6. The above-described property was seized based upon a violation of:**

☒ Convention on International Trade in Endangered Species of Wild Fauna and Flora (CITES) - Endangered Species Act, 16 USC 1538

☒ Endangered Species Act, 16 USC 1538

☐ Lacey Act Amendments of 1981, 16 USC 3372

☐ Marine Mammal Protection Act, 16 USC 1371,1372

☐ Eagle Protection Act, 16 USC 668

☐ Migratory Bird Treaty Act, 16 USC 703

| 7. Name of Owner(s) | 8. Address |
|---|---|
| Stephanie Margaret Bakay | 18 Exeter Street #4 Boston, MA 02116 |

I(we) hereby abandon and quitclaim all of my(our) right, title and interest in and to the above-described property to the United States and waive any further rights or proceedings relative to this property other than my(our) right to file a petition for remission of this property as authorized at 50 CFR 12.24. I(we) understand that any such petition for remission must be filed prior to the disposal of the property by the Fish and Wildlife Service and not later than 60 days from date of seizure.

| 9. Signature of Owner(s) | 10. Date | 11. Witness (FWS Officer) | 12. Date |
|---|---|---|---|
| X | X | | |

**SERVICE USE ONLY-CERTIFICATE OF DISPOSAL**

| 13. Location | 14. Date | 15. Method of Disposal | 16. Date |
|---|---|---|---|
| | | | |

| 17. Signature and Badge Number of FWS Officer | 18. Witness |
|---|---|
| | |

Form 3-2096 (Rev. 4/87)                                                    U.S. GPO: 2001-480-818/51027

E



# THE BOSTON ATHENAEUM
# REVISITS RUSSIA

## NOVEMBER 4–15, 2004

**Thur  Nov 4**          *BOSTON*

  **2:30pm**         Check in at Lufthansa Airlines counter for flights #423 / 3180 to Moscow (connection in Frankfurt). Present tickets, visa and passport. *Make sure luggage is checked through to Moscow.* Sally Sells, of Travel Anywhere, will meet group in departure lounge at Logan Airport, Terminal E.

  **4:25pm**         Lufthansa #423 departs for Frankfurt. Dinner and breakfast served aloft.

                  _NOTE:  Participants not on the group flight will meet the group in Moscow at the Hotel Metropol,  1 / 4 Teatralny Proezd, on Friday, the 5th._

**Fri  Nov 5**          *MOSCOW via Frankfurt*

  **5:30am**         Arrive Frankfurt, and connect to Lufthansa #3180 in Terminal 1.

  **7:08am**         Lufthansa #3180 departs for Moscow.

  **12:10pm**        Arrive MOSCOW, Sheremetyevo 2 Airport.  Claim luggage and proceed towards customs and visa formalities. Transfer by private motorcoach with a local guide, to central Moscow. Orientation tour enroute to hotel.

                  Accommodations at the 5-star HOTEL METROPOL, a masterpiece of Moscow Art Nouveau located between Red Square and the Bolshoi Theatre.  Afternoon at leisure.

  **4:00pm**         *Optional orientation walk with Peter Lauritzen.  Depart from the hotel lobby for a 45-minute tour to Red Square, including the familiar landmark of St. Basil's Cathedral, with its colorful onion domes (weather permitting).*

  **6:45pm**         Welcome cocktails and dinner in the Savva Morozov Room of the Metropol, located on the second floor. Introductory remarks by our distinguished lecturer, Peter Lauritzen.

                  *Continental breakfast included daily at the Hotel Metropol, in the Morozov Room.*

*Society Hill Towers Plaza • 257 Saint James Place • Philadelphia, PA 19106-3936*
*(215) 923-4300 • (800) 523-1650 • Fax (215) 923-2833*
*E-Mail: info@tvlanywhere.com • http://www.tvlanywhere.com*

SALLY SELLS
SSELLS@
TVLanywhere

Sat  Nov 6          _Cathedrals and Treasures of the Kremlin_

9:30am          Depart hotel for the *three cathedrals of the Kremlin:* those of the
                Assumption, Annunciation and St. Michael. Continue to the Russo-
                Byzantine--style *Armoury Chamber,* with its collections of lavish gold and
                silver, armoury, and priceless Faberge eggs.  Next, the *Diamond Fund*
                exhibits diamonds and jewellery from the 18th-c. to the present.

12:45pm         Transfer to lunch at the Café Pushkin, called the restaurant of diplomats.

2:30pm          Afternoon transfer to the *Tretyakov Gallery,* where the world's best icon
                collection is housed in a remarkable Art Nouveau building.  Continue to the
                16th-c. *Novadevichy Convent,* where many famous Russians are buried
                in the cemetery, amid golden domes, a lovely bell tower and chapels.
                Return to hotel by coach after these visits.

6:30pm          Depart for "The Tsar's Bride," opera by Rimsky-Korsakov, at the Bolshoi,
                five minutes' walk from the Metropol. *(Dinner on your own this evening.)*

Sun  Nov 7      _Zagorsk and the Pushkin Museum_

9:00am          Coach departs the hotel for an excursion to *Zagorsk* (Sergiev Posad).
                Visit cathedrals and the *Trinity Monastery of St. Sergiev,* where singing
                sets the stage for admiring the elaborate iconostasis.

12pm            Lunch at the Russian Yard will be a traditional Sunday menu.

2:30pm          Upon our return to Moscow, travel via the underground (renowned for
                its richly decorated stations with chandeliers and mosaics) to the
                *Pushkin Museum of Fine Arts.*  The visit will include the plaster casts
                of fine classical sculpture; the Gold Treasures of Troy; many Old Masters;
                and  the largest collection of French impressionist works in Russia, as
                well as a series of Post-Impressionist and Modernist works, including
                many notable Picassos and Matisses. Continue across the street to the
                rebuilt *Church of Christ our Savior.*

5:15pm          Coach transfer to a private visit of the *American Ambassador's residence,*
                *Spaso House* (c. 1914, in the Grand Empire style). Tea will be served
                after a tour of the "Art in Embassies" collection. Please bring your
                passport for identification purposes.  Return to hotel after visit.

                Evening at leisure.

                *Please settle your accounts at the Hotel Metropol this evening.*

**Mon  Nov 8**   *The Imperial Kremlin Palace and State Historical Museum*

8:00am     Check out of the Metropol this morning. Place luggage outside room
           for collection by porters (not hand luggage). *Luggage will be stored;
           you may keep one piece of hand luggage for the train voyage. It will
           be kept safely on the coach during touring today.*

9:00am     Coach transfer to a very special visit of the *Imperial Kremlin Palace*,
           where we will visit the *Hall of Orders*, the newly recreated *Throne Room*,
           as well as the *Palace of Facets* and the *Romanov apartments*.
           (Note: the Kremlin Palace is subject to closure without notice, due to current security
           issues. Other Moscow attractions will be substituted, if necessary.)
           *Lunch on your own. Afternoon at leisure unless joining option below.
           Please return to the Hotel Metropol by 4:30pm for group transfer to the
           train station.*

2:30pm     *Optional:* Afternoon visit to the *State Historical Museum*, to view the
           exhibit on 19th and 20th century collections of the Czars. View the famous
           *GUM department store*, and the restored *Church of Our Lady of Kazan*,
           as well as the *Kremlin Gate Church*. Return to hotel by 4:30pm.

5:00pm     Depart Metropol Hotel for high-speed train to St. Petersburg.

6:30pm     Train #164 departs Moscow's Leningradsky Station. Dinner served onboard.

11:30pm    Arrive St. Petersburg, and transfer by motorcoach with guide to the
           GRAND HOTEL EUROPE, a 5-star Art Nouveau property.  *Continental
           breakfast included daily at the Grand Hotel Europe.*

**Tues Nov 9**   ***ST. PETERSBURG***

9:30am     Welcome to St. Petersburg, cultural heart of Russia, founded by Peter the
           Great, and ruled by the Romanovs until 1917. Begin the day with a visit
           to the *Fortress Cathedral of SS Peter and Paul* and the *cabin of Peter the
           Great*. Drive by Smolny Convent, which shares the spotlight in Russian
           history.

12:30pm    Lunch aboard the frigate Flagman, moored on the Neva River.

2:00pm     This afternoon visit *Menshikov Palace,* impressive 18th-c. residence of
           St. Petersburg's first governor.  Continue to the *Academy of Arts* where
           architectural models of historic buildings of the city are on display.
           Return to hotel late afternoon.

7:30pm     Depart hotel for dinner at Palkin Restaurant.  Return to the hotel by
           coach after dinner.

3

**Wed Nov 10**     _Excursion to Peterhof_

    8:45am    Depart by coach to visit _Peterhof,_ summer palace of Peter the Great, called Russia's Versailles. The lavish interior is furnished with masterpieces of Russian and European art and antiques.

  12:30pm    Lunch at the Strelna Hotel Restaurant, inside President Putin's Baltic residential enclave.

    3:00pm    Returning to the city, our first Hermitage visit commences at the _Winter Palace._ Today's focus is on the _State Apartments, Old Masters,_ and by special permission, the _Palace Chapel._ Return to hotel by coach.

                   Evening at leisure unless taking opera option below.

    _6:30pm_    _OPTIONAL: Depart for Mussorgsky Theatre for Gounod's opera "Faust." The theatre is within easy walking distance of the Grand Hotel Europe._

**Thur Nov 11**     _Romanov Palaces_

    8:30am    A short drive takes us to _Tsarskoye Selo_ and the magnificent _Catherine Palace_ with exquisite objets d'art, porcelain, furniture, paintings and amber. Visit the Agate Pavilion and the nearby _Alexander Palace,_ the last residence of the Romanov Emperors.

  12:00pm    Lunch at Podvorie Restaurant, near Pavlovsk.

    2:00pm    Afternoon visit the _Great Palace at Pavlovsk,_ built for Emperor Paul I. By special permission see the _Private Apartments and Library of Empress Maria Feodorovna._ Visit to Rose Pavillion, with sleigh or carriage ride (_weather permitting_). Return to hotel by 5:00pm.

    6:30pm    Depart on foot for "Romeo and Juliet" ballet at the Mussorgsky Theatre. (7pm curtain)

**Fri Nov 12**     St. Petersburg—the Hermitage

  10:15am    Return to the _Hermitage_ this morning to see the _State Hermitage Collections_ including the _Impressionist collection,_ and a special visit to the _Gold Treasure Room,_ with some Scythian gold and Faberge objects.

    1:00pm    Afternoon at leisure; return to hotel by coach or remain at Hermitage for additional viewing on your own.

*Nov 12 cont'd*

| | |
|---|---|
| 6:30pm | Depart by coach for the Grand Hall of the St. Petersburg Philharmonia, for a performance of Rachmaninoff piano concertos. Return to hotel. |
| 9:00pm | Light supper at the Grand Hotel Europe restaurant. |

**Sat Nov 13**      *St. Petersburg—the Hermitage and Staff Building*

| | |
|---|---|
| 10:00am | Depart hotel for our final visit to the Hermitage this morning to include, by special permission, a visit to the jewel box *private theater of Catherine the Great*, as well as the recently opened exhibit rooms in the *General Staff Building*. |
| 12:30pm | Walk across Palace Square to the Restaurant Hermitage for lunch. |
| 2:00pm | Afternoon visit *Yusupov Palace*, where Rasputin was murdered, followed by a visit to *St. Isaac's Cathedral*, the hallmark of Russian Cathedrals, and the 4th-largest in the world. |
| 5:00pm | Return to hotel; balance of afternoon free. |
| 8:00pm | A gala farewell evening with cocktails and dinner at the Palace of Prince Kochubey, an elegantly decorated palace with finely detailed ceilings. |
| | *Please settle your personal account at the hotel this evening.* |

**Sun Nov 14**      *St. Petersburg finale and departure to Frankfurt*

| | |
|---|---|
| 8:15am | Place luggage outside room for pickup by porters (not hand luggage). |
| 9:00am | Check out from Grand Hotel Europe. Luggage will be loaded onto coach. You may keep one small bag inside the coach. *Suggestion: pack an over-night bag for use in Frankfurt.* Verify your luggage has been put on coach. |
| 9:30am | Morning visit the *Palace of the Grand Duke Michael Pavlovitch*, housing the great *Russian Museum,* housing Russia's largest collection of art from ancient icons to 20th-c. avant garde.  Continue to the *Cathedral of Our Savior of the Spilled Blood*, next door. |
| 12:30pm | Lunch at the Noble Nest.  *(Note: those on non-group flights may depart directly from the restaurant, by taxi, to the airport. Suggested departure time is 1:45pm.   Bon voyage!)* |
| | After lunch, free time to browse the shops in the neighborhood, with our guide. |

*Nov 14 cont'd*

4:30pm      Group transfer to St. Petersburg airport. Evening fly to Frankfurt via Lufthansa. Flight #3219 departs 7:00pm.

8:00pm      Arrive FRANKFURT airport. Motorcoach driver will meet group at Terminal 1, exit C8.

                Transfer to the KEMPINSKI HOTEL GRAVENBRUCH, a short distance from Frankfurt airport. Dinner on your own.

                *(Buffet breakfast included at the Kempinski; please settle your accounts this evening or early tomorrow morning.)*

Mon Nov 15      *Frankfurt and Boston*

7:00am      Place luggage outside your room for collection by porters (not hand luggage).

7:30am      Depart Kempinski Hotel by motorcoach for Frankfurt Airport. Check in at Lufthansa for direct flight to BOSTON.

10:30am      Lufthansa Flight #422 departs Frankfurt. Lunch and snack aloft. Arrive BOSTON early afternoon. *Welcome home!*

6



# U.S. Customs & Border Protection
U.S. Department of Homeland Security   CBP.gov

Wednesday, November 17, 2004

SEARCH   **GO**

home   about   contacts   ports   **questions**   forms   publications   legal   contracting   sitemap

**newsroom      import      export      travel      careers      enforcement**

## travel

home / travel / Leaving and Arriving in the United States /

**Travel Alerts and Restricted/Prohibited Goods**

**Business and Government Travel**

**Leaving and Arriving in the United States**

**Carriers and Facilities**

**Customer Service**



Report Suspicious Activity to 1-800-BE-ALERT

### Pleasure and Vacation Travel (Know Before you Go)



As an international traveler, you should be aware of the rules for bringing items back from your trip. For instance, did you know that the duty-free personal exemption was recently raised to $800?

- **Know Before You Go** - U.S. Customs and Border Protection Regulations for U.S. Residents
  Full version of Know Before You Go brochure.

- **Introduction and Mission**

- **When You Return to the United States**

- **Documentary Requirements for Entry**

- **What You Must Declare**

- **Duty-free Exemption**
  Including Tobacco and Alcohol

- **Duty-free or Reduced Rates**

- **Sending Goods to the United States**

- **Duty-Free Shops**

- **Prohibited and Restricted Items**

- **Money and Other Monetary Instruments**

- **Traveling Back and Forth Across the Border**

- **Other Travel-related Information**

▶ **Straight from the Source: An Inspector's Advice**

- **Top 10 Tips**

- **Challenge Yourself - Take the Know Before You Go Quiz**

- **Sample Customs Declaration Form**

Search *Pleasure and Vacation Travel (Know Before you Go)* for:

**GO**

**section sitemap for** *Pleasure and Vacation Travel (Know Before you Go)*

## see also:

⟳ **in Leaving and Arriving In the United States:**

Non-Immigrant Arrival and Departure

U.S. Arrival and Departure (Airport, Land Border, Seaport) for Immigrants/Non-Immigrants

Admission Into United States

Bringing Agricultural Products Into the United States

Airport Wait Times (xls - 20 KB.) (csv - 2 KB.)

Non-Commercial Vehicle Importations for Non-Residents (doc - 26 KB.)

...more

⟳ **on cbp.gov:**

Registration for Dutiable Personal Articles Prior to U.S. Departure

How U.S. Customs Handles Traveler Complaints

⟳ **publications:**

Currency Reporting Flyer (doc - 24 KB.)

GSP and the Traveler (doc - 40 KB.)

International Mail Imports (doc - 72 KB.)

Pets and Wildlife (pdf - 104 KB.)

Pleasure Boats (doc - 43 KB.)

Visiting the United States (doc - 70 KB.)

Guide for Private Flyers (doc - 936 KB.)

Importing or Exporting A Car (doc - 52 KB.)

U.S. Import Requirements (doc - 64 KB.)

Exporting A Vehicle (doc - 92 KB.)



# U.S. Customs & Border Protection
### U.S. Department of Homeland Security     CBP.gov

Thursday, November 18, 2004

SEARCH     [GO]

home   about   contacts   ports   questions   forms   publications   legal   contracting   sitemap

**newsroom     import     export     travel     careers     enforcement**



## travel

**Travel Alerts and Restricted/Prohibited Goods**

**Business and Government Travel**

**Leaving and Arriving In the United States**

**Carriers and Facilities**

**Customer Service**

Report Suspicious Activity to **1-800-BE-ALERT**

home / travel / Leaving and Arriving In the United States / Pleasure and Vacation Travel (Know Before You Go) /

### Know Before You Go
U.S. Customs and Border Protection Regulations for U.S. Residents

1. Introduction 2. When You Return To The United States 3. Documentary Requirements For Entry 4. What You Must Declare 5. Register Items Before You Leave the United States 6. Duty-Free Exemption 7. Gifts 8. Duty-Free or Reduced Rates 9. Increased Duty Rates 10. Paying Duty 11. Sending Goods to the United States 12. Unaccompanied Baggage 13. Unaccompanied Purchases from Insular Possessions and Caribbean Basin Countries 14. Duty-Free Shops 15. Prohibited and Restricted Items 16. Money and Other Monetary Instruments 17. Traveling Back and Forth Across the Border 18. Photographic Film 19. Customer Service Programs 20. Other Travel-related Information





print

### see also:

**in Pleasure and Vacation Travel (Know Before You Go):**

Introduction and Mission

When You Return to the United States

Documentary Requirements for Entry

What You Must Declare

Duty-free Exemption

Duty-free or Reduced Rates

...*more*

### on cbp.gov:

Passenger Service Representative (PSR) Program & Information Kiosks

### publications:

GSP and the Traveler (doc - 40 KB.)

Pets and Wildlife (pdf - 104 KB.)

Pleasure Boats (doc - 43 KB.)

Importing or Exporting A Car (doc - 52 KB.)

U.S. Import Requirements (doc - 64 KB.)

Exporting A Vehicle (doc - 92 KB.)

**Introduction**
U.S. Customs and Border Protection (CBP) is America's frontline against possible terrorists and the smuggling of drugs and other prohibited goods. CBP has discovered large amounts of drugs and other contraband in baggage, vehicles, and on passengers.

Upon your return to the United States, it is CBP policy to treat you in a courteous, professional manner. Very few travelers actually violate the law, but an examination of your baggage or your vehicle may be required, which, by law, we are allowed to do. You may be asked questions on the nature of your citizenship, your trip, and about anything you are bringing back to the United States that you did not have with you when you left. If your baggage is selected for an examination, you will be responsible for placing it on the exam station and opening it. After the exam is completed, you will be asked to repack and close the baggage.

If you feel your examination is not conducted in a professional manner, please ask to speak to a supervisor.

"Duty" and "dutiable" are words you will find frequently throughout this brochure: *Duty* is the amount of money you pay on items coming from another country. It is similar to a tax, except that duty is collected only on imported goods. *Dutiable* describes items on which duty may have to be paid. Most items have specific duty rates, which are determined by a number of factors, including where you got the item, where it was made, and what it is made of.

Anything you bring back that you did not have when you left the United States must be "declared." For example, you would *declare* alterations made in a foreign country to a suit you already owned, and any gifts you acquired overseas.

The information contained within this brochure may change routinely. For traveler information updated frequently, please visit the travel section of the CBP Web site at www.cbp.gov.

**The U.S. Customs and Border Protection Mission Statement**
We are the guardians of our Nation's borders. We are America's frontline.
We safeguard the American homeland at and beyond our borders.
We protect the American public against terrorists and the instruments of terror.
We steadfastly enforce the laws of the United States while fostering our Nation's economic security through lawful international trade and travel.
We serve the American public with vigilance, integrity and professionalism.

Top

**When You Return To The United States**
When you come back, you will need to declare everything you brought back that you did not take with you when you left the United States. If you are traveling by air or sea, you may be asked to fill out a CBP declaration form. This form is almost always provided by the airline or cruise ship. You will probably find it easier and faster to fill out your declaration form and clear CBP if you do the following:

- Keep your sales slips.
- Try to pack the things you'll need to declare separately.
- Read the signs in the arrival area. They contain helpful information about how to clear CBP.



Be aware that under U.S. law, CBP officers are authorized to examine luggage, cargo, and travelers. Under the search authority granted by the U.S. Congress, every person who crosses a U.S. border may be searched. To stop the flow of illegal drugs and other contraband into our country, your cooperation is appreciated. If you are one of the very few travelers selected for a



*1*

search, you will be treated in a courteous, professional, and dignified manner. If you are searched and you believe that you were not treated in such a manner, or if you have any concerns about the search for any reason whatsoever, *we want to hear from you*. Please contact the Executive Director, Border Security and Facilitation, whose address is listed at the end of this booklet.

Top

## Documentary Requirements For Entry
**Travel from Mexico or Canada**
*United States Citizens must provide the following:*

- Oral declaration of citizenship
  However to avoid delays proof of U.S. citizenship (valid or expired U.S. passport, U.S. birth certificate, naturalization certificate) is strongly advised.

*U.S. Lawful Permanent Residents (LPRs) must provide one of the following:*

- I-551 (Green card),
- Temporary Residence Stamp (ADIT stamp) contained in a passport or on Form I-94, or
- Immigrant Visa (passport required unless otherwise noted)

*Visitors/Non-immigrants must provide one of the following:*

- Valid passport and visa, or
- Valid passport only, if Visa Waiver Program or Guam Visa Waiver Program eligible
- Canadians must provide proof of Canadian citizenship or an oral declaration and ID

**Travel from the Western Hemisphere (other than Mexico or Canada)**
*United States Citizens must provide:*

- Oral declaration of citizenship
  However to avoid delays proof of U.S. citizenship (valid or expired U.S. passport, U.S. birth certificate, naturalization certificate) is strongly advised.
- *Exception - travel from Cuba U.S. passport is required*

*U.S. Lawful Permanent Residents (LPRs) must provide one of the following:*

- I-551 (Green card),
- Temporary Residence Stamp (ADIT stamp) contained in a passport or on Form I-94, or
- Immigrant Visa (passport required unless otherwise noted)

*Visitors/Non-immigrants must provide one of the following:*

- Valid passport and visa, or
- Valid passport only, if Visa Waiver Program or Guam Visa Waiver Program eligible
- Canadians must provide proof of Canadian citizenship or an oral declaration and ID

**Travel from the Eastern Hemisphere (Europe, Africa, Asia, Australia)**
*U.S. citizens must provide one of the following:*

- Valid, unexpired U.S. passport

*U.S. Lawful Permanent Residents (LPRs) must provide one of the following:*

- Valid unexpired passport or U.S. travel document and I-551 (Green card),
- Temporary Residence Stamp (ADIT stamp) contained in a passport or on Form I-94, or
- Immigrant Visa (passport required unless otherwise noted).

*Visitors/Non-immigrants must provide one of the following:*

- Valid passport and visa, or
- Valid passport only, if Visa Waiver Program or Guam Visa Waiver Program eligible.
- Canadians must provide a valid passport

\* There are some slight exceptions that may exist in regards to the above listed information. More information on documentation requirements, contact your consulate or embassy for further instructions.

Top

## What You Must Declare

- Items you purchased and are carrying with you upon return to the United States.
- Items you received as gifts, such as wedding or birthday presents.
- Items you inherited.
- Items you bought in duty-free shops, on the ship, or on the plane.
- Repairs or alterations to any items you took abroad and then brought back, even if the repairs/alterations were performed free of charge.
- Items you brought home for someone else.
- Items you intend to sell or use in your business.
- Items you acquired (whether purchased or received as gifts) in the U.S. Virgin Islands, American Samoa, Guam, or in a Caribbean Basin Economic Recovery Act country (please see section on $600 exemption for a list of these countries) that are not in your possession when you return. In other words, if you acquired things in any of these island nations and asked the merchant to send them to you, you must still declare them when you go through CBP. (This differs from the usual procedure for mailed items, which is discussed in the section on Sending Goods to the United States.)

You must state on the CBP declaration, in United States currency, what you actually paid for each item. The price must include all taxes. If you did not buy the item yourself - for example, if it is a gift - get an estimate of its fair retail value in the country where you received it. If you bought something on your trip and wore or used it on the trip, it's still dutiable. You must declare the item at the price you paid or, if it was a gift, at its fair market value.

**Joint Declaration**
Family members who live in the same home and return together to the United States may combine their personal exemptions. This is called a *joint declaration*. For example, if Mr. and Mrs. Smith travel overseas and Mrs. Smith brings home a $1,000 piece of glassware, and Mr. Smith buys $600 worth of clothing, they can combine their $800 exemptions on a joint declaration and not have to pay duty.

Children and infants are allowed the same exemption as adults, except for alcoholic beverages.

Top

## Register Items Before You Leave the United States
If your laptop computer was made in Japan - for instance - you might have to pay duty on it each time you brought it back into the United States, unless you could prove that you owned it before you left on your trip. Documents that fully describe the item - such as, sales receipts, insurance policies, or jeweler's appraisals - are acceptable forms of proof.

To make things easier, you can register certain items with CBP before you depart - including watches, cameras, laptop computers, firearms, and tape recorders - as long as they have serial numbers or other unique, permanent markings. Take the items to the nearest CBP office and request a Certificate of Registration (CBP Form 4457). It shows that you had the items with you before leaving the U.S. and all items listed on it will be allowed duty-free entry. CBP officers must see the item you are registering in order to certify the certificate of registration. You can register items with CBP at the international airport from which you're departing. Keep the certificate for future trips.

2

Top

**Duty-Free Exemption**
The duty-free exemption, also called *the personal exemption*, is the total value of merchandise you may bring back to the United States without having to pay duty. You may bring back more than your exemption, but you will have to pay duty on it. In most cases, the personal exemption is $800, but there are some exceptions to this rule, which are explained below.

**Exemptions**
Depending on the countries you have visited, your personal exemption will be $200, $600, $800, or $1,200. (The differences are explained in the following section.) There are also limits on the amount of alcoholic beverages, cigarettes, cigars, and other tobacco products you may include in your duty-free personal exemption.

The duty-free exemptions ($200, $600, $800, or $1,200) apply if:

- The items are for your personal or household use or intended to be given as bonafide gifts.
- They are in your possession (that is, they accompany you) when you return to the United States. Items to be sent later (exemptions apply for goods sent from Guam or the U.S. Virgin Islands) may not be included in your $800 duty-free exemption.
- They are declared to CBP. If you do not declare something that should have been declared, you risk forfeiting it. If in doubt, declare it.
- You are returning from an overseas stay of at least 48 hours. For example, if you leave the United States at 1:30 p.m. on June 1, you would complete the 48-hour period at 1:30 p.m. on June 3. This time limit does not apply if you are returning from Mexico or from the U.S. Virgin Islands. (See also the section on the $200 exemption.)
- You have not used your exemption, or any part of it, in the past 30 days. If you use part of your exemption-for example, if you go to England and bring back $150 worth of items - you must wait another 30 days before you are allowed another $800 exemption. (However, see the section on the $200 exemption.)
- The items are not prohibited or restricted as discussed in the section on Prohibited and Restricted Items. Note the embargo prohibitions on products of Cuba.



**Tobacco Products:** Travelers may import previously exported tobacco products only in quantities not exceeding the amounts specified in exemptions for which the traveler qualifies. Any quantities of previously exported tobacco products not permitted by an exemption will be seized and destroyed. These items are typically purchased in duty-free stores, on carriers operating internationally, or in foreign stores. These items are usually marked "Tax Exempt. For Use Outside the U.S." or "U.S. Tax Exempt For Use Outside the U.S."

For example, a returning resident is eligible for the $800 exemption, which includes not more than 200 cigarettes and 100 cigars. If the resident declares 400 previously exported cigarettes, the resident would be permitted 200 cigarettes, tax-free under the exemption and the remaining 200 previously exported cigarettes would be confiscated. If the resident declares 400 cigarettes, of which 200 are previously exported and 200 not previously exported, the resident would be permitted to import the 200 previously exported cigarettes tax free under the exemption and the resident would be charged duty and tax on the remaining 200 foreign-made cigarettes.

The tobacco exemption is available to each person. Tobacco products of Cuban origin, however, are prohibited unless you actually acquired them in Cuba and are returning directly or indirectly from that country on licensed travel. You may not, for example, bring in Cuban cigars purchased in Canada. Persons returning from Cuba may bring into the U.S. no more than $100 worth of goods.

**Alcoholic Beverages:** One liter (33.8 fl. oz.) of alcoholic beverages may be included in your exemption if:

- You are 21 years old.
- It is for your own use or as a gift.
- It does not violate the laws of the state in which you arrive.



Federal regulations allow you to bring back more than one liter of alcoholic beverage for personal use, but, as with extra tobacco, you will have to pay duty and Internal Revenue Service tax.

While Federal regulations do not specify a limit on the amount of alcohol you may bring back for personal use, unusual quantities are liable to raise suspicions that you are importing the alcohol for other purposes, such as for resale. CBP officers are authorized by Alcohol, Tobacco and Firearms (ATF) to make on-the-spot determinations that an importation is for commercial purposes, and may require you to obtain a permit to import the alcohol before releasing it to you. If you intend to bring back a substantial quantity of alcohol for your personal use, you should contact the port you will be re-entering the country through, and make prior arrangements for entering the alcohol into the U.S.

Having said that, you should be aware that State laws may limit the amount of alcohol you can bring in without a license. If you arrive in a state that has limitations on the amount of alcohol you may bring in without a license, that state law will be enforced by CBP, even though it may be more restrictive than Federal regulations. We recommend that you check with the state government before you go abroad about their limitations on quantities allowed for personal importation and additional state taxes that might apply.

In brief, for both alcohol and tobacco, the quantities discussed in this booklet as being eligible for duty-free treatment may be included in your $800 (or $600 or $1,200) exemption, just as any other purchase would be. But unlike other kinds of merchandise, amounts beyond those discussed here as being duty-free are taxed, even if you have not exceeded, or even met, your personal exemption. For example, if your exemption is $800 and you bring back three liters of wine and nothing else, two of those liters will be dutiable. Federal law prohibits shipping alcoholic beverages by mail within the United States.

**$200 Exemption**
If you can't claim other exemptions because you've been out of the country more than once in a 30-day period or because you haven't been out of the country for at least 48 hours, you may still bring back $200 worth of items free of duty and tax. As with the exemptions discussed earlier, these items must be for your personal or household use.

Each traveler is allowed this $200 exemption, but, unlike the other exemptions, family members may not group their exemptions. Thus, if Mr. and Mrs. Smith spend a night in Canada, each may bring back up to $200 worth of goods, but they would not be allowed a collective family exemption of $400.

Also, if you bring back more than $200 worth of dutiable items, or if any item is subject to duty or tax, the entire amount will be dutiable. Let's say you were out of the country for 36 hours and came back with a $300 piece of pottery. You could not deduct $200 from its value and pay duty on $100. The pottery would be dutiable for the full value of $300.

You may include with the $200 exemption your choice of the following: 50 cigarettes and 10 cigars and 150 milliliters (5 fl. oz.) of alcoholic beverages or 150 milliliters (5 fl. oz.) of perfume containing alcohol.

**$600 Exemption**
If you are returning directly from any one of the following 24 Caribbean Basin countries, your exemption is $600:

| | | |
|---|---|---|
| Antigua and Barbuda | El Salvador | Nicaragua |
| Aruba | Grenada | Panama |
| Bahamas | Guatemala | Saint Kitts and Nevis |
| Barbados | Guyana | Saint Lucia |
| Belize | Haiti | Saint Vincent and the Grenadines |
| British Virgin Islands | Honduras | Trinidad and Tobago |
| Costa Rica | Jamaica | |
| Dominica | Montserrat | |
| Dominican Republic | Netherlands Antilles | |

You may include two liters of alcoholic beverages with this $600 exemption, as long as one of the liters was produced in one of the

countries listed above (see section on Unaccompanied Purchases from Insular Possessions and Caribbean Basin Countries).

**Travel to More Than One Country**
If you travel to a U.S. possession and to one or more of the Caribbean countries listed above (for example, on a Caribbean cruise), you may bring back $1,200 worth of items without paying duty. But only $600 worth of these items may come from the Caribbean country(ies); any amount beyond $600 will be dutiable unless you acquired it in one of the insular possessions.



For example, if you were to travel to the U.S. Virgin Islands and Jamaica, you would be allowed to bring back $1,200 worth of merchandise duty - free, as long as only $600 worth was acquired in Jamaica. (Keeping track of where your purchases occurred and having the receipts ready to show the CBP officers will help speed your clearing CBP).

If you travel to any of the Caribbean countries listed above and to countries where the standard personal exemption of $800 applies - for example, a South American or European country - up to $800 worth of merchandise may come from the non-Caribbean country. For instance, if you travel to Venezuela and Trinidad you are entitled to an $800 exemption, but no more than $600 can be from Trinidad.

**$800 Exemption**
If you are returning from anywhere *other* than a Caribbean Basin country or a U.S. insular possession (U.S. Virgin Islands, American Samoa, or Guam), you may bring back $800 worth of items duty-free, as long as you bring them with you (this is called *accompanied baggage*).

Duty on items you mail home to yourself will be waived if the value is $200 or less. (Please see the sections on Gifts and Sending Goods to the United States ) Antiques that are at least 100 years old, and fine art may enter duty-free, but folk art and handicrafts are generally dutiable.

This means that, depending on what items you're bringing back from your trip, you could come home with more than $800 worth of gifts or purchases and still not be charged duty. For instance, say you received a $700 bracelet as a gift, and you bought a $40 hat and a $60 color print. Because these items total $800, you would not be charged duty, because you have not exceeded your duty-free exemption. If you had also bought a $500 painting on that trip, you could bring all $1300 worth of merchandise home without having to pay duty, because fine art is duty-free.

**$1,200 Exemption**
If you return directly or indirectly from a U.S. insular possession (U.S. Virgin Islands, American Samoa, or Guam), you are allowed a $1,200 duty-free exemption. You may include 1,000 cigarettes as part of this exemption, but at least 800 of them must have been acquired in an insular possession. Only 200 cigarettes may have been acquired elsewhere. For example, if you were touring the South Pacific and you stopped in Tahiti, American Samoa, and other ports of call, you could bring back five cartons of cigarettes, but four of them would have to have been bought in American Samoa.

Similarly, you may include five liters of alcoholic beverages in your duty-free exemption, but one of them must be a product of an insular possession. Four may be products of other countries (see section on Unaccompanied Purchases from Insular Possessions and Caribbean Basin countries).

Top

**Gifts**
Gifts you bring back from a trip abroad are considered to be for your personal use. They must be declared, but you may include them in your personal exemption. This includes gifts people gave you while you were out of the country, such as wedding or birthday presents, and gifts you've brought back for others. Gifts intended for business, promotional, or other commercial purposes may not be included in your duty-free exemption.



Gifts worth up to $100 may be received, free of duty and tax, by friends and relatives in the United States, as long as the same person does not receive more than $100 worth of gifts in a single day. If the gifts are mailed or shipped from an insular possession, this amount is increased to $200. When you return to the United States, you don't have to declare gifts you sent while you were on your trip, since they won't be accompanying you.

By federal law, alcoholic beverages, tobacco products, and perfume containing alcohol and worth more than $5 retail may not be included in the gift exemption.

Gifts for more than one person may be shipped in the same package, called a consolidated gift package, if they are individually wrapped and labeled with each recipient's name. Here's how to wrap and label a consolidated gift package.

Be sure to mark the outermost wrapper with:

- the words "UNSOLICITED GIFT" and the words "CONSOLIDATED GIFT PACKAGE;"
- the total value of the consolidated package;
- the recipients' names and
- the nature and value of the gifts inside (for example, tennis shoes, $50; shirt, $45; toy car, $15), for instance:

To John Jones-one belt, $20; one box of candy, $5; one tie, $20.

To Mary Smith-one skirt, $45; one belt, $15; one pair slacks, $30.

If any item in the consolidated gift parcel is subject to duty and tax or worth more than the $100 gift allowance, the *entire* package will be dutiable.

You, as a traveler, cannot send a "gift" package to yourself, and people traveling together cannot send "gifts" to each other. But there would be no reason to do that anyway, because the personal exemption for packages mailed from abroad is $200, which is twice as much as the gift exemption. If a package is subject to duty, the United States Postal Service will collect it from the addressee along with any postage and handling charges. The sender cannot prepay duty; it must be paid by the recipient when the package is received in the United States. (Packages sent by courier services are not eligible for this duty waiver).

For more information about mailing packages to the United States, please contact your nearest CBP office and ask for our pamphlet *International Mail Imports.*

Top

**Duty-Free or Reduced Rates**
**Items from Certain Countries**
The United States gives duty preferences - that is, free or reduced rates - to **certain developing countries** under a trade program called the Generalized System of Preferences (GSP). Some products that would otherwise be dutiable are not when they come from a GSP country. For details on this program, as well as the complete list of GSP countries, please look for it on our Web site.

Similarly, many products of **Caribbean and Andean countries** are exempt from duty under the Caribbean Basin Initiative, Caribbean Basin Trade Partnership Act, Andean Trade Preference Act and the Andean Trade Promotion and Drug Eradication Act. Many products of certain **sub-Saharan African countries** are exempt from duty under the African Growth and Opportunity Act. Most products of **Israel** and **Jordan** may also enter the United States either free of duty or at a reduced rate under the U.S. free trade agreements with those countries. Check with CBP for details on these programs.

The North American Free Trade Agreement (NAFTA) went into effect in 1994. If you are returning from **Canada** or **Mexico**, your goods are eligible for free or reduced duty rates if they were grown, manufactured, or produced in Canada or Mexico, as defined by the Act. Again, check with CBP for details.

**Personal Belongings**
Your personal belongings can be sent back to the United States duty-free if they are of U.S. origin and if they have not been altered or repaired while abroad. Personal belongings like worn clothing can be mailed home and will receive duty-free entry if you write the words

*4*

"American Goods Returned" on the outside of the package.

**Household Effects**
Household effects include furniture, carpets, paintings, tableware, stereos, linens, and similar household furnishings. Tools of trade, professional books, implements, and instruments that you've taken out of the United States will be duty-free when you return.

You may import household effects you acquired abroad duty-free if:

- You used them for at least one year while you were abroad.
- They are not intended for anyone else or for sale.

Clothing, jewelry, photography equipment, portable radios, and vehicles are considered personal effects and cannot be brought in duty-free as household effects. However, the amount of duty collected on them will be reduced according to the age of the item.

Top

**Increased Duty Rates**
**Items from Certain Countries**
The United States may impose a much higher than normal duty rate on products from certain countries. The United States Trade Representative is authorized to impose a different duty rate under what is know as its "301" authority. Currently, the United States has imposed a 100 percent rate of duty on certain products of Austria, Belgium, Denmark, Finland, France, The Federal Republic of Germany, Greece, Ireland, Italy, Luxembourg, the Netherlands, Portugal, Spain, Sweden and the Ukraine. If you should bring more of any of these products back with you than fall within your exemption or flat rate of duty, you will pay as much in duty as you paid for the product or products.

A complete list of products that are currently subject to the higher than normal duty is available at
http://www.cbp.gov/xp/cgov/import/commercial_enforcement/

While most of the products listed are not the type of goods that travelers would purchase in sufficient quantities to exceed their exemption, diamonds from the Ukraine are subject to the 100 percent duty and might easily exceed the exemption amount.

For information on countries that may become subject to a higher than normal duty rate, the Department of Commerce has created the following Web site: http://www.ita.doc.gov/td/industry/otea/301alert/retallist.html

Top

**Paying Duty**
*If you're bringing it back with you, you didn't have it when you left, and its total value is more than your exemption, it is subject to duty.*

The CBP officer will place the items that have the highest rate of duty under your exemption. Then, after subtracting your exemptions and the value of any duty-free items, a flat rate of duty will be charged on the next $1,000 worth of merchandise. Any dollar amount beyond this $1,000 will be dutiable at whatever duty rate applies. The flat rate of duty may only be used for items for your own use or for gifts. As with your exemption, you may use the flat rate provision only once every 30 days. Special flat rates of duty apply to items made and acquired in Canada or Mexico. The flat rate of duty applies to purchases whether the items accompany you or are shipped.

Here's an example of the different rates if you acquire goods valued at $2,500 from various different places:

| Country | Total declared value | Personal exemption (duty-free) | Flat duty rate | Various duty rates |
|---|---|---|---|---|
| U.S. insular possessions | $2,500 | $1,200 | $1,000 at 1.5 percent | $300 |
| Caribbean Basin countries | $2,500 | $600 | $1,000 at 2 percent | $900 |
| Other countries or locations | $2,500 | $800 | $1,000 at 2 percent | $1,100 |

The flat duty rate will be charged on items that are dutiable but that cannot be included in your personal exemption, even if you have not exceeded the exemption. The best example of this is liquor: Say you return from Europe with $200 worth of items, including two liters of liquor. One liter will be duty-free under your exemption; the other will be dutiable at 2 percent, plus any Internal Revenue Service tax.

Family members who live in the same household and return to the United States together can combine their items to take advantage of a combined flat duty rate, no matter which family member owns a given item. The combined value of merchandise subject to a flat duty rate for a family of four traveling together would be $4,000.

If you owe duty, you must pay it when you arrive in the United States. You can pay it in any of the following ways:

- U.S. currency (foreign currency is not acceptable).
- Personal check in the exact amount, drawn on a U.S. bank, made payable to U.S. Customs and Border Protection. You must present identification, such as a passport or driver's license. (CBP does not accept checks bearing second-party endorsements.)
- Government check, money order, or traveler's check if it does not exceed the duty owed by more than $50.
- In some locations, you may pay duty with credit cards, either MasterCard® or VISA®.

Top

**Sending Goods to the United States**
Items mailed to the United States are subject to duty when they arrive. They cannot be included in your exemption, and duty on them cannot be prepaid.

If you are mailing merchandise from the U.S. insular possessions or from Caribbean Basin countries, you should follow different procedures than if you were mailing packages from any other country. These special procedures are described, under "Unaccompanied Purchases."

In addition to duty and, at times, taxes, CBP collects a user fee on dutiable packages. Those three fees are the only fees CBP collects; any additional charges on shipments are for handling by freight forwarders, Customs brokers, and couriers or for other delivery services. Some carriers may add other clearance charges that have nothing to do with Customs duties.

**Note:** Customs brokers are not CBP employees. Brokers' fees are based on the amount of work they do, not on the value of the items you ship, so travelers sometimes find the fee high in relation to the value of the shipment. The most cost effective thing to do is to take your purchases with you if at all possible.

Top

**Unaccompanied Baggage**
Unaccompanied baggage is anything you do not bring back with you, as opposed to goods in your possession - that accompany you - when you return. These may be items that were with you when you left the United States or items that you acquired (received by any means) while outside the United States. In general, unaccompanied baggage falls into the following three categories.

**U.S. Mail Shipments**
Shipping through the U.S. mail, including parcel post, is a cost-efficient way to send things to the United States. The Postal Service sends all foreign mail shipments to CBP for examination. CBP officers then return packages that don't require duty to the Postal Service, which sends them to a local post office for delivery. The local post office delivers them without charging any additional postage, handling costs, or other fees.

If the package does require payment of duty, CBP attaches a form called a *mail entry* (form CBPF-3419A), which shows how much duty is owed, and charges a $5 processing fee as well. When the post office delivers the package, it will also charge a handling fee.

5

Commercial goods - goods intended for resale - may have special entry requirements. Such goods may require a *formal entry* in order to be admitted into the United States. Formal entries are more complicated and require more paperwork than informal entries. (Informal entries are, generally speaking, personal packages or commercial items less than $2,000.) CBP employees may not prepare formal entries for you; only you or a licensed customs broker may prepare one. For more information on this subject, please see the pamphlet *U.S. Import Requirements.*

If you believe you have been charged an incorrect amount of duty on a package mailed from abroad, you may file a protest with CBP. You can do this in one of two ways. You can accept the package, pay the duty, and write a letter explaining why you think the amount was incorrect. You should include with your letter the yellow copy of the mail entry (CBPF-3419A). Send the letter and the form to the CBP office that issued the mail entry, which you'll find on the lower left-hand corner of the form.

The other way to protest duty is to refuse delivery of the package and, within five days, send your protest letter to the post office where the package is being held. The post office will forward your letter to CBP and will hold your package until the protest is resolved.

For additional information on international mailing, please see the pamphlet *International Mail Imports*, or visit our Web site at www.cbp.gov.

**Express Shipments**
Packages may be sent to the United States by private-sector courier or delivery service from anywhere in the world. The express company usually takes care of clearing your merchandise through CBP and charges a fee for its service. Some travelers have found this fee to be higher than they expected.

**Freight Shipments**
Cargo, whether duty is owed on it or not, must clear CBP at the first port of arrival in the United States. If you choose, you may have your freight sent, while it is still in CBP custody, to another port for clearance. This is called *forwarding freight in bond.* You (or someone you appoint to act for you) are responsible for arranging to clear your merchandise through CBP or for having it forwarded to another port.

Frequently, a freight forwarder in a foreign country will take care of these arrangements, including hiring a customs broker in the United States to clear the merchandise through CBP. Whenever a third party handles the clearing and forwarding of your merchandise, that party charges a fee for its services. This fee is not a CBP charge. When a foreign seller entrusts a shipment to a broker or agent in the United States, that seller usually pays only enough freight to have the shipment delivered to the first port of arrival in the United States. This means that you, the buyer, will have to pay additional inland transportation, or *freight forwarding* charges, plus brokers' fees, insurance, and possibly other charges.

If it is not possible for you to secure release of your goods yourself, another person may act on your behalf to clear them through CBP. You may do this as long as your merchandise consists of a single, noncommercial shipment (not intended for resale) that does not require a formal entry - in other words, if the merchandise is worth less than $2,000. You must give the person a letter that authorizes him or her to act as your unpaid agent. Once you have done this, that person may fill out the CBP declaration and complete the entry process for you. Your letter authorizing the person to act in your behalf should be addressed to the "Officer in Charge of CBP" at the port of entry, and the person should bring it along when he or she comes to clear your package.

CBP will not notify you when your shipment arrives, as this is the responsibility of your carrier. If your goods are not cleared within 15 days of arrival you could incur very high storage fees.

Top

## Unaccompanied Purchases from Insular Possessions and Caribbean Basin Countries
Unaccompanied purchases are goods you bought on a trip that are being mailed or shipped to you in the United States. In other words, you're not carrying them with you when you return. If your unaccompanied purchases are from an insular possession or a Caribbean Basin country and are being sent directly from those locations to the United States, you may enter them as follows:

- Up to $1,200 worth will be duty-free under your personal exemption if the merchandise is from an insular possession.
- Up to $600 worth will be duty-free if it is from a Caribbean Basin country.
- Of these amounts ($1,200 or $600), up to $800 worth will be duty-free if the merchandise was acquired in a place other than the insular possessions or the Caribbean Basin. However, merchandise that qualifies for the $800 exemption must be in your possession when you return (must *accompany* you) in order for you to claim the duty free exemption. The duty-free exemptions for unaccompanied baggage apply only to goods from the insular possessions and the Caribbean Basin countries listed earlier.
- An additional $1,000 worth of goods will be dutiable at a flat rate if they are from an insular possession, or from a Caribbean Basin country. (See chart under Paying Duty.)
- If you are sending back more than $2,200 from an insular possession or more than $1,600 from a Caribbean Basin country, the duty rates in the Harmonized Tariff Schedules of the United States will apply. The Harmonized Tariff Schedule describes different rates of duty for different commodities; linen tablecloths, for example, will not have the same duty rates as handicrafts or plastic toy trucks.

Here's how you can take advantage of the duty-free exemption for unaccompanied tourist purchases from an insular possession or a Caribbean country:

**Step 1.** At place and time of purchase, ask your merchant to hold your item until you send him or her a copy of CBP Form 255 (Declaration of Unaccompanied Articles), which must be affixed to the package when it is sent.

**Step 2.** (a) On your declaration form (CBPF-6059B), list everything you acquired on your trip, except the things you already sent home as gifts. (b) Check off on the declaration those items you are not bringing with you--that is, the unaccompanied items. (c) Fill out a *separate Declaration of Unaccompanied Articles form (CBPF-255) for each package or container that will be sent to you after you arrive in the United States.* You can often get this form where you make your purchase, but if not, ask a CBP officer for one when you clear the customs area.

**Step 3.** When you return to the United States, the CBP officer will: (a) collect duty and tax, if any is owed, on the goods you've brought with you; (b) check to see that your list of unaccompanied articles, which you indicated on the CBP declaration, agrees with your sales slips, invoices, and so on; and (c) validate the CBPF-255 as to whether your purchases are duty-free under your personal exemption ($1,200 or $600) or whether they are subject to a flat rate of duty. Two copies of this three part form will be returned to you.

**Step 4.** Send the yellow copy of the CBPF-255 to the foreign shopkeeper or vendor holding your purchase, and keep the other copy for your records. (When you make your purchase, it is very important to *tell the merchant not to send your package to the United States until he or she gets the copy of form CBPF-255.)*

**Step 5.** When the merchant gets your CBPF-255, he or she will put it in an envelope and attach the envelope securely to the outside wrapping of the package or container. The merchant must also mark each package "Unaccompanied Purchase." *Please remember that each package or container must have its own CBPF-255 attached.* This is the most important step to follow in order to gain the benefits allowed under this procedure.

**Step 6.** If your package has been mailed, the Postal Service will deliver it after it has cleared CBP. If you owe duty, the Postal Service will collect the duty along with a postal handling fee. If your package is delivered by a commercial courier, the delivery service will notify you of its arrival so you can go to the CBP office holding the shipment and complete the entry procedure. If you owe duty or tax, you can pay it at that time. Alternatively, you may hire a customs broker to do this for you, but be aware that brokers are not CBP employees, they charge fees for their services.

**Storage Charges** : If freight or express packages from your trip are delivered before you return and you have not made arrangements to pick them up, CBP will authorize their placement in storage after 15 days. This storage will be at your risk and expense. If they are not claimed within six months, the items will be sold at auction.

Packages sent by mail and not claimed within 30 days will be returned to the sender unless the amount of duty is being protested.

Top

## Duty-Free Shops
Many travelers are confused by the term "duty-free" shops. Travelers often think that what they buy in duty-free shops won't be dutiable when they return home and clear CBP. But this is not true: Articles sold in a duty-free shop are free of duty and taxes only for the country in which that shop is located. So if your purchases exceed your personal exemption, items you bought in a duty-free shop,

whether in the United States or abroad, will almost certainly be subject to duty.

Articles sold in foreign duty-free shops are subject to U.S. duty and other restrictions (for example, only one liter of liquor is duty-free), but you may include these items in your personal exemption. Articles sold in duty free shops are meant to be taken out of the country; they are not meant to be used, worn, eaten, drunk, etc., in the country where you purchased them. Articles purchased in American duty-free shops are also subject to U.S. duty if you bring them into the United States. For example, if you buy liquor in a duty-free shop in New York before entering Canada and then bring it back into the United States, it may be subject to duty and Internal Revenue Service tax.

Top

## Prohibited and Restricted Items
CBP has been entrusted with enforcing some 400 laws for 40 other government agencies, such as the Fish and Wildlife Service and the Department of Agriculture. These other agencies have great interest in what people bring into the country, but they are not always at ports of entry, guarding our borders. CBP officers are *always* at ports of entry - guarding the nation's borders is what we do.

The products we want to keep out of the United States are those that would injure community health, public safety, American workers, children, or domestic plant and animal life, or those that would defeat our national political interests. Sometimes the products that cause injury, or have the potential to do so, may seem fairly innocent. But, as you will see from the material that follows, appearances can be deceiving.

Before you leave for your trip abroad, you might want to talk to CBP about the items you plan to bring back to be sure they're not prohibited or restricted. *Prohibited* means the item is forbidden by law to enter the United States. Examples are dangerous toys, cars that don't protect their occupants in a crash, or illegal substances like absinthe and Rohypnol. *Restricted* means that special licenses or permits are required from a federal agency before the item is allowed to enter the United States. Examples are firearms and certain fruits, vegetables, pets, and textiles.

### Absinthe (Alcohol)
The importation of Absinthe and any other liquors or liqueurs that contain Artemisia absinthium is prohibited.

### Automobiles
Automobiles imported into the United States must meet the fuel-emission requirements of the Environmental Protection Agency (EPA) and the safety, bumper, and theft-prevention standards of the Department of Transportation (DOT). (Please see the CBP pamphlet, *Importing a Car*). Trying to import a car that doesn't meet all the requirements can be a vexing experience. Here's why:

Almost all cars, vans, sport utility vehicles, and so on that are bought in foreign countries must be modified to meet American standards. Passenger vehicles that are imported on the condition that they be modified must be exported or destroyed if they are not modified acceptably. Or it could require a bond upon entry until the conditions for admission have been met.

And even if the car does meet all federal standards, it might be subject to additional EPA requirements, depending on what countries it was driven in. You are strongly encouraged to contact EPA and DOT before importing a car.

Information on importing vehicles can be obtained from the Environmental Protection Agency (www.epa.gov), Attn.: 6405J, Washington, DC 20460, telephone (202) 564-9240, for EPA forms (202) 564 9660, and the Department of Transportation, Office of Vehicle Safety Compliance (NEF 32) NHTSA, Washington, DC 20590, telephone 1-800-424-9393, or visit the DOT Web site at www.nhtsa.dot.gov.

Copies of the pamphlet *Importing or Exporting a Car* can be obtained by writing to U.S. Customs and Border Protection, P.O. Box 7407, Washington, DC 20044; or checking the CBP Web site at www.cbp.gov. EPA's *Automotive Imports Fact Manual* can be obtained by writing to the Environmental Protection Agency, Washington, DC 20460; or visit www.epa.gov. Cars being brought into the United States temporarily (for less than one year) are exempt from these restrictions. It is illegal to bring a vehicle into the United States and sell it if it was not formally entered on a CBP form 7501.

### Ceramic Tableware
Although ceramic tableware is not prohibited or restricted, you should know that such tableware made in foreign countries may contain dangerous levels of lead in the glaze; this lead can seep into foods and beverages. The Food and Drug Administration recommends that if you buy ceramic tableware abroad - especially in Mexico, China, Hong Kong, or India - you have it tested for lead release when you return, or use it for decorative purposes only.

### Cultural Artifacts and Cultural Property (Art/Artifacts)
Most countries have laws that protect their cultural property (art/artifacts/antiquities; archaeological and ethnological material are also terms that are used). Such laws include export controls and/or national ownership of cultural property. Even if purchased from a business in the country of origin or in another country, legal ownership of such artifacts may be in question if brought into the U.S. Make certain you have documents such as export permits and receipts, although these do not necessarily confer ownership. While foreign laws may not be enforceable in the U.S., they can cause certain U.S. law to be invoked. For example, as a general rule, under the U.S. National Stolen Property Act, one cannot have legal title to art/artifacts/antiquities that were stolen, no matter how many times such items may have changed hands. Articles of stolen cultural property (from museums or from religious or secular public monuments) originating in any of the countries party to the 1970 UNESCO Convention specifically may not be imported into the U.S.



In addition, U.S. law may restrict importation into the U.S. of specific categories of art/artifacts/antiquities: 1) U.S. law restricts the import of any Pre Columbian monumental and architectural sculpture and murals from Central and South American countries; 2) U.S. law specifically restricts the importation of Native American artifacts from Canada; Maya pre Columbian archaeological objects from Guatemala; Pre Columbian archaeological objects from El Salvador and Peru; archaeological objects (such as terracotta statues) from Mali; Colonial period objects such as paintings and ritual objects from Peru; Byzantine period ritual and ecclesiastic objects (such as icons) from Cyprus; Khmer stone archaeological sculpture from Cambodia.

Importation of items such as those above is permitted only when the items are accompanied by an export permit issued by the country of origin (where such items were first found). Purveyors of such items have been known to offer phony export certificates. As additional U.S. import restrictions may be imposed in response to requests from other countries, it is wise for the prospective purchaser to visit the State Department's cultural property Web site: http://exchanges.state.gov/education/culprop/. This Web site also has images representative of the categories of cultural property for which there are specific U.S. import restrictions.

### Dog and Cat Fur
It is illegal in the United States to import, export, distribute, transport, manufacture, or sell products containing dog or cat fur in the United States. As of November 9, 2000, the Dog and Cat Protection Act of 2000 calls for the seizure and forfeiture of each item containing dog or cat fur.

The Act provides that any person who violates any provision may be assessed a civil penalty of not more than $10,000 for each separate knowing and intentional violation, $5,000 for each separate gross negligent violation, or $3,000 for each separate negligent violation.

### Drug Paraphernalia
It is illegal to bring drug paraphernalia into the United States unless they have been prescribed for authentic medical conditions - diabetes, for example. CBP will seize any illegal paraphernalia. The importation, exportation, manufacture, sale, or transportation of drug paraphernalia is prohibited by law. If you're convicted of any of these offenses, you will be subject to fines and imprisonment.

### Firearms
The Bureau of Alcohol, Tobacco and Firearms (ATF) regulates and restricts firearms and ammunition; it also approves all import transactions involving weapons and ammunition. If you want to import (or export) either of them, you must do so through a licensed importer, dealer, or manufacturer. Also, if the National Firearms Act prohibits certain weapons, ammunition, or similar devices from coming into the country, you won't be able to import them unless the ATF specifically authorizes you, in writing, to do so.

You don't need an ATF permit if you can demonstrate that you are returning with the *same* firearms or ammunition that you took out of the United States. The best way is to register your firearms and related equipment by taking them to any CBP office before you leave the United States. The CBP officer will register them on the same form CBPF-4457 used to register cameras or computers (see "Register Items Before You Leave the United States").

7

For further information about importing weapons, contact the Bureau of Alcohol, Tobacco and Firearms, U.S. Department of the Treasury, Washington, DC 20226; or call 202.927.8320; or visit www.atf.treas.gov/core/firearms/information/laws/laws.htm

Many countries will not allow you to enter with a firearm even if you are only traveling through the country on the way to your final destination. If you plan to take your firearms or ammunition to another country, you should contact officials at that country's embassy to learn about its regulations.

### Fish and Wildlife
Fish, wildlife, and products made from them are subject to import and export restrictions, prohibitions, permits or certificates, and quarantine requirements. We recommend that you contact the U.S. Fish and Wildlife Service before you depart if you plan to import or export any of the following:

- Wild birds, land or marine mammals, reptiles, fish, shellfish, mollusks, or invertebrates.
- Any part or product of the above, such as skins, tusks, bone, feathers, or eggs.
- Products or articles manufactured from wildlife or fish.

Endangered species of wildlife, and products made from them, generally may not be imported or exported. You'll need a permit from the Fish and Wildlife Service to import virtually all types of ivory, unless it's from a warthog. The Fish and Wildlife Service has so many restrictions and prohibitions on various kinds of ivory - Asian elephant, African elephant, whale, rhinoceros, seal, pre-Endangered Species Act, post-CITES (Convention on International Trade in Endangered Species), and many others - that they urge you to contact them before you even *think* of acquiring ivory in a foreign country. They can be reached at 800.358.2104.

You may import an object made of ivory if it's an antique; that is, if it's at least 100 years old. You will need documentation that authenticates the age of the ivory. You may import other antiques containing wildlife parts with the same condition: they must be accompanied by documentation proving they are at least 100 years old. (Certain other requirements for antiques may apply.)

If you plan to buy such things as tortoiseshell jewelry, or articles made from whalebone, ivory, skins, or fur, contact the U.S. Fish and Wildlife Service, Division of Law Enforcement, P.O. Box 3247, Arlington, VA 22203-3247, or call 800.358.2104 or visit www.fws.gov Hunters can get information on the limitations for importing and exporting migratory game birds from this office as well. Ask for the pamphlet *Facts About Federal Wildlife Laws*.

The Fish and Wildlife Service has designated specific ports of entry to handle fish and wildlife entries. If you plan to import anything discussed in this section, please also contact CBP. We'll tell you about designated ports and send you the brochure *Pets and Wildlife*, which describes the regulations we enforce for all agencies that oversee the importation of animals.

Some states have fish and wildlife laws and regulations that are stricter than federal laws and regulations. If you're returning to such a state, be aware that the stricter state laws and regulations have priority. Similarly, the federal government does not allow you to import into the United States wild animals that were taken, killed, sold, possessed, or exported from another country if any of these acts violated foreign laws.

### Food Products (Prepared)
You may bring bakery items and certain cheeses into the United States. The APHIS Web site (www.aphis.usda.gov) features a Travelers Tips section and Game and Hunting Trophies section that offers extensive information about bringing food and other products into the country. Many prepared foods are admissible, although almost anything containing meat products, such as bouillon, soup mixes, etc., are not. As a general rule, condiments, vinegars, oils, packaged spices, honey, coffee and tea are admissible. Because rice can often harbor insects, it is best to avoid bringing it into the U.S.

Some imported foods are also subject to requirements of the Food and Drug Administration.

### Fruits and Vegetables
Bringing home fruits and vegetables can be quite troublesome. That apple you bought in the foreign airport just before boarding and then didn't eat? Whether CBP will allow it into the United States depends on where you got it and where you're going after you arrive in the United States. The same is true for those magnificent Mediterranean tomatoes. Fresh fruits and vegetables can carry plant pests or diseases into the United States.

You may remember the Med fly hysteria of the late 1980s: Stories about crop damage caused by the Mediterranean fruit fly were in the papers for months. The state of California and the federal government together spent some $100 million to get rid of this pest. And the source of the outbreak? One traveler who brought home one contaminated piece of fruit. It's best not to bring fresh fruits or vegetables into the United States. But if you plan to, contact CBP or check the Travelers Information section on the APHIS Web site for a general approved list on items that need a permit at www.aphis.usda.gov/ppq/permits.

### Game and Hunting Trophies
If you plan to import game or a hunting trophy, please contact the Fish and Wildlife Service before you leave at 800.358.2104. Currently, 14 ports of entry are designated to handle game and trophies; other ports must get approval from the Fish and Wildlife Service to clear your entry.

Depending on the species you bring back, you might need a permit from the country where the animal was harvested. Regardless of the species, you'll have to fill out a Fish and Wildlife form 3-177, Declaration for Importation or Exportation.

Trophies may also be subject to inspection by CBP for sanitary purposes. General guidelines for importing trophies can be found on APHIS Web site under Travelers Information. Contact USDA, APHIS, VS, NCIE Products Program, 4700 River Road, Unit 40, Riverdale, MD 20737-1231; call 301.734.3277; or check the APHIS Web site at http://www.aphis.usda.gov/vs/ncie/biofacts.html.

Also, federal regulations do not allow the importation of any species into a state with fish or wildlife laws that are more restrictive than federal laws. And if foreign laws were violated in the taking, sale, possession, or export to the United States of wild animals, those animals will not be allowed entry into the United States.

**Warning:** There are many regulations, enforced by various agencies, governing the importation of animals and animal parts. Failure to comply with them could result in time-consuming delays in clearing your trophy through CBP. You should always call for guidance before you depart.

### Gold
Gold coins, medals, and bullion, formerly prohibited, may be brought into the United States. However, under regulations administered by the Office of Foreign Assets Control, such items originating in or brought from Cuba, Iran, Iraq, Libya, Serbia, and Sudan are prohibited entry. Copies of gold coins are prohibited if not properly marked by country of issuance.

### Meats, Livestock, and Poultry
The regulations governing meat and meat products are very strict; you may not bring back fresh, dried, or canned meats or meat products from most foreign countries. Also, you may not bring in food products that have been prepared with meat.

The regulations on importing meat and meat products change frequently because they are based on disease outbreaks in different areas of the world. APHIS, which regulates meats and meat products as well as fruits and vegetables, invites you to call for more information on importing meats. Contact USDA-APHIS Veterinary Services National Center for Import/Export (NCIE), 4700 River Road, Unit 40, Riverdale, MD 20737-1231; call 301.734.7830; or visit http://www.aphis.usda.gov/vs/ncie/importing.html

### Medication
*Rule of thumb: When you go abroad, take the medicines you'll need, no more, no less.*
Narcotics and certain other drugs with a high potential for abuse - Rohypnol, GHB, and Fen-Phen, to name a few - may not be brought into the United States, and there are severe penalties for trying to bring them in. If you need medicines that contain potentially addictive drugs or narcotics (e.g., some cough medicines, tranquilizers, sleeping pills, antidepressants, or stimulants), do the following:

- Declare all drugs, medicinals, and similar products to the appropriate CBP official.
- Carry such substances in their original containers.
- Carry only the quantity of such substances that a person with that condition (e.g., chronic pain) would normally carry for his/her personal use.
- Carry a prescription or written statement from your physician that the substances are being used under a doctor's supervision and that they are necessary for your physical well being while traveling.

U.S residents entering the United States at international land borders, who are carrying a validly obtained controlled substance (except

narcotics such as marijuana, cocaine, heroin, or LSD), are subject to certain additional requirements. If a U.S. resident wants to bring in a controlled substance other than narcotics such as marijuana, cocaine, heroin, or LSD, but does not have a prescription for the substance issued by a U.S.-licensed practitioner (e.g., physician, dentist, etc.) registered with and authorized by the Drug Enforcement Administration (DEA) to prescribe the medication, the individual may not import more than 50 dosage units of the medication. If the U.S. resident has a prescription for the controlled substance issued by a DEA registrant, more than 50 dosage units may be imported by that person, provided all other legal requirements are met.

Please note that only medications that can be legally prescribed in the United States may be imported for personal use. Be aware that possession of certain substances may violate state laws.

**Warning:** The Food and Drug Administration (FDA) prohibits the importation, by mail or in person, of fraudulent prescription and nonprescription drugs and medical devices. These include unorthodox "cures" for such medical conditions as cancer, AIDS, arthritis, or multiple sclerosis. Although such drugs or devices may be legal elsewhere, if the FDA has not approved them for use in the United States, they may not legally enter the country and will be confiscated, even if they were obtained under a foreign physician's prescription.

For specifics about importing controlled substances, call 202.307.2414. For additional information about traveling with medication, contact your nearest FDA office or write Food and Drug Administration, Division of Import Operations and Policy, Room 12-8 (HFC-170), 5600 Fishers Lane, Rockville, MD 20857; or visit www.fda.gov/ora/compliance_ref/rpm_new2/ch9pers.html.

**Merchandise from Embargoed Countries**
Generally, you may not bring in any goods from the following: Cuba, Iran*, Iraq, Serbia and Montenegro*, North Korea*, Burma (Myanmar), Liberia and Sierra Leone (diamonds only) and Sudan. The Office of Foreign Assets Control (OFAC) of the U.S. Treasury Department enforces this ban.

You may, however, bring in *informational materials* - pamphlets, books, tapes, films or recordings - from these countries, except for Iraq.

If you want to import merchandise from any of these countries, you will first need a specific license from the Office of Foreign Assets Control. Such licenses are rarely granted.

There are restrictions on travel to these countries. The restrictions are strictly enforced, so if you're thinking about going to any of the countries on this list, write to the Office of Foreign Assets Control, Department of the Treasury, Washington, DC 20220, before you make your plans or visit www.treas.gov/ofac.

*The embargo on Iranian goods has been revised to allow the importation of food stuffs intended for human consumption, carpets and other textile floor coverings. Please check with your local port for further details.

*There is a partial embargo on Serbia and Montenegro. For more information visit OFAC Web site at http://www.treas.gov/offices/eotffc/ofac/.

*The importation of merchandise from North Korea requires a letter of approval issued by the OFAC.

**Pets**
If you plan to take your pet abroad or import one on your return, please get a copy of CBP brochure *Pets and Wildlife*. You should also check with state, county, and local authorities to learn if their restrictions and prohibitions on pets are more strict than federal requirements.

Importing animals is closely regulated for public health reasons and also for the well being of the animals. There are restrictions and prohibitions on bringing many species into the United States.

Cats must be free of evidence of diseases communicable to humans when they are examined at the port of entry. If the cat does not seem to be in good health, the owner may have to pay for an additional examination by a licensed veterinarian.



Dogs, too, must be free of evidence of diseases that could be communicable to humans. Puppies must be confined at a place of the owner's choosing until they are three months old; then they must be vaccinated against rabies. The puppy will then have to stay in confinement for another 30 days.

Dogs older than three months must get a rabies vaccination at least 30 days before they come to the United States and must be accompanied by a valid rabies vaccination certificate if coming from a country that is not rabies-free. This certificate should identify the dog, show the date of vaccination and the date it expires (there are one-year and three-year vaccinations), and be signed by a licensed veterinarian. If the certificate does not have an expiration date, CBP will accept it as long as the dog was vaccinated 12 months or less before coming to the United States. Dogs coming from rabies free countries do not have to be vaccinated.

You may import birds as pets as long as you comply with APHIS and U.S. Fish and Wildlife requirements. These requirements may include quarantining the birds at one of APHIS' three Animal Import Centers at your expense. You must make advance reservations at the quarantine facility. If you intend to import a bird, call APHIS' National Center for Import and Export at 301.734.8364 for more information. In any case, birds may only be imported through ports of entry where a USDA port veterinarian is on duty, and you must make arrangements in advance to have the bird examined by a USDA port veterinarian at the first U.S. port of entry. There is a user fee for this service of a minimum of $23.00 based on an hourly rate of $76/hour. For more information, you may contact the USDA, APHIS, Veterinary Services, National Center for Import and Export (NCIE), 4700 River Road, Riverdale, MD 20737; phone number 301.734.8364; or on the Internet at www.aphis.usda.gov/travel/pets.html.

Other common pets such as rabbits, ferrets, hamsters, gerbils, and guinea pigs may be imported if in apparent good health. Reptiles and invertebrates are restricted, please contact Fish and Wildlife Service for additional guidance.

**Plants**
The plants, cuttings, seeds, unprocessed plant products, and certain endangered species that are allowed into the United States require import permits; some are prohibited entirely. Threatened or endangered species that are permitted must have export permits from the country of origin.

Every single plant or plant product including handicraft items made with straw, must be declared to the CBP officer and must be presented for USDA inspection, no matter how free of pests it appears to be. Address requests for information to USDA-APHIS-PPQ, 4700 River Road, Riverdale, MD 20737; phone 301.734.8645; or visit www.aphis.usda.gov/travel/.

**Textiles and Clothing**
In general, there is no limit to how much fabric and clothing you can bring back as long as it is for your personal use, that is, for you or as gifts. (You may have to pay duty on it if you've exceeded your personal exemption, but the amount you may bring in is not limited.)

Unaccompanied personal shipments (packages that are mailed or shipped), however, *may* be subject to limitations on amount. The quantity limitations on clothing and textiles are called "quotas." In order to enter the United States, clothing and textiles may need to be accompanied by a document - you could think of it as a passport for fabrics - called a "visa." Sometimes, instead of a visa, an export license or certificate is required from the country that produced the clothing. A formal entry must be filed for all made-to-order suits from Hong Kong, no matter what their value, unless they accompany you and an export license issued by Hong Kong is presented with this entry. If you plan to get clothing or fabric on your trip and have it sent to you by mail or courier, check with CBP about quota and visa requirements before you travel.

**Trademarked and Copyrighted Articles**
CBP enforces laws relating to the protection of trademarks and copyrights. Articles that infringe a federally registered trademark or copyright, i.e., use the protected right without the authorization of the trademark or copyright owner, are subject to detention and/or seizure.

Articles bearing marks that are counterfeit of a federally registered trademark are subject to seizure and forfeiture. Additionally, the importation of articles bearing counterfeit marks may subject an individual to a civil fine if the registered trademark has also been recorded with CBP. Articles bearing marks that are confusingly similar to a registered trademark that has also been recorded with CBP, and restricted gray market articles (goods bearing genuine marks not intended for importation into the United States and for which CBP has granted gray market protection), are subject to detention and seizure.

However, passengers arriving into the United States may be permitted an exemption and allowed to import one article of any type, which must accompany the person, bearing a counterfeit, confusingly similar or restricted gray market trademark, provided that the article is for personal use and is not for sale. This exemption may be granted not more than once every thirty days. The arriving passenger may retain one article of each type accompanying the person. For example, an arriving person who has three purses, whether each bears a different infringing trademark, or whether all three bear the same infringing trademark, is permitted only one purse. If the article imported under the personal exemption provision is sold within one year after the date of importation, the article or its value is subject to forfeiture.

In regard to copyright infringement, articles that are determined by CBP to be clearly piratical of a federally registered copyright, i.e., unauthorized articles that are substantially similar to a material protected part of a copyright, are subject to seizure. Articles that are determined to be possibly piratical may be subject to detention and possible seizure. A personal use exemption for articles for the private use of the importer and which are not for sale or distribution, similar to that described above also applies to copyrighted articles.

You may bring back genuine trademarked and copyrighted articles (subject to duties). Products subject to copyright protection most commonly imported include software on CD-ROMs, music tape cassettes, toys, stuffed animals, clothing with cartoon characters, videotapes, DVDs, music CDs, and books. Products subject to trademark protection most commonly imported include handbags and accessories, and clothing.

Top

## Money and Other Monetary Instruments
You may bring into or take out of the country, including by mail, as much money as you wish. But if it's more than $10,000, you'll need to report it to CBP. Ask the CBP officer for the Currency Reporting Form (FinCen 105). The penalties for not complying can be quite severe.

"Money" means monetary instruments and includes U.S. or foreign coin currently in circulation, currency, traveler's checks in any form, money orders, and negotiable instruments or investment securities in bearer form.

Top

## Traveling Back and Forth Across the Border
If you cross the U.S. border into a foreign country and reenter the United States more than once in a short time, you might not want to use your personal exemption ($800 in this example) until you've returned to the United States for the last time. Here's why:

When you leave the United States, come back, leave again, and then come back again, all on the same trip, you can lose your exemption, since you've technically violated the "once every 30 days" rule. So if you know that your trip will involve these so-called "swing-backs," you can choose to save your personal exemption until the end of your trip.

For example, if you go to Canada, buy a liter of liquor, reenter the United States, then go back to Canada and buy $900 worth of merchandise and more liquor. You would probably want to save your $800 exemption for those final purchases and not use it for that first liter of liquor. In this case, on your first swing-back, simply tell the CBP officer that you want to pay duty on the liquor, even though you could bring it in duty-free. (If you did, you would lose the $800 exemption, since it's only available to you once every 30 days.) In other words, all you have to do is tell the Inspector that you want to pay duty the first (or second or third) time you come back to the United States if you know that you'll be leaving again soon, buying goods or getting them as gifts, and then reentering before the 30 days are up. In such a case, you're better off saving your exemption until the last time you reenter the United States.

Top

## Photographic Film
CBP will not examine film you bought abroad and are bringing back unless the CBP officer has reason to believe it contains prohibited material, such as child pornography.

You won't be charged duty on film bought in the United States and exposed abroad, whether it's developed or not. But film you bought and developed abroad counts as a dutiable item.

Top

## Customer Service Programs
CBP expanded its method of improving customer service to international travelers at major U.S. travel hubs. One method is having passenger service representatives available to travelers on a full-time basis at selected international airports and some seaports and land border ports of entry. The representatives' major purpose is to help travelers clear CBP.

Photos of the passenger service reps are posted wherever the program is operating, so you can find them if you need assistance. If you have a concern or need help understanding CBP regulations and procedures, ask to speak with the passenger service rep on duty.

The second initiative involves kiosks, the sort of automated booths you see in malls, banks, department stores, and airports. CBP kiosks are located at international airports.

Think of them as automated passenger service reps: They're self-service computers with a touch-screen display. All you have to do is type in your country of destination and the computer will print the information for you. The screen displays a telephone number to call for more information. The kiosks also have pockets with pamphlets on a variety of topics of interest to travelers: regulations on transporting currency, agriculture and food items, medicines, and pets, to name a few.

Kiosks are located in the outbound passenger lounges at the following international airports: Atlanta; Boston; Charlotte, North Carolina; Chicago; Dallas/Ft. Worth; Detroit; Houston; JFK, New York; Los Angeles; Miami; Newark, New Jersey; Philadelphia; San Francisco; San Juan; and Washington/Dulles. More kiosks are planned.

If you have any questions about CBP procedures, requirements, or policies regarding travelers, or if you have any complaints about treatment you have received from CBP officers or about your CBP processing, please contact:

Executive Director, Border Security and Facilitation
U.S. Customs and Border Protection
1300 Pennsylvania Avenue, NW
Washington, DC 20229

Allegations of criminal or serious misconduct may be reported to the Office of Internal Affairs at 1-877-IA CALLS. You may also write them at P.O. Box 14475, Washington, D.C. 20044.

Top

## Other Travel-related Information
Frequently, we are asked questions that are not customs matters. If you want to know about:

**Passports** are issued by the U.S. Department of State's Passport Agency. Please contact the passport agency nearest you for more information. Postal clerks also accept passport applications.

**Baggage allowance** - Ask the airline or steamship line on which you are traveling for more information.

**Currency of other Nations** - Your local bank can be of assistance.

**Foreign countries** - For information about the country you will visit or about what articles may be taken into that country, contact its embassy, consular office, or tourist information office.

U.S. Customs and Border Protection
Washington, D.C. 20229

Top



U.S. Customs & Border Protection
U.S. Department of Homeland Security                    CBP.gov

home   about   contacts   ports   questions   forms   publications   legal   contracting   sitemap

**newsroom      import      export      travel      careers      enforcement**

Start new search   Search these results

**Search:**

☑CBP Today  ☑CBP gov  ☑Nafta

+russia, +url:/cgov/travel/leavingarrivinginUS/vacat  GO

Help  Advanced

*Tip:* To search just one web site, use *+site:*
in your query and include the entire site
name.

*Example:* pitchers
+site:www.knuckleball.com

**Results for:** +russia, +url:/cgov/travel/leavingarrivinginUS/vacation/

**No results were found for your search.**

*Your query is too restrictive.*
*You might want to try: russia, /cgov/travel/leavingarrivinginus/vacation/*

How to
Use the Website

NEWSROOM ▪ IMPORT ▪ EXPORT ▪ TRAVEL ▪ CAREERS ▪ ENFORCEMENT
home ▪ about ▪ contacts ▪ ports ▪ questions ▪ forms
publications ▪ legal ▪ contracting ▪ sitemap

EEO | FOIA | Privacy Statement

Department of
Homeland Security



U.S. Customs & Border Protection  |  1300 Pennsylvania Avenue, NW Washington, D.C. 20229  |  (202) 354-1000



# U.S. Customs & Border Protection
U.S. Department of Homeland Security    CBP.gov

home   about   contacts   ports   questions   forms   publications   legal   contracting   sitemap

**newsroom    import    export    travel    careers    enforcement**

Start new search   Search these results

**Search:**

☑CBP Today  ☑CBP gov  ☑Nafta

+caviar, +url:/cgov/travel/leavingarrivinginUS/vacat   **GO**

Help  Advanced

*Did you know...* You can search for mixed alphanumeric terms.

*Example:* 100base-T Ethernet

**Results for: +caviar, +url:/cgov/travel/leavingarrivinginUS/vacation/**

**No results were found for your search.**

*Your query is too restrictive.*
*You might want to try: caviar, /cgov/travel/leavingarrivinginus/vacation/*

How to
Use the Website

NEWSROOM◼ IMPORT◼ EXPORT◼ TRAVEL◼ CAREERS◼ ENFORCEMENT
home ◼ about ◼ contacts ◼ ports ◼ questions ◼ forms
publications ◼ legal ◼ contracting ◼ sitemap

EEO | FOIA | Privacy Statement

Department of
Homeland Security



U.S. Customs & Border Protection  |  1300 Pennsylvania Avenue, NW Washington, D.C. 20229  |  (202) 354-1000



## U.S. Customs & Border Protection
U.S. Department of Homeland Security

CBP.gov

home   about   contacts   ports   questions   forms   publications   legal   contracting   sitemap

**newsroom   import   export   travel   careers   enforcement**

Skip to content

Start new search   Search these results

**Search:**

☑CBP Today  ☑CBP gov  ☑Nafta

| CITES sturgeon caviar | GO |

Help  Advanced

*Tip:* You can type in your query using plain language or just use keywords.

*Example:* who makes the best wine?

**Spelling suggestion:** *cite surgeon* caviar

**Results for:** CITES sturgeon caviar          **Document count:** CITES (11) sturgeon (4) caviar (24)

about 33 results found, sorted by relevance          score using date   hide summaries   group by location          1-10

---

**How to create an Informed Compliance Publication**
... of Regulations and Rulings 3 **Caviar** February 2004 (This page intentionally left blank) 4 **Caviar** February 2004 WHAT **CAVIAR** IS ...
*http://www.cbp.gov/linkhandler/cgov/toolbox/legal/ informed_compliance_pubs/general/icp011.ctt/icp011.pdf - 281.0KB - CBP gov*

74% ‖‖‖‖‖‖‖‖‖‖
20 Feb 04
Find Similar
Highlight

---

**U.S. Customs Today - November 2002 - A seriously fishy story**
... Ah, the good life. Diamonds, champagne, high-dollar cigars, **caviar** ... and not just any fish ... it is a serious violation of an international law protecting **sturgeon**--hence the limits on export quantities. He transshipped his illegal ...
*http://www.cbp.gov/xp/CustomsToday/2002/November/fishy.xml - 22.6KB - CBP Today*

71% ‖‖‖‖‖‖‖‖‖‖
13 Oct 04
Find Similar
Highlight

---

**Other Government Agency Query**
Customs and Trade Automated Interface Requirements July 2004 Other Government Agency Query OGQ-
*http://www.cbp.gov/linkhandler/cgov/import/operations_support/ automated_systems/abi/catair/ogq-02-4.ctt/ogq072004.doc - 190.5KB - CBP gov*

33% ‖‖‖‖‖‖‖‖‖‖
20 Aug 04
Find Similar
Highlight

---

**U. S. Customs - Informed Compliance Publications**
... **Caviar** - 02/04 ...
*http://www.cbp.gov/xp/cgov/toolbox/legal/informed_compliance_pubs/ general/ - 96.1KB - CBP gov*

31% ‖‖‖‖‖‖‖‖‖‖
16 Oct 04
Find Similar
Highlight

---

**A NOTE TO OUR READERS**
Importing into the United States A NOTE TO OUR READERS The 2001 edition of Importing Into the United States contains material brought about pursuant to the Customs Modernization Act (Title VI of the North American Free ...
*http://www.cbp.gov/nafta/cgov/doc/iius.doc - 621.0KB - Nafta*

31% ‖‖‖‖‖‖‖‖‖‖
11 Apr 03
Find Similar
Highlight

---

**Importing into the United States: A Guide for Commercial Importers**
TRADITION ★ SERVICE ★ HONOR ★ TRADITION ★ SERVICE ★ HONOR ★ TRADITION ★ SERVICE ★ HONOR TRADITION ★ SERVICE ★ HONOR ★ TRADITION ★ SERVICE ★ HONOR ★ TRADITION ★ SERVICE ★ HONOR TRADITION ★ SERVICE ★ HONOR ★ TRADITION ★ ...
*http://www.cbp.gov/nafta/cgov/pdf/iius.pdf - 3839.6KB - Nafta*

31% ‖‖‖‖‖‖‖‖‖‖
01 May 02
Find Similar
Highlight

**Pets and Wildlife: Licensing and Health Requirements**
TRADITION ★ SERVICE ★ HONOR ★ TRADITION ★ SERVICE ★ HONOR ★ TRADITION ★ SERVICE ★
HONOR ★ TRADITION ★ SERVICE ★ HONOR ★ TRADITION ★ SERVICE ★ HONOR ★ TRADITION ★
SERVICE ★ HONOR ★ TRADITION ★ SERVICE ★ HONOR ★ TRADITION ...
*http://www.cbp.gov/linkhandler/cgov/toolbox/publications/travel/pets.ctt/pets.pdf - 104.5KB - CBP gov*

31%   ||||||||||||||||||
29 Apr 02
Find Similar
Highlight

---

**A NOTE TO OUR READERS**
Importing Into the United States A Guide for Commercial Importers A NOTE TO OUR READERS The 2002
edition of Importing Into the United States contains material brought about pursuant to the Customs
Modernization Act ( ...
*http://www.cbp.gov/linkhandler/cgov/toolbox/publications/trade/iius.ctt/iius.doc - 628.5KB - CBP gov*

30%   ||||||||||||||||||
27 Jun 04
Find Similar
Highlight

---

**Microsoft Word - Tuna-htsus.doc**
... 10, 1604. 14. 22, and 1604.14. 30 The approved language of the new breakouts is as follows: 1604.14
Prepared or preserved fish; **caviar** and **caviar** substitutes prepared from fish eggs ( con) : Fish, whole or in
pieces, but not minced ( con) : Tunas, skipjack and bonito ( Sarda app. ...
*http://www.cbp.gov/linkhandler/cgov/import/duty_rates/tunachange.ctt/ tunachange.pdf - 83.5KB - CBP gov*

29%   ||||||||||||||||||
14 Aug 02
Find Similar
Highlight

---

**CBP.gov - recent federal register notices**
... Fed jury convicts Russian of smuggling **caviar** ...
*http://www.cbp.gov/xp/cgov/newsroom/highlights/inthenews/2002/ november.xml - 27.8KB - CBP gov*

24%   ||||||||||||||||||
13 Nov 04
Find Similar
Highlight

---

score using date   hide summaries   group by location        1-10   ▓

How to
Use the Website

NEWSROOM◼ IMPORT◼ EXPORT◼ TRAVEL◼ CAREERS◼ ENFORCEMENT
home ◼ about ◼ contacts ◼ ports ◼ questions ◼ forms
publications ◼ legal ◼ contracting ◼ sitemap

EEO | FOIA | Privacy Statement

Department of
Homeland Security

FIRSTGOV

U.S. Customs & Border Protection  |  1300 Pennsylvania Avenue, NW Washington, D.C. 20229   |   (202) 354-1000



**U.S. Customs & Border Protection**
U.S. Department of Homeland Security    CBP.gov

home   about   contacts   ports   questions   forms   publications   legal   contracting   sitemap

**newsroom    import    export    travel    careers    enforcement**

Skip to content

Start new search   Search these results

**Search:**

☑CBP Today ☑CBP gov ☑Nafta

| caviar endangered species | GO |

Help  Advanced

*Tip:* Separate unrelated proper names with a comma.

*Example:* Bill Gates, Steve Jobs

---

**Results for:** caviar endangered species

**Document count:** caviar (24) endangered (65) species (97) caviar endangered species (32)

about 139 results found, sorted by relevance    score using date  hide summaries  group by location    1-10

---

**U.S. Customs Today - November 2002 - A seriously fishy story**
... Ah, the good life. Diamonds, champagne, high-dollar cigars, **caviar** ... and not just any fish ... helping to move Beluga sturgeon from a protected to an **endangered species**--and if that happened, no Beluga **caviar** could be exported ...
*http://www.cbp.gov/xp/CustomsToday/2002/November/fishy.xml - 22.6KB - CBP Today*

73%
13 Oct 04
Find Similar
Highlight

---

**U.S. Customs Today - May 2002 - Shahtoosh trade unlawful, threatens extinction**
... Convention on International Trade in **Endangered Species** (CITES) of Wild Fauna and Flora regulates the trade in **endangered species** products, and since 1979, it ...
*http://www.cbp.gov/xp/CustomsToday/2002/May/shahtoosh.xml - 26.6KB - CBP Today*

72%
13 Oct 04
Find Similar
Highlight

---

**VACIS Draft PEA**
... related to construction of structures. Threatened and **Endangered Species** – Implementing the proposed action will not impact ... not impact Federal or state threatened or **endangered species**. Air Quality – Implementing the proposed action will ...
*http://www.cbp.gov/linkhandler/cgov/enforcement/port_activities/vacis/ gamma.ctt/gamma.doc - 2161.5KB - CBP gov*

70%
05 Nov 04
Find Similar
Highlight

---

**Title 19, Volume 1, Parts 1 to 140 19CFR12: Parts 12.0 - 12.27**
... Agriculture. ... Wild Animals, Birds, and Insects 12.26 Importations of wild animals, fish, amphibians, reptiles, mollusks, and crustaceans; prohibited and **endangered** and threatened **species**; designated ports of entry; permits required. 12.27 Importation or exportation of wild animals or birds, or the dead bodies thereof illegally captured ...
*http://www.cbp.gov/nafta/docs/us/12-1.html - 78.3KB - Nafta*

70%
18 Oct 04
Find Similar
Highlight

---

**Title 19, Volume 1, Parts 1 to 140 19CFR12: Parts 12.0 - 12.27**
... Agriculture. ... Wild Animals, Birds, and Insects 12.26 Importations of wild animals, fish, amphibians, reptiles, mollusks, and crustaceans; prohibited and **endangered** and threatened **species**; designated ports of entry; permits required. 12.27 Importation or exportation of wild animals or birds, or the dead bodies thereof illegally captured ...
*http://www.cbp.gov/nafta/docs/us/12-1.html - 78.4KB - Nafta*

70%
03 Aug 04
Find Similar
Highlight

---

**Pets and Wildlife: Licensing and Health Requirements**
... of wildlife and with protecting **endangered** plant and animal **species**. Some wildlife **species** of dogs ...

70%
29 Apr 02

pets, may be listed as **endangered**. **Endangered** and threatened animal and plant ...
*http://www.cbp.gov/linkhandler/cgov/toolbox/publications/travel/ pets.ctt/pets.pdf - 104.5KB - CBP gov*

Highlight

---

**How to create an Informed Compliance Publication**
... of Regulations and Rulings 3 **Caviar** February 2004 (This page intentionally left blank) 4 **Caviar** February 2004 WHAT **CAVIAR** IS ...
*http://www.cbp.gov/linkhandler/cgov/toolbox/legal/ informed_compliance_pubs/general/icp011.ctt/icp011.pdf - 281.0KB - CBP gov*

67%    ||||||||||||||||||
20 Feb 04
Find Similar
Highlight

---

**Other Government Agency Query**
Customs and Trade Automated Interface Requirements July 2004 Other Government Agency Query OGQ-
*http://www.cbp.gov/linkhandler/cgov/import/operations_support/ automated_systems/abi/catair/ogq-02-4.ctt/ogq072004.doc - 190.5KB - CBP gov*

65%    ||||||||||||||||||
20 Aug 04
Find Similar
Highlight

---

**Prohibited and Restricted Items - CBP.gov**
home about contacts ports questions forms publications legal contracting sitemap travel Travel Alerts and Restricted/Prohibited Goods Business and Government Travel Leaving and Arriving In the United ...
*http://www.cbp.gov/xp/cgov/travel/leavingarrivinginUS/vacation/ prohibited_restricted.xml - 78.4KB - CBP gov*

58%    ||||||||||||||||||
09 Nov 04
Find Similar
Highlight

---

**Know Before You Go - CBP.gov**
Full version of Know Before You Go brochure.
*http://www.cbp.gov/xp/cgov/travel/leavingarrivinginUS/vacation/ know_beforeu_go.xml - 131.2KB - CBP gov*

58%    ||||||||||||||||||
09 Nov 04
Find Similar
Highlight

---

score using date   hide summaries   group by location         1-10

How to
Use the Website

NEWSROOM◼ IMPORT◼ EXPORT◼ TRAVEL◼ CAREERS◼ ENFORCEMENT
home ◼ about ◼ contacts ◼ ports ◼ questions ◼ forms
publications ◼ legal ◼ contracting ◼ sitemap

EEO | FOIA | Privacy Statement

Department of
Homeland Security



U.S. Customs & Border Protection | 1300 Pennsylvania Avenue, NW Washington, D.C. 20229 | (202) 354-1000

# U.S. CUSTOMS **TODAY**



November 2002

## NOVEMBER 2002

### IN THIS ISSUE

Financing Terror

Manifests destiny

United States-Switzerland exchange agents

CSI: Asian and Italian ports join anti-terror coalition

ACE testing to begin in December

Tracking the Beltway Sniper

Freeing up trade: African Growth and Opportunity Act II

In Kuwait, Customs has friends, allies

Awards ceremony highlights employee efforts to "Protect America"

Customs officers use first responder training to save lives

- A seriously fishy story

### OTHER CUSTOMS NEWS

"Krowbar" throws in the towel

"I hoped he would live..."

Up, up, and away

CLI Alumni

Hard work and competitive

### A seriously fishy story

Ah, the good life. Diamonds, champagne, high-dollar cigars, caviar ... and not just any fish eggs either. We're talkin' Beluga. The good stuff.



These objects of living large are, like drugs, highly susceptible to being smuggled. Check out an old James Bond movie if you're too young to remember that diamonds, for example, were once a big deal in the smuggling business. And right out of an old Bond-esque plot comes a Russian guy, Viktor Tsimbal, who was running a caviar scam that was every bit as profitable as--and in fact, worked a whole lot like--the cocaine trade.

He made millions of dollars a year smuggling Beluga caviar, found solely in Black and Caspian Sea sturgeons, from the time he started his "export" operation in 1998 till he got busted in August in Miami. Like the cocaine kings, he used mules to smuggle the goods. And they smuggled more caviar into the United States than Russia is legally permitted to export to the entire world.

Tsimbal and his mules may have viewed their product as food, but to the Customs Service and the Fish and Wildlife Service, it is a serious violation of an international law protecting sturgeon--hence the limits on export quantities. He transshipped his illegal fish eggs through Poland and labeled them as Atlantic lumpfish, which are not a protected species.

Sturgeons have been around since the dinosaur age and can live for a hundred years if they're not poached for their eggs. You have to kill the fish during their egg-bearing years, usually their first 20 years, to get the roe. Smugglers were helping to extinguish the breed entirely.

Tsimbal was not only helping to move Beluga sturgeon from a protected to an endangered species--and if that happened, no Beluga caviar could be exported or imported at all--he was also laundering the money he earned from his smuggling scheme.

Tsimbal, who comes up for sentencing in November, pled guilty to a far-reaching conspiracy that included charges of money-laundering, fraud, and smuggling, and that involved U.S. Customs, the Department of Justice, the Fish and Wildlife Service, and the Food and Drug Administration. He faces a maximum sentence of 30 years in prison and a $1 million fine. Ah, the good life.

Previous Article                    Next Article

*What Every Member of the*
*Trade Community Should Know About:*

# Caviar



**AN INFORMED COMPLIANCE PUBLICATION**

**FEBRUARY 2004**



**NOTICE:**

This publication is intended to provide guidance and information to the trade community. It reflects the position on or interpretation of the applicable laws or regulations by U.S. Customs and Border Protection (CBP) as of the date of publication, which is shown on the front cover. It does not in any way replace or supersede those laws or regulations. Only the latest official version of the laws or regulations is authoritative.

Publication History

First Issued February 1997
Revised February 2004

**PRINTING NOTE:**

This publication was designed for electronic distribution via the CBP website (http://www.cbp.gov) and is being distributed in a variety of formats. It was originally set up in Microsoft Word97®. Pagination and margins in downloaded versions may vary depending upon which word processor or printer you use. If you wish to maintain the original settings, you may wish to download the .pdf version, which can then be printed using the freely available Adobe Acrobat Reader®.

2

# PREFACE

On December 8, 1993, Title VI of the North American Free Trade Agreement Implementation Act (Pub. L. 103-182, 107 Stat. 2057), also known as the Customs Modernization or "Mod" Act, became effective. These provisions amended many sections of the Tariff Act of 1930 and related laws.

Two new concepts that emerge from the Mod Act are "*informed compliance*" and "*shared responsibility*," which are premised on the idea that in order to maximize voluntary compliance with laws and regulations of U.S. Customs and Border Protection, the trade community needs to be clearly and completely informed of its legal obligations. Accordingly, the Mod Act imposes a greater obligation on CBP to provide the public with improved information concerning the trade community's rights and responsibilities under customs regulations and related laws. In addition, both the trade and U.S. Customs and Border Protection share responsibility for carrying out these requirements. For example, under Section 484 of the Tariff Act, as amended (19 U.S.C. 1484), the importer of record is responsible for using reasonable care to enter, classify and determine the value of imported merchandise and to provide any other information necessary to enable U.S. Customs and Border Protection to properly assess duties, collect accurate statistics, and determine whether other applicable legal requirements, if any, have been met. CBP is then responsible for fixing the final classification and value of the merchandise. An importer of record's failure to exercise reasonable care could delay release of the merchandise and, in some cases, could result in the imposition of penalties.

The Office of Regulations and Rulings (ORR) has been given a major role in meeting the informed compliance responsibilities of U.S. Customs and Border Protection. In order to provide information to the public, CBP has issued a series of informed compliance publications, and videos, on new or revised requirements, regulations or procedures, and a variety of classification and valuation issues.

This publication, prepared by the National Commodity Specialist Division, ORR, is a study of the classification of caviar.. "Caviar" provides guidance regarding the classification of imported merchandise. We sincerely hope that this material, together with seminars and increased access to rulings of U.S. Customs and Border Protection, will help the trade community to improve voluntary compliance with customs laws and to understand the relevant administrative processes.

The material in this publication is provided for general information purposes only. Because many complicated factors can be involved in customs issues, an importer may wish to obtain a ruling under Regulations of U.S. Customs and Border Protection, 19 C.F.R. Part 177, or to obtain advice from an expert who specializes in customs matters, for example, a licensed customs broker, attorney or consultant.

Comments and suggestions are welcomed and should be addressed to the Assistant Commissioner at the Office of Regulations and Rulings, U.S. Customs and Border Protection, 1300 Pennsylvania Avenue, NW, (Mint Annex), Washington, D.C. 20229.

Michael T. Schmitz,
Assistant Commissioner
Office of Regulations and Rulings

3

(This page intentionally left blank)

**WHAT CAVIAR IS** ...................................................................................... 7

**THE STURGEON**....................................................................................... 7

**TYPES OF CAVIAR**.................................................................................. 7

A) Beluga (Huso huso) .................................................................................. 7
B) Osetra ( *Acipenser gueldenstaedtii colchicus*) - also known as asetra, oscetra, ossetra, and ossetrova ............................................................................ 8
C) Sevruga (Acipenser stellatus) ................................................................... 8

**HOW CAVIAR IS GRADED**..................................................................... 8

A) Grade 1....................................................................................................... 8
B) Grade 2....................................................................................................... 8
C) Pressed Caviar ........................................................................................... 8
Summary of Grading for Caviar ...................................................................... 9
   Beluga Caviar ............................................................................................ 9
   Osetra Caviar ............................................................................................ 9
   Sevruga Caviar.......................................................................................... 9
   Pressed Caviar ........................................................................................ 10

**PREPARATION OF CAVIAR** ................................................................. 10

Pasteurization ............................................................................................... 10
Special Requirements for Transport.............................................................. 11

**CLASSIFICATION OF CAVIAR** ............................................................ 11

**CLASSIFICATION OF CAVIAR SUBSTITUTES** ................................. 12

**REQUIRED DOCUMENTATION** ........................................................... 12

**INVOICING REQUIREMENTS** .............................................................. 13

**BIBLIOGRAPHY**.................................................................................... 14

**ADDITIONAL INFORMATION**............................................................... 17

The Internet.................................................................................................... 17
Customs Regulations .................................................................................... 17
Customs Bulletin ........................................................................................... 17
Importing Into the United States .................................................................... 18
Informed Compliance Publications ................................................................ 18
Value Publications ......................................................................................... 19
"Your Comments are Important"..................................................................... 20

(This page intentionally left blank)

## WHAT CAVIAR IS

Caviar is the eggs or roe of sturgeon preserved with salt. It is prepared by removing the egg masses from freshly caught fish and passing them carefully through a fine-mesh screen to separate the eggs and remove extraneous bits of tissue and fat. At the same time, 4-6 percent salt is added to preserve the eggs and bring out the flavor. Most caviar is produced in Russia and Iran from fish taken from the Caspian Sea, the Black Sea, and the Sea of Azov.

Caviar is graded according to the size of the eggs and the manner of processing. The grades are named for the types of sturgeon from which the eggs are taken. The species of sturgeon (Family *Acipenseridae*) that produce caviar are, in order of size, beluga, osetra, and sevruga.

Lesser grades of caviar, made from broken or immature eggs, are more heavily salted and compressed. This payusnaya caviar (pressed caviar) is preferred by some because of its more intense flavor. Payusnaya is a coarser product, which consists mostly of roe that is premature or damaged in the sieving process. It is more heavily salted (10 percent), pressed in bulk, and shipped for canning elsewhere.

## THE STURGEON

Sturgeons are fish of the Family *Acipenseridae*. The toothless sturgeon is one of the few surviving bony fish (the bones are soft and cartilaginous) which have retained their prehistoric appearance. Because their unique skeletal structure has distinct longitudinal bony plates on the outside, they have no bones in the flesh - a characteristic that gourmets welcome.

There are twenty-four existing sturgeon species worldwide. Five of them live in the Caspian Sea, and only three supply caviar. The three species of sturgeon that supply caviar are the beluga, the osetra, and the sevruga. These three give us 90 percent of the world's production.

## TYPES OF CAVIAR

## A) Beluga (Huso huso)

The beluga is the largest sturgeon and the only predator in the family. It is so rare that the annual beluga catch does not exceed 100 units. The beluga is strong, vigorous, large-mouthed, and nomadic, following its prey, shoals of whitefish. Beluga caviar, the largest, is light to dark gray. It is highly valued for its large granules (coarse roe) and delicate skin.

## B) Osetra ( *Acipenser gueldenstaedtii colchicus*) - also known as asetra, oscetra, ossetra, and ossetrova

The medium-sized sturgeon probes the sea bed with a projecting snout. The snout is elongate and there are four barbels on its lower surface. It is equipped to vacuum up plants and small forms of sea life.

Osetra caviar is dark brown-gray to golden. It is the only variety of caviar with a unique nut flavor.

## C) Sevruga (Acipenser stellatus)

The sevruga is small, and it has a pointed snout with an upward tilt. The diamond-shaped exoskeletal plates are the most distinct in this species of sturgeon.

Sevruga caviar, the smallest, is greenish-black and fine-grained.

## HOW CAVIAR IS GRADED

The factors that are considered in the grading of caviar are the uniformity and consistency of the grain, the size, color, fragrance, flavor, the gleam, firmness and vulnerability of the roe skin.

## A) Grade 1

Grade 1 caviar is caviar that ideally combines all properties: it must be firm, large grained, delicate, intact, of fine color and flavor.

## B) Grade 2

Grade 2 caviar is also fresh caviar with normal grain size, very good color and fine flavor.

## C) Pressed Caviar

In this grade, external effect caused the fracture of more than 35 percent of the roe skins before it was removed from the fish. Therefore, this caviar is treated in a different manner than grade 1 and grade 2 caviar. It consists of a roe blend from the osetra and sevruga. This blended roe, usually milky and soft, is heated to 38 degrees Centigrade in a saline solution and stirred until it has absorbed salt and regains its natural color. Then, it is cast into "talees," fabric pouches in which it is pressed out to remove excess salt and oil.

Pressed caviar contains four times more roe than fresh caviar of the same weight. It is drier, spreadable, and it is also considered to be a delicacy. Because it takes four

8

pounds of fresh caviar to prepare one pound of pressed, the resulting black paste has a highly concentrated flavor.  The strong, sharp taste is favored by some gourmets.

## Summary of Grading for Caviar

### Beluga Caviar

#### Grade 1

Large grain.  Absolute top quality.  In this category, the following additional color criteria apply:

> 000 light gray

> 00 medium gray

> 0 dark gray

#### Grade 2

Smaller grain.  Medium to light gray.

### Osetra Caviar

#### Grade 1

In this quality, osetra is distinguished by three colors:

> Royal Caviar: Gold  The rarest and most coveted caviar (general yield from osetra is 1:1,000)

> Color A: gray gold

> Color B: dark gray

#### Grade 2

Smaller grain.  Medium gray.

### Sevruga Caviar

#### Grade 1

Dark gray to light gray

9

**Grade 2**

Smaller grain.  Dark gray

## Pressed Caviar

# PREPARATION OF CAVIAR

Fresh-grained caviar is prepared from the full roe of the female sturgeon.  The sturgeons are caught in nets and taken back to the fishery laboratory alive.  There they are clubbed and anesthetized, not killed, and the egg pockets are emptied.  The fishermen carefully anesthetize the fish by hitting them at a specific spot below the head.  The roe must be taken while the fish are still alive.  If the fish experience the stress of death, they release a chemical into the eggs that spoils the caviar by making it bitter.

When beluga roe is taken from the fish to make the highest graded caviar, it is processed manually.  The fish are placed on a coarse mesh screen spread across a wooden tub.  The roe is removed by splitting the underside of the sturgeon with a sharp knife.  Then the roe bags (filmy sacs containing the eggs) are broken by whipping them with birch switches.  The freed roe is then passed over screens with varying-sized mesh to grade the eggs according to size.  The roe is rubbed through the screens with the palm of the hand for optimum control.  The process also separates the eggs from binding tissue.

During the process, the eggs drop into a tub below the mesh screens.  After a portion of the eggs has been collected in the tub, it is transferred to a bucket and the process is repeated.  Considerable care must be taken in rubbing the eggs through the screens, since bruising them results in a lower grade of caviar.

When all of the eggs have been collected, they are put into a tub and dry salt is added.  The salt is thoroughly mixed with the roe.  The eggs are then placed in a fine mesh screen to drain.

The caviar is packed in tin, glass, or porcelain containers equipped with tight-fitting covers.  It is then ready to eat or store under refrigeration.

## Pasteurization

Some, not all, caviar is pasteurized.  Pasteurization is effected by the immersion of the cans or jars of caviar in a hot-water bath at 155-160 degrees Fahrenheit for 30, 45, and 60 minutes for 1, 2, and 4 ounce containers, respectively.  This treatment makes it possible to store caviar at temperatures as high as 60 degrees Fahrenheit for several months without off-flavors or decomposition resulting.

10

## Special Requirements for Transport

The refrigerator, with its compartments for below freezing point storage, presents many dangers to the preservation of caviar. Once caviar has been frozen and then thawed out, the roe (berries) will have burst, the product will have become mushy, and the quality will have deteriorated to the lowest grade. In order to avoid having the berries burst, caviar must be refrigerated at 28 to 32 degrees Fahrenheit.

A prime requirement for top quality caviar is that each berry be well coated with its own glistening fat. One of the purchaser's concerns is that the fat in the caviar does not rise to the top of the can, to be scooped off by the vendor for a preferred customer, leaving less fatty berries for other, later, buyers. The conscientious shipper sees to it that the caviar tins in the refrigerator are turned frequently during transport, in order to keep the fatty substance well distributed.

## CLASSIFICATION OF CAVIAR

*The Harmonized Tariff Schedule of the United States* (HTS) has an *eo nomine* provision for caviar in subheading 1604.30.2000, HTS. The general most-favored-nation (MFN) rate of duty is 15 percent *ad valorem* (2004).

True caviar is roe that comes from the sturgeon. The Explanatory Notes to the Harmonized Commodity Description and Coding System defines caviar in Chapter 16 thus:

> Caviar is prepared from the roe of the sturgeon, a fish found in the rivers of several regions (Italy, Alaska, Turkey, Iran and Russia); the main varieties are Beluga, Schirp, Ossiotr and Sewruga. Caviar is usually in the form of a soft, granular mass, composed of eggs between 2 and 4 mm in diameter and ranging in color from silver-grey to greenish-black. It has a strong smell and a slightly salty taste. It may also be presented pressed i.e.: reduced to a homogeneous paste, sometimes shaped into small slender cylinders or packed in small containers.

Chapter 16 excludes fish roe that is still enclosed in the ovarian membrane, prepared or preserved only by processes provided for in Chapter 3.

Caviar of subheading 1604.30.2000, HTSUS, may be entered free of duty, if the country of origin has been designated a beneficiary country under the Generalized System of Preferences, the North American Free Trade Agreement, the Caribbean Basin Economic Recovery Act, the United States-Israel Free Trade Area or the Andean Trade Preference Act, and the United States-Chile Free Trade Agreement ,upon compliance with all applicable regulations. Further, under the United States-Jordan Free Trade Area Implementation Act and the United States-Singapore Free Trade Agreement, qualifying caviar may be entered at a reduced rate of duty (2004). The Column 2 rate of duty is 30 percent *ad valorem* (2004).

11

## CLASSIFICATION OF CAVIAR SUBSTITUTES

Roe that comes from a fish other than the sturgeon is not true caviar, and it is classifiable as a caviar substitute  For example, the eggs of lumpfish, whitefish and salmon may be prepared or preserved as caviar substitutes. Although the term "caviar" may appear on the commercial invoice, and the importer's price list may show the merchandise under a caviar heading, for Customs classification purposes, this roe is not caviar, but, rather, a caviar substitute. Attention must be given to the name of the fish that is specified on the invoice.

The Explanatory Notes describe caviar substitutes thus:

These are products consumed as caviar but prepared from the eggs of fish other than sturgeon (e.g., salmon, carp, pike, tuna, mullet, cod, lumpfish), which have been washed, cleaned of adherent organs, salted and sometimes pressed or dried. Such fish eggs may also be seasoned and colored.

The HTSUS provides for caviar substitutes under two subheadings.  If the caviar substitute has been boiled and packed in airtight containers, the applicable subheading is 1604.30.3000, HTS, which provides for prepared or preserved fish; caviar and caviar substitutes prepared from fish eggs, caviar and caviar substitutes, caviar substitutes, boiled and in airtight containers.  The general most-favored-nation (MFN) rate of duty is free (2004).  The Column 2 rate of duty is 30 percent *ad valorem* (2004).

Caviar substitutes other than those which have been boiled and packed in airtight containers are classifiable under subheading 1604.30.4000, HTS, which provides for prepared or preserved fish; caviar and caviar substitutes prepared from fish eggs, caviar and caviar substitutes, caviar substitutes, other.  The general MFN rate of duty is free (2004).  The Column 2 rate of duty is 44 cents per kilogram (2004).

## REQUIRED DOCUMENTATION

The Convention on International Trade in Endangered Species of Wild Fauna and Flora (CITES) regulates international trade in certain animals and plants.  As a result of the Tenth Conference of the CITES Parties (which includes the United States), held in June 1997, all species of sturgeon and paddlefish are now listed in either Appendix I or II of CITES.  Those species, whose international trade is controlled, are listed in Appendices I, II and III to the Convention.  Appendix I includes species threatened with extinction that are or may be affected by trade.  Appendix II includes species that may become threatened with extinction if trade is not regulated.  Appendix III includes species listed by individual range countries to obtain international cooperation in controlling trade.  In this regard, CITES trade control covers the import, export, re-export and introduction from the sea of such items.

All shipments of sturgeon, paddlefish and their products (such as caviar) must be accompanied by a valid CITES export permit or re-export certificate issued by the CITES Management Authority of the (re)exporting country and must be declared to U.S. Fish and Wildlife (FWS) Inspectors, upon importation into the United States. (Unless exempted by the Fish and Wildlife Service, all imports or exports must be cleared at a FWS designated port.)

All imports of such products must also be accompanied by a "Declaration for Importation or Exportation of Fish or Wildlife," FWS Form 3-177.

Questions regarding import requirements for sturgeon, paddlefish and their products should be directed to local Fish and Wildlife field offices or to FWS Headquarters at (703) 358-1949 or (703) 358-2095.

## INVOICING REQUIREMENTS

The accuracy of the information contained on invoices is an essential element of the structure of the many new and creative programs Customs has undertaken recently. These programs, including, but not limited to, automated entry processing and pre-importation review, may provide their benefits to the trade community as a whole, only if the data gathered is correct and complete. This concern for invoice accuracy is not new, but, as we progress in automation, accuracy becomes indispensable.

Section 141.86 of the Customs Regulations concerns invoicing requirements. Subparagraph (a)(3) of the section specifically requires that invoices have the following information:

> "A detailed description of the merchandise, including the name by which each item is known, the grade or quality, and the marks, numbers and symbols under which sold by the seller or manufacturer to the trade in the country of exportation, together with the marks and numbers of the packages in which the merchandise is packed."

A "detailed description" is one which enables an import specialist to properly classify imported merchandise. Accordingly, the invoice description must indicate any information which has a direct bearing on the proper classification of the imported item and it is incumbent upon the importer of record to ensure that the detailed description is present on each invoice.

Importers do not have to provide information that is not necessary to classify a specific item. However, they are responsible for giving Customs the information that is needed.

The following information is required on all invoices for caviar:

1) a detailed description of the caviar or caviar substitute i.e.: if caviar, the species of sturgeon (beluga, osetra, sevruga, or pressed caviar); if a caviar substitute, the common name and the scientific name of the fish.

2) the method of packing - size of the can or jar.

3) the unit value.

4) the total value of the shipment.

5) the terms of sale.

6) the weight in pounds or kilograms.

7) the country of origin.

## BIBLIOGRAPHY

## Books

Cayne, Bernard S. and Holland, David T., ed. *The Encyclopedia Americana*. Danbury: Grolier, Inc., 1989.

Coyle, L. Patrick, ed. *The World Encyclopedia of Food*. New York: Facts on File, Inc., 1982.

*Explanatory Notes to the Harmonized Commodity Description and Coding System*. Brussels: Customs Cooperation Council, 1990.

Friedland, Susan. *The Caviar Book*. New York: Charles Scribner and Sons, Inc., 1986.

Goetz, Philip W., ed. *The New Encyclopaedia Britannica*. Chicago: Encyclopaedia Britannica, Inc., 1986.

*Harmonized Tariff Schedule of the United States*, 1996. Washington DC: United States International Trade Commission, 1996.

*Multilingual Dictionary of Fish and Fish Products*. Farnham, England: Fishing New Books Limited, 1968.

Stein, Gerald M. and Bain, Donald. *Caviar! Caviar! Caviar!* New York: Carol Publishing Group, 1981.

## Periodicals

Burros, Marian. *"Seeking Out the Finest in Imported Fresh Caviar."* The New York Times, December 26, 1984.

*"Canned Excellence."* The New York Times, March 3, 1993.

*"Caviar."* The New York Times, March 3, 1993.

"Caviar Rules." The New York Times, March 3, 1993.

Conn, Sandra and Spiselman, Anne. *"Food."* Crain's Chicago Business, February 8, 1993.

De Chillo, Suzanne. *"Fishermen on the Hudson Develop a Small Caviar Industry."* The New York Times, July 14, 1991.

Dolan, Mary. *"Caviar on the Hudson."* Rockland Journal-News, June 19, 1991.

*"Entrepreneurs Market Caviar from Astrakhan."* Alaska Journal of Commerce, September 21, 1992.

Fabricant, Florence. *"As Annual Price War Begins, Caviar Business Is in Turmoil."* The New York Times, December 4, 1991.

Fabricant, Florence. *"Caviar from Azerbaijan."* The New York Times, March 3, 1993.

Jackson, Maggie. *"Caviar Market in Upheaval after Soviet Breakup."* Los Angeles Times, April 19, 1992.

Jacobson, Philip. *"East Europeans Take Caviar as Ticket to West."* The New York Times, December 20, 1991.

Jeffee, Larry. *"Petrossian Paris, Caviar Importer, Hopes to Double MO Sales in 1993."* DM News, February 15, 1993.

King, Mike and Husted, Amanda. *"Post-Soviet Caviar? Nada."* The Atlantic Journal and Constitution, April 8, 1992.

Lewis, Flora. *"The Black Market in Iranian Caviar."* The New York Times, January 23, 1980.

*"What a Fish!"* The New York Times, March 3, 1993.

Witcher, Tim. *"Rumblings in Paris over Missing Caviar."* The Daily Telegraph, December 22, 1992.

Young, Robin. *"Caviar Boom Leaves Behind a Taste of Something Fishy."* The New York Times, March 12, 1993.

## News Wire Services

*"Iran in Deal with Dubai Firm to Boost Caviar Exports."* Agence France Presse. May 31, 1992.

Jackson, Magge. *"Secretive Caviar Industry in Flux Following Soviet Union Breakup."* The Associated Press. April 7, 1992.

Kalashnikova, Svetlana. *"Unsanctioned Goods Withdrawn from Air Passengers,"* Tass. March 11, 1992.

*"Record Caviar Seizure, Probe Phony Foie Gras."* The Associated Press. December 20, 1991.

*"United Fishing for New Caviar Supplies."* United Press International. August 21, 1991.

## ADDITIONAL INFORMATION

### The Internet

The home page of U.S. Customs and Border Protection on the Internet's World Wide Web, provides the trade community with current, relevant information regarding CBP operations and items of special interest. The site posts information -- which includes proposed regulations, news releases, publications and notices, etc. -- that can be searched, read on-line, printed or downloaded to your personal computer. The web site was established as a trade-friendly mechanism to assist the importing and exporting community.  The web site also links to the home pages of many other agencies whose importing or exporting regulations that U.S. Customs and Border Protection helps to enforce.  The web site also contains a wealth of information of interest to a broader public than the trade community.  For instance, on June 20, 2001, CBP launched the "Know Before You Go" publication and traveler awareness campaign designed to help educate international travelers.

The web address of U.S. Customs and Border Protection is http://www.cbp.gov

### Customs Regulations

The current edition of *Customs Regulations of the United States* is a loose-leaf, subscription publication available from the Superintendent of Documents, U.S. Government Printing Office, Washington, DC 20402; telephone (202) 512-1800.  A bound, 2003 edition of Title 19, *Code of Federal Regulations*, which incorporates all changes to the Regulations as of April 1, 2003, is also available for sale from the same address. All proposed and final regulations are published in the *Federal Register*, which is published daily by the Office of the Federal Register, National Archives and Records Administration, and distributed by the Superintendent of Documents.  Information about on-line access to the *Federal Register* may be obtained by calling (202) 512-1530 between 7 a.m. and 5 p.m. Eastern time.  These notices are also published in the weekly *Customs Bulletin* described below.

### Customs Bulletin

The *Customs Bulletin and Decisions ("Customs Bulletin")* is a weekly publication that contains decisions, rulings, regulatory proposals, notices and other information of interest to the trade community.  It also contains decisions issued by the U.S. Court of International Trade, as well as customs-related decisions of the U.S. Court of Appeals for the Federal Circuit.  Each year, the Government Printing Office publishes bound volumes of the *Customs Bulletin*.   Subscriptions may be purchased from the Superintendent of Documents at the address and phone number listed above.

## Importing Into the United States

This publication provides an overview of the importing process and contains general information about import requirements. The February 2002 edition of *Importing Into the United States* contains much new and revised material brought about pursuant to the Customs Modernization Act ("Mod Act"). The Mod Act has fundamentally altered the relationship between importers and U.S. Customs and Border Protection by shifting to the importer the legal responsibility for declaring the value, classification, and rate of duty applicable to entered merchandise.

The February 2002 edition contains a section entitled "Informed Compliance." A key component of informed compliance is the shared responsibility between U.S. Customs and Border Protection and the import community, wherein CBP communicates its requirements to the importer, and the importer, in turn, uses reasonable care to assure that CBP is provided accurate and timely data pertaining to his or her importation.

Single copies may be obtained from local offices of U.S. Customs and Border Protection, or from the Office of Public Affairs, U.S. Customs and Border Protection, 1300 Pennsylvania Avenue NW, Washington, DC 20229. An on-line version is available at the CBP web site. *Importing Into the United States* is also available for sale, in single copies or bulk orders, from the Superintendent of Documents by calling (202) 512-1800, or by mail from the Superintendent of Documents, Government Printing Office, P.O. Box 371954, Pittsburgh, PA 15250-7054.

## Informed Compliance Publications

U.S. Customs and Border Protection has prepared a number of Informed Compliance publications in the "*What Every Member of the Trade Community Should Know About:...*" series. Check the Internet web site http://www.cbp.gov for current publications.

18

## Value Publications

*Customs Valuation under the Trade Agreements Act of 1979* is a 96-page book containing a detailed narrative description of the customs valuation system, the customs valuation title of the Trade Agreements Act (§402 of the Tariff Act of 1930, as amended by the Trade Agreements Act of 1979 (19 U.S.C. §1401a)), the Statement of Administrative Action which was sent to the U.S. Congress in conjunction with the TAA, regulations (19 C.F.R. §§152.000-152.108) implementing the valuation system (a few sections of the regulations have been amended subsequent to the publication of the book) and questions and answers concerning the valuation system. A copy may be obtained from U.S. Customs and Border Protection, Office of Regulations and Rulings, Value Branch, 1300 Pennsylvania Avenue, NW, (Mint Annex), Washington, D.C. 20229.

*Customs Valuation Encyclopedia* (with updates) is comprised of relevant statutory provisions, CBP Regulations implementing the statute, portions of the Customs Valuation Code, judicial precedent, and administrative rulings involving application of valuation law. A copy may be purchased for a nominal charge from the Superintendent of Documents, Government Printing Office, P.O. Box 371954, Pittsburgh, PA 15250-7054. This publication is also available on the Internet web site of U.S. Customs and Border Protection.

> The information provided in this publication is for general information purposes only. Recognizing that many complicated factors may be involved in customs issues, an importer may wish to obtain a ruling under CBP Regulations, 19 C.F.R. Part 177, or obtain advice from an expert (such as a licensed Customs Broker, attorney or consultant) who specializes in customs matters. Reliance solely on the general information in this pamphlet may not be considered reasonable care.

Additional information may also be obtained from U.S. Customs and Border Protection ports of entry. Please consult your telephone directory for an office near you. The listing will be found under U.S. Government, Department of Homeland Security.

## "Your Comments are Important"

The Small Business and Regulatory Enforcement Ombudsman and 10 regional Fairness Boards were established to receive comments from small businesses about Federal agency enforcement activities and rate each agency's responsiveness to small business.  If you wish to comment on the enforcement actions of U.S. Customs and Border Protection, call 1-888-REG-FAIR (1-888-734-3247).

**REPORT SMUGGLING 1-800-BE-ALERT OR 1-800-NO-DROGA**



**Visit our Internet web site: http://www.cbp.gov**

20



# U.S. Customs & Border Protection
U.S. Department of Homeland Security     CBP.gov

Sunday, November 28, 2004

SEARCH                                         GO

| home | about | contacts | ports | questions | forms | publications | legal | contracting | sitemap |

**newsroom     import     export     travel     careers     enforcement**



## travel

Travel Alerts and
Restricted/Prohibited Goods

**Pleasure and Vacation
Travel for U.S. Residents**

To and Entry for Foreign
Nationals

Clearing Goods through
Customs

Customer Service

CBP Search Authority

Frequent Traveler Programs

Careers and Security

Pleasure Boats and Private
Flyers

Labor and Border Wait
Times

Report
Suspicious Activity to
1-800-BE-ALERT

home / travel / Pleasure and Vacation Travel for U.S. Residents /

### Know Before You Go



We may have gone a little overboard. . . Next time we'll Know Before We Go.

**Regulations for U.S. Residents**
As an international traveler, you should be aware of the rules for bringing items
back from your trip. For instance, did you know that the duty-free personal
exemption was recently raised to $800?

- **Know Before You Go - Regulations for U.S. Residents**
  *featured see also*
  Publication # 0000-0512
  Contains everything U.S. residents should know before they go abroad. Please
  see our Know Before You Go online brochure in the Travel section.
  doc - 180 KB.

- **Introduction and Mission**

- **When You Return to the United States**

- **Documentary Requirements for Entry To The United States**

- **What You Must Declare**

- **Duty-free Exemption**
  Including Tobacco and Alcohol

- **Duty-free or Reduced Rates**

- **Sending Goods to the United States**

- **Duty-Free Shops**

- **Paying Duty**

- **Prohibited and Restricted Items**

- **Money and Other Monetary Instruments**

- **Traveling Back and Forth Across the Border**

- **Other Travel-Related Information**



Search Know Before You Go for:

GO

section sitemap for
Know Before You Go

## see also:

◐ **in Pleasure and
Vacation Travel for
U.S. Residents:**

U.S. Citizens

Top 10 Tips

Challenge Yourself! - Take the
Know Before You Go Quiz

Sample Customs Declaration
Form

Straight from the Source!

◐ **on cbp.gov:**

Registration for Dutiable
Personal Articles Prior to U.S.
Departure

How CBP Handles Traveler
Complaints

Know Before You Go -
Regulations for U.S. Residents
(doc - 180 KB.)

◐ **publications:**

Currency Reporting Flyer
(doc - 24 KB.)

GSP and the Traveler
(doc - 40 KB.)

International Mail Imports
(doc - 72 KB.)

Pets and Wildlife
(pdf - 104 KB.)

Pleasure Boats
(doc - 43 KB.)

Visiting the United States
(doc - 70 KB.)

Guide for Private Flyers
(doc - 936 KB.)

Importing or Exporting A Car
(doc - 52 KB.)

U.S. Import Requirements
(doc - 64 KB.)

Exporting A Vehicle
(doc - 92 KB.)

◐ **on the web:**

Passports (State Department)

Visas (State Department)

Travel Warnings (State
Department)

Documents Required for Entry

K

# Know Before You Go
*U.S. Customs and Border Protection Regulations for U.S. Residents*

**Introduction**
**When You Return to the United States**
**Documentary Requirements for Entry**
**What You Must Declare**
- Joint Declaration

**Register Items Before You Leave the United States**
**Duty-Free Exemption**
- Exemptions
  Tobacco Products
  Alcoholic Beverages
- $200 Exemption
  Advice for frequent travelers
- $600 Exemption
- Travel to More Than One Country
- $800 Exemption
- $1,200 Exemption

**Gifts**
**Duty-Free or Reduced Rates**
- Items from Certain Countries
- Personal Belongings
- Household Effects

**Increased Duty Rates**
**Determining Duty**
**Sending Goods to the United States**
**Unaccompanied Baggage**
- U.S. Mail Shipments
- Express Shipments
- Freight Shipments

**Unaccompanied Purchases from Insular Possessions and Caribbean Basin Countries**
**Duty-Free Shops**
**Prohibited and Restricted Items**
- Absinthe (Alcohol)
- Automobiles
- Biologicals
- Ceramic Tableware
- Cultural Artifacts and Cultural Property (Art/Artifacts)
- Dog and Cat Fur
- Drug Paraphernalia
- Firearms
- Fish and Wildlife
- Food Products (Prepared)
- Fruits and Vegetables
- Game and Hunting Trophies

- Gold
- Meats, Livestock, and Poultry
- Medication
- Merchandise from Embargoed Countries
- Pets
- Plants and seeds
- Soil
- Textiles and Clothing
- Trademarked and Copyrighted Articles

**Money and Other Monetary Instruments**
**Photographic Film**
**Customer Service Programs**
- **Pledge to Travelers**

**Other Travel-related Information**

2

**INTRODUCTION**

U.S. Customs and Border Protection (CBP) is the unified border agency within the Department of Homeland Security (DHS). On March 1, 2003, CBP combined the inspectional workforces and broad border authorities of the U.S. Customs Service, U.S. Immigration and Naturalization Service, Animal and Plant Health Inspection Service and the entire U.S. Border Patrol.

CBP primary mission is preventing terrorists and terrorist weapons from entering the United States, while also facilitating the flow of legitimate trade and travel. This mission is vitally important to the protection of America and the American people.

CBP officers inspect all persons arriving at a U.S. port of entry. It is CBP policy to treat you in a courteous, professional manner. Very *few* travelers actually violate the law, but an examination of your baggage or your vehicle may be required, which, by law, we are allowed to do. You may be asked questions on the nature of your citizenship, your trip, and about anything you are bringing back to the United States that you did not have with you when you left. If your baggage is selected for an examination, you will be responsible for placing it on the exam station and opening it. After the exam is completed, you will be asked to repack and close the baggage. If you feel your examination is not conducted in a professional manner, please ask to speak to a CBP supervisor.

"Duty" and "dutiable" are words you will find frequently throughout this brochure: *Duty* is the amount of money you pay on items coming from another country. It is similar to a tax, except that duty is collected only on imported goods. *Dutiable* describes items on which duty may have to be paid. Most items have specific duty rates, which are determined by a number of factors, including where you got the item, where it was made, and what it is made of.

Anything you bring back that you did not have when you left the United States must be "declared." For example, you would *declare* alterations made in a foreign country to a suit you already owned, and any gifts you acquired overseas.

**The information contained within this brochure may change routinely. Please visit the travel section of the CBP Website at www.cbp.gov for the most up-to-date traveler information.**

**The U.S. Customs and Border Protection Mission Statement**
We are the guardians of our Nation's borders. We are America's frontline.
We safeguard the American homeland at and beyond our borders.
We protect the American public against terrorists and the instruments of terror.
We steadfastly enforce the laws of the United States while fostering our Nation's economic security through lawful international trade and travel.
We serve the American public with vigilance, integrity and professionalism.

**WHEN YOU RETURN TO THE UNITED STATES**
When you come back, you will need to declare everything you brought back that you did not take with you when you left the United States. If you are traveling by air or sea, you may be asked to fill out a CBP declaration form. This form is almost always provided by the airline or

cruise ship. You will probably find it easier and faster to fill out your declaration form and clear CBP if you do the following:

- Keep your sales slips.
- Try to pack the things you'll need to declare separately.
- Read the signs in the arrival area. They contain helpful information about how to clear CBP.

Be aware that under U.S. law, CBP officers are authorized to examine luggage, cargo, and travelers. Under the search authority granted by the U.S. Congress, every person who crosses a U.S. border may be searched and questioned about their travel. To stop the flow of illegal drugs and other contraband into our country, your cooperation is appreciated. If you are one of the very few travelers selected for a search, you will be treated in a courteous, professional, and dignified manner. If you are searched and you believe that you were *not* treated in such a manner, or if you have any concerns about the search for any reason whatsoever, *we want to hear from you.* For contact information, please see the section on **Customer Service Programs**.

## DOCUMENTARY REQUIREMENTS FOR ENTRY TO THE UNITED STATES
### Travel from within the Western Hemisphere
*U.S. citizens:*
- Generally U.S. Citizens arriving from travel within the Western Hemisphere are exempt from passport requirements. However, it is highly recommended that a U.S. Citizen be prepared to present documentation such as valid or expired U.S. passport, U.S. birth certificate, or Naturalization certificate to avoid delays.
- Exception—travel from Cuba, valid U.S. passport is required.

*U.S. Lawful Permanent Residents (LPRs) must provide one of the following:*
- I-551, Permanent Resident Card (Green card),
- Machine-Readable Immigrant Visa endorsed with a CBP Admission Stamp,
- Temporary Residence Stamp (ADIT stamp) contained in a passport or on Form I-94,
- Valid Reentry Permit, or
- Unexpired Immigrant Visa. Passport required unless otherwise noted.

*Visitors/Non-immigrants:*
- Generally, a valid unexpired passport and visa. However, certain classes may require specific supporting documentation such as an employment petition, student authorization, or approval notice.
- Nationals of countries authorized to participate in the *Visa Waver program are required to present an unexpired machine-readable passport. For additional information refer to the State Department at http:travel.state.gov/visa/tempvisitors_novisa_waver.html#13.
- Nationals of countries authorized to participate in the Guam visa Waiver Program are required to present an unexpired passport.
- Mexicans may provide a valid DSP-150 (BCC) in lieu of a valid passport and visa
- Generally, Canadian Nationals must show ID but are exempt from passport and visa requirements. However presentation of a Canadian passport, birth certificate, Naturalization certificate or other supporting documentation will facilitate the inspection and is strongly encouraged.

**Travel from outside the Western Hemisphere (Europe, Africa, Asia, Australia)**
*U.S. citizens must provide:*
- A valid, unexpired U.S. passport

*U.S. Lawful Permanent Residents (LPRs) must provide one of the following:*
- I-551, Permanent Resident Card (Green card),
- Reentry Permit
- Machine-Readable Immigrant Visa endorsed with a CBP Admission Stamp
- Temporary Residence Stamp (ADIT stamp) contained in a passport or on Form I-94, or
- Unexpired Immigrant Visa. Passport required unless otherwise noted.

*Visitors/Non-immigrants:*
- Generally, a valid, unexpired passport and visa. However, certain classes may require specific supporting documentation such as an employment petition, student authorization, or approval notice.
- Nationals of countries authorized to participate in the *Visa Waver program are required to present an unexpired machine-readable passport. For additional information refer to the State Department at http:travel.state.gov/visa/tempvisitors_novisa_waver.html#13.
- Nationals of countries authorized to participate in the Guam Visa Waiver Program are required to present an unexpired passport.
- Mexicans may provide a valid DSP-150 (BCC) and a valid passport
- Canadians must provide a valid, unexpired passport.

**Visa Waiver Program – Participating Countries**

| | | |
|---|---|---|
| Andorra | Iceland | Norway |
| Australia | Ireland | Portugal |
| Austria | Italy | San Marino |
| Belgium | Japan | Singapore |
| Brunei | Liechtenstein | Slovenia |
| Denmark | Luxembourg | Spain |
| Finland | Monaco | Sweden |
| France | The Netherlands | Switzerland |
| Germany | New Zealand | United Kingdom |

There are some exceptions that may exist in regards to the above listed information. For more information on documentation requirements, contact your consulate or embassy for further instructions.

**WHAT YOU MUST DECLARE**
- Items you purchased and are carrying with you upon return to the United States.
- Items you received as gifts, such as wedding or birthday presents.
- Items you inherited.
- Items you bought in duty-free shops, on the ship, or on the plane.

- Repairs or alterations to any items you took abroad and then brought back, even if the repairs/alterations were performed free of charge.
- Items you brought home for someone else.
- Items you intend to sell or use in your business.
- Items you acquired—
    whether purchased or received as gifts in the U.S. Virgin Islands, American Samoa, Guam, or in a Caribbean Basin Economic Recovery Act country ( see section on $600 exemption for a list of these countries) that are not in your possession when you return. In other words, if you acquired items in any of these island nations and asked the merchant to send them to you, you must still declare them when you go through CBP. This differs from the usual procedure for mailed items, which is discussed in the section on **Sending Goods to the United States**.

You must state on the CBP declaration, in U.S. currency, what you actually paid for each item. The price must include all taxes. If you did not buy the item yourself—for example, if it is a gift—get an estimate of its fair retail value in the country where you received it. If you bought something on your trip and wore or used it on the trip, it's still dutiable. You must declare the item at the price you paid or, if it was a gift, at its fair market value.

**Joint Declaration**
Family members who live in the same home and return together to the United States may combine their personal exemptions. This is called a *joint declaration*. For example, if Mr. and Mrs. Smith travel overseas and Mrs. Smith brings home a $1,000 piece of glassware, and Mr. Smith buys $600 worth of clothing, they can combine their $800 exemptions on a joint declaration and not have to pay duty.

Children and infants are allowed the same exemption as adults, except for alcoholic beverages.

**REGISTER ITEMS BEFORE YOU LEAVE THE UNITED STATES**
If your laptop computer was made in Japan – for instance – you might have to pay duty on it each time you brought it back into the United States, unless you could prove that you owned it before you left on your trip. Documents that fully describe the item—such as sales receipts, insurance policies, or jeweler's appraisals—are acceptable forms of proof.

To make things easier, you can register certain items with CBP before you depart— including watches, cameras, laptop computers, firearms, and CD players—as long as they have serial numbers or other unique, permanent markings. Take the items to the nearest CBP office and request a Certificate of Registration (CBP Form 4457). It shows that you had the items with you before leaving the United States. and all items listed on it will be allowed duty-free entry. CBP officers must see the item you are registering in order to certify the certificate of registration. You can register items with CBP at the international airport from which you're departing. Keep the certificate for future trips.

**DUTY-FREE EXEMPTION**
The duty-free exemption, also called the *personal exemption*, is the total value of merchandise you may bring back to the United States without having to pay duty. You may bring back more

than your exemption, but you will have to pay duty on it. In most cases, the personal exemption is $800, but there are some exceptions to this rule, which are explained below.

**Exemptions**
Depending on the countries you have visited, your personal exemption will be $200, $600, $800, or $1,200. There are limits on the amount of alcoholic beverages, cigarettes, cigars, and other tobacco products you may include in your duty-free personal exemption. The differences are explained in the following section.

The duty-free exemptions ($200, $600, $800, or $1,200) apply if:
- The items are for your personal or household use or intended to be given as bonafide gifts.
- They are in your possession, that is, they accompany you when you return to the United States. Items to be sent later may not be included in your $800 duty-free exemption. Exceptions apply for goods sent from Guam or the U.S. Virgin Islands
- They are declared to CBP. If you do not declare something that should have been declared, you risk forfeiting it. If in doubt, declare it.
- You are returning from an overseas stay of at least 48 hours. For example, if you leave the United States at 1:30 p.m. on June 1, you would complete the 48-hour period at 1:30 p.m. on June 3. This time limit does not apply if you are returning from Mexico or from the U.S. Virgin Islands. (See also the section on the $200 exemption.)
- You have not used all of your exemption allowance, or used any part of it, in the past 30 days—for example, if you go to England and bring back $150 worth of items—you must wait another 30 days before you are allowed another $800 exemption. (See the section on the $200 exemption.)
- The items are not prohibited or restricted as discussed in the section on Prohibited and Restricted Items. Note the embargo prohibitions on products of Cuba.

**Tobacco Products**
Travelers may import previously exported tobacco products only in quantities not exceeding the amounts specified in exemptions for which the traveler qualifies. Any quantities of previously exported tobacco products not permitted by an exemption will be seized and destroyed. These items are typically purchased in duty-free stores, on carriers operating internationally, or in foreign stores. These items are usually marked "Tax Exempt. For Use Outside the United States," or "U.S. Tax Exempt For Use Outside the United States."

For example, a returning resident is eligible for the $800 exemption, which includes not more than 200 cigarettes and 100 cigars. If the resident declares 400 previously exported cigarettes, the resident would be permitted 200 cigarettes, tax-free under the exemption and the remaining 200 previously exported cigarettes would be confiscated. If the resident declares 400 cigarettes, of which 200 are previously exported and 200 not previously exported, the resident would be permitted to import the 200 previously exported cigarettes tax free under the exemption and the resident would be charged duty and tax on the remaining 200 foreign-made cigarettes.

The tobacco exemption is available to each person. Except for information and informational materials, no traveler (whether traveling legally under an Office of Foreign Asset Control (OFAC) license or traveling illegally without an OFAC license may import Cuban origin goods,

including Cuban cigars, unless authorized to do so by a specific license issued by OFAC.

**Alcoholic Beverages**
One liter (33.8 fl. oz.) of alcoholic beverages may be included in your exemption if:
- You are 21 years old.
- It is for your own use or as a gift.
- It does not violate the laws of the state in which you arrive.

Federal regulations allow you to bring back more than one liter of alcoholic beverage for personal use, but, as with extra tobacco, you will have to pay duty and Internal Revenue Service tax.

While Federal regulations do not specify a limit on the amount of alcohol you may bring back for personal use, unusual quantities are liable to raise suspicions that you are importing the alcohol for other purposes, such as for resale. CBP officers are authorized by the Bureau of Alcohol, Tobacco and Firearms (ATF) to make on-the-spot determinations that an importation is for commercial purposes, and may require you to obtain a permit to import the alcohol before releasing it to you. If you intend to bring back a substantial quantity of alcohol for your personal use, you should contact the port through which you will be re-entering the country, and make prior arrangements for entering the alcohol into the United States.

Also, you should be aware that state laws might limit the amount of alcohol you can bring in without a license. If you arrive in a state that has limitations on the amount of alcohol you may bring in without a license, that state law will be enforced by CBP, even though it may be more restrictive than federal regulations. We recommend that you check with the state government before you go abroad about their limitations on quantities allowed for personal importation and additional state taxes that might apply.

In brief, for both alcohol and tobacco, the quantities discussed in this booklet as being eligible for duty-free treatment may be included in your $800 (or $600 or $1,200) exemption, just as any other purchase would be. But unlike other kinds of merchandise, amounts beyond those discussed here as being duty-free are taxed, even if you have not exceeded, or even met, your personal exemption. For example, if your exemption is $800 and you bring back three liters of wine and nothing else, two of those liters will be dutiable. Federal law prohibits shipping alcoholic beverages by mail within the United States.

**$200 Exemption**
If you can not claim other exemptions because you have been out of the country more than once in a 30-day period or because you have not been out of the country for at least 48 hours, you may still bring back $200 worth of items free of duty and tax. As with the exemptions discussed earlier, these items must be for your personal or household use.

Each traveler is allowed this $200 exemption, but, unlike the other exemptions, family members may not group their exemptions. Thus, if Mr. and Mrs. Smith spend a night in Canada, each may bring back up to $200 worth of goods, but they would not be allowed a collective family exemption of $400.

Also, if you bring back more than $200 worth of dutiable items, or if any item is subject to duty or tax, the entire amount will be dutiable. For instance, you were out of the country for 36 hours and came back with a $300 piece of pottery. You could not deduct $200 from its value and pay duty on $100. The pottery would be dutiable for the full value of $300.

You may include with the $200 exemption your choice of the following: 50 cigarettes and 10 cigars and 150 milliliters (5 fl. oz.) of alcoholic beverages *or* 150 milliliters (5 fl. oz.) of perfume containing alcohol.

**Tips for frequent travelers**
If you cross the U.S. border into a foreign country and reenter the United States more than once in a short time, you may not want to use your personal exemption until you have returned to the United States for the last time. Here's why:

For example, if your personal exemption is $800 and you leave the United States, come back, leave again, and then come back again, all on the same trip, you can lose your exemption, since you have technically violated the "once every 30 days" rule. Therefore, if you know that your trip will involve these swing-backs, you can choose to save your personal exemption until the end of your trip.

As an example, you go to Canada, buy a liter of liquor, reenter the United States, then go back to Canada and buy $900 worth of merchandise and more liquor. You would probably want to save your $800 exemption for those final purchases and not use it for that first liter of liquor. In this case, on your first swing-back, simply tell the CBP officer that you want to pay duty on the liquor, even though you could bring it in duty free. If you imported the liquor duty free, you would lose the $800 exemption, because it is only available to you once every 30 days. In other words, all you have to do is tell the inspector that you want to pay duty the first (or second or third) time you come back to the United States if you know that you will be leaving again soon, buying goods or getting them as gifts, and then reentering before the end of 30 days. In such a case, you save money by waiting to use your exemption until the last time you reenter the United States.

**$600 Exemption**
If you are returning directly from any one of the following 28 Caribbean Basin or Andean countries, your exemption is $600:

| | | |
|---|---|---|
| Antigua and Barbuda | Ecuador | Panama |
| Aruba | El Salvador | Peru |
| Bahamas | Grenada | Saint Kitts and Nevis |
| Barbados | Guatemala | Saint Lucia |
| Belize | Guyana | Saint Vincent and the Grenadines |
| Bolivia | Haiti | Trinidad and Tobago |
| British Virgin Islands | Honduras | |
| Colombia | Jamaica | |

9

Costa Rica                Montserrat
Dominica                  Netherlands Antilles
Dominican Republic        Nicaragua

You may include two liters of alcoholic beverages with this $600 exemption, as long as one of the liters was produced in one of the countries listed above (see section on **Unaccompanied Purchases from Insular Possessions and Caribbean Basin or Andean Countries**).

**Travel to More Than One Country**
If you travel to a U.S. Insular possession and to one or more of the Caribbean Basin or Andean countries listed above, for example, on a Caribbean cruise, you may bring back $1,200 worth of items without paying duty, but only $600 worth of these items may come from the Caribbean Basin or Andean country(ies). Any amount beyond $600 will be dutiable unless you acquired it in one of the insular possessions.

For example, if you were to travel to the U.S. Virgin Islands and Jamaica, you would be allowed to bring back $1,200 worth of merchandise duty-free, as long as only $600 worth was acquired in Jamaica. Keeping track of where your purchases occurred and having the receipts ready to show the CBP officers will help speed your clearing customs.

If you travel to any of the Caribbean Basin or Andean countries listed above with the $600 personal exemption and to a country where the $800 personal exemption applies, you are entitled to the $800 personal exemption. However, no more than $600 of that may come from a Caribbean Basin or Andean country. For instance, if you travel to England and Trinidad on the same trip, you are entitled to the $800 exemption, but no more than $600 can be from Trinidad.

**$800 Exemption**
If you are returning from anywhere *other* than a Caribbean Basin country or a U.S. insular possession (U.S. Virgin Islands, American Samoa, or Guam), you may bring back $800 worth of items duty-free, as long as you bring them with you This is called *accompanied baggage*.

Duty on items you mail home to yourself will be waived if the value is $200 or less. (See the sections on **Gifts and Sending Goods to the United States**.) Antiques that are at least 100 years old, and fine art may enter duty-free, but folk art and handicrafts are generally dutiable.

This means that, depending on what items you're bringing back from your trip, you could come home with more than $800 worth of gifts or purchases and still not be charged duty. For instance, say you received a $700 bracelet as a gift, and you bought a $40 hat and a $60 color print. Because these items total $800, you would not be charged duty, since you have not exceeded your duty-free exemption. If you had also bought a $500 painting on that trip, you could bring all $1300 worth of merchandise home without having to pay duty, because fine art is duty-free.

**$1,200 Exemption**
If you return directly or indirectly from a U.S. insular possession (U.S. Virgin Islands, American Samoa, or Guam), you are allowed a $1,200 duty-free exemption. You may include 1,000

10

cigarettes as part of this exemption, but at least 800 of them must have been acquired in an insular possession. Only 200 cigarettes may have been acquired elsewhere. For example, if you were touring the South Pacific and you stopped in Tahiti, American Samoa, and other ports of call, you could bring back five cartons of cigarettes, but four of them would have to have been bought in American Samoa.

Similarly, you may include five liters of alcoholic beverages in your duty-free exemption, but one of them must be a product of an insular possession. Four may be products of other countries (see section on Unaccompanied Purchases from Insular Possessions and Caribbean Basin countries).

## GIFTS

Gifts you **bring back** from a trip abroad are considered to be for your personal use. They must be declared, but you may include them in your personal exemption. This includes gifts people gave you while you were out of the country, such as wedding or birthday presents, and gifts you have brought back for others. Gifts intended for business, promotional, or other commercial purposes may not be included in your duty-free exemption.

Gifts worth up to $100 may be **sent**, free of duty and tax, to friends and relatives in the United States, as long as the same person does not receive more than $100 worth of gifts in a single day. If the gifts are mailed or shipped from an insular possession, this amount is increased to $200. Unless returning to the United States from an Insular Posession, you don't have to declare gifts you sent while you were on your trip, since they won't be accompanying you.

By federal law, alcoholic beverages, tobacco products, and perfume containing alcohol and worth more than $5 retail may not be included in the gift exemption.

Gifts for more than one person may be shipped in the same package, called a *consolidated* gift package, if they are individually wrapped and labeled with each recipient's name. Here's how to wrap and label a consolidated gift package.

Be sure to mark the outermost wrapper with the:
- Words "**UNSOLICITED GIFT**" and the words "**CONSOLIDATED GIFT PACKAGE;**"
- Total value of the consolidated package;
- Recipients' names and
- Nature and value of the gifts inside. For example, tennis shoes, $50; shirt, $45; toy car, $15. For instance:

To John Jones—one belt, $20; one box of candy, $5; one tie, $20.

To Mary Smith—one skirt, $45; one belt, $15; one pair slacks, $30.

If any item in the consolidated gift parcel is subject to duty and tax or worth more than the $100 gift allowance, the *entire* package will be dutiable.

11

You, as a traveler, cannot send a "gift" package to yourself, and people traveling together cannot send "gifts" to each other. But there would be no reason to do that anyway, because the personal exemption for packages mailed from abroad is $200, which is twice as much as the gift exemption. If a package is subject to duty, the United States Postal Service will collect it from the addressee along with any postage and handling charges. The sender cannot prepay duty; The recipient must pay duty when a package is received in the United States.

For more information about mailing packages to the United States, please contact your nearest CBP office and ask for our brochure *International Mail Imports*.

## DUTY-FREE OR REDUCED RATES
### Items from Certain Countries
The United States gives duty preferences—that is, free or reduced rates—to **certain developing countries** under a trade program called the Generalized System of Preferences (GSP). Some products that would otherwise be dutiable are not when they come from a GSP country. For details on this program, as well as the complete list of GSP countries, please look for it on our web site.

Similarly, many products of **Caribbean and Andean countries** are exempt from duty under the Caribbean Basin Initiative, Caribbean Basin Trade Partnership Act, Andean Trade Preference Act and the Andean Trade Promotion and Drug Eradication Act. Many products of certain **sub-Saharan African countries** are exempt from duty under the African Growth and Opportunity Act. Most products of **Israel, Jordan, Chile and Singapore** may also enter the United States either free of duty or at a reduced rate under the U.S. free trade agreements with those countries. Check with cbp.gov for details on these programs.

The North American Free Trade Agreement (NAFTA) went into effect in 1994. If you are returning from **Canada or Mexico**, your goods are eligible for free or reduced duty rates if they were grown, manufactured, or produced in Canada or Mexico, as defined by the Act. Check with CBP or access the CBP web site for further details.

### Personal Belongings
Your personal belongings can be sent back to the United States duty-free if they are of U.S. origin and if they have not been altered or repaired while abroad. Personal belongings like worn clothing can be mailed home and will receive duty-free entry if you write the words "American Goods Returned" on the outside of the package.

### Household Effects
Household effects include furniture, carpets, paintings, tableware, stereos, linens, and similar household furnishings. Tools of trade, professional books, implements, and instruments that you've taken out of the United States will be duty-free when you return.

You may import household effects you acquired abroad duty-free if:
- You used them for at least one year while you were abroad.
- They are not intended for anyone else or for sale.

Clothing, jewelry, photography equipment, portable radios, and vehicles are considered personal effects and cannot be brought in duty-free as household effects. However, duty is usually waived on personal effects over 1 year of age. All vehicles are dutiable.

## INCREASED DUTY RATES
### Items from Certain Countries
The United States may impose a much higher than normal duty rate on products from certain countries. The United States Trade Representative is authorized to impose a different duty rate under what is know as its "301" authority. Currently, the United States has imposed a 100 percent rate of duty on certain products of Austria, Belgium, Denmark, Finland, France, The Federal Republic of Germany, Greece, Ireland, Italy, Luxembourg, the Netherlands, Portugal, Spain, Sweden and the Ukraine. If you should bring more of any of these products back with you than fall within your exemption or flat rate of duty, (see below) you will pay as much in duty as you paid for the product or products.

While most of the products listed are not the type of goods that travelers would purchase in sufficient quantities to exceed their exemption, diamonds from the Ukraine are subject to the 100 percent duty and might easily exceed the exemption amount.

For information on countries that may become subject to a higher than normal duty rate, check the Department of Commerce web site at www.commerce.gov.

## DETERMINING DUTY
*If you're bringing it back with you, you didn't have it when you left, and its total value is more than your exemption, it is subject to duty.*
The CBP officer will place the items that have the highest rate of duty under your exemption. Then, after subtracting your exemptions and the value of any duty-free items, a flat rate of duty will be charged on the next $1,000 worth of merchandise. Any dollar amount beyond this $1,000 will be dutiable at whatever duty rates apply. The flat rate of duty may only be used for items for your own use or for gifts. As with your exemption, you may use the flat-rate provision only once every 30 days. Special flat rates of duty apply to items made and acquired in Canada or Mexico. The flat rate of duty applies to purchases whether the items accompany you or are shipped.

The following is an example of the different rates if you acquire goods valued at $2,500 from various different places:

| Country | Total declared value | Personal exemption (duty-free) | Flat duty rate | Various duty rates |
|---|---|---|---|---|
| U.S. insular possessions | $2,500 | $1,200 | $1,000 at 1.5 percent | $300 |
| Caribbean Basin countries | $2,500 | $600 | $1,000 at 2 percent | $900 |
| Other countries or locations | $2,500 | $800 | $1,000 at 2 percent | $700 |

13

**The flat duty rate** will be charged on items that are dutiable but that cannot be included in your personal exemption, even if you have not exceeded the exemption. The best example of this is liquor: if you return from Europe with $200 worth of items, including two liters of liquor. One liter will be duty-free under your exemption; the other will be dutiable at 2 percent, plus any Internal Revenue Service tax.

Family members who live in the same household and return to the United States together can combine their items to take advantage of a combined flat duty rate, no matter which family member owns a given item. The combined value of merchandise subject to a flat duty rate for a family of four traveling together would be $4,000.

## PAYING DUTY
If you owe duty, you must pay it when you arrive in the United States. You can pay it in any of the following ways:
- U.S. currency. Foreign currency is not acceptable.
- Personal check in the exact amount, drawn on a U.S. bank, made payable to U.S. Customs and Border Protection. You must present identification, such as a passport or driver's license. CBP does not accept checks bearing second-party endorsements.
- Government check, money order, or traveler's check if the amount does not exceed the duty owed by more than $50.
- In some locations, you may pay duty with credit cards, either MasterCard® or VISA®.

## SENDING GOODS TO THE UNITED STATES
Items mailed to the United States are subject to duty when they arrive. They cannot be included in your exemption, and duty on them cannot be prepaid.

If you are mailing merchandise from the U.S. insular possessions or from Caribbean Basin countries, you should follow different procedures than if you were mailing packages from any other country. These special procedures are described in the section on **Unaccompanied Purchases**.

In addition to duty and, at times, taxes, CBP collects a user fee on dutiable packages. Those three fees are the only fees CBP collects; any additional charges on shipments are for handling by freight forwarders, customs brokers, and couriers or for other delivery services. Some carriers may add other clearance charges that have nothing to do with customs duties.

**Note:** Customs brokers are not CBP employees. Broker fees are based on the amount of work they do, not on the value of the items you ship. Travelers sometimes find the fee to be high in relation to the value of the shipment. The most cost-effective option is to take your purchases with you if at all possible.

## UNACCOMPANIED BAGGAGE
Unaccompanied baggage is anything you do not bring back with you. These may be items that were with you when you left the United States or items that you acquired (received by any means) while outside the United States. In general, unaccompanied baggage falls into the following three categories.

**U.S. Mail Shipments**

Shipping through the U.S. mail, including parcel post, is a cost-efficient way to send items to the United States. The Postal Service sends all foreign mail shipments to CBP for examination. CBP officers then return packages that do not require duty to the Postal Service, which sends them to a local post office for delivery. The local post office delivers them without charging any additional postage, handling costs, or other fees.

Packages that contain fruits, vegetables, meat or other items of agricultural interest are inspected to ensure that items meet the requirements of the U.S. Department of Agriculture, Animal Plant Health Inspection Service, Plant Protection and Quarantine. The CBP agriculture specialist encloses a Mail Interception Notice, PPQ Form 287, to document any agriculture items that are removed from the package. The package is returned to the U.S. Postal Service for delivery. Information on importing agriculture items is located on the U.S. Department of Agriculture Website at www.aphis.usda.gov.

If the package does require payment of duty, CBP attaches a form called a *mail entry*, CBP Form3419Alt, which indicates how much duty is owed and charges a $5 processing fee as well. When the post office delivers the package, it will also charge a small handling fee.

Commercial goods—goods intended for resale—may have special entry requirements. Such goods may require a *formal entry* in order to be admitted into the United States. Formal entries are more complicated and require more paperwork than informal entries. Generally, informal entries are personal packages or commercial items worth less than $2,000. CBP employees may not prepare formal entries for you; only you or a licensed customs broker may prepare one. For more information on this subject, please see the brochure *U.S. Import Requirements*.

If you believe you have been charged an incorrect amount of duty on a package mailed from abroad, you may file a protest with CBP. You can do this in one of two ways. You can accept the package, pay the duty, and write a letter explaining why you think the amount was incorrect. You should include with your letter the yellow copy of the mail entry (CBP Form3419Alt). Send the letter and the form to the CBP office that issued the mail entry, located on the lower left-hand corner of the form.

The other way to protest duty is to refuse delivery of the package. Then within five days, send your protest letter to the post office where the package is being held. The post office will forward your letter to CBP and will hold your package until the protest is resolved.

For additional information on international mailing, please see the brochure *International Mail Imports*, or visit the CBP web site at www.cbp.gov.

**Express Shipments**

Packages may be sent to the United States by private-sector courier or delivery service from anywhere in the world. The express company usually takes care of clearing your merchandise through CBP and charges a fee for its service. Some travelers have found this fee to be higher than they expected.

**Freight Shipments**

Cargo, whether duty is owed on it or not, must clear CBP at the first port of arrival in the United States. If you choose, you may have your freight sent, while it is still in CBP custody, to another port for clearance. This is called *forwarding freight in bond*. You, or someone you appoint to act for you, are responsible for arranging to clear your merchandise through CBP or for having it forwarded to another port.

Frequently, a freight forwarder in a foreign country will take care of these arrangements, including hiring a customs broker in the United States to clear the merchandise through CBP. Whenever a third party handles the clearing and forwarding of your merchandise, that party charges a fee for its services. This fee is not a CBP charge.

When a foreign seller entrusts a shipment to a broker or agent in the United States, that seller usually pays only enough freight to have the shipment delivered to the first port of arrival in the United States. This means that you, the buyer, will have to pay additional inland transportation, or *freight forwarding* charges, plus broker fees, insurance, and possibly other charges.

If it is not possible for you to secure release of your goods yourself, another person may act on your behalf to clear them through CBP. You may do this as long as your merchandise consists of a single, noncommercial shipment (not intended for resale) that does not require a formal entry. In other words, if the merchandise is worth less than $2,000 and you must give the person a letter that authorizes that person to act as your unpaid agent.

Once you have done this, that person may fill out the CBP declaration and complete the entry process for you. Your letter authorizing the person to act in your behalf should be addressed to the "Officer in Charge of CBP" at the port of entry, and the person should bring the letter with them when they go to clear your package.

CBP will not notify you when your shipment arrives, as this is the responsibility of your carrier. If your goods are not cleared within 15 days of arrival you could incur expensive storage fees.

## UNACCOMPANIED PURCHASES FROM INSULAR POSSESSIONS AND CARIBBEAN BASIN AND ANDEAN COUNTRIES

Unaccompanied purchases are goods you bought on a trip that are being mailed or shipped to you in the United States. In other words, you are not carrying the goods with you when you return. If your unaccompanied purchases are from an insular possession or a Caribbean Basin country and are being sent directly from those locations to the United States, you may enter them as follows:

- Up to $1,200 in goods will be duty-free under your personal exemption if the merchandise is from an insular possession.
- Up to $600 in goods will be duty-free if it is from a Caribbean Basin and Andean country.
- An additional $1,000 in goods will be dutiable at a flat rate if they are from an insular possession, or from a Caribbean Basin country. (See chart under **Paying Duty**.)

- If you are sending more than $2,200 from an insular possession or more than $1,600 from a Caribbean Basin country, the duty rates in the Harmonized Tariff Schedules of the United States will apply. The Harmonized Tariff Schedule describes different rates of duty for different commodities. For example, linen tablecloths will not have the same duty rates as handicrafts or plastic toy trucks.

To take advantage of the duty-free exemption for unaccompanied tourist purchases from an insular possession or a Caribbean country:

**Step 1.** At place and time of purchase, ask your merchant to hold your item until you send him or her a copy of CBP Form 255 (Declaration of Unaccompanied Articles), which must be affixed to the package when it is sent.

**Step 2.** (a) On your declaration form (CBP Form 6059B), list everything you acquired on your trip, except the things you already sent home as gifts; (b) check off on the declaration those items you are *not* bringing with you--that is, the unaccompanied items. You must also complete a *separate Declaration of Unaccompanied Articles form (CBP Form 255) for each package or container that will be sent to you after you arrive in the United States.* This form may be available where you make your purchase. If not, ask a CBP officer for one when you clear the customs area.

**Step 3.** When you return to the United States, the CBP officer will: (a) collect duty and tax on the dutiable goods you have brought with you; (b) check to see that your list of unaccompanied articles, which you indicated on the CBP Form 255, agrees with your sales slips, invoices; (c) validate the CBP Form 255 as to whether your purchases are duty-free under your personal exemption ($1,200 or $600) or whether they are subject to a flat rate of duty. Two copies of this three-part CBP Form 255 will be returned to you.

**Step 4.** Send the yellow copy of the CBP Form 255 to the foreign shopkeeper or vendor holding your purchase, and keep the other copy for your records. (When you make your purchase, it is very important to *tell the merchant not to send your package to the United States until he or she gets the copy of form CBP Form 255.*)

**Step 5.** When the merchant gets your CBP Form 255, he or she will put it in an envelope and attach the envelope securely to the outside wrapping of the package or container. The merchant must also mark each package "Unaccompanied Purchase." *Please remember that each package or container must have its own CBP Form 255 attached.* This is the most important step to follow in order to gain the benefits allowed under this procedure.

**Step 6.** If your package has been mailed, the U.S. Postal Service will deliver it after it clears CBP. If you owe duty, the Postal Service will collect the duty along with a postal handling fee. If a freight service transports your package, they will notify you of its arrival so you can go to the CBP office holding the shipment and complete the entry procedure. If you owe duty or tax, you can pay it at that time. You could also hire a customs broker to do this for you. However, be aware that brokers are not CBP employees, and they charge fees for their services.

17

**Storage Charges:** If freight or express packages from your trip are delivered before you return and you have not made arrangements to pick them up, CBP will authorize their placement in storage after 15 days. This storage will be at your risk and expense. If they are not claimed within six months, the items will be sold at auction.

Packages sent by mail and not claimed within 30 days will be returned to the sender unless the amount of duty is being protested.

## DUTY-FREE SHOPS

The term "duty-free" shops confuse many travelers. Travelers often think that what they buy in duty-free shops will not be dutiable when they return home and clear customs. But this is not true. Articles sold in a duty-free shop are free of duty and taxes *only* for the country in which that shop is located. So if your purchases exceed your personal exemption, items you bought in a duty-free shop, whether in the United States or abroad, will almost certainly be subject to duty.

Articles sold in foreign duty free shops are subject to U.S. duty and other restrictions, for example, only one liter of liquor is duty free, but you may include these items in your personal exemption. Articles sold in duty free shops are meant to be exported. They are not meant to be used, worn, eaten, drunk, etc., in the country where you purchased them. Articles purchased in American duty-free shops are also subject to U.S. duty if you bring them into the United States. Therefore, if you buy liquor in a duty-free shop in New York before entering Canada and then bring it back into the United States, it may be subject to duty and Internal Revenue Service tax.

## PROHIBITED AND RESTRICTED ITEMS

CBP has been entrusted with enforcing some 400 laws for 40 other government agencies, such as the U.S. Fish and Wildlife Service and the U.S. Department of Agriculture. These other agencies have a need to know what people bring into the United States, but they are not always at ports of entry, guarding our borders. CBP officers are *always* at ports of entry—their primary mission is to safeguard America's borders.

The products we need to prevent from entering the United States are those that would injure community health, public safety, American workers, children, or domestic plant and animal life, or those that would defeat our national political interests. Sometimes the products that cause injury, or have the potential to do so, may seem fairly innocent. But, as you will see from the material that follows, appearances can be deceiving.

Before you leave for your trip abroad, you might want to talk to CBP about the items you plan to bring back to be sure they're not prohibited or restricted. *Prohibited* means the item is forbidden by law to enter the United States. Examples of prohibited items are dangerous toys, cars that don't protect their occupants in a crash, or illegal substances like absinthe and Rohypnol. *Restricted* means that special licenses or permits are required from a federal agency before the item is allowed to enter the United States. Examples of restricted items include firearms, certain fruits, vegetables, and some animals.

## Absinthe (Alcohol)

The importation of Absinthe and any other liquors or liqueurs that contain Artemisia absinthium

18

is prohibited.

**Automobiles**
Automobiles imported into the United States must meet the fuel-emission requirements of the Environmental Protection Agency (EPA) and the safety, bumper, and theft-prevention standards of the U.S. Department of Transportation (DOT). Trying to import a car that doesn't meet all the requirements can be a frustrating experience for the following reasons. (See the CBP brochure, *Importing a Car*)

Almost all cars, vans, sport utility vehicles, and so on that are bought in foreign countries must be modified to meet American standards except most late model vehicles from Canada. Passenger vehicles that are imported on the condition that they be modified must be exported or destroyed if they are not modified acceptably. Also under these circumstances, the vehicle could require a bond upon entry until the conditions for admission have been met.

And even if the car does meet all federal standards, it might be subject to additional EPA requirements, depending on what countries it was driven in. You are strongly encouraged to contact EPA and DOT before importing a car.

Information on importing vehicles can be obtained from visiting the Environmental Protection Agency web site at www.epa.gov, or by writing to Attn.: 6405J, Washington, DC 20460, or by telephone at 202.564.9240, for EPA forms call 202.564.9660. You may also contact the U.S. Department of Transportation, Office of Vehicle Safety Compliance (NEF 32) NHTSA, Washington, DC 20590, by telephone at 1.800.424.9393, or by visiting the DOT web site at www.nhtsa.dot.gov.

Copies of the brochure *Importing or Exporting a Car* can be obtained by writing to U.S. Customs and Border Protection, P.O. Box 7407, Washington, DC 20044; or visiting the CBP web site at www.cbp.gov. The EPA *Automotive Imports Fact Manual* can be obtained by writing to the Environmental Protection Agency, Washington, DC 20460; or by visiting www.epa.gov.

Cars being brought into the United States temporarily, by nonresidents, (for less than one year) are exempt from these restrictions. It is illegal to bring a vehicle into the United States and sell it if it was not formally entered on a CBP Form-7501.

**Biologicals**
You may need a U.S. Department of Agriculture permit to import biological specimens including bacterial cultures, culture medium, excretions, fungi, arthropods, mollusks, tissues of livestock, birds, plants, viruses, vectors for research, biological or pharmaceutical use. Permit requirements are located under "Permits" on the USDA Website at www.aphis.usda.gov. For some permits you may have to contact the Centers for Disease Control at www.cdc.gov.

**Ceramic Tableware**
Although ceramic tableware is not prohibited or restricted, you should know that such tableware made in foreign countries may contain dangerous levels of lead in the glaze, which can seep into foods and beverages. The U.S. Food and Drug Administration recommends that if you buy

ceramic tableware abroad—especially in Mexico, China, Hong Kong, or India—you have it tested for lead release when you return, or use it for decorative purposes only.

**Cultural Artifacts and Cultural Property (Art/Artifacts)**
Most countries have laws that protect their cultural property; art/artifacts/antiquities; archaeological and ethnological material are also terms that are used. Such laws include export controls and/or national ownership of cultural property. Even if purchased from a business in the country of origin or in another country, legal ownership of such artifacts may be in question if brought into the United States. Therefore, although they do not necessarily confer owner ship, you must have documents such as export permits and receipts when importing such items into the United States.

While foreign laws may not be enforceable in the United States, they can cause certain U.S. laws to be invoked. For example, under the U.S. National Stolen Property Act, one cannot have legal title to art/artifacts/antiquities that were stolen—no matter how many times such items may have changed hands. Articles of stolen cultural property from museums or from religious or secular public monuments originating in any of the countries party to the 1970 UNESCO Convention specifically may not be imported into the United States.

U.S. law may also restrict the importation of specific categories of art/artifacts/antiquities. For example, U.S. laws restricts the importation of: 1) Any pre-Columbian monumental and architectural sculpture and murals from Central and South American countries; 2) Native American artifacts from Canada; Mayan pre-Columbian archaeological objects from Guatemala; pre-Columbian archaeological objects from El Salvador and Peru; archaeological objects like terracotta statues) from Mali; Colonial period objects such as paintings and ritual objects from Peru; 3) Byzantine period ritual and ecclesiastic objects such as icons from Cyprus; and 4) Khmer stone archaeological sculpture from Cambodia.

Importation of items such as those listed above is permitted only when an export permit issued by the country of origin, where such items were first found accompanies them. Purveyors of such items have been known to offer phony export certificates.

As additional U.S. import restrictions may be imposed in response to requests from other countries, it is wise for prospective purchasers to visit the State Department cultural property web site. This web site also has images representative of the categories of cultural property for which there are specific U.S. import restrictions.

Merchandise determined to be Iraqi cultural property or other items of archaeological, historical, cultural, rare scientific and religious importance illegally removed from the Iraq National Museum, the National Library and other locations in Iraq, since August 6, 1990, are also prohibited from importation.

**Dog and Cat Fur**
It is illegal in the United States to import, export, distribute, transport, manufacture, or sell products containing dog or cat fur in the United States. As of November 9, 2000, the Dog and Cat Protection Act of 2000 calls for the seizure and forfeiture of each item containing dog or cat

fur.

The Act provides that any person who violates any provision may be assessed a civil penalty of not more than $10,000 for each separate knowing and intentional violation, $5,000 for each separate gross negligent violation, or $3,000 for each separate negligent violation.

**Drug Paraphernalia**
It is illegal to bring drug paraphernalia into the United States unless they have been prescribed for authentic medical conditions such as diabetes. CBP will seize any illegal drug paraphernalia. Law prohibits the importation, exportation, manufacture, sale, or transportation of drug paraphernalia law. If you are convicted of any of these offenses, you will be subject to fines and imprisonment.

**Firearms**
The Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) regulates and restricts firearms and ammunition; and approves all import transactions involving weapons and ammunition. If you want to import or export weapons or ammunition, you must do so through a licensed importer, dealer, or manufacturer. Also, if the National Firearms Act prohibits certain weapons, ammunition, or similar devices from coming into the country, you will not be able to import them unless the ATF provides you with written authorization to do so.

You do not need an ATF permit if you can demonstrate that you are returning with the *same* firearms or ammunition that you took out of the United States. To prevent problems when returning, you should register your firearms and related equipment by taking them to any CBP office before you leave the United States. The CBP officer will register them on the same CBP Form-4457 used to register cameras or computers. (See the section on **Register Items Before You Leave the United States**).

For further information about importing weapons, contact the Bureau of Alcohol, Tobacco, Firearms and Explosives, U.S. Department of Justice, Washington, DC 20226; or call 202.927.8320; or visit www.atf.gov.

Many countries will not allow you to enter with a firearm even if you are only traveling through the country on the way to your final destination. If you plan to take your firearms or ammunition to another country, you should contact officials at that country's embassy to learn about its regulations.

**Fish and Wildlife**
Fish, wildlife, and products made from them are subject to import and export restrictions, prohibitions, permits or certificates, and quarantine requirements. We recommend that you contact the U.S. Fish and Wildlife Service before you depart if you plan to import or export any of the following:
- Wild birds, land or marine mammals, reptiles, fish, shellfish, mollusks, or invertebrates.
- Any part or product of the above, such as skins, tusks, bone, feathers, or eggs.
- Products or articles manufactured from wildlife or fish.

Endangered species of wildlife, and products made from them, generally may not be imported or exported. You will need a permit from the U.S. Fish and Wildlife Service to import virtually all types of ivory, unless it is from a warthog. The U.S. Fish and Wildlife Service has so many restrictions and prohibitions on various kinds of ivory—Asian elephant, African elephant, whale, rhinoceros, seal, pre-Endangered Species Act, post-CITES (Convention on International Trade in Endangered Species), and many others—that they urge you to contact them before you even *think* of acquiring ivory in a foreign country. You may contact them at 800.358.2104.

You may import an object made of ivory if it is an antique. To be an antique the ivory must be at least 100 years old. You will need documentation that authenticates the age of the ivory. You may import other antiques containing wildlife parts with the same condition, but they must be accompanied by documentation proving they are at least 100 years old. Certain other requirements for antiques may apply.

If you plan to buy such things as tortoiseshell jewelry, or articles made from whalebone, ivory, skins, or fur, contact the U.S. Fish and Wildlife Service, Division of Law Enforcement, P.O. Box 3247, Arlington, VA 22203-3247, or call 800.358.2104 or visit www.fws.gov. Hunters can get information on the limitations for importing and exporting migratory game birds from this office as well. Ask for their pamphlet, *Facts About Federal Wildlife Laws*.

The U.S. Fish and Wildlife Service has designated specific ports of entry to handle fish and wildlife entries. If you plan to import anything discussed in this section, please contact CBP. CBP will tell you about designated ports and send you the brochure *Pets and Wildlife*, which describes the regulations CBP enforces for all agencies that oversee the importation of animals.

Some states have fish and wildlife laws and regulations that are stricter than federal laws and regulations. If you are returning to such a state, be aware that the stricter state laws and regulations have priority. Similarly, the federal government does not allow you to import wild animals into the United States that were taken, killed, sold, possessed, or exported from another country if any of these acts violated foreign laws.

**Food Products (Prepared)**
You may bring bakery items and certain cheeses into the United States. The APHIS web site features a Travelers Tips section and Game and Hunting Trophies section that offers extensive information about bringing food and other products into the country. Many prepared foods are admissible. However, almost anything containing meat products, such as bouillon, soup mixes, etc., is not admissible. As a general rule, condiments, vinegars, oils, packaged spices, honey, coffee and tea are admissible. Because rice can often harbor insects, it is best to avoid bringing it into the United States.

Some imported foods are also subject to requirements of the U.S. Food and Drug Administration.

*Prior Notice for Food Importation*
The Public Health Security and Bioterrorism Preparedness and Response Act of 2002 (Bioterrorism Act or BTA), Public Law 107-188, established the requirement that food items, imported (or offered for import) for commercial use, including hand-carried quantities, be

22

properly reported to the U.S. Food and Drug Administration (FDA) prior to arrival of those items in the United States. The FDA prior notification timeframes (by transport mode) are two hours by land, four hours by rail or air, eight hours by vessel and prior to the "time of mailing" for international mail.

Food that was made by an individual in his/her personal residence, or food purchased by an individual from a vendor that is sent by that individual as a personal gift (for non-business reasons) to someone in the United States is not subject to BTA requirements. However, food that is sent to an individual in the U.S. by a business is subject to special requirements of the Food and Drug Administration.   For instance, if you go to a food shop in England and buy a gift basket, then take it to the post office or a courier service to send to a friend, the shipment is not subject to BTA requirements.  But if you go to that same shop and ask them to send the gift basket for you, the shipment is subject to BTA requirements, and the vendor will have to file Prior Notice. Many travelers are finding that vendors will not ship food directly to U.S. residents because the reporting requirements can be time-consuming to complete.

In general, failure to provide complete, timely and accurate prior notice for BTA regulated items, can result in refusal of admission of the merchandise, movement of the goods to an FDA registered facility (at importer expense) and/or civil monetary penalty liabilities for any party that was involved in the import transaction.

For full details regarding the latest FDA BTA requirements, including those food items exempt from these requirements, access the FDA Website at www.fda.gov/oc/bioterrorism/bioact.html.

**Fruits and Vegetables**
Bringing fruits and vegetables can be complicated. For instance, consider the apple you bought in the foreign airport just before boarding and then did not eat? Whether or not CBP will allow the apple into the United States depends on where you got it and where you are going after you arrive in the United States. The same would be true for those magnificent Mediterranean tomatoes. Fresh fruits and vegetables can carry plant pests or diseases into the United States.

One good example of problems imported fruits and vegetables can cause is the "Med" fly outbreak during the 1980's, The outbreak cost the state of California and the Federal Government approximately $100 million to get rid of this pest. The cause of the outbreak was one traveler who brought home one contaminated piece of fruit. It is best not to bring fresh fruits or vegetables into the United States. However, if you plan to, contact either CBP or check the Travelers Information section on the USDA-APHIS web site for a general approved list on items that need a permit.

**Game and Hunting Trophies**
If you plan to import game or a hunting trophy, please contact the U.S. Fish and Wildlife Service before you leave at 800.358.2104. Currently, 14 ports of entry are designated to handle game and trophies; other ports must get approval from the U.S. Fish and Wildlife Service to clear your entry.

Depending on the species you bring back, you might need a permit from the country where the animal was harvested. Regardless of the species, you are required to fill out a Fish and Wildlife Form 3-177, Declaration for Importation or Exportation.

Trophies may also be subject to inspection by CBP for sanitary purposes. General guidelines for importing trophies can be found on APHIS web site under Travelers Information; or by writing to USDA, APHIS, VS, NCIE Products Program, 4700 River Road, Unit 40, Riverdale, MD 20737-1231; or by calling 301.734.3277.

Also, federal regulations do not allow the importation of any species into a state with fish or wildlife laws that are more restrictive than federal laws. If foreign laws were violated in the taking, sale, possession, or export to the United States of wild animals, those animals will not be allowed entry into the United States.

**Warning:** There are many regulations, enforced by various agencies, governing the importation of animals and animal parts. Failure to comply with them could result in time-consuming delays in clearing your trophy through CBP. You should always call for guidance before you depart.

### Gold
Gold coins, medals, and bullion, formerly prohibited, may be brought into the United States. However, under regulations administered by the Office of Foreign Assets Control, such items originating in or brought from Cuba, Iran, Iraq, Libya, Serbia, and Sudan are prohibited entry. Copies of gold coins are prohibited if not properly marked by country of issuance.

### Meats, Livestock, and Poultry
The regulations governing meat and meat products are very strict. You may not import fresh, dried, or canned meats or meat products from most foreign countries into the United States. Also, you may not import food products that have been prepared with meat.

The regulations on importing meat and meat products change frequently because they are based on disease outbreaks in different areas of the world. APHIS, which regulates meats and meat products as well as fruits and vegetables, invites you to contact them for more information on importing meats. You may write to USDA-APHIS Veterinary Services National Center for Import/Export (NCIE), 4700 River Road, Unit 40, Riverdale, MD 20737-1231; or call 301.734.7830.

### Medication
***Rule of thumb: When you go abroad, take the medicines you will need, no more, no less.***
Narcotics and certain other drugs with a high potential for abuse—Rohypnol, GHB, and Fen-Phen, to name a few — may not be brought into the United States, and there are severe penalties for trying to do so. If you need medicines that contain potentially addictive drugs or narcotics (e.g., some cough medicines, tranquilizers, sleeping pills, antidepressants, or stimulants), do the following:
- Declare all drugs, medicinals, and similar products to the appropriate CBP official.
- Carry such substances in their original containers.
- Carry only the quantity of such substances that a person with that condition (e.g., chronic

24

pain) would normally carry for his/her personal use.
- Carry a prescription or written statement from your physician that the substances are being used under a doctor's supervision and that they are necessary for your physical well being while traveling.

U.S. residents entering the United States at international land borders, who are carrying a validly obtained controlled substance (other than narcotics such as marijuana, cocaine, heroin, or LSD), are subject to certain additional requirements. If a U.S. resident wants to bring in a controlled substance (other than narcotics such as marijuana, cocaine, heroin, or LSD) but does not have a prescription for the substance issued by a U.S.-licensed practitioner (e.g., physician, dentist, etc.) who is registered with, and authorized by, the Drug Enforcement Administration (DEA) to prescribe the medication, the individual may not import more than 50 dosage units of the medication into the United States. If the U.S. resident has a prescription for the controlled substance issued by a DEA registrant, more than 50 dosage units may be imported by that person, provided all other legal requirements are met.

Please note that only medications that can be legally prescribed in the United States may be imported for personal use. Be aware that possession of certain substances may also violate state laws. As a general rule, the FDA does not allow the importation of prescription drugs that were purchased outside the United States. Please see their Website for information about the enforcement policy for personal use quantities.

**Warning:** The U.S. Food and Drug Administration (FDA) prohibits the importation, by mail or in person, of fraudulent prescription and nonprescription drugs and medical devices. These include unorthodox "cures" for such medical conditions as cancer, AIDS, arthritis, or multiple sclerosis. Although such drugs or devices may be legal elsewhere, if the FDA has not approved them for use in the United States, they may not legally enter the country and will be confiscated, even if they were obtained under a foreign physician's prescription.

For specifics about importing controlled substances, call 202.307.2414. For additional information about traveling with medication, contact your nearest FDA office or write to the U.S. Food and Drug Administration, Division of Import Operations and Policy, Room 12-8 (HFC-170), 5600 Fishers Lane, Rockville, MD 20857.

**Merchandise from Embargoed Countries**
Generally, you may not bring in any goods from the following (if not followed by an asterisk or where specified that the embargo only applies to diamonds): Cuba, Iran*, Iraq*, Serbia and Montenegro*, North Korea*, Burma (Myanmar), Angola, Liberia and Sierra Leone (diamonds only) and Sudan. The Office of Foreign Assets Control (OFAC) of the U.S. Department of Treasury enforces this ban.

You may, however, may bring in *information and informational materials*—books, magazines, films, posters, photographs, microfilms, tapes, CDs, records, works of art, etc. Blank tapes and blank CDs are not informational materials.

If you want to import merchandise from any of these countries, you will first need a specific license from the Office of Foreign Assets Control. Such licenses are rarely granted.

There are strictly enforced restrictions on travel to these countries. Therefore, before making plans to visit any of the countries on this list, you should write to the Office of Foreign Assets Control, Department of the Treasury, Washington, DC 20220, or visit their web site at www.treas.gov/ofac.

*The embargo on Iranian goods has been revised to allow the importation of food stuffs intended for human consumption, carpets and other textile floor coverings. Please check with your local port for further details.

* Only certain Iraqi cultural property or other items of archaeological, historical/cultural, rare scientific and religious importance illegally removed from the Iraq National Museum, the National Library and other locations in Iraq is prohibited.

*There is a general lifting of the embargo on Serbia and Montenegro (exception relates to certain "Specially Designated Nationals" and "Blocked Persons" involving transactions prior to January 19, 2000. For more information visit OFAC web site at http://www.treas.gov/offices/eotffc/ofac/.

*The importation of merchandise from North Korea requires a letter of approval issued by the OFAC.

### Pets

If you plan to take your pet abroad or import one on your return, please get a copy of the CBP brochure *Pets and Wildlife*. You should also check with state, county, and local authorities to learn if their restrictions and prohibitions on pets are stricter than federal requirements.

Importing animals is closely regulated for public health reasons and also for the well being of the animals. There are restrictions and prohibitions on bringing many species into the United States.

**Cats** must be free of evidence of diseases communicable to humans when they are examined at the port of entry. If the cat does not seem to be in good health, the owner may have to pay for an additional examination by a licensed veterinarian. As a rule, both cats and dogs must be free of fleas and ticks, and have a health certificate that was issued by the country of residence.

**Dogs** must also be free of evidence of diseases that could be communicable to humans. Puppies must be confined at a place of the owner's choosing, which can be a private residence, until they are three months old and then they must be vaccinated against rabies. The puppy will then have to stay in confinement for another 30 days following the vaccination.

Dogs older than three months must get a rabies vaccination at least 30 days before they come to the United States and must be accompanied by a valid rabies vaccination certificate if coming from a country that is not rabies-free. This certificate should identify the dog, show the date of vaccination, the date it expires (there are one-year and three-year vaccinations), and be signed by

a licensed veterinarian. If the certificate does not have an expiration date, CBP will accept it as long as the dog was vaccinated 12 months or less before coming to the United States. Dogs coming from rabies-free countries do not have to be vaccinated.

**Birds** may be imported as pets as long as you comply with APHIS and U.S. Fish and Wildlife requirements. These requirements may include quarantining the birds at one of the three APHIS' Animal Import Centers at your expense. You must make advance reservations at the quarantine facility. If you intend to import a bird, call APHIS' National Center for Import and Export at 301.734.8364 for more information.

In any case, birds may only be imported through ports of entry where a USDA port veterinarian is on duty; and you must make arrangements in advance to have the bird examined by a USDA port veterinarian at the first U.S. port of entry. There is a minimum user fee for this service of $23.00 based on an hourly rate of $76/hour. For more information, contact the USDA, APHIS, Veterinary Services, National Center for Import and Export (NCIE), 4700 River Road, Riverdale, MD 20737; call 301.734.8364; or visit the APHIS web site at www.aphis.usda.gov/travel/pets.html.

Other common pets such as rabbits, ferrets, hamsters, gerbils, and guinea pigs may be imported if they are in good health. The importation of reptiles and invertebrates is restricted, please contact the U.S. Fish and Wildlife Service for additional guidance. Most species of snails are not admissible. Contact APHIS for additional information.

**Plants and seeds**
Some plants, cuttings, seeds that are capable of propagation, unprocessed plant products, and certain endangered species are allowed into the United States but require import permits; some are prohibited entirely. Threatened or endangered species that are permitted must have export permits from the country of origin.

Every single plant or plant product including handicraft items made with straw, must be declared to the CBP officer and must be presented for CBP inspection, no matter how free of pests it appears to be. For information write to USDA-APHIS-PPQ, 4700 River Road, Riverdale, MD 20737; call 301.734.8645; or visit the APHIS web site at www.aphis.usda.gov/travel/.

**Soil**
Soil is considered the loose surface material of the earth in which plants, trees, and scrubs grow. In most cases, the soil consists of disintegrated rock with an admixture of organic material and soluble salts. Soil is prohibited entry unless accompanied by an import permit. Soil must be declared and the permit must be verified.

**Textiles and Clothing**
In general, there is no limit to how much fabric and clothing you can bring back as long as it is for your personal use or as gifts. If you have exceeded your personal exemption, you may have to pay duty on the items Unaccompanied personal shipments (packages that are mailed or shipped), however, *may* be subject to limitations on amount.

27

On January 1, 2005, quotas for all countries that are part of the World Trade Organization (WTO) will be eliminated. There are still some countries, like Vietnam, that are not part of the WTO that have quotas in place for commercial shipments. These countries may require an additional document called a "visa" accompany the shipment.

China could have limits on particular garments called "safeguards." It is recommended that you contact a CBP import specialist in your area or at the port where you plan to import to determine what countries are subject to quotas and what products from China are subject to safeguards.

There may be additional documentation required for textiles from other countries such as the African countries that require a visa to be placed on a commercial invoice in order to get duty-free treatment. There may also be a certificate of eligibility document requirement to get duty-free treatment under many of the free trade agreements that are negotiated between the United States and the foreign government. These are not admissibility documents, but allow you to import your garments duty-free, provided certain conditions are met.

### Trademarked and Copyrighted Articles

CBP enforces laws relating to the protection of trademarks and copyrights. Articles that infringe a federally registered trademark or copyright or copyright protected by the Berne Convention for the Protection of Literary and Artistic Works are subject to detention and/or seizure. Infringing articles may consist of articles that use a protected right without the authorization of the trademark or copyright owner or articles that copy or simulate a protected right.

Articles bearing marks that are counterfeit or inappropriately using a federally registered trademark are subject to seizure and forfeiture.The importation of articles intended for sale or public distribution bearing counterfeit marks may subject an individual to a civil fine if the registered trademark has also been recorded with CBP. Articles bearing marks that are confusingly similar to a CBP recorded registered trademark , and restricted gray market articles (goods bearing genuine marks not intended for U.S. importation for which CBP granted gray market protection) are subject to detention and seizure.

However, travelers arriving in the United States may be permitted an exemption and allowed to import one article of each type, which must accompany the person, bearing a counterfeit, confusingly similar or restricted gray market trademark, provided that the article is for personal use and is not for sale.

This exemption may be granted not more than once every 30 days. The arriving passenger may retain one article of each type accompanying the person. For example, an arriving person who has three purses, whether each bears a different infringing trademark, or whether all three bear the same infringing trademark, is permitted only one purse. If the article imported under the personal exemption provision is sold within one year after the date of importation, the article or its value is subject to forfeiture.

In regard to copyright infringement, articles that are determined by CBP to be clearly piratical of a protected copyright, i.e., unauthorized articles that are substantially similar to a material protected by a copyright, are subject to seizure. A personal use exemption for articles, similar to

that described above also applies to copyrighted articles for the personal, non-commercial use of the importer and are not for sale or distribution.

You may bring back genuine trademarked and copyrighted articles (subject to duties). Products subject to copyright protection most commonly imported include software on CD-ROMs, sound recordings, toys, stuffed animals, clothing with cartoon characters, videotapes, DVDs, music CDs, and books. Products subject to trademark protection most commonly imported include handbags and accessories, and clothing.

## MONEY AND OTHER MONETARY INSTRUMENTS
You may bring into or take out of the country, including by mail, as much money as you wish. However, if it is more than $10,000, you will need to report it to CBP. Ask the CBP officer for the Currency Reporting Form (FinCen 105). The penalties for non-compliance can be severe.

"Money" means monetary instruments and includes U.S. or foreign coins currently in circulation, currency, traveler's checks in any form, money orders, and negotiable instruments or investment securities in bearer form.

## PHOTOGRAPHIC FILM
CBP will not examine film you bought abroad and are bringing back unless the CBP officer has reason to believe it contains prohibited material, such as child pornography.

You will not be charged duty on film bought in the United States and exposed abroad, whether it is developed or not. But film you bought and developed abroad counts as a dutiable item.

## CUSTOMER SERVICE PROGRAMS
CBP expanded its method of improving customer service to international travelers at major U.S. travel hubs. One method is having passenger service representatives available to travelers on a full-time basis at selected international airports, seaports, and land border ports of entry. The representatives' major purpose is to help travelers clear CBP.

Photos of the passenger service representatives are posted wherever the program is operating, to make it easy for you to recognize them if you need assistance. If you have a concern or need help understanding CBP regulations and procedures, ask to speak with the passenger service representative on duty.

The second initiative involves kiosks. CBP kiosks are located at international airports and are similar to the automated booths you see in malls, banks, department stores, and airports.

You can think of the kiosks as automated passenger service representatives: They are self-service computers with a touch-screen display. All you have to do is type in your country of destination and the computer will print the information for you. The screen displays a telephone number to call for more information. The kiosks also have pockets that contain pamphlets on a variety of topics of interest to travelers: i.e., regulations on transporting currency, agriculture and food items, medicines, and pets.

Kiosks are located in the outbound passenger lounges at the following international airports:

| | | |
|---|---|---|
| Atlanta, Georgia | Boston, Massachusetts | Charlotte, North Carolina |
| Chicago, Illinois | Dallas/Ft. Worth, Texas | Detroit, Michigan |
| Houston, Texas | JFK, New York | Los Angeles, California |
| Miami, Florida | Newark, New Jersey | Philadelphia, Pennsylvania |
| San Francisco, California | San Juan, Puerto Rico | Washington/Dulles, Virginia |

More kiosks are planned.

If you have any questions about CBP procedures, requirements, or policies regarding travelers, or if you have any complaints about treatment you received from CBP officers or about your CBP processing, please write to:

Customer Satisfaction Unit
U.S. Customs and Border Protection
1300 Pennsylvania Avenue, NW Room 5.5C
Washington, DC 20229

Or call 1.877.CBP 5511.

Allegations of criminal or serious misconduct may be reported to the Joint Intake Center by telephone at 1.877.2INTAKE (1.877.246.8253), by Email to Joint.Intake@dhs.gov, by fax to 202.344.3390, or by mail to:
P.O. Box 14475
1200 Pennsylvania Avenue, NW
Washington, DC 20044

# Pledge to Travelers

- We pledge to cordially greet and welcome you to the United States.
- We pledge to treat you with courtesy, dignity, and respect.
- We pledge to explain the CBP process to you.
- We pledge to have a supervisor listen to your comments.
- We pledge to accept and respond to your comments in written, verbal, or electronic form.
- We pledge to provide reasonable assistance due to delay or disability.

Comments may be provided to: 1.877.CBP.5511

## OTHER TRAVEL-RELATED INFORMATION
Frequently, we are asked questions that are not CBP matters such as the following:

**Passports** are issued by the U.S. Department of State Passport Agency. Please contact the Passport Agency nearest you for more information. Postal clerks also accept passport applications.

**Baggage allowance** – Ask the airline or steamship line on which you are traveling for more information. Contact the Transportation Security Administration at www.tsa.gov for a list of prohibited and permitted items.

**Currency of other nations** -- Your local bank can be of assistance.

**Foreign countries** – For information about the country you will visit or about what articles may be imported into that country, contact that country's embassy, consular office, or tourist information office.

U.S. Customs and Border Protection
Washington, D.C. 20229

No. 0000-0512                                    Revised December 2004

31

UNITED STATES
DEPARTMENT OF THE INTERIOR
FISH AND WILDLIFE SERVICE
Office of Law Enforcement
70 Everett Ave., Suite 315
Chelsea, MA. 02150

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE, $300

CERTIFIED MAIL

7004 1160 0006 1101 4635

Stephanie Bakay
79 Ø Boylston Street #8D
Boston, MA 02199