## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | |
| FOUR JARS OF BELUGA STURGEON CAVIAR, | **Civil Action No. 05-11040-RBC** |
| Defendant, | |
| STEPHANIE BAKAY, | |
| Claimant. | |

## UNITED STATES' MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

The United States of America, by its attorney, Michael J. Sullivan, United States Attorney for the District of Massachusetts, respectfully submits this Memorandum of Law in support of its Motion for Summary Judgment in the above-captioned matter. As set forth below, the United States has sustained its burden to establish by a preponderance of the evidence that the *in rem* defendant in this case, four jars of beluga sturgeon caviar, totaling 452 grams, seized by the United States Fish and Wildlife Service (FWS) on November 15, 2004 (the "Defendant Property"), was imported into the United States illegally in violation of the Endangered Species Act (ESA), 16 U.S.C. §1531, *et seq.* and the regulations promulgated thereunder, specifically, the Convention on International Trade in Endangered Species (CITES), as incorporated by 50

C.F.R. §23.12(a)(2)(I).[1]  The United States is therefore entitled to a grant of summary judgment

in its favor and to the forfeiture of the Defendant Property pursuant to 16 U.S.C. §1540(e)(4)(A).

## I.  PRIOR PROCEEDINGS

The United States incorporates by reference its Statement of Undisputed Material Facts

Pursuant to Local Rule 56.1, filed herewith (the "56.1 Statement").  Fed. R. Civ. P. 10(c).

The United States filed its Verified Complaint for Forfeiture *in rem* (the "Complaint")

against the Defendant Property on May 18, 2005.  In the Complaint, the United States alleged

that the Defendant Property was subject to forfeiture pursuant to the ESA, 16 U.S.C.

§1540(e)(4)(A), because the Defendant Property was brought into the United States illegally, in

violation of the CITES permit requirements.  56.1 Statement ¶ 10.

 With the Complaint, the United States filed a motion to seal the complaint and

supporting documents for a brief period until the Court endorsed the attached Warrant and

Monition.  Id. ¶ 11.  On May 24, 2005, the United States filed an amended motion to seal to

remove clerical errors.  Id. ¶ 11.  On June 3, 2005, although the Court had not yet endorsed the

Warrant and Monition, the United States filed a motion to unseal in order that the relevant

documents could be promptly served on all interested parties. Id. ¶ 11.  On June 30, 2005, still

without issuing the Warrant and Monition, the Court issued an electronic order granting the

United States' earlier amended motion to seal.  Id. ¶ 11

---

[1]     While the United States listed a number of other violations justifying forfeiture in its
Complaint, all of these violations would have been cured had Bakay complied with CITES.

On July 1, 2005, the United States filed a notice consenting to the reassignment of the case's jurisdiction to a Magistrate Judge. Id. ¶ 12. The case was so reassigned, and, on July 22, 2005, the Court granted the United States' motion to unseal and issued a Warrant and Monition. Id. ¶ 12.

Bakay was served with notice of the Complaint and Warrant and Monition on July 30, 2005. Id. ¶ 13. On August 11, 2005, Bakay filed an answer to the Complaint. Id. ¶ 14. On August 24, 2005, Bakay filed a verified claim, asserting her interest in the Defendant Property. Id. ¶ 14.

## II. FACTS

On November 15, 2004, Bakay arrived at Logan Airport, Boston on Lufthansa, Flight 422. Id. ¶ 1. At that time, Bakay was returning from a trip to Moscow and St. Petersburg, sponsored by the Boston Atheneum. Id. ¶ 1. Although she has been unable to produce a receipt, Bakay states that, while in St. Peterburg, she purchased the Defendant Property at a store called "Beluga Deluxe." Id. ¶ 2. Bakay estimated that the total cost of the Defendant Property was $300. Id.

As Bakay went through Customs, she was informed that she had exceeded the amount of beluga sturgeon caviar that she could legally import into the United States without a permit. Id. ¶ 4. Bakay spoke with Wildlife Inspector Jennifer Irving who explained in detail the importation requirements for beluga sturgeon caviar. Id. ¶ 4. The Defendant Property was seized and Bakay was given a property receipt. Id. ¶ 4; see Irving Affidavit ¶ 7.[2] The Defendant Property was

---

[2]    "Irving Affidavit" refers to the affidavit of FWS Wildlife Inspector Jennifer Irving, filed in this case with the United States' Complaint.

found to consist of 4 jars of beluga sturgeon caviar, with each jar containing 113 grams of caviar, for a total of 452 grams.  Id. ¶3.

Prior to her trip, Bakay took no steps to determine whether it was permissible to import beluga sturgeon caviar into the United States.  Id. ¶ 5.  At the time of the seizure, Bakay did not have any permit allowing her to import the Defendant Property into the United States.  Id. ¶¶ 6-8.  Specifically, Bakay did not have a CITES foreign export permit authorizing her to import the Defendant Property and had made no attempt to obtain such a permit.  Id. ¶ 6.

### III.  ARGUMENT

**A**.    **Summary Judgment Standard**

Summary judgment is appropriate in a civil forfeiture case where viewing the facts in the light most favorable to the non-moving party, "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); Hatfield v. McDonough, 407 F.3d 11, 15 (1st Cir. 2005); United States v. One Parcel of Real Property, 900 F.2d 470, 473 (1st Cir. 1990) (summary judgment in civil forfeiture action).  When a party moving for summary judgment demonstrates that there is an absence of evidence to support the nonmoving party's position, "the burden shifts to the nonmoving party to establish the existence of an issue of fact that could affect the outcome of the litigation and from which a reasonable jury could find for the opponent."  Rogers v. Fair, 902 F.2d 140, 143 (1st Cir. 1990); Fibrous-Rodriguez v. Becancour-Hebron, 14 F.3d 87, 90-91 (1st Cir. 1994).

**B.    Burden Of Proof**

Because this case commenced on or after August 23, 2000, it is subject to the provisions of the Civil Asset Forfeiture Reform Act of 2000 (CAFRA).  United States v. Once Parcel of Real Property, with Bldg., Appurtenances and Improvements Known as 45 Claremont Street, 395 F.3d 1, 3 n.3 (1st Cir. 2004).  In civil forfeiture actions under CAFRA, the United States must establish, by a preponderance of the evidence, that the property at issue is subject to forfeiture.  18 U.S.C. §983(c)(1).  In this case, the relevant forfeiture provision is contained in the ESA, 16 U.S.C. §1540(e)(4)(A), which provides:

> all fish and wildlife or plants taken, possessed, sold, purchased, offered for sale or purchase, transported, delivered, received, carried, shipped, exported, or imported contrary to the provisions of this chapter, any regulation made pursuant thereto, or any permit or certificate issued hereunder shall be subject to forfeiture to the United States.

Thus, to prevail in a civil forfeiture action under the ESA, the United States must establish, by a preponderance of the evidence, that the property at issue was imported contrary to the ESA, its implementing regulations, or any permit or certificate issued pursuant to the ESA.  18 U.S.C. §983(c)(1).[3]

---

[3]    The United States notes that, under CAFRA, where, as here, the government's theory of forfeiture is not that the defendant property was used to commit or facilitate the commission of a crime, the government need not establish a "substantial connection" between the property to be forfeited and the offense.  See 18 U.S.C. §983(c)(3); cf. United States v. One Handbag of Crocodilus Species, 856 F.Supp. 128, 134 (E.D.N.Y. 1994) (pre-CAFRA case) ("as a forfeiture proceeding under the Endangered Species Act, the present case is not one in which some type of nexus has to be established between the property subject to forfeiture and the conduct sought to be controlled, such as those instances in which the government seeks to have currency forfeited as traceable to illegal trafficking in narcotics").  Of course, even if such a "substantial connection" were required, it would be easily satisfied in this case, since the Defendant Property itself is the article that it is unlawful to possess and its importation without the proper permit is the unlawful act constituting the basis for forfeiture.

In a case such as this one – where the undisputed facts establish that Defendant Property was imported into the United States in violation of the ESA and its regulations – summary judgment for the United States would be appropriate under any burden of proof.

**C.    The Evidence Establishes That Importation of The Defendant Property Violated the Endangered Species Act**

The undisputed facts establish that the importation of the Defendant Property violated the ESA and the regulations promulgated thereunder, making it subject to forfeiture pursuant to 16 U.S.C. §1540(e)(4)(A).

As an initial matter, Bakay herself admits that it is illegal to import over 250 grams of beluga sturgeon caviar into the United States without the necessary CITES permit.  Bakay Deposition at 38-39.[4]  Bakay also admits that she did not have the required CITES permit. Bakay Deposition at 43-45.  Since the Defendant Property consists of over 250 grams of beluga sturgeon caviar, the Court could, therefore, grant summary judgment based on Bakay's own admissions.

In addition, an examination of the relevant international agreement, statutes, and regulations leads to the same conclusion: that the Defendant Property is subject to forfeiture pursuant to 16 U.S.C. §1540(e)(4)(A) and that the United States is entitled to summary judgment as a matter of law.

---

[4]  "Bakay Deposition" refers to the deposition of Stephanie Bakay, conducted in this case on December 6, 2005, relevant portions of which are attached as Exhibit A.

1.     **The Factual, Statutory and Regulatory Background**

a.  **Beluga Sturgeon (*huso huso*)**

The beluga sturgeon, also known as the Russian or European sturgeon, is a large fish from which highly-valued beluga sturgeon caviar is obtained.  <u>See</u> 70 Fed. Reg. 10493.  The species' range was reduced during the 20th century and is now limited to the Caspian and Black Sea basins, where it is threatened by habitat modification and degradation, over-exploitation for trade and limited natural reproduction.  <u>Id</u>.  The Russian Federation is one of the few countries with significant remaining habitat for beluga sturgeon and has joined nearby countries in taking responsibility for cooperative management and conservation of beluga sturgeon.  <u>Id</u>.

b.  **CITES: The Convention on International Trade in Endangered Species**

CITES is an international agreement, signed by over 160 countries, including the United States and the Russian Federation, where the Defendant Property was purchased.  As its name suggests, CITES is designed to protect endangered species by restricting their international trade.  <u>See</u> http://www.cites.org/.  CITES accomplishes this goal by creating a system of permit requirements.  Based on a determination of the level of threat to each species, CITES lists species under one of its three Appendices, with each Appendix setting out a different set of requirements to obtain a permit.  CITES Appendices, http://www.cites.org/eng/app/appendices.shtml.  However, for species listed in any of CITES' three Appendices, the legal export, import, and re-export of any specimen of a listed species requires the prior grant and presentation of a permit or a certificate of origin.  <u>See</u> CITES, Art. III, IV, V, and VI; <u>United States v. 2,507 Live Canary Winged Parakeets</u> (*Brotogeris Vericolorus*), 689 F. Supp. 1106, 1109 (S.D. Fla. 1988).

The Defendant Property consists of caviar obtained from beluga sturgeon, which is listed in Appendix II of CITES.  See http://www.cites.org/eng/com/aC/16/16-7-2a9.pdf (discussing beluga sturgeon); CITES, Art. II.  Appendix II includes species not necessarily threatened with extinction, but whose survival may be endangered unless trade is subject to strict regulation.  CITES, Art. II(2).  For those species listed in Appendix II, CITES allows some commercial trade, but has strict permit requirements.  Specifically, to import a species listed under Appendix II, such as the Defendant Property, the person importing the item must obtain an export permit, known as a CITES permit, from the country of origin.  CITES Art. IV (1), (2); 50 C.F.R. §23.12(a)(2)(I).  A CITES permit for an Appendix II species may be issued by the country of origin only upon a determination by that country's designated authority that the issuance of that particular CITES permit does not contravene the country's wildlife protection laws.  See CITES Art. IV(2)(b) (a valid export permit requires a determination by the management authority of the exporting state "that the specimen was not obtained in contravention of the laws of that State for the protection of flora and fauna."); see also CITES Resolution 12.3; Defenders of Wildlife v. Endangered Species Scientific Authority, 725 F.2d 726, 728 (D.C. Cir. 1984).

CITES is not a self-executing treaty and contains no internal implementation or enforcement mechanisms. Therefore, its effectiveness depends on the extent to which its member countries enact and enforce its provisions. The United States has made the requirements of CITES applicable primarily through the ESA.  See 16 U.S.C. §1538©.

### c. The Endangered Species Act and its Regulations

The purpose of the Endangered Species Act of 1973 is to provide a program for conservation of endangered and threatened species, and to take such steps as may be appropriate to achieve the purposes of international treaties and conventions. 16 U.S.C. §1531(b). In addition to establishing protections for wildlife species considered by the federal government to be in imminent danger or threatened with extinction, the ESA specifically incorporates CITES obligations and prescribes remedies, including civil forfeiture, for anyone importing, exporting or possessing CITES-listed species traded in violation of the treaty. See 16 U.S.C. §1531(b) Specifically, under the ESA:

> It is unlawful for any person subject to the jurisdiction of the United States to engage in any trade in any specimens contrary to the provisions of [CITES], or to possess any specimens traded contrary to the provisions of [CITES and its appendices].[5]

16 U.S.C. §1538(c)[6]

### d. Regulations Specifically Applicable to Beluga Sturgeon Caviar

Beluga sturgeon is one of the species listed in Appendix II of CITES, and has been so listed since April 1, 1998. 50 C.F.R. §23.23. In 1998, following the inclusion of the species in Appendix II of CITES, the FWS amended its regulations to reflect the CITES listing of beluga

---

[5]  CITES specifically defines "trade" to include importation. CITES Art. I §(c).

[6]  The ESA also generally prohibits the import, export or sale in interstate or foreign commerce in the course of a commercial activity of any listed threatened species without a threatened species permit. See 16 U.S.C. §1538(a)(1), 50 C.F.R. §§17.21, 17.31, 17.32. While, at the time of the seizure in this case, FWS had issued, but not yet made effective, a rule listing beluga sturgeon as a threatened species, see 69 Fed. Reg. 21425, a special interim rule, issued on October 21, 2004, permitted the importation of beluga sturgeon caviar with only a CITES permit and did not require a threatened species permit.

sturgeon.  See 63 Fed. Reg. 63210, 63211 (1998) (amending 50 C.F.R. §23.23).  The relevant

regulation provides that "in order to import into the United States any wildlife. . . listed in

Appendix II from any foreign country, a valid export permit issued by the country of origin . . .

must be obtained prior to such importation."  50 C.F.R. §23.12.(a)(2).  Therefore, since April

1998, it has been unlawful for any person to import beluga sturgeon caviar into the United States

without first obtaining a CITES permit from the country of origin.  See 50 C.F.R.

§23.12(a)(2)(I).

        In April 2004, the FWS promulgated a rule to list beluga sturgeon as threatened

throughout its range under the ESA, prohibiting all trade in beluga sturgeon, except with a

threatened species permit pursuant to 50 C.F.R. 17.32.  However, FWS delayed the effective

date of the listing until October 21, 2004, in order to promulgate a special proposed rule under

the ESA.  See 69 Fed. Reg. 38863.  The proposed rule would have provided a 6-month window

under which, pending submission of conservation plans by the principal exporting countries of

beluga sturgeon products, imports of beluga sturgeon products, such as caviar, would have not

required a threatened species permit (despite its listing as a threatened species), but would have

been permitted with only a CITES permit.  However, because of concerns about the effect of the

proposed rule, the FWS allowed the interim rule to continue, allowing trade in beluga sturgeon

products to continue without a threatened species permit, as long as such shipments were

accompanied by a valid CITES permit or were subject to a CITES exemption.  See 69 Fed. Reg.

62416; see 50 C.F.R. §17.31(d).  Subsequent to the seizure in this case, on March 4, 2005, FWS

promulgated a final, immediately effective, rule, which, among other things, reiterated that

beluga sturgeon imports continued to require valid CITES permits, and, in addition, under

certain circumstances, required threatened species permits as well.  See 70 Fed. Reg. 10493.

**D.    Conclusion - Factual, Statutory and Regulatory Background**

In this case, as Bakay admits, she imported the Defendant Property into the United States without a CITES permit.  Indeed, she admits that she made no attempt to obtain such a permit. The Defendant Property, therefore, was imported in the United States in violation of the ESA and its regulations, in particular those regulations requiring a CITES permit.  See 50 C.F.R. §§23.11(b); 23.12(a)(2)(I); cf. United States v. One Afghan Urial Ovis Orientalis Blanfordi Fully Mounted Sheep, 964 F.2d 474, 477 n.3 (5th Cir. 1992).  In sum, an analysis of the relevant convention, statutes, and regulations demonstrates that the Defendant Property was illegally imported into the United States, entitling the United States to summary judgment as a matter of law.

## IV.  BAKAY'S DEFENSES ARE WITHOUT MERIT

Bakay, in her answer, raises several defenses.  All should be rejected and none preclude the granting of summary judgment for the United States.  First, Bakay contends that, despite her lack of the required CITES permit, two jars of the beluga sturgeon caviar should be returned to her, since, considered separately from the shipment as a whole, they did not exceed the 250-gram limit she argues could be imported without a CITES permit.  Second, Bakay  argues that the FWS "has woefully failed to disseminate to the general public" the import rules governing beluga sturgeon caviar and that she was unaware of the importation requirements.  Finally, Bakay claims that service was insufficient because she received the complaint and warrant and monition ten weeks after the complaint was filed with the Court.  All of Bakay's defenses are without merit.

A.    **The Law Requires a CITES Permit for the Entire Shipment**

Bakay's first defense is that she was not required to obtain a CITES permit because, if each jar of the Defendant Property is considered separately, two of the jars, which totaled under 250 grams, were legally imported.  This argument misinterprets both the law and the principles underlying the CITES permit requirement.

Bakay is correct insofar as she notes that, at the time of the seizure, there was, as a matter of FWS policy, an exemption to the CITES permit requirement for the import of a quantity of beluga sturgeon caviar under 250 grams.  See 50 C.F.R. §23.13(d); see also CITES Conf. Res. 12.7 and 12.9.[7]  However, because it is undisputed that the Defendant Property consists of 452 grams of beluga sturgeon caviar, this exemption –- which is limited to imports of 250 grams or less -- plainly does not apply.

Bakay goes on to argue that, even though the Defendant Property exceeded the amount exempt from the CITES permit requirement, that she should nonetheless be allowed to keep up to 250 grams of the Defendant Property.  Accepting Bakay's argument would not only be contrary to law, but would also undermine the governing principles of both the ESA and CITES. In one of the only reported cases to directly address this issue, United States v. 3,210 Crusted

---

[7]    While, prior to the seizure in this case, the FWS followed this 250-gram rule as a matter of policy, it was not codified until after the seizure, in a final rule issued on March 4, 2005, which provides:

> You must obtain a CITES document for personal or household effects . . . if one of the following applies. . .(3) the personal or household effect exceeds 250 grams of beluga caviar.  To import, export, or re-export more than 250 grams, you must have a valid CITES document for the entire quantity.  70 Fed. Reg. 10493, 10504 (emphasis added).

Sides of Caiman Crocodilus Yacare,[8] 636 F.Supp. 1281, 1287 (S.D. Fla. 1986), the court

specifically found that the entire shipment of crocodile hides was subject to forfeiture, not just

the portion that exceeded the number declared on the CITES permit.  The court reasoned that the

purpose of CITES and the ESA is "to prevent extinction of certain species by 'over-exploitation

through international trade.'"  Id. at 1286 (quoting CITES, Proclamation of the Contracting

States at §4).  The court went on to explain:

> To accomplish this aim, the penalties for violations of CITES must
> be stringent.  Merely forfeiting the offending portion of the res
> would only serve to thwart the intent and undermine the
> effectiveness of both CITES and the Endangered Species Act.

Id. at 1286.

Indeed, one of the main purposes of the ESA is "to provide a program for the

conservation of such endangered species and threatened species and to take such steps as may be

appropriate to achieve the purposes of [CITES]."  16 U.S.C. §1531(b); see also Tennessee

Valley Authority v. Hill, 437 U.S. 153, 184 (1978) ("The plain intent of Congress in enacting the

[ESA] was to halt and reverse the trend toward species extinction, whatever the cost.").

In sum, contrary to Bakay's contention, under the ESA, all imports of sturgeon caviar

into the United States that exceed 250 grams per person require a CITES foreign export permit

for the entire amount.  Since it is undisputed that the Defendant Property exceeded the 250-gram

limit, the lack of a CITES permit means that the importation of the entire amount was illegal,

rendering the entire amount subject to forfeiture.

---

[8]    The term "crusted sides of Caiman" refers to the fact that the crocodile hides at issue had
undergone a preliminary tanning process.  See 3,210 Crusted Sides of Caiman Crocodilus Yacare,
636 F.Supp. at 1282 n.2.

**B.    Bakay's Claimed Ignorance of the Importation Laws is Not a Valid Defense**

Bakay's second defense is that she was unaware of the caviar importation permit requirements and they were insufficiently publicized.  However, it is axiomatic that ignorance of the law is no excuse.  Even under the criminal law, with its higher burden of proof, except for specific intent crimes, "[i]gnorance of the law is no defense, and so the government need not show that the defendant knew anything about the law; it need only show that the defendant knew the facts that brought his conduct within the law's prohibitions."  United States v. Hussein, 351 F.3d 9, 17 (1st Cir. 2003); see also United States v. Collazo-Aponte, 281 F.3d 320, 326 (1st Cir. 2002).  This principle is even more plainly applicable in a civil forfeiture action such as this one. Bakay's alleged lack of knowledge of the importation requirements cannot circumvent the requirements of the law, which provides for the forfeiture of "all fish and wildlife or plants taken, possessed, sold, purchased, offered for sale or purchase, transported, delivered, received, carried, shipped, exported, or imported contrary to the provisions of [the EPA or] . . .any regulation made pursuant thereto. . ."  16 U.S.C. §1540(e)(4)(A)(emphasis added).

To the extent that Bakay is attempting to assert a so-called innocent owner defense, that affirmative defense must fail as well. Title 18 United States Code, Section 983(d), which sets forth the innocent owner defense in civil forfeiture cases, specifically provides that "no person may assert an ownership interest under [the innocent owner defense] in contraband or other property that is illegal to possess."  18 U.S.C. §983(d)(4).

As described above, the ESA makes it illegal to possess any wildlife imported into the United States without the required CITES permit.  16 U.S.C. §1538(c)(1).  Therefore, whether the Defendant Property is considered "contraband" or "property that it is illegal to possess," the

14

innocent owner exception contained in 18 U.S.C. §983 simply does not apply.  See United States v. 144,774 Pounds of Blue King Crab, 410 F.3d 1131, 1133-36 (9th Cir.), *cert. denied sub nom.*, Deep Sea Fisheries v. United States, 126 S. Ct. 828 (2005).

Courts have consistently understood and treated illegally imported goods as contraband. See, *e.g.*, United States v. Pierce, 224 F.3d 158, 166-167 (2nd Cir. 2000) (defining illegally imported cigarettes and liquor as contraband); United States v. Reveles, 190 F.3d 678, 688 n.16 (5th Cir. 1999) ("The shipments, however, easily could have involved other contraband goods such as illegally-imported ceramics."); United States v. Molt, 599 F.2d 1217, 1219 n.1 (3rd Cir. 1979) (referring to unlawfully taken and imported foreign wildlife as contraband article); United States v. Approximately 600 Sacks of Green Coffee Beans Seized from Café Rico, Inc., 381 F. Supp. 2d 57, 62 (D.P.R. 2005) ("Because the beans in this case are not from Puerto Rico and have not been properly imported into the country, they are contraband."); United States v. An Antique Platter of Gold, 991 F. Supp. 222, 233 (S.D.N.Y. 1997) ("Goods such as the [antique gold platter] imported in violation of customs laws are contraband."), aff'd, 184 F.3d 131 (2nd Cir. 1999); United States v. Proceeds from the Sale of Approximately 15,538 Panulirus Argus Lobster Tails, 834 F. Supp. 385, 391 (S.D. Fla. 1993) (finding lobster tails harvested in violation of foreign law to be contraband).

Congress presumably was aware of the courts' longstanding understanding and use of the term "contraband" when it enacted CAFRA, see Callanan v. United States, 364 U.S. 587, 594 (1961), and Congress presumably intended the term to have the meaning generally accepted in the legal community at the time of enactment.  See Director, Office of Workers' Comp. Programs, Dep't of Labor v. Greenwich Collieries, 512 U.S. 267, 275 (1994).

15

In any event, even if not considered "contraband" for purposes of the CAFRA innocent owner defense, the Defendant Property, since it was imported in violation of the ESA, was clearly "property that it is illegal to possess," making the innocent owner defense inapplicable. 144,774 Pounds of Blue King Crab, 410 F.3d at 1133-36.

**C.    Bakay Received Timely Notice of This Civil Forfeiture Action**

Bakay's final argument is service of process was insufficient, because of the time that elapsed between the filing of the Complaint, the entry of the Warrant and the Monition, and service on Bakay.[9]  The relatively short delay at issue simply did not prejudice Bakay in any way, nor does it provide a basis for avoiding the forfeiture of the Defendant Property.  It is undisputed that Bakay received notice of the Complaint within eight days after the Court unsealed the case and the Warrant and Monition was issued by the Court.  See Docket Entries 6 and 11.  The delay between the time the Complaint was filed on May 18, 2005 and the service on Bakay on July 30, 2005, was due primarily to the fact that the Court did not act on the United States' motion to unseal, which was filed June 3, 2005, or issue the Warrant and Monition until July 22, 2005.  There is no contention that this eight-day time period between the time the Warrant and Monition was issued and the time Bakay received service, prejudiced Bakay in any way or prevented her from adequately defending her claim in this action.

---

[9]    The government notes that Bakay is not complaining that she did not receive adequate notice or that she was unaware of the United States' intention to forfeit the Defendant Property.

16

## V.  CONCLUSION

The undisputed evidence, including Bakay's own admissions,  demonstrates that the Defendant Property was brought into the United States in violation of the Endangered Species Act, specifically, the CITES' permit requirement, as incorporated by the regulations issued under the ESA.  The Defendant Property is therefore subject to forfeiture and the United States is entitled to summary judgment as a matter of law.

WHEREFORE, it is respectfully submitted that there are no material facts in dispute and that the United States is entitled to summary judgment and forfeiture of the Defendant Property.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:     /s/Anton P. Giedt      3/27/2006
        Anton P. Giedt
        Assistant U.S. Attorney
        United States Courthouse
        One Courthouse Way
        Suite 9200
        Boston, Massachusetts 02210
        617-748-3309 (Voice)
        617-748-3967 (Fax)
        anton.giedt@usdoj.gov

---

**LOCAL RULE 7.1(A)(2) CERTIFICATION**

Undersigned counsel certifies that pursuant to the requirements under Local Rule 7.1(A)(2), that the government has attempted to confer with the *pro se* claimant in an effort to resolve the issues presented in this motion.

/s/ Anton P. Giedt 3/27/06
Anton P. Giedt
Assistant U.S. Attorney

---

17

**CERTIFICATE OF SERVICE**

Suffolk, ss.                                                                    Boston, Massachusetts
                                                                               DATE: March 27, 2006

   I, Anton P. Giedt, Assistant U.S. Attorney, do hereby certify that I have this day served a copy of the foregoing upon the *pro se* claimant by first class mail.

                                                          /s/ Anton P. Giedt
                                                           Anton P. Giedt
                                                           Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff, | )<br>)<br>) |
| v. | )Civil Action No. 05-11040-RBC<br>)<br>) |
| FOUR JARS OF BELUGA<br>STURGEON CAVIAR,<br>Defendant, | )<br>)<br>)<br>) |
| STEPHANIE BAKAY,<br>Claimant. | )<br>)<br>) |

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Local Rule 56.1, the parties, the United States and the claimant, Stephanie Bakay ("Bakay" or "Claimant") respectfully submit this statement of undisputed material facts.

1. On November 15, 2004, Bakay arrived at Logan Airport, Boston Massachusetts on Lufthansa flight 422. At that time, Bakay was returning, via Germany, from a trip to Moscow and St. Petersburg, Russia sponsored by the Boston Athenaeum. Bakay Deposition[1] pp. 33-35.

2. During her trip to Russia, Bakay had purchased, among other things, four jars of beluga sturgeon caviar. Bakay Deposition p. 35. Bakay stated that she purchased the four jars of beluga sturgeon caviar in St. Petersburg, at a store called Beluga Deluxe and estimated that the total cost of the 4 jars of

---

[1]  "Bakay Deposition" refers to the deposition of Stephanie Bakay conducted in this case on December 6, 2005.

1

beluga sturgeon caviar was $300.[2]  Bakay Deposition at pp. 35-36.

3.  The total weight of the beluga sturgeon caviar imported into the United States by Bakay was 452 grams, with each jar containing 113 grams of beluga sturgeon caviar.  Bakay Deposition at p. 36.

4.  As Bakay went through Customs, she was informed that she had exceeded the limit of the amount of beluga sturgeon caviar that she could legally import into the United States.  Bakay Deposition at p.39.  Bakay spoke with Wildlife Inspector Jennifer Irving, who explained to Bakay in detail the legal importation limit for beluga sturgeon caviar and gave Bakay a document further explaining the legal importation limits.  Bakay Deposition at p.39.  The four jars of beluga sturgeon caviar were seized from Bakay.

5.  Prior to the seizure of the four jars of beluga sturgeon caviar Bakay did not take any steps to determine whether it was permissible to import beluga sturgeon caviar into the United States.  Bakay Deposition at 43.

6.  At the time Bakay attempted to import the four jars of beluga sturgeon caviar she did not have a so-called CITES (Convention on International Trade in Endangered Species) foreign export permit allowing her to import the caviar.  Bakay Deposition

---

[2]In a letter to the United States Attorney's Office, dated December 12, 2005, Bakay stated that she was unable to retrieve copies of the receipts from American Express without sequence numbers for the traveler's checks.

at 43.  Bakay did not attempt to apply for a CITES permit.  Bakay
Deposition at 43.   Bakay did not take any steps to obtain
information regarding a CITES permit.  Bakay Deposition at 43-44.

7.  At the time Bakay attempted to import the four jars of
beluga sturgeon caviar into the United States, she did not have a
threatened species permit authorizing the importation of the
caviar.  Bakay Deposition at 44.  Bakay did not attempt to apply
for a threatened species permit.  Bakay Deposition at 44.  Bakay
did not take any steps to obtain information regarding a threatened
species permit.  Bakay Deposition at 44.

8.  At the time Bakay attempted to import the four jars of
beluga sturgeon caviar into the United States, she did not have a
declaration of importation or exportation from the Fish and
Wildlife Service the importation of the caviar.  Bakay Deposition
at 45.  Bakay did not attempt to apply for a such a declaration,
nor did she take any steps to obtain information about such a
declaration.

9.  Bakay states that, prior to the seizure of the four jars
of beluga sturgeon caviar she was unaware that it was illegal to
import over 250 grams of beluga sturgeon caviar into the United
States without a permit or a declaration of importation.  Bakay
Deposition at 38.  However, Bakay admits that she is now aware that
such importation is illegal and that she has been so aware since
the time of seizure, when the legal requirements were explained to

3

her by Wildlife Inspector Jennifer Irving. Bakay Deposition at 38-39.

10. **THE PROCEEDINGS**: On May 18, 2005, the United States filed a civil forfeiture complaint and warrant and monition, seeking forfeiture of the four jars of beluga sturgeon caviar, totaling 452 grams in weight ("the caviar") seized from Bakay on November 15, 2004. See Docket Entry 1. The complaint sought forfeiture of the caviar pursuant to 16 U.S.C. §1540(e)(4)(A) on the grounds that the Defendant Property was brought into the United States illegally in violation of 16 U.S.C. §1533 and §1538(a)(1)(G),(c)(1) and(e), 50 C.F.R. §14.61, and the Endangered Species Convention (CITES), incorporated into 50 C.F.R. Part 23, §23.11(b), and 50 C.F.R. §23.12(a)(2)(i). Specifically, the complaint alleged that Bakay had attempted to import the caviar illegally in that she did not have a CITES permit, a threatened species permit nor a declaration of importation or exportation.

11. With the complaint, the United States filed a motion to seal the complaint and supporting documents for a brief period until the Court endorsed the warrant and monition. See Docket Entry 2. On May 24, 2005, the United States filed an amended motion to seal to remove clerical errors. See Docket Entry 5. On June 3, 2005, although the Court had not yet endorsed the warrant and monition, the United States filed a motion to unseal in order that the relevant documents could be promptly served on all

4

interested parties.  See Docket Entry 3.  On June 30, still without issuing the warrant and monition, the Court issued an electronic order granting the United States' earlier amended motion to seal.

12.  On July 1, 2005, the United States filed a notice consenting to the reassignment of the case's jurisdiction to a Magistrate Judge.  The case was so reassigned, and, on July 22, 2005, the Court granted the United States motion to unseal and issued a warrant and monition.  See Docket Entry 6.

13. Bakay was served with notice of the complaint warrant and monition on July 30, 2005.  See Docket Entry 11.

14.  On August 11, 2005, Stephanie Bakay filed an answer.  See Docket Entry 7.  On August 24, 2005, Bakay filed a verified claim, asserting her ownership interest in the caviar.  See Docket Entry 8.


Respectfully submitted,

MICHAEL J. SULLIVAN                   STEPHANIE BAKAY,
United States Attorney,


by: _____        by:  Stephanie Bakay
    Jennifer H. Zacks               790 Boylston Street #8D
    Assistant U.S. Attorney         Boston, MA 02199
    John J. Moakley Federal         617-262-7156
    Courthouse
    Suite 9200
    1 Courthouse Way
    Boston, MA 02210
    (617) 748-3283

Dated: February   , 2006        Dated:  February 24, 2006

1

1 - 54

IN THE UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO. |
| | ) | 05 11040 MLW |
| FOUR JARS OF BELUGA STURGEON CAVIAR, | ) | |
| | ) | |
| Defendant. | ) | |

THE ORAL DEPOSITION OF STEPHANIE M. BAKAY, held
pursuant to Notice, and the applicable provisions of the
Federal Rules of Civil Procedure, before Rosemary Gormley, a
Court Reporter and Notary Public, within and for the
Commonwealth of Massachusetts, at the offices of the
United States Attorney, 1 Courthouse Way, Suite 9200,
Boston, Massachusetts, on Tuesday, December 6, 2005,
commencing at 10:05 a.m.

38

1    caviar?

2    A    No.

3    Q    Do you know how much he purchased?

4    A    I don't know in weight.  I don't remember how much in

5         actual weight.  He had -- he purchased one, one tin.

6    Q    Okay.  Do you know what happened to that one tin?

7    A    It was confiscated.

8    Q    Okay.  When was it confiscated?

9    A    At the same time that my caviar was removed from me.

10   Q    Okay.  And what was his reaction?

11   A    He was not happy.

12   Q    Okay.  All right.  Now, as you sit here today, not back

13        then, but as you sit here today, do you know that it's

14        illegal to import over -- or at the time -- in, you

15        know, November 15th of 19 -- 2004, do you know, at that

16        time, do you know that it was illegal to import over

17        250 grams of beluga sturgeon caviar into the United

18        States without a permit or declaration of importation?

19   A    I did not know it at the time and neither did

20        Mr. Loring.

21   Q    But do you know it?

22   A    Yes.

23   Q    You know it now?

24   A    I know it now.

25   Q    You know it now?  Okay.  When did you learn that it was

39

| | | |
|---|---|---|
| 1 | | illegal to import? |
| 2 | A | At the time of seizure. |
| 3 | Q | Okay.  When you say at the time of seizure, when was |
| 4 | | that? |
| 5 | A | As I was -- as I was going through Customs and my |
| 6 | | caviar was taken from me, and I was informed that I had |
| 7 | | exceeded the limit of what I could import into the |
| 8 | | United States. |
| 9 | Q | Okay.  And how specifically did you learn that? |
| 10 | A | I was -- I was detained by someone in Customs. |
| 11 | Q | Do you remember who? |
| 12 | A | I don't know if I ever knew who it -- what his name |
| 13 | | was.  But, I mean, I was -- it was explained to me in |
| 14 | | detail by Jennifer Irving, what the limit was, which I |
| 15 | | did not know prior to that particular moment. |
| 16 | Q | Okay.  She explained it to you.  Did she give you any |
| 17 | | documents? |
| 18 | A | Yes. |
| 19 | Q | Okay.  What was that? |
| 20 | A | She gave me -- it might have been just called travel |
| 21 | | advisory. |
| 22 | Q | Mm-hm. |
| 23 | A | Traveler -- Traveler Alert Caviar, and she also gave me |
| 24 | | a receipt for the caviar that was re -- I had removed |
| 25 | | or parted from me. |

*APEX Reporting*
(617) 426-3077

43

| | | |
|---|---|---|
| 1 | | Okay.  All right.  What steps did you take to |
| 2 | | determine whether it was permissible to import beluga |
| 3 | | sturgeon caviar into the United States? |
| 4 | A | I didn't take any. |
| 5 | Q | Okay.  Did you have, at the time, any kind of permit to |
| 6 | | bring --- |
| 7 | A | No. |
| 8 | Q | --- just let me finish the question --- |
| 9 | A | Yeah. |
| 10 | Q | --- just for the purposes of the transcript. |
| 11 | | Did you have any type of permit at the time to |
| 12 | | bring the beluga sturgeon caviar into the United |
| 13 | | States? |
| 14 | A | No. |
| 15 | Q | Okay.  Now did you have a -- I know you said you had |
| 16 | | no type of permit.  You didn't have, for example, a |
| 17 | | CITES --- |
| 18 | A | No. |
| 19 | Q | --- foreign export permit to import the caviar? |
| 20 | A | I had no permit. |
| 21 | Q | Okay.  Did you attempt to apply for a CITES permit for |
| 22 | | the caviar? |
| 23 | A | No. |
| 24 | Q | Did you take any steps to obtain information regarding |
| 25 | | a CITES permit? |

*APEX Reporting*
(617) 426-3077

44

| | | |
|---|---|---|
| 1 | A | No.  I had no knowledge that beluga sturgeon was |
| 2 | | endangered. |
| 3 | Q | Okay.  Do you know what a CITES permit is, by the way? |
| 4 | A | I've never seen one.  The only information I have about |
| 5 | | it is, you know, what I've learned during the course of |
| 6 | | this case. |
| 7 | Q | Okay. |
| 8 | A | I had never heard of one before --- |
| 9 | Q | Right. |
| 10 | A | --- my trip. |
| 11 | Q | Right.  But do you -- as you sit here today, now, do |
| 12 | | you understand what a CITES permit is? |
| 13 | A | Yes. |
| 14 | Q | Okay.  All right, now, I know some of these questions |
| 15 | | are repetitive, but I'm just trying to go through to be |
| 16 | | thorough.  On November 15th, 2004, did you receive a |
| 17 | | threatened species permit to import the beluga sturgeon |
| 18 | | caviar? |
| 19 | A | No. |
| 20 | Q | Did you attempt to apply for a threatened species |
| 21 | | permit? |
| 22 | A | No. |
| 23 | Q | Did you take any steps to get information regarding a |
| 24 | | threatened species permit? |
| 25 | A | No. |

*APEX Reporting*
(617) 426-3077

45

1  Q   Okay.  On November 15th, 2004, did you have a

2      declaration of importation or exportation from the

3      Fish and Wildlife Service to import the beluga sturgeon

4      caviar?

5  A   No.

6  Q   Did you attempt to apply for such a declaration?

7  A   No.

8  Q   Did you take any steps to get information about such a

9      declaration?

10 A   No.

11 Q   Okay.  All right.  Now when you were stopped in the

12     airport, where were you stopped?

13 A   At Customs.

14 Q   And who was with you when you were stopped?

15 A   I was by myself.

16 Q   Okay.  What happened when you were stopped?

17 A   I had declared the four jars of caviar and the first

18     point of entry through Customs, the Immigration

19     Inspector or whatever his job title is, said, come this

20     way, and I began to be aware that this was -- there was

21     something wrong with importing this caviar.

22 Q   How did you become aware of that?

23 A   I'm not sure how much detail he went into with me.  I

24     don't think very much, but he just -- he took me along

25     to the, I don't know, fish contraband area of Customs

52

C E R T I F I C A T E

COMMONWEALTH OF MASSACHUSETTS    )
                                 )  SS.
COUNTY OF SUFFOLK                )

I, Rosemary Gormley, a Court Reporter and Notary Public, within and for the Commonwealth of Massachusetts, do hereby certify that there came before me on this 6th day of December, 2005, the person hereinbefore named, who was by me duly sworn to tell the truth, the whole truth, and nothing but the truth, concerning and touching the matter in controversy in this cause; that she was thereupon examined upon her oath, and her examination reduced to typewriting, under my direction, and that this deposition transcript is a true and accurate record of the testimony given by the witness.

I further certify that I am not related to any of the parties hereto or their counsel, and that I am in no way interested in the outcome of said cause.

Dated at Boston, Massachusetts, this 14th day of December, 2005.

COPY

Rosemary Gormley
NOTARY PUBLIC
My Commission Expires:
November 2, 2012

**APEX Reporting**
(617) 426-3077