

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff | ) ) ) | |
| v. | ) ) ) | Civil Action No. 05-11040-RBC |
| FOUR JARS OF BELUGA STURGEON<br>CAVIAR,<br>___Defendants._____ | ) ) ) ) | |
| STEPHANIE BAKAY,<br>Claimant. | ) ) | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF ITS OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendants Four Jars of Beluga Sturgeon Caviar, by Claimant Stephanie Bakay,

respectfully submit this Memorandum of Law in Support of Its Opposition to Plaintiff's

Motion for Summary Judgment.

## FACTS

On November 15, 2004, at 12:30 p.m. I (Claimant Stephanie Bakay) arrived at

Logan International Airport , Boston, Massachusetts en route from Frankfurt , Germany.

Prior to Frankfurt, I had been in St. Petersburg, Russia, where I had purchased four

separate jars of beluga sturgeon caviar weighing 113 grams per jar (hereinafter "Caviar"),

the defendants in this case.  The total amount of caviar I brought to U.S. Customs, and

which I declared, weighted 452 grams.  Caviar was confiscated at Logan Airport

Customs and I was informed that beluga sturgeon is considered an endangered species and that there was a limit as to how much beluga sturgeon caviar I could legally enter the United States with. This was news to me, nor had I ever heard of the "CITES permit" needed in order to import more than the 250 grams of beluga sturgeon caviar legally allowed per traveler.

## ARGUMENT

I have never denied that (unknowingly) I attempted to bring into the United States more beluga sturgeon caviar than the law allows. I have not come across one non-government employee who has even heard of this restriction (see attached letter from Sally L. Sells, dated February 21, 2005). But let's pretend that I did know. This is the runaround I would have received if I had tried to import over 250 grams the right way.

After Caviar was seized, I did some investigating. I shall quote some passages from my Petition for Remission, filed January 5, 2005:

> After numerous phone calls to government officials in the U.S. Customs and Fish and Wildlife Services, I was unable to locate any documentation whatsoever advising travelers of Customs restrictions regarding Russia in general or transport of caviar in particular. For example, when Jim McLaughlin, assistant port director at Logan Airport, recommended looking at the www.cbp.gov World Wide Web site, only the most generalized information appeared available as of November 18....Several attempts to phone the U.S. Fish and Wildlife Service number, 800-358-2104 as indicated, resulted in announcement that the line only takes messages....

> ...the present state of utterly inadequate disclosure defies any practical effort to perform "due diligence" given that even the most rudimentary details are sorely lacking. For example, again on the CBP web site, attempts to search basic keywords yielded no relevant information on "Russia', "caviar", or "CITES sturgeon caviar"....Entering "caviar endangered species" brought up "A seriously fishy story" from US

Customs today [attached]…which, though a colorful illustration of massive illegal smuggling, is ultimately of no practical value to the average, honest citizen.

Most astonishing is a U.S. Customs & Border Protection Informed Compliance Publication from February 2004, *"What every member of the trade community should know about: Caviar"*…the preface of which actually states "Two new concepts that emerge from the Mod (Customs Modernization) Act are ***"informed compliance"*** and ***"shared responsibility"*** [emphasis in bold italic font as appears in the original document], which are premised on the idea that in order to maximize voluntary compliance with the laws and regulations of U.S. Customs and Border Protection, the trade community needs to be clearly and completely informed of its legal obligations. Accordingly, the Mod Act imposes a greater obligation on CBP to provide the public with improved information….As defined by this dictate, CBP has clearly failed the public in every conceivable way when such a document, dated six years after the CITES treaty includes not *one* single mention of the actual CITES limit of 250 grams, presumably applicable to both trade and the general public alike. In any event, such omission is glaring in light of the title's purported intent to reveal "everything" to know about caviar for "informed compliance" with U.S. customs regulations.

Out of curiosity, based on a statement in the caviar Traveler Alert flyer [which I received at the time Caviar was confiscated] ("the import of more than 250 grams of caviar requires a CITES permit from the country where the caviar was purchased"), phone calls to both the Russian Embassy and the Russian Trade Representation office in Washington, D.C. resulted only in perplexed responses in broken English from staffers claiming no knowledge at all about obtaining a CITES permit; rather, they believed a permit would be issued by the U.S. government rather than the country of origin according to the flyer. Needless to say, U.S. Customs has no clear instruction on how or whom to contact for a permit application.

So, as made abundantly clear above, had I known beluga sturgeon were an endangered species prior to my trip to Russia and had I tried to obtain the necessary permits, approvals and even just ascertain what my legal amount of importation was, it is doubtful I would have had any success.

Another curious piece of information that came up in the discovery process lay within United States' Responses to Claimaint's First Request of Documents to Plaintiff. My two requests for production of documents involved how much beluga sturgeon caviar had been confiscated in the United States since the 250-gram-per-person limit went into effect on April 1, 1998, and how much had been confiscated just from Logan Airport within the same time period.

Plaintiff responded that 321 pounds had been confiscated within the entire United States, of which 176 pounds had been confiscated solely at Logan Airport [attached]. How can it be that almost 50 percent of the entire beluga sturgeon confiscation in the United States happens at Logan Airport?  Is Customs overzealous?  Or has the U.S. Department of Fish and Wildlife made a particularly bad showing in New England of informing the public?

## CONCLUSION

Claimant believes it would have been impossible for her to adequately get the proper information necessary to import Caviar on November 15, 2004, as explained in this Memorandum of Law.

WHEREFORE, it is respectfully submitted that the United States is not entitled to

summary judgment and forfeiture of the Defendant Property.


Respectfully submitted,


Dated: April 7, 2006

FOUR JARS OF BELUGA STURGEON
CAVIAR, Defendants
By Claimant,


Stephanie Bakay
790 Boylston Street #8D
Boston, MA  02199
(617) 262-7156

# TRAVEL ANYWHERE

21 February, 2005

To Whom It May Concern:

Re: Ms. Stephanie Bakay
    Seizure of Caviar at Boston Airport November 17, 2004

In my 38 years experience, I have never encountered such an incident. In these past 38 years, Travel Anywhere has operated group tours all over the world, including Russia ( formerly USSR).

Our typical client is well-educated, well-traveled, and keenly interested in cultural travel. With this profile, it is realistic to assume that clients on our trips are not "importers" of bi-products of endangered species. I would therefore assume that Ms. Bakay imported the extra few grams of Russian Caviar in total innocence of the regulations.

At no time in the past 38 years has this agency received advisories or warnings from the Fish and Wildlife or other departments of the US Government regarding the importation of endangered species bi-products.

It would be my suggestion that all TOUR OPERATORS be sent advisories regarding these regulations, since Tour Operators offer tours to all continents and countries. The appropriate advisories could ultimately be included in the travel information given to their clients, the traveling public.

Respectfully,

Sally L. Sells
President

Society Hill Towers Plaza • 257 Saint James Place • Philadelphia, PA 19106-3936
(215) 923-4300 • (800) 523-1650 • Fax (215) 923-2833
E-Mail: info@tvlanywhere.com • http://www.tvlanywhere.com

# U.S. CUSTOMS **TODAY**



November 2002

## NOVEMBER 2002

IN THIS ISSUE

## A seriously fishy story

Ah, the good life. Diamonds, champagne, high-dollar cigars, caviar ... and not just any fish eggs either. We're talkin' Beluga. The good stuff.



These objects of living large are, like drugs, highly susceptible to being smuggled. Check out an old James Bond movie if you're too young to remember that diamonds, for example, were once a big deal in the smuggling business. And right out of an old Bond-esque plot comes a Russian guy, Viktor Tsimbal, who was running a caviar scam that was every bit as profitable as--and in fact, worked a whole lot like--the cocaine trade.

He made millions of dollars a year smuggling Beluga caviar, found solely in Black and Caspian Sea sturgeons, from the time he started his "export" operation in 1998 till he got busted in August in Miami. Like the cocaine kings, he used mules to smuggle the goods. And they smuggled more caviar into the United States than Russia is legally permitted to export to the entire world.

Tsimbal and his mules may have viewed their product as food, but to the Customs Service and the Fish and Wildlife Service, it is a serious violation of an international law protecting sturgeon--hence the limits on export quantities. He transshipped his illegal fish eggs through Poland and labeled them as Atlantic lumpfish, which are not a protected species.

Sturgeons have been around since the dinosaur age and can live for a hundred years if they're not poached for their eggs. You have to kill the fish during their egg-bearing years, usually their first 20 years, to get the roe. Smugglers were helping to extinguish the breed entirely.

Tsimbal was not only helping to move Beluga sturgeon from a protected to an endangered species--and if that happened, no Beluga caviar could be exported or imported at all--he was also laundering the money he earned from his smuggling scheme.

Tsimbal, who comes up for sentencing in November, pled guilty to a far-reaching conspiracy that included charges of money-laundering, fraud, and smuggling, and that involved U.S. Customs, the Department of Justice, the Fish and Wildlife Service, and the Food and Drug Administration. He faces a maximum sentence of 30 years in prison and a $1 million fine. Ah, the good life.

Previous Article                                    Next Article

- A seriously fishy story

OTHER
CUSTOMS NEWS

**Beluga Sturgeon Caviar**
**United States seizure cases-07/23/98 to 11/06/05**

| | |
|---|---|
| **1-250 grams** | 28 seizures totaling 4,841 grams |
| **251-500 grams** | 26 seizures totaling 11,239 grams |
| **501-750 grams** | 14 seizures totaling 8,626 grams |
| **751-1,000 grams** | 16 seizures totaling 15,500 grams |
| **1,001-1,500 grams** | 5 seizures totaling 5,885 grams |
| **1,501-2,000 grams** | 8 seizures totaling 14,655 grams |
| **2,001-3,000 grams** | 4 seizures totaling 8,894 grams |
| **3,001-50,000 grams** | 13 seizures totaling 200,000 grams |
| **1-100 pounds** | 4 seizures totaling 321 pounds |

**119 cases seizing 269,640 grams and 321 pounds**

**Beluga Sturgeon Caviar**
**Boston-Logan Airport seizure cases from 04/01/98 to 04/05/05**

| | |
|---|---|
| **1-250 grams** | 6 seizures totaling 683 grams |
| **251-500 grams** | 6 seizures totaling 2,582 grams |
| **501-750 grams** | 5 seizures totaling 3,212 grams |
| **751-1,000 grams** | 2 seizures totaling 2,000 grams |
| **1,001-1,500 grams** | 2 seizures totaling 2,260 grams |
| **1,501-2,000 grams** | 2 seizure totaling 3,750 grams |
| **2,001-3,000 grams** | 1 seizure totaling 2,034 grams |
| **3,001-25,000 grams** | 1 seizure totaling 20,000 grams |
| **1-100 pounds** | 2 seizures totaling 176 pounds |

**27 cases seizing 36,521 grams and 176 pounds**

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on April 8, 2006, she caused a true copy of

the foregoing Defendants' Memorandum of Law in Support of Its Opposition to

Plaintiff's Motion for Summary Judgment, to be served by U.S. mail, postage prepaid, to:

> Anton P. Giedt, Esq.
> United States Courthouse
> One Courthouse Way, Suite 9200
> Boston, MA  02210

Dated:  April 7, 2006

Stephanie Bakay
790 Boylston Street #8D
Boston, MA  02199
(617) 262-7156