# United States District Court
# District of Massachusetts

UNITED STATES OF AMERICA,
    Plaintiff,

    v.

FOUR JARS OF BELUGA STURGEON      Civil Action No. 05-11040-RBC[1]
CAVIAR,
    Defendant,
_____

STEPHANIE BAKAY,
    Claimant.

## *MEMORANDUM AND ORDER ON UNITED STATES' MOTION FOR SUMMARY JUDGMENT (#18)*

COLLINGS, U.S.M.J.

### *I. Introduction*

On May 18, 2005, the United States filed a complaint for forfeiture *in rem* against the defendant property, Four Jars of Beluga Sturgeon Caviar, pursuant

---

[1] With the parties' consent this case has been referred and reassigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. §636(c).

to the Endangered Species Act of 1973, 16 U.S.C. §1540(e)(4)(A). Because the defendant property purportedly was imported illegally without a requisite Convention on International Trade in Endangered Species ("CITES") permit from the nation of origin, it is alleged to be subject to forfeiture.

The United States submitted a motion for summary judgment (#18) with an accompanying memorandum in support and a statement of undisputed material facts (#19) on March 27, 2006. Claimant Stephanie Bakay ("Bakay" or "Claimant") filed an opposition (#20) together with a memorandum in opposition (#21) on May 8, 2006. At this juncture, the dispositive motion is poised for decision.

## II. The Facts

On November 15, 2004, Bakay landed at Logan Airport on Lufthansa Flight 422. (Statement of Undisputed Facts ¶1) She was returning from a trip to Russia with the Boston Atheneum via Frankfurt, Germany. (Statement of Undisputed Facts ¶1) During her trip, Bakay purchased four jars of beluga caviar from a store called "Beluga Deluxe" in St. Petersburg, Russia. (Statement of Undisputed Facts ¶2) Each jar contained 113 grams of caviar for a combined total of 452 grams of caviar. (Statement of Undisputed Facts ¶3) Although she

does not have the receipt, Bakay estimated that the caviar cost $300. (Statement of Undisputed Facts ¶2)

Bakay declared the caviar going through U.S. Customs and was informed that the amount of beluga caviar in her possession exceeded the legal importation limit without a permit. (Statement of Undisputed Facts ¶4) The legal limit for imported beluga caviar without a permit or declaration of importation is two hundred and fifty (250) grams. (Statement of Undisputed Facts ¶9) The four jars of beluga caviar were seized from Bakay at the airport. (Statement of Undisputed Facts ¶4)

Prior to the seizure of the caviar, Bakay had not made any effort to determine the legality of importing beluga caviar. (Statement of Undisputed Facts ¶5) On November 15, 2004, she did not have a CITES foreign export permit that is required to import the beluga caviar, a threatened species permit authorizing the importation of the caviar or a declaration of importation or exportation from the Fish and Wildlife Service. (Statement of Undisputed Facts ¶¶6-8)

According to Bakay, before her four jars of caviar were seized she had no knowledge that it was illegal to import more than 250 grams of beluga caviar

into the United States. (Statement of Undisputed Facts ¶9) Admittedly she now is aware of that fact. (Statement of Undisputed Facts ¶9)

### III. The Summary Judgment Standard

The purpose of summary judgment "'is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'" *Rojas-Ithier v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico,* 394 F.3d 40, 42 (1 Cir., 2005) (quoting *Wynne v. Tufts Univ. Sch. of Med.,* 976 F.2d 791, 794 (1 Cir., 1992), *cert. denied,* 507 U.S. 1030 (1993)); *see also Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1 Cir., 1990). The party moving for summary judgment bears the initial burden of asserting the absence of a genuine issue of material fact and "support[ing] that assertion by affidavits, admissions, or other materials of evidentiary quality." *Mulvihill v. Top-Flite Golf Co.,* 335 F.3d 15, 19 (1 Cir., 2003); *De La Vega v. San Juan Star, Inc.,* 377 F.3d 111, 115-116 (1 Cir., 2004). "'Once the moving party avers the absence of genuine issues of material fact, the nonmovant must show, through materials of evidentiary quality, that such a dispute exists.'" *Cordero-Soto v. Island Finance Inc.,* 418 F.3d 114, 119 (1 Cir., 2005) (quoting *Rathbun v. Autozone, Inc.,* 361 F.3d 62, 66 (1 Cir., 2004)); *see also Mulvihill,* 335 F.3d

at 19 (citing *Suarez v. Pueblo Int'l, Inc.,* 229 F.3d 49, 53 (1 Cir., 2000)).

When considering whether to grant summary judgment, the Court must determine whether:

> …the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).

The Court looks to "the record on summary judgment in the light most favorable to the nonmovant." *Hoffman v. Applicators Sales and Service, Inc.*, 439 F.3d 9, 11 (1 Cir., 2006) (citing *Santiago-Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 50 (1 Cir., 2000)). All reasonable inferences will be drawn in the favor of the nonmoving party. *Poulis-Minott v. Smith,* 388 F.3d 354, 361 (1 Cir., 2004); *see also Alliance of Auto Mfrs. v. Gwadosky*, 430 F.3d 30, 34 (1 Cir., 2005), *cert. denied,* 126 S.Ct. 2034 (2006); *Santoni v. Potter*, 369 F.3d 594, 598 (1 Cir., 2004); *Mulvihill,* 335 F.3d at 19; *Podiatrist Ass'n, Inc. v. La Cruz Azul De Puerto Rico, Inc.,* 332 F.3d 6, 13 (1 Cir., 2003).

Despite this "notoriously liberal" standard, *Mulvihill,* 335 F.3d at 19, summary judgment cannot be construed as "a hollow threat." *Kearney v. Town*

5

*of Wareham*, 316 F.3d 18, 22 (1 Cir., 2002). A factual dispute which is neither "genuine" nor "material" will not survive a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "An issue is 'genuine' for purposes of summary judgment if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Poulis-Minott*, 388 F.3d at 362-63 (quoting *Hayes v. Douglas Dynamics, Inc.,* 8 F.3d 88, 90 (1 Cir., 1993), *cert. denied,* 511 U.S. 1126 (1994)); *Rojas-Ithier,* 394 F.3d at 42; *Calero-Cerezo v. U.S. Dep't. of Justice*, 355 F.3d 6, 19 (1 Cir., 2004). Mere speculations raised by the nonmoving party that are unsubstantiated will not be sufficient to defeat summary judgment. *Nieves-Luciano v. Hernandez-Torres,* 397 F.3d 1, 5 (1 Cir., 2005).

In weighing whether a factual dispute is "material," the Court must examine the substantive law of the case because "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248; *De La Vega,* 377 F.3d at 115; *Rojas-Ithier*, 394 F.3d at 42.

The focus at the summary judgment phase "'should be on the ultimate issue: whether, viewing the aggregate package of proof offered by the plaintiff

and taking all inferences in the plaintiff's favor, the plaintiff has raised a genuine issue of fact.'" *Rivas Rosado v. Radio Shack, Inc.,* 312 F.3d 532, 535 (1 Cir., 2002) (quoting *Dominguez-Cruz v. Suttle Caribe, Inc.,* 202 F.3d 424, 430-31 (1 Cir., 2000)); *see also Nieves-Luciano,* 397 F.3d at 4; *Rojas-Ithier,* 394 F.3d at 42. The party objecting to summary judgment must set forth specific facts proving a genuine issue of material fact in order to "deflect the swing of the summary judgment scythe." *Noviello v. City of Boston*, 398 F.3d 76, 84 (1 Cir., 2005) (quoting *Mulvihill,* 335 F.3d at 19). Where "the non-moving party rests 'merely upon conclusory allegations, improbable inferences, and unsupported speculation,'" summary judgment will be appropriate. *Forestier Fradera v. Municipality of Mayaguez,* 440 F.3d 17, 21 (1 Cir., 2006) (quoting *Benoit v. Technical Mtg. Corp.,* 331 F.3d 166, 173 (1 Cir., 2003) (further internal citations omitted)). Moreover, the party objecting to summary judgment may not merely rest upon "the mere allegations or denials of [their] pleading." Fed. R. Civ. P. 56(e); *Ramirez Rodriguez v. Boehringer Ingelheim Pharmaceuticals, Inc.,* 425 F.3d 67, 83 (1 Cir., 2005). Instead, Rule 56(c):

> mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

### IV. Discussion

*A. Probable Cause*

In forfeiture cases, the claimant must have standing or an interest in the property involved in the claim. *United States v. Real Property, Buildings, Appurtenances and Improvements Located at 221 Dana Avenue, Hyde Park, Massachusetts,* 261 F.3d 65, 67-68 (1 Cir., 2001). The government has the burden to show probable cause to initiate the forfeiture proceeding. *Id.* at 68. Probable cause is a "reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion." *United States v. One 1978 Chevrolet Impala,* 614 F.2d 983 (5 Cir., 1980); *see also United States v. Proceeds from Sale of Approximately 15,538 Panulirus Argus Lobster Tails,* 834 F.Supp. 385 (S.D. Fla., 1993) (Court held that government agents had probable cause that the lobster tails were imported in violation of the Lacey Act, even though the correct measurement to determine a violation was weight and not length and the agents mistakenly measured the length of the tails and then used a conversion table to estimate their weight). The claimant then has the burden

8

of showing by a preponderance of the evidence that the property was not subject to forfeiture. *United States v. 15 Bosworth Street,* 236 F.3d 50, 54 (1 Cir., 2001). In addition, the claimant may also raise the affirmative defense of an innocent owner. *Id.* at 54.

The Endangered Species Act ("ESA") is the statutory ratification of the CITES treaty. In pertinent part the statute provides that:

> [a]ll fish or wildlife or plants taken, possessed, sold, purchased, offered for sale or purchase, transported, delivered, received, carried, shipped, exported, or imported contrary to the provisions of the [the ESA or] . . . any regulation made pursuant thereto, or any permit or certificate issued hereunder shall be subject to forfeiture to the United States.

Title 16 U.S.C. §1540(e)(4)(A).

By definition, import means

> to land on, bring into, or introduce into, or attempt to land on, bring into, or introduce into, any place subject to the jurisdiction of the United States, whether or not such landing, bringing, or introduction constitutes an importation within the meaning of the customs laws of the United States.

Title 16 U.S.C. §1532(10).

Beluga sturgeon caviar is listed in Appendix II of the CITES treaty, which mandates that a valid export permit from the country of origin be obtained prior

to importation into the United States. *See* 50 C.F.R. §23.12(a)(2); CITES, Art. II, III, IV, V and VI. *See also, e.g., United States v. 2,507 Live Canary Winged Parakeets*, 689 F. Supp. 1106, 1109 (S.D. Fla., 1988). Failure to comply with the CITES permit requirements is unlawful. Title 16 U.S.C. §1538(c)(1)("It is unlawful for any person subject to the jurisdiction of the United States to engage in any trade in any specimens contrary to the provisions of the Convention, or to possess any specimens traded contrary to the provisions of the Convention, including the definitions of terms in article I thereof."). As noted, under the ESA, civil forfeiture is described as a remedy for importation of a species in violation of CITES.

The Government contends that on November 15, 2004, a policy exemption existed for quantities of beluga sturgeon caviar of 250 grams or less. *See* 50 C.F.R. §23.13(d)("The prohibitions in §23.11(b) through(d) concerning importation...shall not apply to wildlife or plants that are accompanying personal baggage...: Provided, That this exception shall not apply to: ...(2) Importation by U.S. residents of wildlife or plants listed in Appendix II that were taken from the wild in a foreign country, if that country requires export permits."); CITES Conf. Res. 12.7 ("The Conference of the Parties to the

Convention...R[ecommends], with regard to regulating trade in sturgeon products, that:...Parties consider the harmonization of their national legislation related to personal exemptions for caviar, to allow for the personal effects exemption under Article VII, paragraph 3, of the Convention and consider limiting this exemption to no more than 250 grams of caviar per person.") This policy was codified in a final rule issued on March 4, 2005. *See* 70 Fed. Reg. 10493, 10504.

Although the Government has clearly established probable cause based on the undisputed facts, i.e., that on November 15, 2004, the Claimant admittedly attempted to import more that 250 grams of beluga sturgeon caviar into the United States without a CITES permit in violation of the ESA, Bakay nonetheless contests the forfeiture of the caviar on several grounds.

*B. Forfeiture of the Res Exceeding the Exemption Quantity*

Claimant argues that because she could have brought in up to 250 grams of caviar, the Government should return two jars of caviar (totaling two hundred twenty-six ("226") grams) to her. In *United States v. 3,210 Crusted Sides of Caiman Crocodilus Yacare*, 636 F. Supp. 1281 (S.D. Fla., 1986), a forfeiture action of reptile hides based on a lack of CITES permits or invalid

CITES permits, the court held that "[t]he entire *res* (the defendant hides) is subject to forfeiture, not just the number of hides which exceed the amount declared on the CITES permit." *Id.* at 1287. Reasoning that since all of the shipped hides required permits, the court concluded they were all subject to forfeiture. *Id.* The analysis focused on the purposes of CITES and the ESA with the court noting that "[t]o accomplish this aim, the penalties for violations of CITES must be stringent. Merely forfeiting the offending portion of the *res* would only serve to thwart the intent and undermine the effectiveness of both CITES and the [ESA]." *Id.*

The court found support in the case of *United States v. Eleven Thousand Five Hundred and Eighty Dollars in United States Currency*, 454 F. Supp. 376 (M.D. Fla., 1978). In that case, the Government alleged that the claimants had failed to file a required report for transporting over five thousand dollars ($5,000) from outside the United States into the United States. *Id.* at 380-81. The filing requirement was triggered when the sum transported was in excess of $5,000. *Eleven Thousand Five Hundred and Eighty Dollars in United States Currency*, 454 F. Supp. at 381. The claimants argued that they were entitled to keep $5,000, with only the amount in excess being possibly subject to forfeiture.

*Eleven Thousand Five Hundred and Eighty Dollars in United States Currency*, 454 F. Supp. at 382. Rejecting this contention, the court determined that in the absence of a statute providing for the non-forfeiture of the initial $5000, the total amount was subject to forfeiture. *Id.* at 382-83. In the court's view, the amount designated in the statute was simply to indicate when reporting was required and was not related to the forfeiture. *Id.* at 383. The court held that "[s]ince the full amount becomes subject to reporting, the statute provides that the reportable instruments are subject to forfeiture." *Id.* Continuing, the court wrote:

> The Full amount must be reported and consequently it is this amount that is forfeitable. Applying the rule proposed by claimants could lead to absurd results. As an example, if $5,100 in currency were transported without a proper report, claimant would contend that the government's action is limited to $100, and that $5,000 would be "up for grabs."

*Eleven Thousand Five Hundred and Eighty Dollars in United States Currency*, 454 F. Supp. at 383.

In light of these cases, the Claimant's assertion that two jars of caviar should be returned to her is not persuasive.

*C. Innocent Owner Defense*

In some situations, a claimant may raise the innocent owner defense

against forfeiture. *United States v. Two Parcels of Property Located at 19 and 25 Castle Street, New Haven,* 31 F.3d 35, 39 (1 Cir., 1994) (Court held that the owners were innocent with respect to the drug possession and sales on the property within the garage, but not the residence); Title 18 U.S.C. §983(d). In cases where a claimant has an interest in the property before or while the illegal activity occurs, the owner is innocent if he or she "did not know of the conduct giving rise to forfeiture [ ] or ...upon learning of the conduct giving rise to forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property." Title 18 U.S.C. §983(d)(2)(A)(i)-(ii); *see Two Parcels of Property Located at 19 and 25 Castle Street,* 31 F.3d at 42; *see also United States v. One 1983 Homemade Vessel Named Barracuda,* 625 F. Supp. 893 (S.D. Fla., 1986), *aff'd,* 858 F.2d 643 (11 Cir., 1988) (Court held that the owner of the boat was innocent because she did not know that her lessee lent out the boat to a third party who used the boat to transport drugs and because she checked on the boat, communicated with the lessee and had known the lessee for five years beforehand). To assert the innocent owner defense, a claimant must present evidence or testify to his or her innocence, and cannot rely on bare claims of innocence. *United States v. One Parcel of Real Property With Buildings,*

*Appurtenances, and Improvements Known as 190 Colebrook Road,* 743 F.Supp. 103, 106 (D.R.I., 1990).

The innocent owner defense is not available where the owner him or herself engaged in the unlawful activity. *United States v. Fifty-Three (53) Eclectus Parrots*, 685 F.2d 1131, 1137 (9 Cir., 1982). In holding the innocent owner defense inapplicable on the facts, the Ninth Circuit noted that,

> Appellant in this case was directly involved in the violation of a United States customs law and forfeiture serves the purposes of that law. No forfeiture would have been authorized had Appellant or his importer presented proper documentation for the birds. By failing to do so Appellant violated 19 U.S.C. §1527 and precipitated the forfeiture. The birds were not imported against Appellant's will and Appellant has not alleged any attempt to secure the required documentation….Appellant therefore cannot avail himself of the limited exception to forfeiture suggested by *Calero-Toledo* for the benefit of wholly innocent owners who have taken all reasonable precautions to prevent the proscribed activity.

*Fifty-Three (53) Eclectus Parrots*, 685 F.2d at 1137.

Another court held that, "[c]laimant may obtain remission of a seizure through an innocent owner defense when he can show that he was uninvolved in the underlying wrongdoing, he was unaware of the wrongdoing, and that he did all that he could reasonably be expected to do to prevent it." *U.S. v. 1,000 Raw*

15

*Skins of Caiman Crocodilus Yacare*, 1991 WL 41774, *4 (E.D.N.Y., 1991)(citing *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663 (1974)).

The case at hand is readily distinguishable from cases where an innocent owner had nothing whatsoever to do with the importation since the simple fact is that Bakay personally imported the items unlawfully. (Statement of Undisputed Facts ¶¶4-6) An owner who fails to get a permit and imports items is not "innocent" when the illegal action was that person's omission, and that omission is the basis for the forfeiture.[2]

D. *Strict Liability*

Claimant argues that the endangered status of the sturgeon was not made known to the public and that she had no notice that restrictions might be in place. Looking to the ESA, the forfeiture provision itself appears to contemplate strict liability. Title 16 U.S.C. §1540(e)(4)(A). Punitive provisions exist to deal

---

[2] The Civil Asset Forfeiture Reform Act ("CAFRA") precludes the use of the innocent owner defense when the property in question is "contraband or other property that it is illegal to possess." Title 18 U.S.C. §983(d)(4). Contraband is defined as "1. Illegal or prohibited trade; smuggling. 2. Goods that are unlawful to import, export or possess." Black's Law Dictionary (8th ed. 2004). Contraband *per se* is defined as "[p]roperty whose possession of is unlawful regardless of how it is used." Black's Law Dictionary (8th ed. 2004). Derivative contraband is defined as "[p]roperty whose possession becomes unlawful when it is used in committing an illegal act." Black's Law Dictionary (8th ed. 2004). The innocent owner defense is also inapplicable in this case because beluga sturgeon caviar is "contraband or other property that it is illegal to possess." Title 18 U.S.C. §983(d)(4). *See, e.g.*, *United States v. 144,774 Pounds of Blue King Crab*, 410 F.3d 1131 (9 Cir.), *cert. denied sub nom. Deep Sea Fisheries, Inc. v. U.S.*, 126 S. Ct. 828 ( 2005)(Court found that the defendant property violated the Lacey Act and that the crab itself was either contraband or property that is illegal to possess, thus precluding the innocent owner defense.)

with knowing violations. Title 16 U.S.C. §1540(a)(1) (prescribing civil penalties for knowing violations); Title 16 U.S.C. § 1540(b)(1) (prescribing criminal penalties for knowing violations).

In one case the court noted that the legislative history of the ESA indicates that "Congress intended the forfeiture provisions of the Act to apply primarily to innocent violations by tourists or hunters." *Carpenter v. Andrus*, 485 F. Supp. 320, 322-23 (D. Del., 1980). In another case involving forfeiture under a statute designed to protect wildlife by controlling importation of such animals, the Ninth Circuit held that since the forfeiture provision

> is unequivocal and mandatory on its face; it prescribes forfeiture without regard to the presence or absence of culpability on the part of the owner of birds illegally imported. This fact alone is probably sufficient to answer Appellant's primary argument. [citation omitted] In any event, the purpose of the statute supports a literal interpretation of its language. Section 1527 is manifestly aimed at protecting endangered species of wild animals and birds, and at cooperating with other nations that pursue that goal. The primary means chosen by Congress to achieve these aims was a limitation of importation, since a thriving import market in the United States could unquestionably constitute a significant threat to the continued existence and propagation of endangered species in the wild. To permit an importer to retain improperly taken birds on the ground of non-culpability would lend support to the commercial traffic in such birds, as the

> facts of this case demonstrate. Rather than reading into [§] 1527(b) a defense that would partially undermine its purpose, we adhere to the literal interpretation of the statute that places upon the owner the affirmative burden of insuring [*sic*], the appropriate documentation, that foreign wildlife laws have not been violated.

*Fifty-Three (53) Eclectus Parrots*, 685 F.2d at 1133-4 (footnote omitted).

In the case of *1000 Raw Skins of Caiman Crocodilus Yacare*, 1991 WL 41774 (E.D.N.Y.), which involved forfeiture actions for three shipments of crocodile skins, the court found that the skins were subject to forfeiture and held that the claimant could not assert the innocent owner defense for the CITES violation because "[f]orfeiture does not require a showing of the owner's culpability" and since the Government was not seeking civil or criminal penalties, it did not need to show a knowing violation. 1991 WL 41774, *4; *see also United States v. One Handbag of Crocodilus Species*, 856 F. Supp. 128 (E.D.N.Y., 1994).

E. *Insufficiency of Service of Process*

Lastly, Bakay argues for dismissal based on insufficient service of process. As a basis she cites the lapse in time between when the Government initially filed its complaint for forfeiture on May 18, 2005, and when the documents

were mailed to her on July 27, 2005.

>Under Rule 4 of the Federal Rules of Civil Procedure,
>
>>If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time....

Fed. R. Civ. P. 4(m).

In this case, the time between the filing of the original complaint and service was fewer than 90 days. This clearly falls within the allowable range.

### VI. *Conclusion and Order*

For all the reasons stated it is ORDERED that the United States' Motion For Summary Judgment (#18) be, and the same hereby is, ALLOWED. Judgment shall enter accordingly. Counsel for the United States shall submit a form of judgment for the Court to enter.

*/s/ Robert B. Collings*
ROBERT B. COLLINGS
United States Magistrate Judge

December 12, 2006.